FILED
2021 Jul-07  PM 03:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA WESTERN DIVISION

|  |  |
|---|---|
| JANE DOE #1 and JANE DOE #2 on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II, LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC, INC., d/b/a MINDGEEK);  MG BILLING LTD<br><br>Defendants. | CIVIL ACTION NO. 7:21-CV-00220<br><br>Honorable L. Scott Coogler |

## DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Sara M. Turner
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
Shipt Tower
420 20th Street North
Suite 1400
Birmingham, AL 35203
Phone: (205) 250-8316
smturner@bakerdonelson.com

Kathleen N. Massey (*pro hac vice* application forthcoming)
Hayden Coleman (*pro hac vice* application forthcoming)
DECHERT LLP
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................4

LEGAL STANDARD.............................................................................7

ARGUMENT .........................................................................................8

    I.     Section 230 Bars Plaintiffs' Claims Against Websites Based On
          Third-Party Content...............................................................8

         A.   Defendants provide an interactive computer service.................9

         B.   Plaintiffs seek to treat Defendants as the publishers or
             speakers of third-party content.................................10

         C.   The offending content was created by third parties.................12

    II.    Section 230's Broad Grant Of Immunity Applies to Plaintiffs'
          TVPRA Claims and FOSTA Does Not Apply...................17

         A.   Plaintiffs fail to allege commercial sex trafficking.................19

         B.   Plaintiffs fail to allege a sex trafficking venture involving
             Defendants .................................................21

         C.   Plaintiffs fail to allege Defendants knowingly benefitted
             from Plaintiffs' alleged trafficking. .........................24

         D.   Plaintiffs fail to allege actual knowledge by Defendants
             of the alleged trafficking. ........................................26

    III.   Section 230 Applies to Plaintiffs' 18 U.S.C. §§ 2252 & 2252A
          Claims.......................................................................27

    IV.   The Complaint Fails To Plead A *Prima Facie* TVPRA Claim .........28

         A.   Defendants had neither actual nor constructive
             knowledge of Plaintiffs' alleged trafficking. ...........................29

         B.   Defendants did not participate in a commercial sex
             trafficking venture with Plaintiffs' abusers. ...........................30

    V.    Plaintiffs Have Not Alleged That Defendants Knowingly
          Possessed and Distributed CSAM....................................33

    VI.   The Court Lacks Personal Jurisdiction Over Jane Doe #2.................34

CONCLUSION .....................................................................................36

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
  484 F. Supp. 3d 921 (D. Or. 2020) ....................................................................30

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
  2021 WL 1235241 (D. Or. Mar. 31, 2021).........................................................24

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) ..........................................................................12

*Am. Income Life Ins. Co. v. Google, Inc.*,
  2014 WL 4452679 (N.D. Ala. Sept. 8, 2014).......................................8, 9, 12, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................7, 21

*Asia Economic Institute v. Xcentric Ventures LLC*,
  2011 WL 2469822 (C.D. Cal. May 4, 2011) ......................................................15

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 4368214 (N.D. Cal. July 30, 2020) ...............................................29, 30

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ............................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................7

*Bristol-Myers Squibb Co. v. Superior Ct. of California*,
  137 S. Ct. 1773 (2017).................................................................................34, 35

*Clarks v. Priv. Money Goldmine*,
  2020 WL 949946 (D. Md. Feb. 26, 2020)...........................................................13

*Coleman v. Holt*,
  2011 WL 6182427 (M.D. Ala. Dec. 13, 2011)......................................................5

*Diez v. Google, Inc.*,
    831 F. App'x 723 (5th Cir. 2020) .......................................................28

*Doe 1 v. Red Roof Inns, Inc.*,
    2020 WL 1872335 (N.D. Ga. Apr. 13, 2020).........................29, 30, 31

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ...........................17, 28

*Doe v. Kik Interactive, Inc.*,
    482 F. Supp. 3d 1246 (S.D. Fla. 2020).......................................*passim*

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ...................................................9, 11, 12

*Domen v. Vimeo, Inc.*,
    991 F.3d 66 (2d Cir 2021) .................................................................9, 17

*Dowbenko v. Google Inc.*,
    582 F. App'x 801 (11th Cir. 2014)...............................7, 10, 14, 36

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ..........................................................16

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ..........................................................14

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) .................................................10, 11, 16

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) .......................................*passim*

*Goddard v. Google, Inc.*,
    2008 WL 5245490 (N.D. Cal. Dec. 17, 2008)...............................9, 17

*Goddard v. Google, Inc.*,
    640 F.Supp. 2d 1193 (N.D. Cal. 2009)............................................15

*Gonzalez v. Google, LLC*,
    -- F.4th --, 2021 WL 2546675 (9th Cir. June 22, 2021)............9, 13, 16

*Green v. Am. Online (AOL)*,
318 F.3d 465 (3d Cir. 2003) ...............................................................11

*H.G. v. Inter-Cont'l Hotels Corp.*,
489 F. Supp. 3d 697 (E.D. Mich. 2020) ............................................30

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) ........................................................14

*J.B. v. G6 Hosp., LLC*,
2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) .............................31, 32

*Jurin v. Google, Inc.*,
695 F. Supp. 2d 1117 (E.D. Cal. 2010) .............................................14

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) .......................................................9, 16

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) ....................................................10, 17

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ..................................19

*M.A. ex rel. P.K v. Village Voice Media Holdings, LLC,* 809 F. Supp.
2d 1041 (E.D. Mo. 2011)..............................................................17, 28

*Matson v. Steve's Truck & Trailer Repairs, Inc.*,
2017 WL 4472717 (N.D. Ala. Oct. 6, 2017) ......................................36

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
377 F. Supp. 3d 49 (D. Mass. 2019).................................................17

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F. Supp. 3d 250 (4th Cir. 2009) .................................................15

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) .........................20, 22, 25, 31

*Ricci v. Teamsters Union Local*
456, 781 F.3d 25 (2d Cir. 2015) .........................................................9

*Roca Labs, Inc. v. Consumer Opinion Corp.*,
    140 F. Supp. 3d 1311 (M.D. Fla. 2015)........................................................14, 15

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................................29, 31

*Shuler v. Duke*,
    2018 WL 2445685 (N.D. Ala. May 31, 2018) ...................................................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)..........................................................................................5

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016)...................................................19, 21, 22, 24

*United States v. Dobbs*,
    629 F.3d 1199 (10th Cir. 2011) .........................................................................33

*United States v. Durham*,
    902 F.3d 1180 (10th Cir. 2018) .........................................................................20

*United States v. Myers*,
    355 F.3d 1040 (7th Cir. 2004) .........................................................................33

*United States v. Phea*,
    953 F.3d 838 (5th Cir. 2020) ...........................................................................26

*United States v. Todd*,
    627 F.3d 329 (9th Cir. 2010) ...........................................................................20

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994).............................................................................................33

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007)..............................................................................16

*Whatley v. Ohio Nat'l Life Ins. Co.*,
    2019 WL 6173500 (M.D. Ala. Nov. 19, 2019) .................................................36

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..........................................................................................35

*Zeran v. Am. Online, Inc.*,
　　129 F.3d 327 (4th Cir. 1997) ......................................................................*passim*

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
　　-- F. Supp.3d --, 2021 WL 930623 (N.D. Cal. Mar. 11, 2021) .........................13

