UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JANE DOE #1 and JANE DOE #2 on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II, LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC, INC., d/b/a MINDGEEK); MG BILLING LTD<br><br>Defendants. | CIVIL ACTION NO. 7:21-CV-00220<br><br>Honorable L. Scott Coogler |

**DEFENDANTS' POST-HEARING MEMORANDUM REGARDING THE HANDLING OF CERTAIN IMAGES AND NON-PARTY INFORMATION**

Sara M. Turner
BAKER, DONSELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1901 Sixth Avenue North
Suite 2600
Birmingham, AL 35203
Phone: (205) 250-8316
smturner@bakerdonelson.com

Kathleen N. Massey (*pro hac vice*)
Hayden Coleman (*pro hac vice*)
DECHERT LLP
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500

*Attorneys for Defendants*

MindGeek respectfully submits the following post-hearing memorandum to address two issues raised at the May 24, 2023 Hearing ("the Hearing"), specifically: (i) Plaintiff's demand for an order endorsing her proposed protocol for handling certain images containing apparent child sexual abuse material ("CSAM") via the Alabama Attorney General's office; and (ii) protocols for handling personal information regarding nonparties that have nothing to do with this litigation. This memorandum supplements MindGeek's Pre-Hearing Memorandum (ECF No. 83), which is fully incorporated herein.

## I. Plaintiff's Proposal Exceeds This Court's Jurisdiction.

A threshold and dispositive issue undergirding this entire dispute is whether the Court can order the relief that Plaintiff requests. The Court and parties agree that it is a felony for Plaintiff to possess the CSAM images she has requested in discovery. *See* ECF No. 85 at 11; Tr. 13:4-10. It is also a felony for Plaintiff to knowingly view CSAM. 18 U.S.C. §§ 2252(a)(4), 2252A(a)(5). Though the contours of Plaintiff's scheme to solve that problem remain intentionally opaque, the Hearing confirmed that the centerpiece of her proposal is that NCMEC make CSAM available to the Alabama AG, who will hold it, and then, pending additional instructions from this Court, somehow review it on Plaintiff's behalf and/or allow Plaintiff's counsel or experts to view it.[1] Although the Court will address the last

---

[1] MindGeek agrees with the Court's position that MindGeek should produce images it does not believe constitute apparent CSAM directly to Plaintiff or her

-1-

step of this plan later, *see* Tr. at 27:15-28:2, the Court asked MindGeek to address the U.S. Attorney's position that it would be a violation of federal law to view CSAM in a civil case. Tr. at 30:4-12. MindGeek reserves the right to further address the legality of allowing anyone to view CSAM on Plaintiff's behalf when that issue becomes ripe, but the fact that there is no viable way to utilize any of the materials sought at this juncture is a further reason Plaintiff's proposal should be rejected.

### A. Plaintiff and the AG Seek an Impermissible Advisory Opinion.

Plaintiff and the AG want this Court to issue an order opining that Plaintiff can use the Alabama AG as an intermediary to receive and possess CSAM—but without ordering Plaintiff, NCMEC, or the AG to do anything in particular. Specifically, at the hearing, Plaintiff's counsel stated: "[A]s plaintiff's counsel, we do need a ruling from you on that as to whether that process that we have proposed is acceptable." Tr. at 45:1-4. The AG also requested an order advising "whether the AG's office is legally allowed to receive this potential CSAM or the actual CSAM for that matter." Tr. at 16:16-18. Likewise, the AG asked the Court to issue an order "confirming" their "reading of the statute" that "hosting this data would fall within

---

representatives and that MindGeek should not be directed to report such images to NCMEC, as Plaintiff had originally requested. *See* Tr. at 43:10-12. However, as discussed in MindGeek's prior brief, producing sexual images of those nonparties still implicates the same privacy issues addressed below in Part I.D. *See* ECF No. 83 at 15-20. In addition, Plaintiff should not be permitted to use the AG's office to review this non-CSAM on plaintiff's behalf, *see* Tr. at 45:16-46:3, due to the constitutional privacy and other issues discussed below in Part I.C.

