FILED
2023 Jun-12  PM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| JANE DOE #1, and JANE DOE #2, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO: 7:21-cv-00220-LSC |
| v. | ) ) | |
| | ) | Honorable L. Scott Coogler |
| MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC, INC., d/b/a MINDGEEK; MG BILLING LTD, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S POST-HEARING MEMORANDUM REGARDING DISCOVERY OF CSAM AND SUSPECTED CSAM

Plaintiff submits this Post-Hearing Memorandum to respectfully request that the Court order the following to facilitate discovery to be produced by the Defendants: 1) the Alabama Attorney General's office ("AL AGO") will make available to the parties the information or data contained in the Defendants' reports of apparent CSAM to NCMEC;[1] 2) Defendants produce images responsive to Plaintiff's discovery requests for suspected CSAM directly to the AL AGO; and 3)

---

[1] Plaintiff is not including the unredacted CSAM images themselves in this request. The Court stated numerous times at the hearing that it would consider how to structure the process for the review of CSAM at a later date. *See* Tr. at 27:21-28:2, 29:16-30:5, 46:13-23. Plaintiff thus reserves the right to respond to Defendants' arguments regarding such a review process. *See* ECF No. 87 at 8-9.

1

Defendants produce unredacted non-party Personal Identifying Information ("PII") responsive to Plaintiff's discovery requests.[2]

## I.    ARGUMENT

Plaintiff, a child sex abuse survivor, has bravely asserted claims related to her online exploitation and those on behalf of the putative class.[3] She is not asking this Honorable Court to "transform illegal conduct into legal conduct[,]" rather she is attempting to ensure the trier of fact has the evidence it needs to fairly evaluate the claims at issue and weigh the egregiousness of the Defendants' alleged conduct. ECF No. 87 at 7 (quoting *Boland v. Holder*, 2010 WL 3860996, at *5 (N.D. Ohio Sept.

---

[2]    Defendants falsely assert that Plaintiff seeks an impermissible advisory opinion. *See* ECF No. 87 at 3-4. The issue of how Plaintiff can lawfully conduct discovery involving CSAM is a live question that "'affect[s] the rights of litigants in the case' at hand." *Knight v. Fla. Dep't. Of Corr.*, 936 F.3d 1322, 1338 (11th Cir. 2019) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam)). Plaintiff is not "posing a hypothetical question, the answer to which would be an advisory opinion[,]" nor is she "asking this court to decide what another court should do in a future case[.]" *Miller v. F.C.C.*, 66 F.3d 1140, 1145 (11th Cir. 1995). Using its inherent power to manage this case, the Court held a hearing, asked for briefing, and is now deciding the issue. The lack of a formal motion does not make the Court's ruling on the issue an advisory opinion. Moreover, Defendants' reliance on *Miller* is misleading—the Eleventh Circuit stated that "[f]ederal courts simply are not permitted to render advisory opinions *regarding agency pronouncements*." *Miller*, 66 F.3d at 1146 (emphasis added) (citing *Am. President Lines v. Federal Maritime Bd.*, 112 F. Supp. 346, 348 (D.D.C. 1953)).

[3]    Plaintiff cited federal statutes and other cases that have adopted similar protocols but acknowledges that this Court may be facing an issue of first impression with respect to the putative class members' images. *See* ECF No. 85 at 5, 8-15 (citing 18 U.S.C. §§ 2255, 2258A(a)-(c), 2258A(g)(4), 2258(C)(e); *Amy v. Curtis*, 2021 WL 4820594, at *2 (N.D. Cal. Mar. 8, 2021); *Amy v. Curtis*, 2021 WL 1391463, at *11-12 (N.D. Cal. Apr. 13, 2021)). Defendants' cited authority, on the other hand, is inapposite. *See* ECF No. 87 at 5 (citing *B.L. v. Louisville Metro Police Dep't*, 2020 WL 9396448 (W.D. Ky. Oct. 21, 2020) and *Grayson v. Witt*, 2008 WL 2096368 (E.D. Ky. May 16, 2008)). In *B.L.*, the court granted the defendant's motion "for a protective order relieving it from its duty of producing the Sensitive Material in discovery" because the motion was *unopposed*, and the court remained receptive "a permissible course of action for civil discovery of the Sensitive Material[.]" 2020 WL 9396448, at *2-3. In *Grayson*, while the court stated in dicta that the defendants could not produce CSAM to the plaintiff through the usual course of discovery due to 18 U.S.C. § 3509(m), *see* 2008 WL 2096368, at *2 n.2, § 3509(m) only pertains to discovery of CSAM in *criminal* proceedings.

