# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| JANE DOE #1, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | 7:21-cv-00220-LSC |
| MG FREESITES, LTD, d/b/a "PORNHUB", a foreign entity; et al. ) ) ) | |
| Defendants. ) ) | |

## MEMORANDUM OF OPINION AND ORDER
## ON DISCOVERY PROTOCOL

**I.   Introduction**

Congress created powerful civil remedies for minor victims of child pornography crimes, including injunctive relief and compensatory and punitive damages. *See* 18 U.S.C. § 2255 & 2252A(f). It cannot be true that Congress would provide for such remedies but make it impossible for victims to realize them because of an inability to engage in meaningful discovery in a civil case.

Plaintiff is a child sex abuse survivor who has asserted that Defendants[1] engaged in mass creation, possession, and distribution of child sex abuse material ("CSAM") for profit, including videos of her, via their websites, including their flagship website www.Pornhub.com. She proceeds pseudonymously, seeking to represent herself and others similarly situated, alleging that Defendants secondarily benefitted from what they knew or should have known was a sex trafficking venture, in violation of the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. §§ 1591 & 1595 (Count I), and received and distributed child pornography in violation of 18 U.S.C. §§ 2252 & 2252A (Count II). As such, images and videos that constitute CSAM, as well as images and videos that might constitute CSAM—including those depicting Plaintiff and others—may be relevant evidence to prove Plaintiff's claims. However, given the federal laws that prohibit the possession and distribution of CSAM, CSAM cannot be provided in the normal course of discovery in a civil case.

At the outset of this litigation, the Court began warning the parties of this problem, including urging them that a plan needed to be in place in the event that

---

[1] Defendants are MG Freesites, LTD, d/b/a "Pornhub"; MG Freesites II, LTD; Mindgeek S.A.R.L.; Mindgeek USA Incorporated; MG CY Holdings LTD; Mindgeek Content RT Limited; 9219-1568 Quebec, Inc., d/b/a Mindgeek; and MG Billing LTD. Defendants comprise a complex network of related companies with offices in the United States and abroad, including in the Republic of Cyprus, Luxembourg, and Montreal, Canada. *See* First Amended Complaint ¶¶ 15-28.

CSAM was inadvertently produced and received in discovery. And in April 2023, shortly after discovery of images, but not videos, had begun, the parties indeed sought the Court's intervention after Plaintiff's counsel became concerned that Defendants had produced CSAM to them. Defendants' counsel responded that the image, which was actually an advertisement on one of their websites, was not CSAM because the advertiser had posted a statement pursuant to 18 U.S.C. § 2257 that the individuals depicted were 18 or older at the time of the creation of the content.

The Court instructed the parties to meet and confer to propose a discovery protocol for handling CSAM. This protocol was to be submitted for the Court's approval. A hearing was conducted on May 24, 2023, and the parties submitted pre-hearing and post-hearing briefs. (Docs. 83, 85, 87, 88, & 91.) Also present at the hearing were counsel for the National Center for Missing and Exploited Children ("NCMEC"), which is the nonprofit national clearinghouse for CSAM reports; the Solicitor General for the State of Alabama; and other representatives from the Alabama Attorney General's Office.

As discussed at the hearing, Plaintiff proposes a discovery protocol that she hopes will avoid inadvertent viewing, possessing, or redistributing CSAM among the parties. Defendants vehemently oppose the protocol on the ground that the federal child pornography statutes contain no exception for civil discovery. Also discussed

at the hearing was whether Defendants may redact the personal identifying information ("PII") of non-parties that may be present in documents Defendants produce in discovery. Plaintiff's request of the Court is that the Court order the following to facilitate discovery on these issues:

> 1) that the Alabama Attorney General's Office shall make available to the parties the information or data contained in the Defendants' reports of apparent CSAM to NCMEC;
>
> 2) that Defendants shall produce images responsive to Plaintiff's discovery requests for suspected CSAM directly to the Alabama Attorney General's Office; and
>
> 3) that Defendants produce unredacted nonparty PII responsive to Plaintiff's discovery requests.

For the following reasons, Plaintiff's request is due to be granted in part and denied in part.

## II. Discussion

At issue are two different categories of information: CSAM and PII. Each category is addressed in turn.