**Statutes**

18 U.S.C. § 1591 ........................................................................................*passim*

18 U.S.C. § 1595 ........................................................................................*passim*

18 U.S.C. § 2252 ........................................................................................*passim*

18 U.S.C. § 2252A ......................................................................................*passim*

18 U.S.C. § 2255 ..............................................................................................28

47 U.S.C. § 230 ..........................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................7

**INTRODUCTION**

In this putative class action, Plaintiffs seek to represent an expansive class of all persons who had videos posted of them on Defendants' websites that were made when they were under eighteen years of age. Compl. ¶ 139. But the factual allegations relating to their own claims are much narrower. Jane Doe #1 alleges that she was drugged and raped by a man in Tuscasloosa, someone filmed the acts, and the rapist uploaded the videos to the websites. Jane Doe #2 alleges that she was forced to participate in the creation of sexually explicit videos and that they, too, were posted to Defendants' websites. Both Plaintiffs were minors at the time. The described conduct is heinous, disturbing, and almost certainly criminal. This putative class action, however, attempts to shift legal liability from Plaintiffs' assailants to MG Freesites Ltd ("Freesites") and certain of its affiliates (collectively, "Defendants") for allegedly owning, operating, and controlling websites that provided a public video platform the perpetrators used to share their video content.[1]

Plaintiffs' claims are barred by Section 230 of the Communications Decency Act ("Section 230"), which affords a provider of interactive computer services (an "ICS") broad immunity from liability for content posted to its websites by third

---

[1] Plaintiffs allege that Defendants Freesites, MG Freesites II Ltd, MindGeek S.à.r.l., MindGeek USA Inc., MG CY Holdings Ltd, MindGeek Content RT Limited, 9219-1568 Quebec Inc., and MG Billing, Ltd (collectively "Defendants") all own, operate, or control websites. Defendants dispute that. However, given the posture of the case, Defendants do not undertake to distinguish among the different entities, with one exception: when referring to actions taken relative to the websites Pornhub and Redtube, Defendants refer to Freesites because it operates those sites.

parties.  Section 230(c)(1) mandates: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1). Congress enacted this broad immunity to serve a number of public policy goals, including allowing "[t]he Internet and other interactive computer services" to "flourish[], to the benefit of all Americans, with a minimum of government regulation," *id.* (a)(4), and "preserv[ing] the vibrant and competitive free market that presently exists for the Internet and other interactive computer services," *id.* (b)(2).  In addition, without such immunity websites would face a perverse incentive whereby they could face more liability if they attempted to moderate content than if they chose not to act at all.  *See Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1246 (S.D. Fla. 2020); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997).  As set forth herein, Section 230 bars all of Plaintiffs' claims.

Plaintiffs seek to circumvent this broad immunity by contending that Defendants are liable under 18 U.S.C. § 1591 ("Section 1591") and § 1595 ("Section 1595") of the Trafficking Victims Protection Reauthorization Act ("TVPRA").  The TVPRA provides trafficking victims with a civil cause of action against sex traffickers and those who knowingly benefit from participating in a trafficking venture. *See* 18 U.S.C. § 1595(a).  Section 230 immunity applies to such claims, subject to an exception created by the 2018 Allow States to Fight Online Sex

Trafficking Act ("FOSTA"), which does not apply here. FOSTA applies only "if the conduct underlying the claim constitutes a violation of [S]ection 1591," the criminal statute prohibiting sex trafficking. 47 U.S.C. § 230(e)(5)(A). Plaintiffs do not plead facts showing that their assailants committed acts of commercial sex trafficking, that Defendants directly participated in that alleged trafficking, that Defendants benefitted from such participation, or that Defendants had actual knowledge of that trafficking, all of which must be shown under Section 1591. Accordingly, the FOSTA exception does not apply.

Section 230 also bars Plaintiffs' second count under 18 U.S.C. §§ 2252 and 2252A. The Complaint alleges that Defendants received and distributed child sexual abuse material ("CSAM") depicting Plaintiffs. The Complaint does not allege that Defendants made or uploaded those videos themselves or that they were distributed any differently than other videos uploaded to Defendants' websites. Federal courts have consistently held under similar circumstances that such claims against websites for possessing child pornography are barred by Section 230.

Apart from Section 230 immunity, Plaintiffs fail to state a *prima facie* TVPRA claim. Plaintiffs do not plead that Defendants participated in a trafficking venture, that Defendants knew (or should have known) of trafficking involving Plaintiffs, or that Defendants knowingly benefitted from such trafficking, all of which Section 1595 requires. Similarly, Plaintiffs' 18 U.S.C. §§ 2252 and 2252A claims fail

-3-

because Plaintiffs have not pleaded that Defendants possessed or distributed any videos of them knowing that they contained child pornography.

Jane Doe #2's claims must also be dismissed because this Court lacks personal jurisdiction over her claims. There is no general jurisdiction because no Defendant is incorporated in or has its principal place of business in Alabama. And there is no specific jurisdiction because Jane Doe #2 is a California resident and there is no connection between the State of Alabama and any conduct related to her claims.

For these reasons, and those that follow, the Complaint should be dismissed with prejudice.

## BACKGROUND

Defendants own and operate several interactive adult video websites, including the popular site Pornhub.com. *See* Compl. ¶ 42. Pornhub's interface is similar to YouTube's; Pornhub's main feature is a library of videos uploaded by third-party users. *See id.* ¶¶ 42, 43, 46. Those who wish to upload videos agree to be bound by Freesites' Terms of Service. *See id.* ¶¶ 47, 100. Under those Terms, uploaders "agree not to use the Websites to," among other things, "post any Content that depicts any person under 18 years of age," "violate any law," "post any Content for which you have not maintained written documentation sufficient to confirm that all subjects of your posts are, in fact, over 18 years of age," or "post any Content depicting child pornography, rape, snuff, torture, death, violence, or incest, racial

slurs or hate speech."[2]   Consistent with the Terms of Service, Defendants do not permit, let alone encourage, the posting of CSAM or non-consensual content on their websites.   To the contrary, Freesites has taken a number of steps to combat the practice.   While the specific procedures have evolved over time, the Complaint acknowledges that Freesites actively screens for videos containing CSAM or non-consensual content, Compl. ¶ 47, and that Pornhub retains full-time moderators to screen for CSAM and other inappropriate content.   *Id.* ¶ 63.   While no content moderation process for user-generated content is ever perfect, Freesites has worked diligently to prevent CSAM and non-consensual content from being uploaded to the sites it operates, and to remove videos that violate the Terms of Service when violations are detected.

Amateur performers can also enroll in the ModelHub program operated by Freesites, allowing them to post videos they produce and upload.   *Id.* ¶ 46.   ModelHub participants who upload content must undergo a verification process, *id.* ¶ 47, and are subject to the same Terms of Service.   *See id.* ¶ 100.

Plaintiffs' claims arise out of illegal videos of them that third parties uploaded to Defendants' websites in violation of the Terms of Service.   Jane Doe #1 alleges

---

[2] *See, e.g.*, Pornhub.com Terms of Service at 4 (May 18, 2018) (attached as Ex. A).   The Court may consider documents referenced in the Complaint on a motion to dismiss.   *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Coleman v. Holt*, 2011 WL 6182427, at *1 (M.D. Ala. Dec. 13, 2011).   The Complaint references the Terms of Service.   Compl. ¶ 100

that when she was sixteen years old, she was drugged and raped by a man in Tuscaloosa, Alabama. *Id.* ¶ 100. Jane Doe #1's assailant uploaded videos depicting her to Defendants' websites through the ModelHub program. The Complaint does not identify who created the videos, when the videos were uploaded, when Jane Doe #1 learned the videos had been uploaded, whether she ever requested that the videos be removed, or whether Defendants removed the videos from their websites.