[their] purview." Tr. at 17:15-22.[2]

The Court cannot issue such an order because it would be an advisory opinion. "[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1338 (11th Cir. 2019) (citation omitted). The purpose of this rule is "to limit the federal courts to deciding issues presented in an adversary framework amenable to judicial resolution ***and to maintain separation of powers among the three branches of government***." *Miller v. F.C.C.*, 66 F.3d 1140, 1145 (11th Cir. 1995) (emphasis added).

Neither Plaintiff nor the AG has formally moved the Court for any specific relief. Moreover, Plaintiff has made clear that her "proposal does not request that the court order NCMEC or the Alabama AG do anything"—Plaintiff and the AG just want an opinion on what the AG is *allowed* to do if it so chooses and then, at some indeterminate point in the future, a second advisory order pertaining to what the AG can do with the CSAM it has collected on Plaintiff's behalf. ECF No. 85 at 13. Thus, there is no live "case or controversy" before the Court on this issue.

MindGeek agrees with the Court that if NCMEC and the AG believe they

---

[2] The AG also repeatedly requested a subsequent order directing them on how to share that CSAM with Plaintiff's counsel or experts. Tr. at 18:9-20, 18:25-19:4, 19:16-21. However, as mentioned above, the Court intends to address Plaintiff's and the AG's proposed sharing of CSAM images at a later date.

-3-

have statutory authority to make CSAM available and host it, the Court should not issue an advisory order "telling them they can do something … or not." Tr. at 38:6-12. The driving force behind Plaintiff's and the AG's requests for an "order" appears to be a desire to immunize themselves from claims that could be brought against them for mishandling CSAM images in ***subsequent*** proceedings (likely in a different court). In *Miller*, the Eleventh Circuit admonished: "By asking this court to decide what another court should do in a future case, petitioners are posing a hypothetical question, the answer to which will be an advisory opinion." 66 F.3d at 1146. In dismissing the case, *Miller* further instructed that "[t]he courts may not pass upon the legality of official action merely because someone desires a judicial opinion on the subject." *Id.* (citation omitted). The same result is warranted here.

### B. The Requested Order Does Not Alter the Fact that Plaintiff's Proposal Violates Federal Laws Regarding the Illegality of Transmitting and Viewing CSAM.

Not only would any requested order be advisory, it would also not change the legal landscape one iota. To be clear, Plaintiff's proposal is ***not*** limited to accessing images of Plaintiff herself. Rather, the ultimate goal is to allow Plaintiff's "representatives and experts[] … to review … material" depicting *other* victims, *see* ECF No. 85 at 14, with whom she and her attorneys have no legal relationship.

Plaintiff has not cited any case in history (or other authority) that would allow her to do so, and to MindGeek's knowledge, none exists. Indeed, the U.S. Attorney's

Office for the Northern District of Alabama expressed its opinion on May 31, 2022 that the ***federal child pornography laws contain no exception for civil discovery***.

This is not the first time that a party has sought access to CSAM in a civil suit based on 18 U.S.C. §§ 2252 and 2255. Courts in such cases have refused requests like Plaintiff's for the production of CSAM. *E.g.*, *Grayson v. Witt*, 2008 WL 2096368, at *2 n.2 (E.D. Ky. May 16, 2008) (holding that "Defendants could not legally return" a seized computer "contain[ing] child pornography … to plaintiff … for discovery purposes"); *B.L. v. Louisville Metro Police Dep't*, 2020 WL 9396448, at *2 (W.D. Ky. Oct. 21, 2020) (granting protective order precluding the production of CSAM); *Terry v. Spring Indep. Sch. Dist.*, 2015 WL 12977360, at *1 (S.D. Tex. Mar. 26, 2015) (ordering redaction of images of child pornography in case involving sexual abuse of student by teacher). Plaintiff's *ipse dixit* argument that 18 U.S.C § 3509(m), which is specific to **criminal** cases, "can and should be applied in civil CSAM cases," ECF No. 85 at 14, is foreclosed by Supreme Court and Eleventh Circuit precedent. *See* ECF No. 83 at 7-8; *see also, e.g.*, *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 1344 (11th Cir. 2023) (applying principle that the creation of one statutory exception "implies the exclusion of another").