2

30, 2010)).[4]

### A.    Material Already Reported to NCMEC by Defendants

Defendants maintain that they have already provided NCMEC content they believe qualifies as "apparent" CSAM as that term is used in 18 U.S.C. § 2258A(a)(2)(A). *See* Tr. at 45:8-10. While this material is plainly discoverable, Plaintiff cannot legally possess it. However, as the Solicitor General explained at the May 24th hearing, § 2258A(c) allows the AL AGO to request this material from NCMEC and for NCMEC to disclose it to AL AGO as an appropriate law enforcement agency. *See* Tr. at 16:22-17:2, 17:15-22. Plaintiff expects to  provide the AL AGO a list of NCMEC report numbers that correspond to MindGeek's reports to NCMEC.

The AL AGO believes it cannot disclose information contained in these reports without a Court order. *See* Tr. at 19:16-18; *see also* § 2258A(g)(2)(A)(vii). Therefore, Plaintiff respectfully requests that the Court enter an order permitting the AL AGO to disclose[5] information contained in and resulting from Defendants' NCMEC reports to the Plaintiff. Such review and disclosure will not violate non-parties' privacy rights as they will be protected by the existing Protective Order.

---

[4]    Defendants incorrectly end this quote prematurely—the quote goes on to say, "by virtue of Ohio's exception for activities conducted by lawyers." *Boland*, 2010 WL 3860996, at *5.

[5]    Consistent with this Court's direction, Plaintiff is not addressing whether the AL AGO should be allowed to testify at trial regarding what they discover in their review. *See* Tr. at 27:4-16. Plaintiff reserves the right to respond to Defendants' arguments regarding this issue at a later date. *See* ECF No. 87 at 8-9.

**B.**    **Discoverable Material That Has Not Been Reported To NCMEC**

In order to avoid the unintentional transfer of CSAM and the unnecessary delay in order to report suspected CSAM, Plaintiff requests confirmation that such images and related data be provided directly by the Defendants to the AL AGO. Defendants continue to insist that the suspected CSAM images with indicia of abuse and suspected CSAM images that were reported to MindGeek as depicting underage persons are not CSAM, and that Plaintiff should feel comfortable receiving these images based solely on the assurance that Defendants verified their legality. *See* ECF No. 85 at 6-7. Defendants admit that such verification could boil down to a Content Partner's assurances of compliance with the law rather than Mindgeek's independent verification. *See* ECF No. 85-3 at 2.  Without adequate verification, there is a risk of disseminating material that could be interpreted by law enforcement as CSAM. Therefore, Plaintiff respectfully requests that the Court allow Plaintiff to instruct Defendants that images responsive to her discovery requests for suspected CSAM be provided to her via the AL AGO. *See* Tr. at 40:7-18, 43:2-7, 45:16-46:6.

**C.**    **Discovery of Relevant "Personal and Intimate" Images Does Not Violate the Rights of Potential Class Members.**

Contrary to Defendants' assertions, Plaintiff has distinct legal footing from someone "off the street that has nothing to do with this case[.]" ECF No. 87 at 10 (quoting Tr. at 29:19-20). Plaintiff's requests are relevant to proving her claims and do not violate the right of potential class members, regardless of whether the class is

certified.[6] The requests are relevant to proving Defendants' notice of sex trafficking and CSAM occurring on their websites, and that they knew or should have known they were engaging in sex trafficking and were in possession of CSAM.