### A. The Court will order the implementation of Plaintiff's proposed protocol for handling CSAM and material that may be CSAM, which utilizes the Alabama Attorney General's Office as a repository for such material

Part of Plaintiff's claims is that Defendants failed to provide adequate procedures to identify, report, and prevent CSAM from entering their online

platforms. Evidence of pornographic materials that are confirmed to be CSAM, or that are reported by a viewer of one of Defendants' websites as CSAM, or have other indicators of CSAM, such as in the titles or tags of images or videos on Defendants' websites, are all relevant to Plaintiff's effort to prove Defendants' notice of sex trafficking and CSAM occurring on their websites. Plaintiff has a right to discovery in this case to ensure that the trier of fact has the evidence it needs to fairly evaluate her claims and weigh Defendants' alleged conduct. Yet Defendants have refused to consider any protocol proposed by Plaintiff that would disclose CSAM or suspected CSAM, insisting that there is no legal mechanism to conduct such discovery because the federal child pornography laws contain no exception for civil discovery. At the same time, Defendants maintain that they may store and possess thousands of images and videos of CSAM on their servers.

Plaintiff makes requests of this Court related to the handling of two different types of material: 1) confirmed CSAM or "apparent" CSAM, and 2) "suspected" CSAM. Confirmed CSAM or "apparent" CSAM (Defendants' term) is imagery from Defendants' websites that Defendants have already reported to NCMEC as illegal or potentially illegal. Suspected CSAM (Plaintiff's term) is material that Defendants have not reported to NCMEC because Defendants maintain it is not CSAM, but that Plaintiff is concerned could be CSAM for several reasons, including

because a user of one of Defendants' websites has reported it on the website as CSAM or because it has certain suspicious indicators in the titles or tags of images or videos on Defendants' websites. Each category of material will be treated slightly differently so each is addressed in turn.

> **1.   *NCMEC will disclose to the Alabama Attorney General's Office the reports of CSAM or apparent CSAM that Defendants have made to it, and the Alabama Attorney General's Office will hold these reports for later-determined purposes related to this lawsuit***

No one disputes that it is a felony for anyone to knowingly view CSAM. *See* 18 U.S.C. §§ 2252(a)(4); 2252A(a)(5). That obviously includes Plaintiff, even in her effort to prove her claims in this civil lawsuit. However, three entities have legal authority to possess CSAM: law enforcement, NCMEC, and the court. 18 U.S.C. §§ 2258A & 3509(m). Indeed, Defendants maintain that they have already provided NCMEC with content that they believe qualifies as "apparent" CSAM as that term is used in 18 U.S.C. § 2258A(a)(2)(A). While Plaintiff cannot legally possess this material, the Solicitor General for the State of Alabama explained at the May 24, 2023, hearing that it is the Alabama Attorney General's position that 18 U.S.C. § 2258A(c) allows the Alabama Attorney General's Office to request this material from NCMEC and for NCMEC to disclose it to the Alabama Attorney General's Office as an appropriate law enforcement agency that is involved in the investigation

of child sexual abuse. The Solicitor General further stated that 18 U.S.C. § 2258A(g)(2)(vii) allows the Alabama Attorney General's Office to then disclose the information (in some sanitized form, not the unredacted images themselves) to the parties for purposes of this lawsuit so long as this Court orders it to do so upon a showing of good cause and pursuant to appropriate protective orders.

The Court agrees with Plaintiff and the Alabama Attorney General that this protocol—utilizing the Attorney General's Office as a repository for CSAM that may be relevant to proving Plaintiff's claims in this case—does not violate the federal statutory prohibitions on the viewing and transference of CSAM found in Chapter 110 of Title 18 of the United States Code. A review of the relevant statutes clarifies why.

Plaintiff claims in this lawsuit that Defendants, through the operation of their pornographic websites, violated 18 U.S.C. §§ 2252 and 2252A, which unequivocally forbid the possession, knowing access with intent to view, reproduction, distribution, or transference of CSAM by any person. Section 2252A(a) recognizes that the elements of the offense can be met through actions "by any means, including by computer," and liability for knowing distribution applies to "any child pornography"—regardless of whether it was originally created by a third party. 18 U.S.C. § 2252A(a).