Jane Doe #2 alleges that when she was fourteen years old she was forced to participate in the creation of sexually explicit videos that included adults engaging in sex acts with her and that the videos were uploaded to websites owned, operated, or controlled by Defendants. *Id.* ¶¶ 110-12. She does not identify who created the videos, and is silent on when the videos were uploaded, when she learned the videos had been uploaded, whether she requested that the videos be removed, or whether Defendants removed them. The Complaint alleges that Jane Doe #2 is currently a resident of California. And while Jane Doe # 1 is very explicit that the offending conduct allegedly occurred in Alabama, Jane Doe # 2 is silent on where the offending conduct occurred, presumably because it happened in California.

Tellingly, in Plaintiffs' 146-paragraph Complaint, only twenty paragraphs concern allegations about Plaintiffs themselves or the videos depicting them, and the only specific allegation made is that videos of Plaintiffs were uploaded to Defendants' websites where they could be viewed and disseminated. *Id.* ¶¶ 100-

120.   Instead of addressing facts concerning Plaintiffs, the Complaint dedicates dozens of paragraphs to general allegations about Defendants' purported business practices, without ever tying those purported practices to what happened to Plaintiffs or their alleged injuries.   *Id.* ¶¶ 42-99.   While Defendants disagree that these allegations are accurate, they are irrelevant to this motion because they have nothing to do with the sexual abuse experienced by Plaintiffs.

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).   Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory statements." *Id.*   Facts that create a mere "suspicion of a legally cognizable right of action" are insufficient; the complaint must plead facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 561 (2007) (citation omitted).

When plaintiffs cannot allege enough facts to overcome Section 230 immunity, their claims should be dismissed with prejudice. *See, e.g.*, *Dowbenko v. Google Inc.*, 582 F. App'x 801, 805-06 (11th Cir. 2014) (affirming dismissal with prejudice); *Kik Interactive, Inc.*, 482 F. Supp. 3d at 1251-52; *Shuler v. Duke*, 2018 WL 2445685, at *10 (N.D. Ala. May 31, 2018), *aff'd*, 792 F. App'x 697 (11th Cir.

2019); *Am. Income Life Ins. Co. v. Google, Inc.*, 2014 WL 4452679, at *14-15 (N.D. Ala. Sept. 8, 2014).

## ARGUMENT

Plaintiffs' Complaint should be dismissed because their claims fall squarely within Section 230 of the Communications Decency Act broad grant of immunity for internet service providers like Defendants.  Although FOSTA created a narrow exception to Section 230, that exception requires Plaintiffs to plead facts showing that Defendants' conduct violated 18 U.S.C. § 1591 and Plaintiffs have failed to do so.  Plaintiffs also fail to plead facts establishing that any exception to Section 230 applies to their claims under 18 U.S.C. § 2252 and 2252A.  Even absent Section 230 immunity, Plaintiffs still fail to state a prima facie TVPRA claim or a child pornography claim against Defendants.  Finally, Plaintiffs have failed to plead that the Court has personal jurisdiction over Jane Doe #2's claims.

I. **Section 230 Bars Plaintiffs' Claims against Websites Based on Third-Party Content**

Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  In other words, internet service companies (like Defendants) cannot be held liable as the publishers of user-generated content (like the videos of Plaintiffs third parties made and uploaded).  Thus, because Plaintiffs seek to hold Defendants liable for content posted

to their websites, their claims are proscribed by Section 230.

Section 230 applies where, as here, (1) the defendant "is an interactive computer service provider," (2) "the claim seeks to treat the defendant as a publisher or speaker," and (3) "the particular information at issue was provided by another information content provider." *Am. Income*, 2014 WL 4452679, at *7 (citation omitted). These elements are construed broadly. "Courts consistently have held that § 230 provides a 'robust' immunity… and that all doubts 'must be resolved in favor of immunity.'" *Goddard v. Google, Inc.*, 2008 WL 5245490, at *2 (N.D. Cal. Dec. 17, 2008); *accord, e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

## A.     Defendants provide an interactive computer service.

An "interactive computer service" is "any information service, system, or access software provider that provides … access by multiple users to a computer server." 47 U.S.C. § 230(f)(2).  This definition "has been construed broadly to effectuate the statute's speech-protective purpose," *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015), and includes websites.  *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016).  In particular, courts have consistently held that video-sharing websites, like Pornhub.com, are covered by Section 230.  *E.g.*, *Domen v. Vimeo, Inc.*, 991 F.3d 66, 73 (2d Cir 2021) (Vimeo); *Gonzalez v. Google, LLC*, -- F.4th --, 2021 WL 2546675 (9th Cir. June 22, 2021) (YouTube). Plaintiffs do not allege otherwise.

**B.    Plaintiffs seek to treat defendants as the publishers or speakers of third-party content.**

Plaintiffs claim they were harmed by the dissemination on Defendants' websites of sexually explicit videos depicting them.  Compl. ¶¶ 2, 142.  In particular, they allege that Defendants wrongfully allowed third-party users to post illegal videos of them, allowed other users to view those videos hundreds of times, and did not do enough to filter out such content.  *E.g.*, *id.* ¶¶ 47, 88-99, 100.  This satisfies the second element of Section 230 immunity—seeking to treat the defendant as publisher.  As the leading case explains, in a test adopted by the Eleventh Circuit, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred" by Section 230.  *Zeran*, 129 F.3d at 330; *see also Dowbenko*, 582 F. App'x at 805 (applying the *Zeran* test).  Thus, "[a]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."  *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) (citation omitted).  Like the other elements of Section 230 immunity, courts have adopted a "capacious conception of what it means to treat a website operator as the publisher ... of information provided by a third party."  *Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) (citation omitted), *cert. denied*, 140 S. Ct. 2761 (2020).

In evaluating whether Plaintiffs are seeking to hold Defendants liable as a

publisher, "what matters is not the name of the cause of action … what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another .… If it does, section 230(c)(1) precludes liability." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009); *accord Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003); *see also MySpace*, 528 F.3d at 420.  For example, in *MySpace*, the Fifth Circuit held that Section 230 barred various tort claims against a social media site for "failure to take reasonable steps to ensure minors' safety" after the plaintiff used the platform to contact a man who sexually assaulted her.  528 F.3d at 417-18.  These claims were barred by Section 230 because, regardless of how they were styled, they were "merely another way of claiming that MySpace was liable for publishing the communications."  *Id.* at 420; *see also Force*, 934 F.3d at 65 ("Facebook's alleged failure to delete content from Hamas members' Facebook pages" falls "within the heartland of what it means to be the 'publisher' of information under Section 230.").

Plaintiffs' claims here fall within the scope of Section 230 for the same reason. Count II is based on Defendants' alleged distribution of child pornography through its websites.  And although Count I is styled as a violation of the TVPRA, Plaintiffs' theory of liability is that Defendants published and failed to remove illegal pornography. Thus, at bottom both claims arise out of Defendants' decisions "whether to publish or to withdraw from publication third-party content." *Barnes*,

-11-

570 F.3d at 1102.

### C.   The offending content was created by third parties.

Section 230 "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (internal quotation mark omitted) (quoting *Zeran*, 129 F.3d at 330). Even if the defendant distributes or disseminates the illegal content, it cannot be held liable unless it actually "***creates the disputed information***." *Am. Income*, 2014 WL 4452679, at *7 (adopting report and recommendation).