MindGeek acknowledges that Plaintiff and the AG take a contrary position on whether their proposed scheme is lawful. ECF No. 85 at 11-15; Tr. at 16:11-19:21. But this dispute between the parties is beside the point because the Court cannot

endorse an *ad hoc* protocol that runs afoul of the statutory prohibitions for handling CSAM. Stated differently, a court order cannot transform illegal conduct into legal conduct. For instance, in *Boland v. Holder*, 2010 WL 3860996 (N.D. Ohio Sept. 30, 2010), *aff'd,* 682 F.3d 531 (6th Cir. 2012), a criminal defense attorney and expert witness in several criminal CSAM cases was arrested and charged by the U.S. DOJ for violating many of the same federal statutes at issue here. He argued that his prosecution was improper because the federal judge overseeing one of his cases specifically approved of his use of CSAM and state law allowed attorneys and experts to possess CSAM for their jobs. *Id.* at *1. The court disagreed. In an opinion affirmed by the Sixth Circuit, the court held that neither judicial approval nor state statutes trump the federal child pornography laws: "if [Boland] were to violate 18 U.S.C. § 2252 and/or 18 U.S.C. § 2252A, while participating in a judicial proceeding, he would not be immune from federal prosecution." *Id.* at *5. In a subsequent opinion, the Sixth Circuit further clarified that Boland's legitimate motives were irrelevant to the question of whether his conduct was illegal. *In re Boland*, 596 B.R. 532, 551 (B.A.P. 6th Cir. 2019).

   A corollary of that rule is that Plaintiff cannot demand discovery from this Court that is contrary to federal and state law. In *In re United States*, the plaintiff sought production of certain records that she contended were highly relevant to her malpractice claims against a military hospital. The hospital objected, asserting that

-6-

such disclosure would violate a federal statute mandating the confidentiality of such material. The district court overruled the hospital's objection and ordered production. The Fifth Circuit granted the hospital's writ of mandamus, reversed, and vacated the order, explaining "[t]he district court's order compels a representative of the government to do that which the Congress has specifically forbidden." 864 F.2d 1153, 1156 (5th Cir. 1989).[3] Accordingly, the legality of Plaintiff's and the AG's conduct in receiving and handling CSAM is governed by federal and state law. Respectfully, no order from any court can vary the law to make legal the proposal that Plaintiff is advancing.

### C. Neither the Alabama AG nor an Unidentified Expert Can Legally Review CSAM on Plaintiff's Behalf.

MindGeek understands that the Court seeks an approach to handling CSAM that will allow the case to proceed and would find it valuable to have outside experts opine on issues relating to Plaintiff's claims. Tr. at 10:11-16. Because the Court has indicated it intends to address those issues at a later date, MindGeek refrains from addressing them here and reserves the right to brief them at that time. *See* Tr. at 27:15-28:2. Briefly, however, MindGeek reiterates its objection to having the AG "review the material" and testify at trial "as to the content and nature of the material

---

[3] *See also South Carolina v. United States*, 907 F.3d 742, 751 (4th Cir. 2018); *Bassidji v. Goe*, 413 F.3d 928, 938 (9th Cir. 2005) (recognizing "the core principle that courts may not themselves order violations of the law"); *cf. Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 388 (1992) ("A consent decree must of course be modified if ... one or more obligations placed upon the parties has become impermissible under federal law.").

they reviewed." ECF No. 85 at 14-15. Putting aside whether the AG can legally receive the CSAM images, receiving and opining on information for this case are two very different things. The AG is the lawyer for the State of Alabama, not a private investigator or expert witness for private litigants. Moreover, allowing the AG to provide analysis or testimony on behalf of Plaintiff at trial, especially where one of Plaintiff's lawyers represents the State and holds a high-level position in the AG's Office, would impermissibly put the government's imprimatur on Plaintiff's claims and be unfairly prejudicial to MindGeek.