Defendants claim that discovery of "personal and intimate" images will violate the due process rights of potential class members, *see* ECF No. 87 at 9-10; but litigants routinely receive private information regarding third parties when it is relevant to their claims and defenses. Defendants rely on the holdings in *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) and *W. Morgan-E Lawrence Water & Sewer Auth. v. 3M Co*, 737 F. App'x 457 (11th Cir. 2018). These cases held that due process requires notice and opt-outs for potential class members in Federal Rule of Civil Procedure 23(b)(3) cases. *See Dukes*, 564 U.S. at 362-63; *West Morgan*, 737 F. App'x at 468-69. Neither case discussed potential due process violations for producing discovery regarding potential class members.

### D.    Personal Identifying Information Should Not Be Redacted

Defendants should not be allowed to redact the Personal Identifying Information ("PII") of non-parties. Defendants assert that Plaintiff is not entitled to non-party PII, citing various parts of the hearing transcript[7] and case law that has

---

[6]    It is worth noting that Plaintiff has not agreed to a bifurcated discovery process for discovery on her individual claims pre-class certification and then discovery on class claims post-class certification. Plaintiff intends to continue with discovery in full so as not to waste time.

[7]    *Compare* ECF No. 87 at 11 (citing Tr. at 15:6) ("As the Court correctly observed at the Hearing, sharing such information threatens to unnecessarily 'invade the privacy of those individuals.'"), *with* Tr. at 14:24-15:7 (emphasis added) ("I understand what you are doing,

been taken out of context, and citing the need to protect the non-parties' privacy rights (*i.e.*, the very parties whose privacy rights have *already* been violated by Defendants' failure to prevent the parties' CSAM from being published on their websites), in support of their argument. *See* ECF No. 87 at 11-15 and doc. 63 at 28:7-29:14. Defendants' arguments are unavailing for several reasons.

First, non-party PII does not become relevant only *after* a class has been certified. It is also relevant to the issue of class certification itself. Second, the Protective Order (ECF No. 61) provides adequate protections for non-party PII and will ensure that the information is kept confidential. Finally, to the extent Defendants seek to prohibit Plaintiff from using non-party PII to contact potential class members, Defendants have not demonstrated any legitimate, fact-based reasons for why the Court should restrict Plaintiff's well-established right to contact them.

---

whether you are trying to obtain the personal data of the various quote, unquote subjects of the photography and the videos so that you can confirm who they really are and really aren't, I've got all that. Obviously, ***all of that will have to be disclosed*** *and disclosed in such a manner that it doesn't invade the privacy of those individuals **anymore than we have to**.*"); *compare* ECF No. 87 at 11 (citing Tr. at 32:20-21) ("Plaintiff's counsel claim they are entitled to 'personal identifying information of individuals who are not their client.'"), *with* Tr. at 32:19-33:2 (emphasis added) ("[P]laintiffs understand that personal identifying information of individuals who are not their client, *that there are rules pursuant to Your Honor's confidentiality order as to what can be done with information that's marked confidential, who can be spoken with about that information*. *And then clearly there are rules of professional conduct that would govern us in the event that we reach out to those individuals as part of the discovery possess*[sic]."); *compare* ECF No. 87 at 14 (citing Tr. at 7:1-6) ("Plaintiff's counsel maintains that they should be given all this material notwithstanding these serious privacy concerns because the Court can issue a protective order."), *with* Tr. at 7:1-6 (emphasis added) (explaining that the ***already-existing*** "protective order would protect to the extent defendants are worried about private information of those individuals, *if they are marked confidential **pursuant to the protective order**, there are adequate protections there and there is no need to redact that personal information*.").

1. **Non-party PII can help Plaintiff prove various requirements for class certification.**

Defendants claim that Plaintiff should not be given non-party PII because "[c]ourts routinely prohibit named plaintiffs from seeking discovery of personal or sensitive information—including contact information—regarding putative class members." ECF No. 87 at 12. But every case Defendants cite is either plainly distinguishable or wholly inapposite to the instant issue.[8] In fact, one case— *Khalilpour v. CELLCO P'ship*—confirms Plaintiff's right to obtain the PII even though "[d]iscovery about putative class members 'personal secrets, intimate activities, or similar private information … have been found to be serious invasions of privacy.'" ECF No. 87 at 12 (quoting *Khalilpour v. CELLCO P'ship*, 2010 WL 1267749, at *3 (S.D. Cal. June 14, 2011)). The court in *Khalilpour* ordered the