Section 2252A(f) provides a civil remedy to persons aggrieved by the conduct prohibited in 18 U.S.C. § 2252A(a) or (b). 18 U.S.C. § 2252A(f). Similarly, 18 U.S.C. § 2255(a) provides civil remedies for "any person who, while a minor, was a victim" of various child exploitation crimes, including sex trafficking under 18 U.S.C. § 1591 and child pornography crimes under 18 U.S.C. § 2252. These civil remedies include "actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred," and "punitive damages and such other preliminary and equitable relief as the court determines to be appropriate." 18 U.S.C. § 2255(a). Thus, Plaintiff may pursue her claims in this civil lawsuit, and if, successful, is entitled to damages.

Section 2258A(a) & (b) provides a legal mechanism for "a provider" to report to NCMEC's CyberTipline "any facts or circumstances from which there is an apparent violation of section[s] . . . 2252 [and], 2252A . . . that involves child pornography." 18 U.S.C. § 2258A(a)-(b); *see also* 34 U.S.C. § 11293(b)(1)(K). A "provider" means "an electronic communication service provider or remote computing service," 18 U.S.C. § 2258E(6), such as Defendants. "Child pornography" means "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or

produced by electronic, mechanical, or other means, of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8). Defendants claim that they have been providing CSAM discovered on their websites to NCMEC for several years.

Section 2258A(c) then requires NCMEC to forward the contents of any reports that it receives from a provider to one or more of the following:

> (1) Any Federal law enforcement agency that is involved in the investigation of child sexual exploitation, kidnapping, or enticement crimes;
>
> (2) Any State or local law enforcement agency that is involved in the investigation of child sexual exploitation; and
>
> (3) A foreign law enforcement agency designated by the Attorney General under subsection (d)(3) or a foreign law enforcement agency that has an established relationship with the Federal Bureau of Investigation, Immigration and Customs Enforcement, or INTERPOL, and is involved in the investigation of child sexual exploitation, kidnapping, or enticement crimes.

18 U.S.C. § 2258A(c). As discussed by the Solicitor General at the May 24, 2023, hearing, the Alabama Attorney General's Office is clearly a state law enforcement

agency that investigates child sexual exploitation and thus may receive reports of CSAM that Defendants provided to NCMEC under Section 2258A(c)(2).

Finally, Section 2258A(g)(2) also provides for how law enforcement, like the Alabama Attorney General's Office, may use the information that it receives. 18 U.S.C. § 2258A(g)(2). This part prohibits any law enforcement agency that receives a report from NCMEC from disclosing any information contained in that report except in the following circumstances:

> (i) to an attorney for the government for use in the performance of the official duties of that attorney;
>
> (ii) to such officers and employees of that law enforcement agency, as may be necessary in the performance of their investigative and recordkeeping functions;
>
> (iii) to such other government personnel (including personnel of a State or subdivision of a State) as are determined to be necessary by an attorney for the government to assist the attorney in the performance of the official duties of the attorney in enforcing Federal criminal law;
>
> (iv) if the report discloses a violation of State criminal law, to an appropriate official of a State or subdivision of a State for the purpose of enforcing such State law;
>
> (v) to a defendant in a criminal case or the attorney for that defendant, subject to the terms and limitations under section 3509(m) or a similar State law, to the extent the information relates to a criminal charge pending against that defendant;
>
> (vi) subject to subparagraph (B), to a provider if necessary to facilitate response to legal process issued in connection to a criminal

>investigation, prosecution, or post-conviction remedy relating to that report; and
>
>(vii) as ordered by a court upon a showing of good cause and pursuant to any protective orders or other conditions that the court may impose.

*Id.* As further discussed by the Solicitor General at the May 24, 2023, hearing, it is the Alabama Attorney General's position that under subsection (vii) of Section 2258(A)(g)(2), it may disclose information provided to it by NCMEC that is relevant to this case if this Court orders it to do so upon a showing of good cause and pursuant to a protective order or other condition that this Court may impose.

Thus, Defendants can legally provide the material to NCMEC under § 2258A(a) and (b). Additionally, Defendants are registered with NCMEC and have been providing CSAM and apparent CSAM to NCMEC for at least two years. Further, the Alabama Attorney General investigates child sexual exploitation, including CSAM, and is therefore a "law enforcement agency that is involved in the investigation of child sexual exploitation" under § 2258A(c) and can lawfully receive the material. The Alabama Attorney General's Office, through the Solicitor General, has expressed its willingness and capability to receive the material. NCMEC regularly responds to law enforcement requests and has agreed that this process is appropriate under the law in their view.