The Complaint makes clear that all the offending content was created and uploaded by third parties, not Defendants. The Complaint includes a handful of vague and conclusory allegations that Defendants somehow encourage or are responsible for this third-party content. Compl. ¶¶ 48, 59, 79, 99. Defendants strongly disagree with these allegations, which are not substantiated by any specific facts in the Complaint about how Defendants actually encouraged any illegal conduct, let alone the specific conduct of Plaintiffs' abusers. And in any event, such conclusory claims without specifics as to how Defendants purportedly contributed to the content are insufficient to defeat a motion to dismiss. *See MySpace*, 528 F.3d at 420. Moreover, all of Plaintiffs' claims are premised on allegations that Defendants made it too easy for ***users*** of their websites to upload and share illegal

content by having inadequate content monitoring.  Compl. ¶¶ 62-75, 88-99.³  Jane Doe #1 alleges that a man who assaulted her later uploaded videos to PornHub.  *Id.* ¶ 100.  Jane Doe #2 likewise alleges that she was sexually exploited and that videos were "uploaded and disseminated through websites owned, operated, and/or controlled by Defendants."  *Id.* ¶¶ 111-12.  Such claims are barred: Defendants' "failure to edit or block user-generated content is the very activity Congress sought to immunize." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, -- F. Supp.3d --, 2021 WL 930623, at *12 (N.D. Cal. Mar. 11, 2021) (citation and internal quotation marks omitted).  This is especially true where, as here, the offending content violates the ICS's policies.  *Gonzalez*, 2021 WL 2546675, at *14-15.

None of Plaintiffs' allegations about how Pornhub operates change that analysis.  The Complaint does not connect any website features to the specific harm *Plaintiffs* allegedly suffered.  Moreover, courts have consistently found that the sorts of content management tools Plaintiffs point to do not vitiate Section 230 immunity.

**Content-neutral search technology**.  Plaintiffs contend that the websites' search tools could be used to find illegal content, like CSAM.  Compl. ¶ 74.  But

---

³ Plaintiffs allege Defendants produce original adult content and "sell[] videos." Compl. ¶¶ 57, 87. But Plaintiffs do not allege that any of those videos included them.  Nor do they allege that the original content is even illegally produced or made with anyone other than consenting, adult performers or that it had anything to do with Plaintiffs.  The only ***illegal*** content addressed in the Complaint was created and uploaded by third-party users.  ICSs remain protected by Section 230 even if they "publish original content" where that original content did not "cause[] any harm to Plaintiff." *Clarks v. Priv. Money Goldmine*, 2020 WL 949946, at *8 (D. Md. Feb. 26, 2020).

"[an ICS] cannot be held liable for search results that yield content created by a third party." *Am. Income*, 2014 WL 4452679, at *7 (quoting *Getachew v. Google, Inc.*, 491 Fed. App'x 923, 926 (10th Cir.2012)); *see also Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1321 (M.D. Fla. 2015) (citing *Dowbenko*, 582 F. App'x at 806)). For example, a website would not become "the developer of discriminatory content if it provided a free-text search … users utilized … to search for discriminatory keywords." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 at 1174 n.37 (9th Cir. 2008). The provision of search tools does not constitute content creation even where those tools reflect illegal content generated by users, such as by suggesting offensive keywords. *See Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010). Allegations that PornHub's search engine suggested terms implying illegal content, Compl. ¶ 54, does not make PornHub responsible for that content. "[A] search only displays previously created content." *Am. Income*, 2014 WL 4452679, at *14 (citation omitted).

**Keyword "tagging" of content.** Plaintiffs allege that MindGeek creates "titles and tags" (*i.e.*, keywords) for content and that these make it easier for users to find illegal material. Compl. ¶¶ 54, 99. But an ICS "cannot be held liable for providing … tools and functionality available equally to bad actors and the [platform's] intended users." *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (citation omitted), *cert. denied,* 140 S. Ct. 221 (2019). This is so even

-14-

where bad actors use those tools illegally.  *E.g.*, *Goddard v. Google, Inc.*, 640 F.Supp. 2d 1193 (N.D. Cal. 2009).  Accordingly, labeling content in ways that makes it easier to find does not eliminate Section 230 immunity.  *See Asia Economic Institute v. Xcentric Ventures LLC*, 2011 WL 2469822, at *6 (C.D. Cal. May 4, 2011).  Similarly here, Plaintiffs' allegations that Defendants' tagging of videos made them easier to find does not transform Defendants into the creators of those videos and Section 230 still applies.

**Editing content.**   Plaintiffs allege that Freesites edits titles, tags, and advertisements created by third parties. *E.g.*, Compl. ¶¶ 54, 75, 79.  Under Section 230, however, "[a] website operator who edits user-created content … retains [its] immunity" unless it makes a "material contribution" to the unlawful nature of the content, such as by altering a non-defamatory sentence into a defamatory one.  *Roca Labs*, 140 F. Supp. 3d at 1320, 1322 (citations omitted); *accord, e.g.*, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257 (4th Cir. 2009). Here, Plaintiffs' claims are based on the contents of videos and images, not the titles and tags supposedly edited by Defendants.  While Plaintiffs allege (paradoxically) that these purported edits made the illegal third-party content both easier and harder to identify, *compare* Compl. ¶ 54 *with id.* ¶ 72, they did not contribute to the illegal nature of the content and, therefore, do not alter Defendants' Section 230 immunity.

**Algorithmic content suggestion.** Plaintiffs allege that Pornhub recommends

-15-

content to users based on their viewing history. Compl. ¶¶ 53, 60, 77, 82. But "proliferation and dissemination of content does not equal creation or development of content." *Kimzey*, 836 F.3d at 1270-71. Federal courts have consistently held that websites do not lose Section 230 immunity by recommending content, especially where that recommendation is made through automated algorithms. *E.g.*, *Force*, 934 F.3d 53 (algorithmic recommendation of terrorist content); *Gonzalez*, 2021 WL 2546675 (similar); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (recommendation of message group where plaintiff purchased fatal drugs). The same is true here. Plaintiffs' claims based on suggestions of content to viewers based on pattern recognition are barred by Section 230.

**Alleged knowledge of the offending content**. Plaintiffs allege in general that "MindGeek is aware that its PornHub site attracts sex traffickers" who take advantage of the PornHub platform to post illegal content. Compl. ¶ 98. Plaintiffs do not allege that Defendants had any knowledge of *their* videos. Moreover, "Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content." *Universal Commc'n Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413, 420 (1st Cir. 2007). "Liability upon notice would defeat the dual purposes advanced by § 230 of the CDA [and] … reinforce[] service providers' incentives to restrict speech and abstain from self-regulation." *Zeran*, 129 F.3d at 333.

**Revenues from advertising and sales of content.** Plaintiffs allege that

Defendants profit from advertising on their websites, subscriptions, and sales of certain content. Compl. ¶¶ 87, 89. "[T]he fact that a website elicits online content for profit is immaterial" to the Section 230 analysis; "the only relevant inquiry is whether the interactive service provider 'creates' or 'develops' that content." *Goddard*, 2008 WL 5245490, at *3; *accord M.A. ex rel. P.K v. Village Voice Media Holdings, LLC,* 809 F. Supp. 2d 1041 (E.D. Mo. 2011); *Doe v. Bates*, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006).