Allowing the AG to review CSAM to aid and assist Plaintiff would also violate the constitutional rights of the persons depicted. The Eleventh Circuit has held that even in the course of a criminal prosecution, it is unconstitutional to disseminate pictures of a minor victim "to other law enforcement agencies that ha[ve] no connection whatsoever to the prosecution of [the] case." *Marx v. Gumbinner*, 855 F.2d 783, 786 (11th Cir. 1988), *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991). Plaintiff's proposal violates the same rights and exposes the AG's office to potential civil rights litigation by calling for government employees to view CSAM to aid a civil litigant—indeed, the vast majority of persons depicted have no nexus to Alabama whatsoever.

### D. Plaintiff Has Not Proffered Any Justification for Seeking Unprecedented Discovery of Personal and Intimate Images.

Perhaps most astoundingly, Plaintiff has not offered any legal justification for

the unprecedented discovery she is demanding. When questioned, her counsel could only speculate that the images she requests are necessary to evaluate "notice and numerosity" with regard to her bid to bring this case on behalf of a nationwide class. Tr. at 5:13-15. This is nonsense. Numerosity does not require reviewing CSAM images. Rather, the numerosity inquiry is simply an approximate head count of potential absent class members. *See* Fed. R. Civ. P. 23(a)(1). MindGeek is not challenging numerosity.

Notice to absent class members is also not an issue at this stage of the case because it would not be required until **_after_** Plaintiff can establish that all of the prerequisites for class certification are met. Fed. R. Civ. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3) … the court must direct to class members the best notice that is practicable under the circumstances."). In addition, the Court's Revised Scheduling Order allows discovery to continue until "three months after the Court's decision on class certification," which will be more than sufficient time to take additional discovery if necessary to address these issues. ECF No. 66 ¶ 3b.

As the case currently stands, Plaintiff is a single individual. While she purports to represent a class of similarly situated individuals, there is no certified class and there likely never will be one.[4] Accordingly, Plaintiff and her counsel have

---

[4] While the issue of class certification is not currently before this Court, this does not mean that the Court should turn a blind eye to the fact that no class anything like the putative class proposed here has ever been certified. Indeed, Judge Carney refused to accept the transfer of a second putative class action similar to the pending

-9-

no relationship to any of the absent class members at all. In this very real sense, Plaintiff stands on the same legal footing as someone "off the street that has nothing to do with this case" that the Court recognized should not have access to illegal CSAM images. Tr. at 29:19-20.

Moreover, any potential attorney-client relationship between counsel and putative class members would not arise until *after* a class is certified and the putative class members are given sufficient notice and the opt-out period has expired. *See* Committee on Ethics & Prof'l Responsibility, Formal Op. 07-445, at 3 (2007); *Walney v. Swepi LP*, 2017 WL 319801, at *12 (W.D. Pa. Jan. 23, 2017).

This is not merely a prudential consideration. The Supreme Court has admonished that the Due Process Clause gives absent class members an inalienable right to receive notice and an opportunity to opt out of all classes seeking monetary damages. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). This unquestionably includes the right *not* to have their most personal information—including sexually intimate information—handed over to strangers who do not

---

*Doe v. MindGeek USA, Inc.* because he "determined that the issues presented are highly individualized and plaintiff-specific." No. 22-cv-01016, ECF No. 15 at 2 (Mar. 1, 2022). He also granted MindGeek's motion to sever in *Fleites v. MindGeek S.A.R.L.* for similar reasons despite Plaintiff's arguments that MindGeek engaged in a common pattern or practice of encouraging illegal content. *See* No. 21-cv-04920, ECF No. 119 (Feb. 10, 2022). The same reasoning should prevent class certification in this case. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (rejecting argument that pattern and practice evidence is sufficient to overcome individual factual difference).

represent them and might never represent them.  The Eleventh Circuit has further explained that *Dukes* prohibits relinquishing absent class members' rights even in part.  *See W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 737 F. App'x 457, 467-69 (11th Cir. 2018).  A straightforward application of these cases mandates that Plaintiff's demand for the most personal of images depicting be denied.