---

[8]    *See* ECF No. 87 at 12 (citing *McDonald v. Cotton States Mut. Ins. Co.*, 2015 WL 1138026, at *4 (M.D. Ala. Mar. 13, 2015), *Turner v. Allstate Ins. Co.*, 2016 WL 7155751, at *2-3 (M.D. Ala. Dec. 7, 2016), and *Altiep v. Food Safety Net Servs., Ltd.*, 2014 WL 4081213, at *6 (N.D. Tex. Aug. 18, 2014)). In *McDonald*, the court explained that the plaintiffs were "not necessarily entitled to the full contact information *at this time*" due to outstanding issues regarding a records search and that "if the issue remains in contention after the records search is done, *Cotton States must turn the information over to the McDonalds*." 2015 WL 1138026, at *4 (emphasis added). In *Turner*, the court held that the defendant did not have to produce PII only because the plaintiffs failed to identify how the information had any bearing on the issues in the case and because plaintiffs' counsel "admitted that he did not know what he was going to do with that information." 2016 WL 7155751, at *2-3. In *Altiep*, the court did not deny the plaintiffs' request for PII, it merely limited discoverable PII to the names and last known addresses of the potential class members. *See* 2014 WL 4081213, at *6.

*See also* ECF No. 87 at 13 n.5 ("Numerous cases in this Circuit have also limited discovery of other kinds of sensitive information regarding putative class members and other nonparties. *E.g., Coker v. Duke & Co.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998); (employment records); *Wheeler v. Blackbear Two, LLC*, 2012 WL 5989423, at *3 (M.D. Fla. Nov. 30, 2012) (same); *Diehl v. Bank of Am. Corp.*, 2010 WL 4962979, at *3 (M.D. Fla. Dec. 1, 2010) (medical information); *Blanton v. Nat'l Hot Rod Ass'n*, 2021 WL 2451544, at *5 (N.D. Ga. Mar. 16, 2021) (customer information of 'unrelated third-parties with zero connection to Plaintiff's incident').");  *id.* at 13 (citing *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1133 (11th Cir. 2021)). **None** of these cases were class actions and none involved discovery of PII for potential class members.

defendants to produce "each putative class member's residential telephone number, along with their name and address" so the plaintiff could "contact these individuals to ascertain whether common questions of law exist, and evaluate the typicality of claims between the Plaintiff and other claimants." 2010 WL 1267749, at *2. The court explained that the "Defendant's privacy objections must yield to Plaintiff's request for the information" and that their privacy concerns "can be addressed through a protective order." *Id.* at *3

Despite what Defendants suggest, "class contact information is routinely found to be discoverable." *Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 169 (E.D. Cal. 2022); *see also Kane v. Nat'l Action Fin. Servs., Inc.*, 2012 WL 1658643, at *7 (E.D. Mich. May 11, 2012) ("NAFS must disclose the names, addresses, and telephone numbers of those people that the interrogatories request. This information is both relevant to Plaintiff's class action claims . . . and such disclosure is a common practice in the class action context."). The Supreme Court has acknowledged that "[t]here may be instances where this information could be relevant to issues that arise under Rule 23, or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 n.20 (1978) (citation omitted).

Here, Plaintiff seeks to obtain non-party PII to develop evidence that will help Plaintiff prove the Rule 23 prerequisites for class certification, such as typicality and commonality, as well as to prove her claims.[9] Courts routinely allow discovery of non-party PII for this exact purpose. *See, e.g.*, *Bales v. Bright Solar Mktg. LLC*, 2022 WL 17272426, at *3 (M.D. Fla. Nov. 29, 2022) (allowing "discovery of identifying information as Plaintiff represents he is seeking this information for the permissible reason of certifying the classes."); *Holland-Hewitt*, 343 F.R.D. at 169 ("[W]itness contact information and basic policy details will allow Plaintiff to confirm or deny Defendant's conduct or a policy owner's alleged conduct. . . . Plaintiff has demonstrated the information sought is relevant to issues of commonality and typicality."); *Clark v. Hyatt Hotels Corp.*, 2022 WL 19416, at *5 (D. Colo. Jan. 3, 2022) (granting plaintiff's motion to compel "the guest names and contact information" of non-parties because such information is "relevant and proportional to the needs of this case, Plaintiffs' individual claims, and the Rule 23 factors."); *Goundar v. Redfin Corp.*, 2014 WL 12524649, at *2 (C.D. Cal. July 21, 2014) ("[T]he precise purpose of allowing a class representative to obtain class contact information [is] to develop evidence in advance of the Rule 23 motion stage and establish numerosity, commonality, etc."); *Cedano v. Thrifty Payless, Inc.*, 2011