Defendants raise several arguments against this protocol. First, Defendants argue that 18 U.S.C. § 2258A(c)(2) suggests that NCMEC must forward reports of CSAM to a particular law enforcement agency *only* if there is already an active investigation of child sexual exploitation occurring by that agency, and because the man who abused Plaintiff has already been arrested and convicted by the Alabama criminal system, there is no ongoing criminal investigation here. This limitation read into Section 2258A(c)(2) makes little sense because the reporting of CSAM to NCMEC is what would trigger a law enforcement agency's investigation in the first place. Instead, it makes more sense to read Section 2258A(c)(2) as simply ensuring that NCMEC reports the information to an agency that actually investigates child exploitation and not some other agency.

Second, Defendants argue that 18 U.S.C. § 2258C(e), which says that law enforcement can only use the contents of NCMEC reports "in the performance of the official duties of that agency to investigate child sexual exploitation crimes, and prevent future sexual victimization of children," means that that the Alabama Attorney General's Office cannot serve as a repository in this case because discovery in this civil case would fall outside of those duties. However, as Plaintiff and the Alabama Attorney General's Office agree, assisting with this civil case on behalf of victims of CSAM, which seeks injunctive relief in addition to damages, falls within

the scope of the Alabama Attorney General's duties to investigate and prevent future sexual victimization of children. Furthermore, it is for the Alabama Attorney General to decide if assisting with this case in this manner fits within his office's legal duties and authority, and his office has already determined that it does.

Defendants' other arguments in opposition to the protocol concern the privacy rights of the individuals depicted, but since Defendants have distributed images of these individuals around the world for profit, any such arguments about privacy rights hold little weight in the Court's view.

The Alabama Attorney General's Office is more than capable of storing this material for purposes of this litigation, and it has agreed to do so. The ability and appropriateness of the Alabama Attorney General to be involved in this civil action is further supported by 18 U.S.C. § 1595(d), which provides that if a state's attorney general has reason to believe that the state's residents have been threatened or adversely affected by a person who has engaged in sex trafficking in violation of 18 U.S.C. § 1591, then that state's attorney general may bring a civil action against that person on behalf of the state's residents. This protocol is also consistent with Alabama law, insofar as Alabama Code section 13A-3-22 provides that the felony criminal code does not apply when a law enforcement officer is carrying out public duties.

> ***2.  Defendants shall produce directly to the Alabama Attorney General's Office material qualifying as suspected CSAM, and the Alabama Attorney General's Office will hold this material for later-determined purposes related to this lawsuit***

No doubt a more problematic category of material that Plaintiff requests from Defendants is that which Plaintiff calls "suspected CSAM"—imagery that Defendants have not reported to NCMEC as CSAM or apparent CSAM but that does not have a verified "over-18" I.D. associated with it. This is imagery about which perhaps someone has raised an issue as to the age of the individual(s) depicted therein. For instance, the imagery could have been flagged by a user of Defendants' websites as CSAM or otherwise contains indications that make it unclear whether or not it is illegal, such as in the titles or tags of images or videos or thumbnails.

Defendants take the position that Plaintiff should feel comfortable receiving this category of material from Defendants in discovery because Defendants have verified its legality and confirmed it is not CSAM. This verification could be nothing more than Defendants' assurance that their "Content Partners", which are pornography studios that produce pornographic content on Defendants' websites, have attested that they have complied with 18 U.S.C. § 2257's requirement that they verify the age of the individuals depicted. Defendants take this position, despite users of their websites flagging such imagery as CSAM.

Plaintiff requests that, in order to avoid the unintentional transfer of CSAM and the unnecessary delay in order to report suspected CSAM to NCMEC, Defendants should be ordered to provide any such material directly to the Alabama Attorney General's Office for holding in the repository on Plaintiff's behalf for purposes that will be determined by this Court at a later time.

The Court agrees with Plaintiff that anything that amounts to suspected CSAM must be treated with the same caution as defined CSAM. Plaintiff need not trust that Defendants' Content Partners and production studios have complied with the law, as some of these Content Partners and production studios have been directly charged with sex trafficking.[2] It is also not clear that Defendants ever gain possession of Section 2257 documents to confirm that a flagged visual depiction is not CSAM. Defendants will be able to defend Plaintiff's allegations by, for instance, providing the actual Section 2257 documentation that they claim to have access to, if ever needed.