**Content moderation**. Finally, but no less fundamentally, Plaintiffs cannot evade Section 230 by alleging that Defendants' efforts to monitor and remove offensive content are inadequate, Compl. ¶¶ 62-75, applied inconsistently, *id.* ¶ 67, or hindered by a conflict of interest. *Id.* ¶ 69. Courts have unanimously held, based on both the language and purpose of Section 230, that moderating content does not waive Section 230 immunity. *E.g.*, *Klayman*, 753 F.3d at 1358; *Nat'l Ass'n of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49, 68 (D. Mass. 2019) (collecting cases). Nor can bad faith be inferred from Defendants' allegedly "imperfect exercise of content-policing discretion." *Domen*, 991 F.3d at 73.

## II.     Section 230's Broad Grant of Immunity Applies to Plaintiffs' TVPRA claims and FOSTA Does Not Apply

In 2018, Congress enacted FOSTA to remove immunity for ICSs that engage in or facilitate sex trafficking. By its terms, that exception is narrow. "FOSTA does not subject interactive computer service providers to liability for any cause of action

that might otherwise be available …. Rather, FOSTA removes [Section 230] immunity *only* for claims 'under section 1595 of Title 18, *if* the conduct underlying the claim constitutes a violation of [S]ection 1591 of that title.'" *Kik Interactive*, 482 F. Supp. 3d at 1249 (quoting 47 U.S.C. § 230(e)(5)(A)) (emphasis added). This limitation is critical because it means that all of Plaintiffs' claims are barred by Section 230 unless they can prove the elements of *both* Sections 1591 (the criminal provision) *and* 1595 (the civil right of action). *Id*.

Plaintiffs have not pleaded facts to establish a violation of Section 1591.[4] Section 1591 punishes (1) primary violators who directly engage in sex trafficking; and (2) secondary participants who "knowingly ... benefit[], financially or by receiving anything of value, from participation in a venture" with a primary violator. 18 U.S.C. § 1591(a). Here, Plaintiffs apparently seek to hold Defendants liable as secondary participants. *See* Compl. at 29 (styling Count I as "benefitting from a sex trafficking venture").[5] To make out a Section 1591 secondary participant claim, Plaintiffs must plead all four of the following elements. First, there must be a "venture" that commits an act of commercial sex trafficking, a term defined by the statute. 18 U.S.C. § 1591(a)(1), (e)(3). Second, Defendants must have knowingly

---

[4] As explained in Part IV, Plaintiffs also fail to state a claim under Section 1595.

[5] The Complaint alleges in passing that "Defendants … caus[ed] a person under the age of 18 to engage in a commercial sex act." Compl. ¶ 130. But Plaintiffs provide no specifics of this supposed direct participation. Instead, as the rest of the Complaint makes clear, Plaintiffs' core allegation is that "Defendants profit[ed] from videos depicting Plaintiffs in commercial sex acts or child pornography." *Id.* ¶ 142.

participated in that trafficking, *id.* (a)(2), (e)(4), which requires Plaintiffs to allege Defendants committed "some 'overt act' that furthers the sex trafficking aspect of the venture." *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016).  Third, Plaintiffs must plead that Defendants "knowingly" benefitted from participation in the sex trafficking venture.  18 U.S.C. § 1591(a)(2).  And fourth, Defendants must have had actual knowledge of specific sex trafficking involving Plaintiffs.  18 U.S.C. § 1591(a)(2); *Kik Interactive, Inc.*, 482 F. Supp. 3d at 1251.  Plaintiffs have failed to plead any one of these elements, let alone all four.

### A.    Plaintiffs fail to allege commercial sex trafficking.

As Plaintiffs acknowledge, Section 1591 applies only to trafficking for "commercial sex."  *See* Compl. ¶¶ 37, 38.  A person is guilty of commercial sex trafficking only if he "knowingly ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits" a person for commercial sex. 18 U.S.C. § 1591(a).  Plaintiffs do not allege that any of the sex in the videos at issue was ***commercial***.  A commercial sex act is one "on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).  This means there must be a causal *quid pro quo* between the sex act and an exchange of something of value.  *See Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).  Plaintiffs have not pleaded that anything of value was exchanged for sex.  Rather, they plead that

Jane Doe #2 "was never paid for her participation."  Compl. ¶ 111.  Nor do they allege anyone had any future intent to monetize the videos when they were made.

The allegation that Jane Doe #1's assailant subsequently attempted to monetize the videos does not retroactively make the sex act commercial.  *See, e.g.*, *United States v. Todd*, 627 F.3d 329, 334-37 (9th Cir. 2010) (Section 1591(a)(1) requires defendant to possess requisite knowledge at time of enticement); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 518 (S.D.N.Y. 2018) (key inquiry is defendant's state of mind "***at the initial recruitment or enticement stage***" (emphasis added)).  There is no allegation that when the videos were made anyone intended to monetize them, and the production of pornography for private use is not a commercial sex act.  *See United States v. Durham*, 902 F.3d 1180, 1195 (10th Cir. 2018).  As Plaintiffs have not pleaded that anything of value was ever exchanged or offered "on account of" the sex acts, no ***commercial*** sex took place.

Even if Plaintiffs had alleged commercial sex acts, which they have not, they would still need to show that someone was engaged in commercial sex ***trafficking***.  Here, Plaintiffs make conclusory allegations that Defendants "financially benefited from, or otherwise participated in, a sex trafficking venture in which Plaintiffs were victims."  Compl. ¶ 3.  But Plaintiffs do not plead specific facts that would show they were victims of commercial sex trafficking. Jane Doe #1 does not allege that she was a victim of trafficking at all. Rather, she alleges that when she was sixteen

a man "drugged and raped" her in an attack which was filmed. *Id.* ¶ 100. She does not allege that her attacker enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her. Jane Doe #2 alleges that "she began being trafficked when she was just fourteen (14) years old" and that "a sex trafficker … forced her participate in the creation of sexually explicit videos." *Id.* ¶ 110-11. Like Jane Doe #1, however, she does not plead any specific facts that would show that the alleged "trafficking" met the statutory definition. Conclusory recital of the trafficking element is not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (2009). Accordingly, Plaintiffs do not allege that ***they*** were involved in any act of sex trafficking as defined by 18 U.S.C. § 1591(a).

Because Plaintiffs were not parties to commercial sex and do not allege that they were trafficked as defined by the statute, they do not meet this threshold showing under Section 1591, and, consequently, FOSTA does not apply.

### B. Plaintiffs fail to allege a sex trafficking venture involving Defendants.

Plaintiffs must allege that Defendants knowingly benefitted "***from participation in***" a commercial sex trafficking venture. 18 U.S.C. § 1591(a)(2) (emphasis added). The statute does not extend to anyone who "benefit[s] in any way" from trafficking, as alleged in the Complaint. Compl. ¶ 130. Plaintiffs must plead facts showing that Defendants benefitted through "some 'overt act' that furthers the sex trafficking aspect of the venture." *Afyare*, 632 F. App'x at 286; *accord Geiss v.*

-21-

*Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019); *Noble*, 335 F. Supp. 3d at 524 (holding that "some participation in the sex trafficking act itself must be shown").  Indeed, as Plaintiffs themselves admit, the purpose of FOSTA was to remove immunity only for those websites that actually "arrange[] [the] illegal commercial sex acts." Compl. ¶ 40.  Plaintiffs' failure to plead facts that show they were trafficked precludes any attempt to hold Defendants liable as secondary participants or beneficiaries of such "trafficking."