## II. Documents Produced to Plaintiff Should be Redacted to Protect Personally Identifiable Information about Non-Parties.

A second issue, independent from the transmitting and viewing of CSAM images, is how to handle personally identifiable information ("PII") regarding nonparties contained in otherwise responsive documents.  For example, a video takedown request might include the complainant's name and contact information.  As the Court correctly observed at the Hearing, sharing such information threatens to unnecessarily "invade the privacy of those individuals."  Tr. at 14:18-15:7; *see also id.* at 27:23-28:2, 30:20-24.  Nevertheless, Plaintiff's counsel claim they are entitled to "personal identifying information of individuals who are not their client."  Tr. at 32:14-23.  This is contrary to the law and common custom and practice, which require that PII be redacted to protect the privacy of nonparties.

The redacted document would still convey the contents of the document and all information that is relevant and responsive—for example, the fact that a takedown request was made, the title of the video, what was said about the video and the person depicted, etc.  *See* Tr. 35:15-36:10.  These redactions will be made to a

copy of the original document in such a way that the original unredacted version can be produced if later directed by the Court or if there is a question about a specific piece of information that is directly relevant to Plaintiff's case. *See* Tr. at 10:5-10.

### A. Plaintiff Is Not Entitled to PII of Non-Parties.

As noted above, Plaintiff and her counsel have no legal relationship with the absent putative class members and likely never will. Courts routinely prohibit named plaintiffs from seeking discovery of personal or sensitive information— including contact information—regarding putative class members. *See e.g.*, *McDonald v. Cotton States Mut. Ins. Co.*, 2015 WL 1138026, at *4 (M.D. Ala. Mar. 13, 2015) ("[W]hile the McDonalds are entitled to discovery which may prove that the potential class members are identifiable and they meet the numerosity requirements, they are not necessarily entitled to the full contact information at this time."); *Turner v. Allstate Ins. Co.*, 2016 WL 7155751, at *2-3 (M.D. Ala. Dec. 7, 2016) (similar); *Altiep v. Food Safety Net Servs., Ltd.*, 2014 WL 4081213, at *6 (N.D. Tex. Aug. 18, 2014) ("Privacy concerns abound in requiring disclosure of information beyond names and addresses," such as phone numbers and email addresses, including risk of "[i]nadvertent disclosure"). Discovery about putative class members "personal secrets, intimate activities, or similar private information … have been found to be serious invasions of privacy." *Khalilpour v. CELLCO Partnership*, 2010 WL 1267749, at *3 (S.D. Cal. June 14, 2011).

These Due Process concerns are exponentially heightened for documents that could identify someone as a victim of sexual abuse (for example, an email from someone identifying herself as a minor victim depicted in CSAM). *See, e.g.*, *B.L.*, 2020 WL 9396448, at *1-2 (issuing protective order in civil sex abuse case because "the discovery would potentially cause injury to the privacy of nonparties and to the wellbeing of potential child victims"). Such information is far more sensitive, and the consequences of its inadvertent disclosure far more severe, than the "full contact information" at issue in cases like *McDonald* and *Altiep*.[5] Indeed, the Eleventh Circuit has instructed that discovery of even potentially ***relevant*** evidence should be denied when it implicates the privacy interests of minors. *See Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1133 (11th Cir. 2021) (terminated teacher could not contact and elicit testimony from former students to prove her claims). Thus, even if Plaintiff were to argue that some of these people may have some relevant information, the privacy interests outweigh that speculative possibility.