---

[9]    Defendants concede that numerosity is satisfied, *see* ECF No. 87 at 9, so Plaintiff need not utilize PII to prove this class certification requirement.

WL 8609402, at *13 (D. Or. May 9, 2011) ("[T]he contact information here is necessary to determine whether Plaintiff's claims are typical of the class, and ultimately whether the action may be maintained as a class action. . . . Plaintiff is entitled to the contact information it seeks here.").

Furthermore, considering that Plaintiff seeks non-party PII to certify a class of similarly-situated individuals and to advance the interests of the potential class members who have been injured by Defendants' failure to detect their CSAM on their websites, Plaintiff's need for the PII outweighs Defendants' privacy arguments. *See Holland-Hewitt*, 343 F.R.D. at 177 ("[A]lthough putative class members have a legitimate privacy interest in their contact information, they would not be expected to want to conceal their contact information from Plaintiff who is asserting employment law violations on behalf of the putative members.").

### 2.    The Protective Order adequately protects non-party PII.

Defendants claim that a protective order would not adequately protect PII nor non-party privacy rights. *See* ECF No. 87 at 14-15. This argument is nothing more than mere conjecture.

Curiously, Defendants do not even attempt to acknowledge the Protective Order that is already in place in this case (ECF No. 61), let alone try to distinguish why it would not adequately protect non-party PII. "Defendant's silence in this regard is significant because Courts routinely find that a protective order is sufficient

to guard against intrusions into privacy interests in class member information." *Holland-Hewitt*, 343 F.R.D. at 178; *see, e.g.*, *id.* at 176 ("[G]iven the presence of the protective order, the Court does not find the privacy concerns outweigh the discoverability of the absent member contact information."); *Bales*, 2022 WL 17272426, at *4 ("[W]hen the parties, like here, have executed a protective order, it is sufficient to prevent privacy concerns from arising about the use of information."); *Clark*, 2022 WL 19416, at *5 ("[T]he guest names and contact information . . . . shall be produced by Defendants subject to the Protective Order.").

This Court need not enter another Protective Order to protect non-party PII. In *Edwards v. Accredited Home Lenders, Inc.*, the defendants moved the court for a second protective order in a putative class action suit "to place limits on the utilization of the identities of [the potential class members] disclosed to Plaintiffs as part of the first phase of discovery, including their names and addresses[,]" based in part on their assertion that the protective order was needed for "the protection of personal identifying information with respect to [the] non-party" potential class members. 2008 WL 1756364, at *1 (S.D. Ala. Apr. 11, 2008). The court denied the motion because, *inter alia*, it found that the already-existing original protective order sufficed. *See id.* "[N]o modification of the original [Protective] Order is necessary" because "[t]herein, the parties are directed to clearly mark documents containing 'information that is proprietary and/or confidential in nature' as 'Confidential'" and

11

"'Documents and information designated as Confidential pursuant to th[e Protective] Order shall be used solely for the purposes of this litigation and shall not be used for any other purpose whatsoever.'" *Id.*

The same is true here–the Protective Order explicitly applies to "***personal identifying information ('PII')***, sexually explicit images (i.e., videos, photographs, etc.) or other information *implicating the privacy rights of the Plaintiffs **and other individuals**.*" ECF No. 61 at 2 (emphasis added). PII must be designated as "CONFIDENTIAL" and can only be used "in connection with this Action only for prosecuting, defending, or attempting to settle this Action." *Id.* at 3, 12. The Protective Order also outlines specific procedures that parties must follow in the unlikely event confidential material is inadvertently disclosed to unauthorized parties. *See id.* at 20-22. Accordingly, Defendants cannot justify redacting non-party PII when the Protective Order (ECF No. 61) assures non-party PII will be kept strictly confidential and used only in connection with the instant Action.