To be clear, the Court is not taking up at this time the issue of the manner and means by which CSAM and suspected CSAM—actual imagery—is to be reviewed

---

[2] For instance, Content Partner GirlsDoPorn was charged with sex trafficking, and nine individuals associated with Content Partner Czech Casting were arrested for human trafficking, sexual coercion, and rape in 2020. *See*, e.g., Sean Hollister, *Pornhub removes GirlsDoPorn, finally drawing a line at sex trafficking charges*, The Verge (Oct. 14, 2019); Prague Morning, *Czech Casting: Women Lured By Modeling Gigs, Manipulated Into Shooting Porn* (July 18, 2020).

by parties to this lawsuit. The Court will consider how to structure the process for the review of CSAM, if it is at all possible to conduct such a review, at a later date. For example, the Court is not addressing now whether the Alabama Attorney General's Office may provide sanitized images for review by the parties and actual images for an *en camera* review by this Court if necessary, or whether the Attorney General should be allowed to testify as a witness at trial regarding what that office discovers in their review, or whether Plaintiff can legally hire experts to review such material.

### B. The Court will not order Defendants to produce unredacted nonparty PII at this time

A second issue, independent from the transmitting and viewing of CSAM images, is how to handle PII regarding nonparties contained in otherwise responsive documents. For example, a video takedown request might include the complainant's name and contact information. The complainant might be a mere concerned "bystander," or he or she might be someone who claims that a video depicts a sex crime perpetrated against him or her. In the first instance, Plaintiff may seek to utilize such an individual as a witness, and in the second, she may wish to contact the individual for membership in the potential class of similarly-situated individuals or as a witness.

Plaintiff asks that Defendants produce *unredacted* nonparty PII responsive to Plaintiff's discovery requests. However, as the Court observed at the hearing, disclosing such information must be done in a way to avoid unnecessarily invading the privacy of those individuals. Thus, at this juncture, Plaintiff's request is due to be denied, with leave to re-request at a later date as further explained herein.

The Court is aware that a protective order is already in place. Plaintiff argues that it already protects nonparty PII. However, the Court believes that Plaintiff can still assess the general information that she seeks from the responsive documents in redacted form. For example, a PII-redacted document should still convey the contents of the document and all information that is relevant and responsive—for example, the fact that a takedown request was made, the title of the video, what was said about the video and the person depicted, etc. Additionally, Defendants must make any redactions to a copy of the original document in such a way that the original unredacted version can be produced if later directed by this Court or if there is a question about a specific piece of information that is directly relevant to Plaintiff's case.

The Court envisions that, should Plaintiff wish to receive unredacted versions of the material Defendants produce, it will submit such a request to Defendants identifying the specific purpose for which Plaintiff desires to view it. The Court will

review such a request(s) if intervention is needed. Many factors may influence the decision about whether such unredacted material should be produced, such as whether the PII is of potential witnesses or of potential class members; and whether such individuals are represented by counsel or other agencies. Again, Defendants shall produce PII-redacted versions that still convey all other content of the document including all other information that is relevant and responsive other than PII, so that Plaintiff may make informed arguments as to why she needs the PII. And Defendants shall maintain identical redacted and unredacted copies of the material to ease in future production if this Court orders it.

### III. Conclusion

The prohibitions against the possession and distribution of CSAM were designed to protect victims, not defendants who are accused of mass possession and dissemination of such contraband. This Court agrees with Plaintiff and the Alabama Attorney General that 18 U.S.C. § 2258A provides several mechanisms for lawful discovery of CSAM in this, a civil case.

As such, the following is hereby **ORDERED**:

1) This Court hereby gives its express consent and authorization for the Alabama Attorney General's Office to request from NCMEC the reports of CSAM or apparent CSAM that Defendants have made to NCMEC that are responsive to Plaintiff's discovery requests and to hold such reports for purposes of this lawsuit, the disclosure of which shall be determined at a later date;

2) Defendants shall produce all material responsive to Plaintiff's discovery requests for suspected CSAM directly to the Alabama Attorney General's Office for its holding and review; and

3) Defendants shall produce redacted nonparty PII responsive to Plaintiff's discovery requests but maintain unredacted copies in the manner described above.

**DONE** and **ORDERED** on August 17, 2023.

                                              L. Scott Coogler
                                     United States District Judge

160704