Plaintiffs have not pleaded facts showing that Defendants "knowingly assist[ed], support[ed], or facilitate[ed] a [primary] violation."   18 U.S.C. § 1591(e)(4).  A defendant cannot be found liable under Section 1591 merely for being associated with sex traffickers; it must "actually participate and commit some 'overt act' that furthers the sex trafficking aspect of the venture."  *Afyare*, 632 F. App'x at 286; *cf. Geiss*, 383 F.Supp.3d at 169 ("[A]iders and abettors of sex trafficking are liable under the TVPA only if they knowingly 'benefit[ ], financially or by receiving anything of value from ***participating*** in a venture which has engaged in' sex trafficking." (emphasis omitted and added)).

*Kik Interactive* addressed this "overt act" requirement in the FOSTA context. 482 F.Supp.3d at 1245.  The plaintiff claimed that adults frequently used the Kik instant messaging application, which was marketed to teenagers, to solicit sexual activity with minors, sometimes even resulting in the deaths of those minors. *Id.* at

1244.  The court dismissed the case, holding that this is "exactly the type of claim that [Section 230] immunity bars" and that the FOSTA exception did not apply.  *Id.* at 1249, 1250-51.  The court carefully analyzed the history and structure of FOSTA and held that "Congress only intended to create a narrow exception to [Section 230] for 'openly malicious actors' ... where it was plausible for a plaintiff to allege actual knowledge and ***overt participation***."  *Id.* at 1250-51 (emphasis added). The court also held that under Section 1591, the plaintiff must allege that Defendants knowingly participated in a "sex trafficking venture involving ***her***."  *Id.* at 1251 (emphasis added).  Applying this standard, the court held that the plaintiff's pleading that "Defendants knew that other sex trafficking incidents occurred on [their platform]" failed to allege sufficient knowing participation.  *Id.*

Plaintiffs' claims are flawed in the same way. As in *Kik Interactive*, Plaintiffs' conclusory allegations that Defendants "facilitated," "encouraged," "participated in," or "financially benefitted from" sex trafficking, Compl. ¶¶ 3, 26, 48, are not supported by any specific allegations showing *how* Defendants participated in alleged trafficking. Instead, the Complaint alleges that "[c]lass members, including Plaintiffs" are harmed by "Defendants' failure to enact and enforce appropriate and sufficient policies, procedures, and processes ***for the prevention of child pornography from being added to Defendants' sites***." *Id.* ¶ 121 (emphasis added). In other words, Plaintiffs' allegation is that Defendants failed to adequately ***police***

-23-

what website users were doing.  This is further demonstrated by Plaintiffs' requested relief, which seeks to force Defendants to adopt particular moderation policies to prevent third parties from uploading further illegal content. *Id.* ¶ 122; *see also id.* at 33-36 (prayer for relief). Such "negative acquiescence" does not, as a matter of law, constitute a violation of Section 1591.  *Afyare*, 632 F. App'x at 286 (internal quotation marks omitted).  "[T]he [law] does not impose an affirmative duty to police and prevent sex trafficking."  *A.B. v. Wyndham Hotels & Resorts, Inc.*, 2021 WL 1235241, at \*7 (D. Or. Mar. 31, 2021).

Even if Plaintiffs' claim that Defendants ignored user-generated child pornography were true, Compl. ¶¶ 75, 142—which it is not—that still would not meet the requirements of Section 1591.  At most, Plaintiffs allege that Defendants enabled third parties to share videos and images ***depicting*** sex trafficking.  But that is not enough.  Plaintiffs must plausibly allege that Defendants participated in "the sex trafficking act itself."  *Kik Interactive*, 482 F. Supp. 3d at 1251; *see also Afyare*, 632 F. App'x at 286; *Geiss*, 383 F.Supp.3d at 169.  Plaintiffs have not done so.

### C.     Plaintiffs fail to allege Defendants knowingly benefitted from Plaintiffs' alleged trafficking.

Section 1591 requires that the defendant knowingly benefit from participation in the commercial sex trafficking venture.  18 U.S.C. § 1591(a)(2).  This means Plaintiffs' claims must be dismissed unless Defendants not only benefitted, but benefitted "***because of***" participation in commercial sex trafficking.  *Geiss*, 383

F.Supp.3d at 169-70.  Plaintiffs fail to connect any alleged benefit received by Defendants with participation in the alleged trafficking.

*Geiss* and *Noble* are on point. In both cases, plaintiffs brought TVPRA claims against Harvey Weinstein for sexually exploiting aspiring actresses and against individuals and corporations that allegedly enabled his actions.[6] Each time, the court found the plaintiffs had adequately pleaded claims against Weinstein himself, but the beneficiary claims against Weinstein's associates failed. In *Geiss*, the court acknowledged that defendant TWC undoubtedly received benefits from employing Weinstein because "[h]is movies and influence generated revenue" for the company. 383 F. Supp. 3d at 169. But the "controlling question" was "whether H[arvey] Weinstein provided any of those benefits to TWC *because of* [its] facilitation of [his] sexual misconduct." *Id.*  The court dismissed the TVPRA claim against TWC because the plaintiff failed to allege how TWC benefitted from facilitating Weinstein's "alleged predations," as opposed to benefitting from the movies he helped produce. *Id.* at 170.  Similarly, in *Noble* the court dismissed a TVPRA claim against a defendant who "benefitted financially from Harvey Weinstein's promotion of films and other business-related activities" because there were no "factual allegations that link[ed]" that benefit to Weinstein's actions towards the plaintiff.

---

[6] Because Section 1595 also requires that the defendant knowingly benefit from participation in the commercial sex trafficking venture, 18 U.S.C. § 1595(a), case law discussing this element under Section 1595 applies equally to the analysis of this element under Section 1591.

335 F. Supp. 3d at 524.

Plaintiffs' claims are similarly defective. Plaintiffs allege that Defendants "financially benefitted[] from sex trafficking ventures."  *E.g.*, Compl. ¶ 26. But they do not allege that Defendants benefitted from *participating* in those ventures. The only benefit Defendants allegedly received was that they "profit[ed] from videos depicting Plaintiffs in commercial sex acts or child pornography." *Id.* ¶ 142. But an allegation that Defendants monetized their websites in general does not imply that those advertising revenues were received "because of" trafficking by third parties. Nor do Plaintiffs allege that Defendants received any benefit whatsoever from *their* specific videos.  To the contrary, they allege that Defendants devote resources to removing underage content.   Plaintiffs have accordingly failed to plead that Defendants knowingly benefitted from any alleged participation in trafficking generally, or from their videos in particular.

### D.      Plaintiffs fail to allege actual knowledge by Defendants of the alleged trafficking.

Section 1591 requires that secondary participants have actual knowledge of the commercial sex trafficking. While constructive knowledge is generally sufficient for civil TVPRA claims, those claims are only exempted from Section 230 immunity where the defendant had "***actual knowledge***" of the trafficking.  *Kik Interactive*, 482 F. Supp. 3d at 1250-51 (emphasis added); *see also United States v. Phea*, 953 F.3d 838, 843 (5th Cir. 2020) (discussing requirement of actual knowledge under Section

1591).  Moreover, as the court held in *Kik Interactive*, Defendants must have actual knowledge of trafficking involving Plaintiffs specifically; general knowledge that "other sex trafficking incidents occurred on [the platform]" is insufficient to survive a motion to dismiss.  482 F. Supp. 3d at 1251.  Other than a verbatim recitation of the elements, *see* Compl. ¶ 126, Plaintiffs do not allege that Defendants had actual knowledge of sex trafficking involving **them**. Instead, they allege only that in general "MindGeek is aware that its PornHub site attracts sex traffickers." *Id.* ¶ 98. Without this element (or any one of the preceding three elements), their claims must be dismissed.