In addition, much of this PII relates to individuals who could ***never*** be class members. Plaintiff's putative class includes only "persons, who were under eighteen

---

[5] Numerous cases in this Circuit have also limited discovery of other kinds of sensitive information regarding putative class members and other nonparties. *E.g.*, *Coker v. Duke & Co.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998); (employment records); *Wheeler v. Blackbear Two, LLC*, 2012 WL 5989423, at *3 (M.D. Fla. Nov. 30, 2012) (same); *Diehl v. Bank of Am. Corp.*, 2010 WL 4962979, at *3 (M.D. Fla. Dec. 1, 2010) (medical information); *Blanton v. Nat'l Hot Rod Ass'n*, 2021 WL 2451544, at *5 (N.D. Ga. Mar. 16, 2021) (customer information of "unrelated third-parties with zero connection to Plaintiff's incident").

years of age at the time they were depicted … in any child pornography … that has been made available for viewing on any website owned or operated by the Defendants." FAC ¶ 194. Thus, for example, if an adult or foreign citizen reported a video as potential CSAM, that person making the report has no connection at all to the putative class.

### B. A Protective Order Is Not a Panacea for Unnecessary Disclosure of Sensitive Information.

Plaintiff's counsel maintains that they should be given all this material notwithstanding these serious privacy concerns because the Court can issue a protective order. Tr. at 7:1-6. MindGeek certainly agrees that—at the bare minimum—a protective order would be proper for any nonparty PII received by Plaintiff, including all putative class members. But such information should not be disclosed in the first place. As numerous courts have observed, "protective orders are not panacea." *E.g.*, *Am. Trucking Ass'ns v. City of L.A.*, 2009 WL 10673061, at \*7 (C.D. Cal. Nov. 12, 2009); *see also Ex parte Robert Bosch LLC*, 177 So. 3d 884, 893 (Ala. 2014) (granting mandamus and vacating trial court's reliance on protective order to protect trade secret that was not necessary to disclose at all).

Even with the best of intentions, producing sensitive information always entails a "risk that the information might inadvertently be leaked or otherwise used by third parties." *United States v. Jean*, 891 F.3d 712, 715 (8th Cir. 2018). "[A]ttorneys-eyes-only protective order[s] … do not guarantee that the information

will not be disclosed." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 3581171, at *1 (N.D. Cal. Aug. 18, 2017); *see also United States v. Thomas*, 2021 WL 3857768, at *3 (M.D. Fla. Aug. 30, 2021) (applying *Jean* and refusing discovery of confidential technical information).

These concerns are especially heightened when the information relates to non-parties. *Micron Tech., Inc. v. Factory Mut. Ins. Co.*, 2022 WL 3083713, at *4 (N.D. Cal. Aug. 3, 2022) ("[P]rotective orders are not always a cure-all when it comes to non-party discovery."). "The risk that there could be a violation of a protective order is one that ***a party*** must, of necessity, endure. But it is not one that a nonparty ought to be forced to take" without a compelling reason. *N.M. Oncology & Hematology Consultants, Ltd. v. Presb. Health. Servs.*, 2015 WL 13650055, at *4 (D.N.M. Nov. 23, 2015). Because Plaintiff has not identified any legitimate reason why she needs PII regarding nonparties before a class has been certified, the Court should permit the redaction of such material and not rely solely on a protective order.

If the Court does not permit redaction and Plaintiff's counsel receives such information, MindGeek agrees with the Court that Plaintiff should be prohibited from unilaterally contacting these nonparties absent further court order. Tr. at 34:1-7; 36:12-14; 37:14-18.

DATED: June 5, 2023                    Respectfully submitted,

/s/ *Sara M. Turner*
Sara M. Turner
BAKER, DONSELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
smturner@bakerdonelson.com
1901 Sixth Avenue North
Suite 2600
Birmingham, AL 35203
Phone: (205) 250-8316

Kathleen N. Massey (*pro hac vice*)
Hayden Coleman (*pro hac vice*)
DECHERT LLP
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
*Attorneys for Defendants*