> **3.    Plaintiff cannot be prohibited from communicating with potential class members.**

At the end of their memorandum, Defendants assert that, "[i]f the Court does not permit redaction and Plaintiff's counsel receives such information," then "Plaintiff should be prohibited from unilaterally contacting these nonparties absent further court order." ECF No. 87 at 15. But Defendants do not explain why Plaintiff should be prohibited from contacting potential class members and, yet again,

Defendants' request is contrary to established precedent.

"In the context of Rule 23 class actions, the Supreme Court has held that parties or their counsel should not be required to obtain prior judicial approval before communicating in a pre-certification class action, except as needed to prevent serious misconduct." *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1342 (N.D. Ga. 2007) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 94-95 (1981)). Indeed, the Supreme Court has stated that "the mere possibility of abuses does **not** justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules." *Gulf Oil Co.*, 452 U.S. at 104.[10]

In *Edwards*, the defendants moved for a second protective order "to have th[e] Court impose preconditions on any attempt by Plaintiffs' counsel to contact the[] non-party" potential class members. 2008 WL 1756364, at *1-2. The court explained

---

[10]    *See also Cada v. Costa Line, Inc.*, 93 F.R.D. 95, 98 (N.D. Ill. 1981) (citing *Gulf Oil Co.*, 452 U.S. at 104) ("[A] blanket prohibition against [] communications [with potential class members], without requiring any proof and findings of specific need, it was unauthorized by and was inconsistent with Rule 23."); *Zarate v. Younglove*, 86 F.R.D. 80, 101 (C.D. Cal. 1980) ("Rule 23(d)(2) authorizes the court to supervise the notice to class members" but "[t]he court has no power to screen other communications that do not present a threat of harm that justifies proscription."); *Barbosa v. Delta Packing Co. of Lodi*, 2021 WL 5087278, at *2 (E.D. Cal. Nov. 2, 2021) (citing *Gulf Oil Co.*, 452 U.S. at 101-02) ("As to the contact information of putative class members, the Supreme Court['s] rule of deference to class counsel in Rule 23 class actions. . . . permitting [] communication with putative class members 'for the purpose of notification and gathering information,' is wholly appropriate at the precertification stage."); *Schorr v. Countrywide Home Loans, Inc.*, 2013 WL 1636414, at *2 (M.D. Ga. Apr. 16, 2013) (citing *Gulf Oil Co.*, 452 U.S. at 101) ("Defendants have failed to proffer any reasons for limiting Plaintiffs' ability to communicate with potential class members . . . . The Supreme Court made clear in *Gulf Oil* that a Court cannot limit communications with class members *as a matter of course*."); *Edwards*, 2008 WL 1756364, at *3 ("Plaintiffs have a general right to contact putative members of a class.").

that "[u]nder these circumstances, any order imposing limitations on Plaintiffs' right to contact putative class members 'should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.'" *Id.* at *2 (quoting *Gulf Oil Co.*, 452 U.S. at 101). "In compliance with [*Gulf Oil Co.*], courts have routinely recognized that the moving party must present an evidentiary showing of actual or threatened abuse by the party sought to be restrained." *Id.* (quotations and citation omitted). Because the defendants did "not demonstrate[] facts showing that specific class action abuses are threatened such that additional protections of confidential information and limitations on the parties' access to putative class members should be imposed[,]" the court denied the defendants' request. *Id.* at *3. Notably, the court's decision in this regard was also based on the fact that "the conditional-contact procedure proposed has the potential impact of substantially increasing the length of the discovery process with attendant increased costs to the parties and the Court." *Id.*

Like in *Edwards*, here Defendants do not provide *any* explanation as to why Plaintiff need be prohibited from contacting potential class members. "[T]o be entitled to relief from contacts by an adverse party of prospective class members, a movant must show (1) 'that a particular form of communication has occurred or is threatened to occur' and (2) 'that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation.'" *Longcrier v.*

14

*HL-A Co.*, 595 F. Supp. 2d 1218, 1226–27 (S.D. Ala. 2008) (quoting *Cox Nuclear Medicine v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697-98 (S.D. Ala. 2003)). Defendants have made no such showing.