In light of the foregoing, Plaintiffs fail to plead a violation of Section 1591.  Accordingly, the FOSTA exception to Section 230 does not apply and Plaintiffs' TVPRA claims are barred.  *Kik Interactive*, 482 F. Supp. 3d at 1249, 1251.

### III.    Section 230 Applies to Plaintiffs' 18 U.S.C. §§ 2252 & 2252A Claims

The Complaint's Count II alleges that Defendants unlawfully received, distributed, and possessed child pornography under 18 U.S.C. §§ 2252 & 2252A. This claim is also barred by Section 230 because the claim would hold Defendants liable as the publishers of third-party content on their website and no statutory exception conceivably applies. Plaintiffs predicate this count on Defendants' alleged receipt and distribution of videos depicting Plaintiffs made and uploaded by third-party users. *See* Compl. ¶¶ 100, 112, 135. The Complaint nowhere alleges, for

-27-

example, that Defendants made or uploaded the videos at issue themselves or that the videos were distributed other than through the same content-neutral features the websites apply to other videos.  Federal courts have consistently held that such claims against websites for possessing child pornography are barred by Section 230. For example, in *Doe v. Bates*, the court dismissed claims under 18 U.S.C. § 2252A for content that had been shared in a user-created child pornography forum on Yahoo.com's internet "groups" platform. 2006 WL 3813758, at *3-5; *accord Diez v. Google, Inc.*, 831 F. App'x 723, 724-25 (5th Cir. 2020); *see also M.A. ex rel. P.K.*, 809 F. Supp. 2d at 1054-55 (Section 230 barred similar claims under 18 U.S.C. § 2255 based on distributing CSAM produced in violation of Section 1591).

## IV.    The Complaint Fails to Plead a *Prima Facie* TVPRA Claim

As discussed above, all of Plaintiffs' claims are barred by Section 230 of the Communications Decency Act.  But even were that not the case, Plaintiffs' TVPRA claims would still fail because they have failed to allege the elements of 18 U.S.C. § 1595. To hold Defendants liable as beneficiaries of commercial sex trafficking, Plaintiffs must allege: (1) Defendants knowingly benefitted, (2) from "participat[ing] in a venture," that (3) Defendants "knew or should have known has engaged in [commercial sex trafficking]." 18 U.S.C. § 1595(a). These elements largely overlap with Section 1591, and as explained above (Part II), Plaintiffs have failed to allege facts showing that they were victims of commercial sex trafficking,

-28-

the existence of a trafficking "venture," that Defendants participated in that venture, or that Defendants "knowingly benefitted" from that participation.

The principal difference between Sections 1591 and 1595 is that a Section 1595 claim can be based on constructive knowledge, whereas a violation of Section 1591 requires actual knowledge. *See Kik Interactive*, 482 F. Supp. 3d at 1250. But Plaintiffs fail to allege even that.  In addition, even though Sections 1591 and 1595 both require "participation in a venture," some courts have held that the standard for participation is different under the two statutes. But under either standard Plaintiffs have not alleged that Defendants participated in commercial sex trafficking, let alone trafficking involving them.

### A.   Defendants had neither actual nor constructive knowledge of Plaintiffs' alleged trafficking.

As with Section 1591's knowledge requirement, Section 1595 requires Plaintiffs to plead that Defendants had at least constructive knowledge of specific trafficking affecting Plaintiffs; general knowledge that trafficking was afoot with not suffice. *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020); *see also Doe 1 v. Red Roof Inns, Inc.*, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020).   Thus, courts have generally held that victims of commercial sex trafficking cannot sue hotels where they were prostituted based on allegations that the hotels had "an abstract awareness of sex trafficking in general." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).

"[K]nowledge or willful blindness of a general sex trafficking problem… does not satisfy the *mens rea* requirements of the TVPRA."  *Id.* Accordingly, TVPRA claims must be dismissed where, as here, each plaintiff fails to "allege facts showing these Defendants knew or should have known of *her* trafficking" specifically.  *B.M.*, 2020 WL 4368214, at *6 (emphasis added).  Similarly, another court in this Circuit found the constructive knowledge element lacking where, among other defects, the plaintiff "failed to allege that the [defendants] ever dealt with the Plaintiff herself." *Red Roof Inns*, 2020 WL 1872335, at *3; *see also A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020).

Plaintiffs have not alleged any facts that would have put Defendants on notice about any trafficking involving *them*.  They merely allege, without support, that "MindGeek is aware that its PornHub site attracts sex traffickers." Compl. ¶ 98. Jane Doe #1 also alleges that one of the videos depicting her "had a title that included the word 'Lil' which is often used to signify youth." *Id.* ¶ 102. But she does not allege that "Lil" or an indication of "youth" implies content produced through trafficking. Without anything linking that supposed general knowledge to any knowledge about trafficking involving Plaintiffs in particular, Plaintiffs' TVPRA claim must fail.

**B.    Defendants did not participate in a commercial sex trafficking venture with Plaintiffs' abusers.**

As many courts have recognized, Section 1595 requires the same kind of overt

participation in trafficking as Section 1591. Plaintiff must allege that Defendants engaged in "specific conduct that furthered the sex trafficking venture." *Noble*, 335 F.Supp.3d at 524; *accord, Red Roof Inns, Inc.*, 2020 WL 1872335, at *3; *Geiss*, 383 F.Supp.3d at 169.  As explained above, Plaintiffs fail to plead overt participation. *See supra* Part II.B.

Plaintiffs also fail to satisfy the alternative standard applied by some courts requiring, at a minimum, allegations of a "continuous business relationship" between "the sex traffickers ***who victimized Plaintiff[s]***" and the defendant sufficient to constitute a "tacit agreement." *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9, 10 (N.D. Cal. Aug. 20, 2020) (emphasis added).  Plaintiffs must thus plausibly allege Defendants had such a "tacit agreement" with their assailants, rather than with other traffickers or traffickers in general.  *See id.* at *10; *accord S.J.*, 473 F. Supp. 3d at 154 (requiring participation in the "***particular*** sex trafficking venture").

The only connection Plaintiffs allege between Defendants and any alleged traffickers is that traffickers posted illegal content on Defendants' websites.  Jane Doe #1 does allege that her attacker "entered into a business agreement or profit sharing relationship with MindGeek" by enrolling in its ModelHub program, under which he would receive a share of profits from "views and downloads" of the videos he uploaded. Compl. ¶ 100. But the fact that a perpetrator used an internet service on the same terms available to all members of the public is insufficient as a matter

-31-

of law to make the website a participant in a trafficking venture.