Accordingly, this Court should not prohibit Plaintiff from contacting potential class members.[11] "The contact information and subsequent contact with potential class members is necessary to determine whether Plaintiff's claims are typical of the class, and ultimately whether the action may be maintained as a class action." *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011).

## II.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order 1) the AL AGO make available to the parties the information or data contained in the Defendants' reports of apparent CSAM to NCMEC; 2) Defendants produce images responsive to Plaintiff's discovery requests for suspected CSAM directly to the AL AGO; and 3) Defendants produce unredacted non-party PII responsive to Plaintiff's discovery requests.

---

[11]    Of course, the Court may create guidelines for Plaintiff's communications with potential class members to ensure that the communications are not misleading or improper. *See* M*addox*, 499 F. Supp. 2d at 1342–43 (footnote omitted) (citing *Piper v. RGIS Inventory Specialists, Inc.*, 2007 WL 1690887, at *7-8 (N.D. Cal. June 11, 2007) (district courts "rely[] upon their broad case management discretion to generally allow pre-notice communications while actively limiting misleading statements in such communications."); *Vogt v. Texas Instruments Inc.*, 2006 WL 4660133 (N.D. Tex. Aug. 8, 2006) (imposing guidelines on the form of communication, prohibiting the use of flyers and e-mails but allowing mail to potential class members that contained factual information about the case); *cf. Melendez Cintron v. Hershey Puerto Rico, Inc.*, 363 F. Supp. 2d 10, 19 (D.P.R. 2005) (refusing to sanction plaintiffs for pre-certification letter to potential class members that did not make false representations and was not misleading).

Respectfully submitted this 12th day of June 2023,

/s/ *Gregory Zarzaur*
Gregory Zarzaur (ASB-0759-E45Z)
Kelsie Overton (ASB-1791-F80L)
THE ZARZAUR LAW FIRM
2332 Second Avenue North
Birmingham, Alabama 35203
T: (205) 983-7985
E: gregory@zarzaur.com
    kelsie@zarzaur.com

Joshua P. Hayes
PRINCE GLOVER HAYES
701 Rice Mine Road
Tuscaloosa, Alabama 35406
T: (205) 345-1234
E: jhayes@princelaw.net

Kimberly Lambert Adams*
Kathryn L. Avila*
LEVIN PAPANTONIO RAFFERTY
316 S. Bavlen Street, Suite 600
Pensacola, FL 32502
T: (850) 435-7056
E: kadams@levinlaw.com
    kavila@levinlaw.com
*pro hac vice

Brian Kent*
Gaetano D. Andrea*
Jill P. Roth*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107

16

T: (215) 399-9255
E: bkent@lbk-law.com
  gdandrea@lbk-law.com
  jroth@lbk-law.com
  sryan@lbk-law.com
  amacmaster@lbk-law.com
*pro hac vice*

Benjamin W. Bull*
Dani Bianculli Pinter*
Christen M. Price*
Peter A. Gentala*
NATIONAL CENTER ON SEXUAL
EXPLOITATION
1201 F Street NW, Suite 200
Washington, D.C. 20004
T: (202) 393-7245
E: lawcenter@ncose.com
*pro hac vice*

Kevin Dooley Kent*
Mark B. Schoeller*
Vanessa L. Huber*
CLARK HILL PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
T: (215) 640-8500
E: kkent@clarkhill.com
mschoeller@clarkhill.com
vhuber@clarkhill.com
*pro hac vice*

*Counsel for Plaintiff*

17

## CERTIFICATE OF SERVICE

I hereby certify on this 12th day of June 2023, this document was filed through the Electronic Case Filing System of the United States District Court for the Northern District of Alabama and will be served electronically by the court to all participants of record.

/s/ Gregory Zarzaur
Gregory Zarzaur