*J.B. v. G6 Hospitality* is instructive.  There, a sex trafficking victim brought a TVPRA claim against Craigslist, a "classified advertising website," for hosting online posts advertising her for commercial sex.  2020 WL 4901196 at *1.  The plaintiff alleged that Craigslist "knew that its erotic services section was well known to commercial sex customers," but failed effectively to prevent or combat the third-party postings. *Id.* at *2.  The court dismissed the claim, finding such general allegations of knowledge and inaction insufficient to establish "participation under the tacit agreement standard."  *Id.* at *9.  To hold otherwise would imply that "Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website," and there is "no indication that Congress intended to create" such liability—even after FOSTA—especially "in light of the volume of posts generated by third parties daily." *Id.*  Indeed, it was this very concern that led Congress to pass Section 230 in the first instance.  *Zeran*, 129 F.3d at 331.

The same is true here.  Jane Doe #1's theory of liability is the same as the theory rejected in *J.B.*: the sole relationship between Defendants and the perpetrator is that the perpetrator used Defendants' ModelHub platform, something Plaintiffs allege any adult could easily do at the time.  Compl. ¶ 47.  This fails to plead the requisite participation because, as in *J.B.*, Defendants "cannot be deemed to have participated in all ventures arising out of each post on [ModelHub]." *J.B.*, 2020 WL

-32-

4901196, at *10.  Indeed, Plaintiffs' allegations, which acknowledge that Defendants took affirmative steps to prevent third parties from posting illegal content, falls even further outside the scope of the TVPRA.

## V.    Plaintiffs Have Not Alleged That Defendants Knowingly Possessed and Distributed CSAM

Plaintiffs' Count II alleging that Defendants unlawfully received, distributed, and possessed child pornography in violation of 18 U.S.C. §§ 2252 and 2252A should also be dismissed because Plaintiffs have not pleaded that Defendants "knowingly receive[d] or distribute[d] any child pornography." 18 U.S.C. § 2252A(a)(2).[7]  The "mere receipt of child pornography" is not prohibited, but rather "the *knowing* receipt of this illegal content" is.  *United States v. Dobbs*, 629 F.3d 1199, 1204 (10th Cir. 2011).  The defendant must actually know that the performer is underage at the time of receipt or distribution.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  Persons, like Defendants, "who seek[] out only adult pornography, but without [their] knowledge [are] sent a mix of adult and child pornography" do not violate 18 U.S.C. § 2252A.  *United States v. Myers*, 355 F.3d 1040, 1042 (7th Cir. 2004).  The Complaint does not allege that Defendants were aware that they were receiving CSAM at the time the videos were uploaded to

---

[7] In addition to the other defects with these counts, Plaintiffs' claim under 18 U.S.C. § 2252 fails for the additional reason that § 2252—unlike § 2252A—does not provide a civil remedy.  *Compare* 18 U.S.C. § 2252 *with* 18 U.S.C. § 2252A(f).  Regardless, the conduct prohibited by the relevant portions of the two statutes is identical, and courts applying one routinely cite precedent interpreting the other.  *E.g.*, *Dobbs*, 629 F.3d at 1203.

their websites.  Nor is there any allegation that Defendants continued to possess or distributed the videos of Plaintiffs once they became aware that the videos depicted underage sexual activity.  Because Plaintiffs have not alleged that Defendants knew the videos contained CSAM when they were received, or possessed and distributed the offending videos after they became aware, Plaintiffs' 18 U.S.C. §§ 2252 and 2252A claims must be dismissed.

## VI.      The Court Lacks Personal Jurisdiction over Jane Doe #2

The Court lacks personal jurisdiction over Jane Doe #2's claims under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 137 S. Ct. 1773 (2017), because she resides in California and there is no connection between the conduct alleged and Alabama.  There is no general jurisdiction over any of the Defendants.  "For general jurisdiction, the 'paradigm forum' is an individual's domicile, or, for corporations, an equivalent place, one in which the corporation is fairly regarded as at home."  *Id.* at 1776 (internal quotation marks omitted).  None of the Defendants is incorporated or has its principal place of business in Alabama.

Second, this Court cannot exert specific jurisdiction over any Defendant based on Jane Doe #2's claim because there is no sufficient nexus to the forum.  In *Bristol-Myers Squibb*, a drug manufacturer, incorporated in Delaware and operating in New York, was sued in California by a mix of residents and non-residents who alleged personal injuries suffered all over the country.  *Id.* at 1778.  The Court evaluated

specific jurisdiction separately for distinct groups of plaintiffs, emphasizing that "for a state court to exercise specific jurisdiction, the **suit** must arise out of or relate to the defendant's contacts with the **forum**.'" *Id.* at 1780 (internal quotation marks, emendations, and citation omitted). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (citation omitted). The Supreme Court found that plaintiffs outside of California—none of whom alleged that they purchased the medication or were injured in California—lacked sufficient connection to Bristol-Myers Squibb **in the state** to create specific jurisdiction. The same is true here. Jane Doe #2 has failed to plead **any connection** between the State of Alabama and the conduct underlying her claims. The Complaint alleges that Jane Doe #2 "presently resides in California." Compl. ¶ 11. It contains no other jurisdictional facts about her. Jane Doe #2 does not allege that she lived in Alabama at the time she was allegedly abused (or any other time), that Defendants engaged in any purportedly tortious conduct in or directed at Alabama, or that she suffered any particularized harm in Alabama. Given the "total absence of those affiliating circumstances that are a necessary predicate to any exercise of ... jurisdiction," this Court lacks personal jurisdiction over her claims. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *see also Bristol-Myers Squibb*, 137 S. Ct. at 1783.

Jane Doe #2's circumstances are identical. "[L]ike *Bristol-Myers* [*Squibb*], nonresident [Jane Doe #2]" does not allege that she "entered into ... [a]greements with the Defendants in Alabama," that Defendants "solicited sales in Alabama," or that she "suffered harm in the state." *Whatley v. Ohio Nat'l Life Ins. Co*., 2019 WL 6173500, at *5 (M.D. Ala. Nov. 19, 2019), *aff'd*, 2021 WL 1035047 (11th Cir. Mar. 18, 2021). While Jane Doe #1 pleads ***some*** facts connecting Alabama to ***her*** claims, "as the court in *Bristol-Myers* [*Squibb*] highlighted, the fact that the resident Plaintiffs' claims arose from the Defendants' contacts with the forum does not allow the Court to assert specific jurisdiction over the claims of non-resident Plaintiffs." *Id*. Here, with regard to Jane Doe #2's claims, the only contact between the State of Alabama, Defendants, and this litigation is the unexplained choice to file suit here. "There is no question that [Defendants] did not reach out and form any direct contacts with" Jane Doe #2 in Alabama and, therefore, personal jurisdiction is inappropriate. *Matson v. Steve's Truck & Trailer Repairs, Inc*., 2017 WL 4472717, at *4 (N.D. Ala. Oct. 6, 2017) (Coogler, J.).

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and dismiss the Complaint with prejudice. Where claims are barred as a matter of law by Section 230, allowing for their amendment would be futile and dismissal with prejudice is the appropriate remedy. *See, e.g.*, *Dowbenko*, 582 F. App'x at 806.

DATED: July 7, 2021

Respectfully submitted,

/s/ *Sara M. Turner*
Sara M. Turner
BAKER,      DONSELSON,      BEARMAN,
CALDWELL & BERKOWITZ, PC
smturner@bakerdonelson.com
Shipt Tower
420 20th Street North
Suite 1400
Birmingham, AL 35203
Phone: (205) 250-8316

Kathleen N. Massey (*pro hac vice*
application forthcoming)
Hayden Coleman (*pro hac vice*
application forthcoming)
DECHERT LLP
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ *Sara M. Turner*
Sara M. Turner