

FILED

2023 Sep-08  PM 07:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

|  |  |
|---|---|
| JANE DOE #1, and JANE DOE #2, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC, INC., d/b/a MINDGEEK; MG BILLING LTD,<br><br>     Defendants. | CIVIL ACTION NO:<br>7:21-cv-00220-LSC<br><br>**OPPOSED MOTION**<br><br>Honorable L. Scott Coogler |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE
<u>MOTION FOR CLASS CERTIFICATION</u>**

Gregory Zarzaur (ASB-0759-E45Z)
Kelsie Overton (ASB-1791-F80L)
THE ZARZAUR LAW FIRM
2332 Second Avenue North
Birmingham, Alabama 35203
T: (205) 983-7985
E: gregory@zarzaur.com
 kelsie@zarzaur.com

Joshua P. Hayes
PRINCE GLOVER HAYES
701 Rice Mine Road
Tuscaloosa, Alabama 35406
T: (205) 345-1234
E: jhayes@princelaw.net

Kimberly Lambert Adams*
Kathryn L. Avila*
LEVIN PAPANTONIO RAFFERTY
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
T: (850) 435-7056
E: kadams@levinlaw.com
 kavila@levinlaw.com

Brian Kent*
Gaetano D'Andrea*
Jill P. Roth*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
T: (215) 399-9255
E: bkent@laffeybuccikent.com
 gdandrea@laffeybuccikent.com
 jroth@laffeybuccikent.com
 sryan@laffeybuccikent.com
 amacmaster@laffeybuccikent.com

*(attorneys continue on next page)*

Benjamin W. Bull*
Dani Bianculli Pinter*
Christen M. Price*
Peter A. Gentala*
NATIONAL CENTER ON
SEXUAL EXPLOITATION
1201 F Street NW, Suite 200
Washington, D.C. 20004
T: (202) 393-7245
E: lawcenter@ncose.com

Kevin Dooley Kent*
Mark B. Schoeller*
Vanessa L. Huber*
CLARK HILL PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
T: (215) 640-8500
E: kkent@clarkhill.com
    mschoeller@clarkhill.com
    vhuber@clarkhill.com

*pro hac vice

*Counsel for Plaintiff Jane Doe #1*

Plaintiff has moved to file an unredacted version of this Memorandum under seal.

*See* doc. 94.

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................1

FACTUAL BACKGROUND ..........................................................................4

STANDARD OF REVIEW .............................................................................8

ARGUMENT ...................................................................................................9

  I.   The Standard for Class Certification Under Federal Rule
      of Civil Procedure 23 ............................................................................9

  II.  The Proposed Class is Ascertainable ..............................................11

  III. The Proposed Class Satisfies the Requirements of Rule 23(a)....................12

      A.  Numerosity ...............................................................................13

      B.  Commonality .............................................................................13

      C.  Typicality ...................................................................................15

      D.  Adequacy of Representation ...................................................17

  IV. The Proposed Class Satisfies the Requirements for an Injunctive Relief
      Class Under Rule 23(b)(2) ...............................................................18

  V.  The Proposed Class Also Satisfies the Requirements for Class
      Certification Under Rule 23(b)(3)....................................................22

      A.  Common Issues Predominate in This Case ..........................22

          1.  Common Issues Predominate in Plaintiff's Sex Trafficking
             Claims Under the TVPRA (18 U.S.C. §§ 1591 and 1595)...........24

             a.  Knowingly benefited ..............................................24

             b.  Participation in a venture ......................................26

             c.  The venture violated the TVPRA as to the plaintiff ..............29

             d.  Knew or should have known that the venture violated
                 the TVPRA as to the plaintiff ................................30

2.    Common Issues Predominate in Plaintiff's Child Pornography Claims (18 U.S.C. § 2252A) .....................................33

     a.   Receipt and distribution of child pornography .....................34

     b.   Receipt and distribution of child pornography in interstate or foreign commerce ..............................................35

     c.   Knowledge of the child pornography ....................................36

3.    Damages Do Not Present Individual Issues that Predominate Over Common Issues....................................................................38

     a.   The availability of statutory damages for child victims of sex trafficking and child pornography means that damages present common—not individual—issues .............38

     b.   The class's other damages claims do not defeat class certification ............................................................................40

     c.   Punitive damages are a common class issue.........................43

B.   A Class Action is a Superior Method for Resolving the Parties' Dispute...................................................................................44

VI.  In the Alternative, a Rule 23(c)(4) Issues Class is Appropriate..................49

VII. The Court Should Appoint Plaintiff's Counsel as Class Counsel .............50

CONCLUSION.....................................................................................................52

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adhikari v. Kellogg Brown & Root, Inc.*,
  845 F.3d 184 (5th Cir. 2017) ...............................................................44

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...........................................................................17

*Authors Guild v. Google, Inc.*,
  282 F.R.D. 384 (S.D.N.Y. 2012) .........................................................40

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ..............................................................23

*Bridges v. Poe*,
  2022 WL 1598437 (N.D. Ala. May 19, 2022)........................... *passim*

*Brown v. Electrolux Home Products, Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ................................................. *passim*

*Busby v. JRHBW Realty, Inc.*,
  513 F.3d 1314 (11th Cir. 2008) ..................................................... 16, 17

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ..............................................................24

*Carnegie v. Household Intern., Inc.*,
  376 F.3d 656 (7th Cir. 2004) ..............................................................48

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ............................................................14

*Casa Orlando Apartments Ltd. v. Federal Nat. Mortg. Ass'n*,
  624 F.3d 185 (5th Cir. 2010) ....................................................... 19, 20

*Cherry v. Dometic Corp.*,
  986 F.3d 1296 (11th Cir. 2021) ................................................ 11, 12, 45

*Cox v. Am. Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986) ..........................................................13

*Davis v. Mar-Jac Poultry*,
  2021 WL 2556012 (N.D. Ala. Mar. 30, 2021) ................ 9, 13, 14, 16, 17, 22, 23

*DeBremaecker v. Short*,
  433 F.2d 733 (5th Cir. 1970) ...............................................................11

*Ditullio v. Boehm*,
  662 F.3d 1091 (9th Cir. 2011) ..............................................................44

*Doe #1 v. MG Freesites, LTD*,
  2022 WL 407147 (N.D. Ala. Feb. 9, 2022) ................................... *passim*

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) ................................................... *passim*

*Doe 1 v. JPMorgan Chase Bank N.A.*,
  2023 WL 3945773 (S.D.N.Y. Jun. 12, 2023) .......................................40

*Doe v. Boland*,
  698 F.3d 877 (6th Cir. 2012) ........................................................ 34, 39

*Doe v. Twitter, Inc.*,
  555 F. Supp. 3d 889 (N.D. Cal. 2021) .................................................25

*Engel v. Scully & Scully, Inc.*,
  279 F.R.D. 117 (S.D.N.Y. 2011) .........................................................39

*Gen. Tel. Co. of S.W. v. Falcon*,
  457 U.S. 147 (1982)............................................................................10

*Green-Cooper v. Brinker International, Inc.*,
  73 F.4th 883 (11th Cir. 2023) ....................................................... 40, 41

*H.H. v. G6 Hospitality*, LLC,
  2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).......................................25

*Harris v. Medical Transp. Mgmt., Inc.*,
  2023 WL 4567258 (D.C. Cir. July 18, 2023) .......................................49

*Harrison v. Blount EMS, Inc.*,
  2010 WL 11615000 (N.D. Ala. Jan. 12, 2010)....................................19

*Heffner v. Blue Cross & Blue Shield of Ala., Inc.*,
443 F.3d 1330 (11th Cir. 2006) ........................................................9, 19

*Herman v. Seaworld Parks & Entertainment, Inc.*,
320 F.R.D. 271 (M.D. Fla. 2017) ............................................... 41, 43

*Hoever v. Marks*,
993 F.3d 1353 (11th Cir. 2021) ...........................................................44

*In re Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006).................................................................41

*In re Toys R Us-Delaware, Inc.*,
300 F.R.D. 347 (C.D. Cal. 2013) .......................................................40

*In re Visa Check/ MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)................................................................41

*J.G. v. Northbrook Indus., Inc.*,
2022 WL 4482735 (N.D. Ga. Aug. 2, 2022) .................................. 26, 29, 30, 31

*Jenkins v. Raymark Indus., Inc.*,
782 F.2d 468 (5th Cir. 1986) ..............................................................14

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ............................................... 22, 23, 45

*Kornberg v. Carnival Cruise Lines, Inc.*,
741 F.2d 1332 (11th Cir. 1984) ..........................................................16

*Lakeland Regional Medical Center, Inc. v. Astellas US, LLC*,
763 F.3d 1280 (11th Cir. 2014) ..........................................................19

*Menocal v. GEO Grp., Inc.*,
882 F.3d 905 (10th Cir. 2018) ................................................... 15, 17

*Morris v. Walmart Inc.*,
2022 WL 1590474 (N.D. Ala. Mar. 23, 2022) ........................... 9, 11, 12

*Palmer v. Combined Ins. Co. of America*,
217 F.R.D. 430 (N.D. Ill. 2003)..........................................................44

*Piazza v. Ebsco Indus., Inc.*,
273 F.3d 1341 (11th Cir. 2001) ............................................................10

*Postawko v. Missouri Dep't. of Corr.*,
910 F.3d 1030 (8th Cir. 2018) ..............................................................20

*Public Employees' Retirement System of Mississippi v. Mohawk Indus., Inc.*,
2022 WL 17920570 (N.D. Ga. Nov. 28, 2022) .......................................... *passim*

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
211 F.3d 1228 (11th Cir. 2000) ............................................................24

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) ...................................................... 41, 44

*Scott v. City of Anniston, Ala.*,
682 F.2d 1353 (11th Cir. 1982) ............................................................20

*United States v. Alfaro–Moncada*,
607 F.3d 720 (11th Cir. 2010) ..............................................................36

*United States v. Dixon*,
589 F. App'x 427 (11th Cir. 2014) .......................................................36

*United States v. Horne*,
474 F.3d 1004 (7th Cir. 2007) ..............................................................35

*United States v. Pruitt*,
638 F.3d 763 (11th Cir. 2011) ..............................................................36

*United States v. Tuan Ngoc Luong*,
965 F.3d 973 (9th Cir. 2020) ................................................................35

*Unknown v. Webb*,
2015 WL 13914794 (C.D. Cal. Apr. 16, 2015) ....................................34

*Valley Drug Co. v. Geneva Pharm., Inc.*,
350 F.3d 1181 (11th Cir. 2003) .......................................................9, 18

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) .......................................................9, 23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................... 9, 14, 15, 19

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ................................................. *passim*

*Winston v. Jefferson Cnty., Ala.*,
    2006 WL 6916381 (N.D. Ala. June 26, 2006)......................................21

*Wright v. Greensky Mgmt. Co., LLC*,
    2022 WL 17250331 (S.D. Fla. Nov. 28, 2022) ........................... 16, 17

*Yates v. Collier*,
    868 F.3d 354 (5th Cir. 2017) ...............................................................20

*Zaklit v. Nationstar Mortgage LLC*,
    2017 WL 3174901 (C.D. Cal. Jul. 24, 2017)......................................39

## Statutes

18 U.S.C. § 1591 ........................................................ 24, 29, 30, 38, 39

18 U.S.C. § 1595 ...................................................................... 24, 40

18 U.S.C. § 2252 ....................................................................................28

18 U.S.C. § 2252A ......................................... 28, 33, 34, 35, 38, 44, 49

18 U.S.C. § 2255 ...................................................................... 38, 40

Ala. Code § 13A-12-191 ........................................................................7

Ala. Code § 13A-6-66..............................................................................7

## Rules

Fed. R. Civ. P. 23(a).......................................................... *passim*

Fed. R. Civ. P. 23(b)(2)..................................................... *passim*

Fed. R. Civ. P. 23(b)(3)..................................................... *passim*

Fed. R. Civ. P. 23(c)(4) .......................................................................... 42, 49

Fed. R. Civ. P. 23(g)(1) .......................................................................... 50, 51

## Treatises

1 McLaughlin on Class Actions § 5:15 ....................................................... 21

2 Newberg and Rubenstein on Class Actions § 4:28 ........................................ 21, 42

2 Newberg and Rubenstein on Class Actions § 4:72 ........................................ 48

2 Newberg and Rubenstein on Class Actions § 4:92 ........................................ 50

5 Moore's Federal Practice § 23.45[1]  (3d ed. 2008) ...................................... 22

William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed.) ...................... 40

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ..................................................... 31

Plaintiff Jane Doe #1 ("Plaintiff") respectfully submits this Memorandum of Law, together with the attached Exhibits and Declarations, in support of her Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23.   Plaintiff seeks certification of the following class:

> All persons, who were under eighteen years of age at the time they were depicted in any video or image, (1) in any commercial sex act as defined under 18 U.S.C. §§ 1591 and 1595, or (2) in any child pornography as defined under 18 U.S.C. § 2252A, that has been made available for viewing on any website owned or operated by the Defendants.

## INTRODUCTION

This case is tragic, yet very straightforward.  Plaintiff Jane Doe and the class she seeks to represent were children when they were raped and sexually assaulted.  These events were recorded in videos and pictures. Defendants have profited massively from peddling images of those criminal acts on their websites for years.

Despite laws worldwide prohibiting child pornography, and U.S. laws specifically prohibiting parties from financially benefitting from commercial sex acts involving children and from possessing and distributing child pornography, the owners and operators of Pornhub—MG Freesites LTD and the other Defendants (collectively "MindGeek")—have constructed and continue to use a business model that they admit has allowed more than 20,000 instances of child sexual abuse material ("CSAM") to appear on their websites since 2020 (and almost certainly tens

of thousands more before that).  In this way, MindGeek has directly profited and bolstered its bottom-line by including CSAM on its websites and exploiting the most horrific and devastating experiences in thousands of children's lives.

Plaintiff Jane Doe brings this case on behalf of herself and all other victims whose CSAM appeared on Pornhub and MindGeek's other websites as a result of MindGeek's illegal business practices, and specifically to mandate substantive and effective changes to MindGeek's operations to eliminate CSAM on its websites and to obtain (or provide an avenue to obtain) compensation for herself and the thousands of other similar victims.  As MindGeek's wrongdoing can overwhelmingly be proven through evidence of MindGeek's normal, everyday, general business practices, this case is a paradigm for certification as a class action.

First, the requirements of Federal Rule of Civil Procedure 23(a) are satisfied in this case.  MindGeek's own admissions and records show that there are potentially more than 20,000 class members.  *See* Exhibit 1, Defendants' Response to RFA No. 10; Exhibit 2, MindGeek_NDAL_00479021.  Plaintiff's sex trafficking and child pornography claims are a result of MindGeek's conduct, policies, and practices and are common to the entire class.  By having her CSAM appear on Pornhub, Plaintiff's claims are typical of the entire class as her injuries caused by MindGeek are similar to those suffered by the entire class, and her claims arise from the same pattern or practice and are based on the same legal theory as the other class members.  Plaintiff

2

also will adequately represent the class as there are no conflicts between the interests of Plaintiff and the class, and Plaintiff's counsel are well-qualified in representing sex trafficking and child sex abuse victims, as well as in complex litigation including class actions.

Second, the requirements of Rule 23(b)(2) also are satisfied. This case involves the unlawfulness of MindGeek's common conduct in how it operates its business and how it benefits and profits from CSAM on its websites. MindGeek's unlawful practices, in the words of Rule 23(b)(2), "apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole."

Third, the requirements for class certification under Rule 23(b)(3) are satisfied as well. Common issues that can be proven through evidence of MindGeek's policies and practices for all class members predominate over any individualized issues that may arise. If the Court certifies a (b)(3) damages class, class members and MindGeek will all benefit from a superior method of adjudicating these claims.

Victims of CSAM and child pornography which have been disseminated on the internet have experienced one of the most devastating assaults to personal dignity anyone can imagine. Such victims are extremely vulnerable, and they have very limited options to obtain any true vindication for the grievous harms they have suffered. That a large business enterprise like MindGeek would compound their suffering and profit exorbitantly by allowing their CSAM on its websites and

disseminating their CSAM to the world through its normal, routine operations is particularly worthy of condemnation and redress, and a class action provides the best practical method for doing so.  In short, this Court has the power to stop MindGeek's illegal business practices and to force MindGeek to stop profiting off the backs of victims who have already survived unspeakable pain.  The Court should certify this class.

## FACTUAL BACKGROUND

MindGeek owns and controls the pornographic websites Pornhub, YouPorn, RedTube, and Tube8 ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████ Exhibit 3, MindGeek_NDAL_00384196 at 4, 6; *see also* Exhibit 4, MindGeek_NDAL_00033431 at 12.  MindGeek also generates revenue through advertisements and through its Content Partner and ModelHub Programs, in which it splits advertising revenue with Content Partner and ModelHub members.  *See* ECF No. 22, First Amended Complaint ("FAC") ¶ 77.

MindGeek's business model is predicated on maximizing views and traffic to its websites.  To do so, ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *See, e.g.*, Exhibit

5, MindGeek_NDAL_00003131 at 1; *see also* FAC ¶ 56. ██████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ *see* Exhibit 6, MindGeek_NDAL_00292243, █████████████████

████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ Exhibit 7, MindGeek_NDAL_

00204103. ███████████████████████████████████

█████████████████████████████████ *See* Exhibit 8, MindGeek_

NDAL_00551190. ████████████████████████████████

████ *See* Exhibit 9, Franklin Aug. 9, 2023 Dep. Tr. at 82:17–84:24; Exhibit 10,

MindGeek_NDAL_00516381 at 6; *see also* Exhibit 11, MindGeek_NDAL_

00564963 at 1-2. █████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ *See* Ex. 5; Exhibit 12, MindGeek_NDAL_

000001921; Exhibit 13, MindGeek_NDAL_00120434 at 2-3. █████████████

5

███████████████████████████████████████████████

████████ *See* Exhibit 14, MindGeek_NDAL_00117082 at 2-4.  MindGeek did not change any of these policies until hit by a firestorm of public criticism.  But MindGeek's new CSAM moderation practices remain ineffective in eliminating CSAM on Pornhub and the other sites.  *See* Exhibit 15, T. Weaver Decl. ¶ 5.  For example, █████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████  *See* Exhibit 16, MindGeek_ NDAL_00492382 at 1.

Notably, ███████████████████████████████████████

██████████████████████████████  *see, e.g.*, Ex. 15, T. Weaver Decl. ¶¶ 4(c)(iii), (v)-(vi), (ix)-(x) & 7(c)(iii), (vii)-(viii), █████████████████████

███████████████████████  *see* Exhibit 17, MindGeek_NDAL_00010369 & 00010371 at 4-6.

In early 2018, Plaintiff Jane Doe was 16 years old when she was filmed by her trafficker engaging in sexual acts in his car.  *See* Exhibit 18, Jane Doe Decl. ¶ 4. In late 2018 or early 2019, while still a minor, Plaintiff's trafficker drugged her with an unknown pill and filmed himself raping her.  *See id.* ¶ 5.  As a result of this conduct, Plaintiff's trafficker was convicted in 2022 of violating Alabama Code §

13A-12-191 for disseminating or publicly displaying obscene matter containing a visual depiction of a person under 17 years of age and Alabama Code § 13A-6-66 for sexual abuse in the first degree.  *See* Exhibit 19, G. Zarzaur Decl. ¶ 12.

Plaintiff's trafficker had an account on Pornhub under the username ███████████   *See* Exhibit 20,  MindGeek_NDAL_00104652; Exhibit 21, MindGeek_NDAL_00428147 at 3.  ████████████████████████

████████████████████████████████████████████

████████████████  *See* Ex. 20. ████████████████████████

████████████████████████████  *See* Ex. 21 at 4.

CSAM of Plaintiff was uploaded to Pornhub ████████████████ ████████████  *See* Ex. 20 at 1; Ex. 18, Jane Doe Decl. ¶ 6.  One of the CSAM videos included the diminutive term "Lil" in the title.  *See* Ex. 18, Jane Doe Decl. ¶ 10.  Plaintiff became aware that her CSAM was on Pornhub around June 2020 when a girl referred to her as "that girl from Pornhub."  *Id.* ¶ 7.  Plaintiff then reported her CSAM to local law enforcement.  *See id.* ¶ 8.  ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

*See* Ex. 21 at 5-6.  ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



*Id.* at 3-4.

*See* Ex. 2

*See id.*

*See id.*

Ever since learning about the videos on Pornhub, Plaintiff has been embarrassed and haunted by the thought of it. *See* Ex. 18, Jane Doe Decl. ¶ 11. She also engaged legal counsel who have helped her bring this lawsuit. *See id.* ¶ 12. Plaintiff has participated fully in discovery and is willing to do everything she can to prosecute this case fully. *See id.* ¶ 13. She is completely committed to supporting the entire class she seeks to represent and to see this case through to its full conclusion. *See id.* ¶¶ 2, 14.

## STANDARD OF REVIEW

"Rule 23 establishes the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.*,

350 F.3d 1181, 1187 (11th Cir. 2003). "In assessing a class certification motion under Federal Rule of Civil Procedure 23, the court resolves any factual disputes by a preponderance of the evidence standard of proof." *Morris v. Walmart Inc.*, 2022 WL 1590474, at *1 (N.D. Ala. Mar. 23, 2022) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). While "'a court should not determine the merits of a claim at the class certification stage, it is appropriate to consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'" *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1358 (11th Cir. 2009) (quoting *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006)).

## ARGUMENT

### I.     The Standard for Class Certification Under Federal Rule of Civil Procedure 23

A case can proceed as a class action when it "meets 'each of the requirements specified in [Rule] 23(a), as well as at least one of the requirements set forth in 23(b).'" *Davis v. Mar-Jac Poultry*, 2021 WL 2556012, at *9 (N.D. Ala. Mar. 30, 2021) (Coogler, J.) (alteration in original) (quoting *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1265 (11th Cir. 2009)). Rule 23(a) requires the plaintiff to show that:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;

>      (3)  the claims or defenses of the representative parties are
>           typical of the claims or defenses of the class; and
>
>      (4)  the representative parties will fairly and adequately
>           protect the interests of the class.

Fed. R. Civ. P. 23(a).[1]

Rule 23(b) describes three types of class actions, two of which are relevant here:

>      (2)  the party opposing the class has acted or refused to act
>           on grounds that apply generally to the class, so that
>           final injunctive relief or corresponding declaratory
>           relief is appropriate respecting the class as a whole; or
>
>      (3)  the court finds that the questions of law or fact
>           common to class members predominate over any
>           questions affecting only individual members, and that
>           a class action is superior to other available methods for
>           fairly and efficiently adjudicating the controversy.
>           The matters pertinent to these findings include:
>
>           (A)  the class members' interests in individually
>                controlling the prosecution or defense of
>                separate actions;
>
>           (B)  the extent and nature of any litigation
>                concerning the controversy already begun by
>                or against class members;
>
>           (C)  the desirability or undesirability of
>                concentrating the litigation of the claims in the
>                particular forum; and

---

[1]   "These four requirements commonly are referred to as the 'prerequisites of numerosity, commonality, typicality, and adequacy of representation.'"  *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982)).

(D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).  Here, Plaintiff is moving for class certification pursuant to Rule 23(b)(2) and/or 23(b)(3).

## II.   The Proposed Class is Ascertainable

Ascertainability is an implied prerequisite of Rule 23.  *See Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) ("Class representatives bear the burden of establishing that their proposed class is adequately defined and clearly ascertainable, and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)"). "Traditionally, [the Eleventh Circuit has] collapsed class definition and ascertainability into one inquiry."  *Id.* (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).  "A class is inadequately defined if it is defined through vague or subjective criteria. . . . And without an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it."  *Id.* (citation omitted).

The Eleventh Circuit "limit[s] ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination."  *Id.* at 1303–04 (also noting that "membership can be capable of determination without being capable of *convenient* determination"); *see also Morris*, 2022 WL 1590474, at *6.  Accordingly, a "class is 'clearly ascertainable' if its membership is capable of being determined by 'objective

11

criteria.'"[2]  *Public Employees' Retirement System of Mississippi v. Mohawk Indus., Inc.*, 2022 WL 17920570, at *3 (N.D. Ga. Nov. 28, 2022) (quoting *Cherry*, 986 F.3d at 1303).

In this case, the proposed class is defined as:

> All persons, who were under eighteen years of age at the time they were depicted in any video or image, (1) in any commercial sex act as defined under 18 U.S.C. §§ 1591 and 1595, or (2) in any child pornography as defined under 18 U.S.C. § 2252A, that has been made available for viewing on any website owned or operated by the Defendants.

FAC ¶ 194.  Because the membership of this class can be determined by "objective criteria" (*i.e.*, the age of class members at a specific point in time; the type of media depicting the class members; the specific acts or circumstances in which the class members are depicted; and the availability of the videos or images on specific websites), the class is adequately defined and clearly ascertainable.  *See Cherry*, 986 F.3d at 1303–04; *Public Employees'*, 2022 WL 17920570, at *3; *Morris*, 2022 WL 1590474, at *6.

### III.    The Proposed Class Satisfies the Requirements of Rule 23(a)

In this case, the class proposed by Plaintiff easily satisfies all four requirements of Rule 23(a).

---

[2]    As a result, the administrative feasibility of identifying the class members in *not* a part of ascertainability.  *See Cherry*, 986 F.3d at 1303 ("Administrative feasibility is not an inherent aspect of ascertainability. . . . Because administrative feasibility has no connection to Rule 23(a), it is not part of the ascertainability inquiry.").

### A.    Numerosity

The "general rule of thumb . . . for meeting the numerosity requirement is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Public Employees'*, 2022 WL 17920570, at *3 (citing *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)); *see also Davis*, 2021 WL 2556012, at *9 (explaining that a "class of 'more than forty' members is 'generally' adequate" to satisfy numerosity).

MindGeek has conceded that the numerosity requirement is satisfied in this case.  *See* ECF No. 87 at 9 (emphasis added) ("[T]he numerosity inquiry is simply an approximate head count of potential absent class members.  *See* Fed. R. Civ. P. 23(a)(1). ***MindGeek is not challenging numerosity***.").  But even independent of that concession, the evidence confirms that there are much more than 40 members of the proposed class and, therefore, that the numerosity requirement is met.  For example, MindGeek has admitted—and NCMEC's records confirm—that MindGeek has made more than 20,000 reports of apparent CSAM to NCMEC since 2020.  *See* Ex. 1 at 9; Exhibit 22, NCMEC 2020-2022 CyberTipline Reports by ESPs.

### B.    Commonality

"Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof."  *Williams*, 568 F.3d at 1355. However, the "threshold of 'commonality' is not high."  *Davis*, 2021 WL 2556012,

at *9 (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986));

*see also Williams*, 568 F.3d at 1356 (discussing the "low hurdle of Rule 23(a)(2)").

"[F]or purposes of Rule 23(a)(2) even a single common question will do."

*Wal-Mart*, 564 U.S. at 359; *see also Carriuolo v. Gen. Motors Co.,* 823 F.3d 977,

984 (11th Cir. 2016).  Accordingly, commonality only requires "that there be at least

one issue whose resolution will affect all or a significant number of the putative class

members."  *Williams*, 568 F.3d at 1355.

This case presents many common issues of law and fact that are susceptible

of class-wide proof, including:

- Whether CSAM has appeared on MindGeek's websites;

- How MindGeek obtains content for its websites;

- How MindGeek reviews and moderates content that appears on its websites;

- Whether MindGeek's policies and practices allowed CSAM to appear on MindGeek's websites and/or were inadequate to stop CSAM from appearing on MindGeek's websites;

- How MindGeek monetizes content on its websites and whether MindGeek profited from CSAM appearing on its websites;

- Whether MindGeek knew or should have known that CSAM has appeared on its websites;

- Whether MindGeek knowingly benefitted from and/or participated in sex trafficking ventures;

- Whether MindGeek's conduct constitutes sex trafficking, dissemination of videos depicting minors in commercial sex acts or child pornography, or child exploitation in violation of 18 U.S.C. §§ 1591, 1595, and 2252A.

These issues all relate to the practices and policies that MindGeek has used to operate its websites and, therefore, all are susceptible of being resolved by class-wide proof. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 916–17 (10th Cir. 2018) (commonality requirement satisfied where "all members of the TVPA [forced labor] class based their claims on the [same] Policy" of defendants). Accordingly, commonality is satisfied because the "resolution [of these issues] will affect all or a significant number of the putative class members[,]" *Williams*, 568 F.3d at 1355, and the answers to these issues almost certainly will "drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350.

### C.    Typicality

The Rule 23(a)(3) typicality requirement seeks to ensure that a representative plaintiff "possess[es] the same interest and [has] suffer[ed] the same injury shared by all members of the class he represents." *Public Employees'*, 2022 WL 17920570, at *4. Typicality "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Davis*, 2021 WL 2556012, at *10 (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322–23 (11th Cir.

2008)).  A "sufficient nexus" exists and the  "claim of a class representative is typical
if 'the claims or defenses of the class and the class representative arise from the same
event or pattern or practice and are based on the same legal theory.'"  *Williams*, 568
F.3d at 1357 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337
(11th Cir. 1984)); *see also Davis*, 2021 WL 2556012, at \*10.

"Typicality, however, does not require identical claims or defenses.  A factual
variation will not render a class representative's claim atypical unless the factual
position of the representative markedly differs from that of other members of the
class." *Public Employees'*, 2022 WL 17920570, at \*4 (citing *Kornberg*, 741 F.2d at
1337); *see also Wright v. Greensky Mgmt. Co., LLC*, 2022 WL 17250331, at \*9 (S.D.
Fla. Nov. 28, 2022) (quotations and citation omitted) ("[T]he typicality requirement
is permissive; representative claims are 'typical' if they are reasonably co-extensive
with those of absent class members; they need not be substantially identical.").

In this case, the typicality requirement is satisfied as Plaintiff's claims and the
class members' claims "arise from the same event or pattern or practice and are
based on the same legal theory."  *Davis*, 2021 WL 2556012, at \*10.[3]  Likewise,
Plaintiff and the class members are all victims of the same wrongdoing and  "possess

---

[3]    *See also Menocal*, 882 F.3d at 917 ("The TVPA class satisfies Rule 23(a)'s typicality
requirement. . . . Here, the claims of all the class members—including the representatives—share
the same theory: that GEO knowingly obtained class members' labor by means of the Sanitation
Policy . . . . The class representatives allege that they—just like all other Aurora Facility detainees
in the relevant period—performed 'mandatory, uncompensated work . . . under [GEO's] Housing
Unit Sanitation policy.'").

the same interest." *Public Employees'*, 2022 WL 17920570, at *4. There is no conflict or dissimilarity between Plaintiff's claims and the class members' claims, let alone one that is so clear "such that the interests of the class are . . . in significant jeopardy." *Id.*

### D.     Adequacy of Representation

"The adequacy-of-representation requirement encompasses two separate inquiries; (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby*, 513 F.3d at 1323 (internal quotations and citation omitted); *see also Wright*, 2022 WL 17250331, at *10; *Davis*, 2021 WL 2556012, at *10.

To satisfy the first consideration, the class representative "must be part of the same class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997); *see also Davis*, 2021 WL 2556012, at *10. Here, like the entire proposed class, ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ *See* Ex. 18, Jane Doe Decl. ¶¶ 1, 4-5; Ex. 21 at 6; FAC ¶¶ 149-55. In this way, Plaintiff and the entire proposed class have suffered the same type of injury as a result of MindGeek's conduct and Plaintiff's interests are thus fully aligned with the class. *See Valley Drug*, 350 F.3d at 1189 (for the

adequacy of representation requirement, conflicts of interest exist only "where some party members claim to have been harmed by the same conduct that benefitted other members of the class"). And Plaintiff has a direct interest in prosecuting this action and, as a survivor who has made ample discovery production, is motivated to do so. *See* Ex. 18, Jane Doe Decl. ¶¶ 2-3, 12-13. Plaintiff also is fully committed to fulfilling all requirements for being a class representative and to seeing this litigation to its conclusion. *See id.* ¶¶ 2, 14.

To satisfy the second consideration, the class representative's counsel must be "qualified, experienced, and generally able to conduct the proposed litigation." *Public Employees'*, 2022 WL 17920570, at *5. In this case, Plaintiff is represented by lawyers who are qualified, experienced, and financially able to prosecute this case. Plaintiff's counsel have virtually unparalleled experience representing victims of sex trafficking, sexual abuse, and sexual exploitation, as well as extensive experience with complex litigation, including class actions and criminal cases involving sex crimes. *See* Ex. 19, G. Zarzaur Decl.

Accordingly, Plaintiff satisfies the adequacy of representation requirement in this case.

## IV. The Proposed Class Satisfies the Requirements for an Injunctive Relief Class Under Rule 23(b)(2)

The Court should certify an injunctive relief class under Rule 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy

warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal–Mart*, 564 U.S. at 360–61; *see also Lakeland Regional Medical Center, Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1291 (11th Cir. 2014) (same).

In this way, "the claims contemplated in a (b)(2) action are class claims, claims resting on the same grounds and applying more or less equally to all members of the class." *Heffner*, 443 F.3d at 1344–45. "Generally, Rule 23(b)(2) requires that the class members must have been harmed in essentially the same way[.]" *Harrison v. Blount EMS, Inc.*, 2010 WL 11615000, at *2 (N.D. Ala. Jan. 12, 2010) (Coogler, J.) (citing *Heffner*, 443 F.3d at 1340). Put another way, "23(b)(2) requires common behavior by the defendant towards the class." *Casa Orlando Apartments Ltd. v. Federal Nat. Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010).

MindGeek's actions (or inactions) in accepting, loading, processing, creating, disseminating, monetizing, and sharing content—and, thereby how CSAM has come to appear on its websites—apply generally to the entire class. ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ *See* Ex. 15, T. Weaver Decl. ¶¶ 5-8; *see also* Ex. 7. Plaintiff seeks an injunction changing these practices and policies to effectively eliminate CSAM on Pornhub and MindGeek's other websites.

Because such an injunction would benefit the class as a whole, this class is certifiable under Rule 23(b)(2).

Rule 23(b)(2) classes are particularly appropriate when the defendant's liability is based on policies and practices that are applicable to all members of the class. *See, e.g.*, *Postawko v. Missouri Dep't. of Corr.*, 910 F.3d 1030, 1040 (8th Cir. 2018) (affirming certification of (b)(2) class based on challenge to state department of corrections' "common policy" for screening and care of viral infections); *Yates v. Collier*, 868 F.3d 354, 368 (5th Cir. 2017) (affirming certification of (b)(2) class where "[a]ll inmates, regardless of age or health," were subject to the same policy on climate control and were "(allegedly) harmed in essentially the same way—i.e., by exposure to a substantial risk of serious harm because of exposure to excessive heat"); *Casa Orlando*, 624 F.3d at 198 (the defendant's "central policies" or "standardized policies" that affect all class members are grounds for (b)(2) class certification); *Scott v. City of Anniston, Ala.*, 682 F.2d 1353, 1358 (11th Cir. 1982) ("The class shared the common characteristic of being subjected to the same discriminatory practice and, therefore, presumably had the cohesiveness typical of 23(b)(2) actions. The class was thus well suited for Rule 23(b)(2) treatment."); *Winston v. Jefferson Cnty., Ala.*, 2006 WL 6916381, at *9 (N.D. Ala. June 26, 2006) (class certification under Rule 23(b)(2) was warranted "because all Class Members

have been affected in the same way by Jefferson County's systematic and uniform practices" applied to all landowners whose property was sold at auction).[4]

Since all of the class members' CSAM got onto MindGeek's websites as a result of MindGeek's standard operational policies and procedures, an injunction directing MindGeek to take specific actions to modify those policies and procedures

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████ would provide group relief to all class members. *See, e.g.*, Ex. 15, T. Weaver Decl. ¶ 8 (reviewing practices that MindGeek could implement to more effectively eliminate CSAM). The Court's authority to disband MindGeek's unlawful business practices which allow MindGeek to benefit from CSAM on its websites—and to direct MindGeek to adopt effective practices to eliminate CSAM—is exactly what Rule 23(b)(2) is meant to do. Accordingly, the requirements for class certification for injunctive relief are satisfied, and the Court should certify an injunctive relief class under Rule 23(b)(2).

---

[4]   *See also, e.g.*, 2 Newberg and Rubenstein on Class Actions § 4:28 (6th ed. June 2023 Update) ("Rule 23(b)(2) class is proper . . . so long as the challenged policy or practice was generally applicable to the class as a whole. The requirement focuses on the defendant and questions whether the defendant has a policy that affects everyone in the proposed class in a similar fashion."); 1 McLaughlin on Class Actions § 5:15 (19th ed. Nov. 2022 Update) ("(b)(2) classes typically challenge systemic policies or practices of the defendant" and "Rule 23(b)(2) does not, however, require that all plaintiffs be identically situated as long as they were subject to the same policy or practice").

## V.   The Proposed Class Also Satisfies the Requirements for Class Certification Under Rule 23(b)(3)

A class action may be certified under 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.   Common Issues Predominate in This Case

"Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'"  *Williams*, 568 F.3d at 1357 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)).   Predominance demands "a pragmatic assessment of the entire action and all the issues involved." *Davis*, 2021 WL 2556012, at *11 (quoting *Williams*, 568 F.3d at 1357); *see also* 5 Moore's Federal Practice § 23.45[1], at 23–217 (3d ed. 2008).   "That 'pragmatic assessment' is a three-step inquiry."  *Davis*, 2021 WL 2556012, at *11 (citing *Brown v. Electrolux Home Products, Inc*., 817 F.3d 1225, 1234-35 (11th Cir. 2016)).

*First*, the court "must . . . identify the parties' claims and defenses and their elements."  *Brown*, 817 F.3d at 1234 (citing *Klay*, 382 F.3d at 1254 & n.7); *see also Davis*, 2021 WL 2556012, at *11.

*Second*, the court "should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Brown*, 817 F.3d at 1234 (citing *Klay*, 382 F.3d at 1255); *see also Davis*, 2021 WL 2556012, at *11. "Common questions are ones where 'the same evidence will suffice for each member,' and individual questions are ones where the evidence will 'var[y] from member to member.'" *Brown*, 817 F.3d at 1234 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

*Third*, "[a]fter identifying the common and individual questions, the district court should determine whether the common questions predominate over the individual ones." *Id.* at 1234–35; *see also Davis*, 2021 WL 2556012, at *11. In order to make this determination, the Eleventh Circuit has "adopted the following rule of thumb":

> [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered. . . . If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Brown*, 817 F.3d at 1235 (alterations in original) (quoting *Vega*, 564 F.3d at 1270).

"'But predominance requires a qualitative assessment too; it is not bean counting,' and the 'relative importance' of the common versus individual questions also matters." *Id.* (quoting *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th

Cir. 2013)); *see also Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (explaining that predominance "can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action").

1. **Common Issues Predominate in Plaintiff's Sex Trafficking Claims Under the TVPRA (18 U.S.C. §§ 1591 and 1595).**

In order to prove "beneficiary liability" under the TVPRA, a plaintiff must prove that the defendant—

(1) knowingly benefited;

(2) from participating in a venture;

(3) that venture violated the TVPRA as to the [plaintiff]; and

(4) the [defendants] knew or should have known that the venture violated the TVPRA as to the [plaintiff].

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021); *see also Bridges v. Poe*, 2022 WL 1598437, at *18 (N.D. Ala. May 19, 2022) (Coogler, J.).

a. **Knowingly benefited**

As previously established in this case, the "'knowingly benefit' element of section 1595 merely requires that Defendant knowingly receive a financial benefit from its relationship with the sex trafficker." *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147, at *18 (N.D. Ala. Feb. 9, 2022) (quoting *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 924 (N.D. Cal. 2021)). "[T]he statutory language [of section 1595]

24

requires that [the defendant] knowingly benefit financially, not that the perpetrator compensate [the defendant] on account of the sex trafficking." *Id.* at *19 (second, third, and fourth alterations in original) (quoting *H.H. v. G6 Hospitality*, LLC, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019)).

The "knowingly benefited" element can be proven through generalized evidence common to all class regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Exs. 3- 4, 6; *see also* Exhibit 23, MindGeek_NDAL_00525681. The evidence required to satisfy this element of the TVPRA claim would be the same for every victim and class member.  For example, common evidence shows that (1) advertisements appear next to all videos on MindGeek's websites, *see* Exhibit 24, Bulloch Dep. Tr. at 56:4–58:11; (2) MindGeek splits advertising revenue with ModelHub members based on the advertisements that appear next to that Model's content, *see* Ex. 23 at 2; (3) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* Exhibit 25, MindGeek_NDAL_00440499; Exhibit 26, MindGeek_NDAL_00500819; Exhibit 27, MindGeek_NDAL_00117395 at 8-9; and (4) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* Ex. 2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6 ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



██████████████████████████████████████████████

██████████████████████████████████████████████

██████ *see also generally MG Freesites*, 2022 WL 407147, at \*18 (discussing

evidence sufficient to demonstrate this element of TVPRA claim).

### b.      Participation in a venture

The "phrase 'participation in a venture' requires that the [plaintiff proves] that

the [defendant] took part in a common undertaking or enterprise involving risk and

potential profit." *Red Roof Inns*, 21 F.4th at 725; *see also Bridges*, 2022 WL

1598437, at \*19.  "Participation in a venture" can be proven by "'connect[ing] the

dots' between the plaintiff's particular experience as a victim of trafficking and the

specific defendant in the case." *J.G. v. Northbrook Indus., Inc.*, 2022 WL 4482735,

at \*4 (N.D. Ga. Aug. 2, 2022).  "One way to connect the dots is to allege a 'direct

association' between the beneficiary and the plaintiff's trafficker.  Another way is

to show a 'continuous business relationship' between a defendant [] and a sex

trafficker where the defendants . . . knew or should have known [the traffickers] were

engaged in sex trafficking."  *Id.* (citations omitted).  In addition, this Court has

recognized that a defendant's "knowing failure to act in accordance with an

affirmative duty . . . may rise to level of participation in venture" under the TVPRA.

*Bridges*, 2022 WL 1598437, at *20.[5]

The "participation in a venture" element can be proven through common evidence in this case. In particular, common evidence demonstrates, *inter alia*, that (1) ███████████████████████████████████████████████ *see* Ex. 2; (2) ████████████████████████████████████████████████████████████████ ███████ *see* Ex. 15, T. Weaver Decl. ¶¶ 4-7; Exhibit 28, MindGeek_NDAL _00492353 at 2 ████████████████████████████████████████ ███████████████████████████████ Ex. 16 at 2 ██████████████████ ████████████████████████████████████████████████████████████████ ███████ Ex. 7 at 1 ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[5]    In *Bridges*, this Court found a question of material fact as to whether jail administrators "participated in a venture" where the plaintiff presented evidence that the jail administrators knew that jailers were forcing inmates to engage in sexual acts in order to become trustees in the county jail, and that the jail administrators did not intervene to stop such conduct. *See Bridges*, 2022 WL 1598437, at *20. The jail administrator defendants argued that their inaction could not be considered "participation in a venture" under the TVPRA because they did nothing at all and did not directly participate in the alleged trafficking. This Court rejected that argument and explained:

> When an individual has a duty, an act or omission can result in liability. *See, e.g.*, 28 U.S.C. § 2674. To the extent that Jail administrators knew of the alleged arrangement between the jailers and the inmates, their nonaction could raise a question of material fact as to whether that nonaction rose to a level of participation by effectively allowing the alleged behavior to continue. This Court cannot say that a knowing failure to act in accordance with an affirmative duty does not rise to the level of participation in a venture.

*Id.*

27



███████████████ Exhibit 29, MindGeek_NDAL_00004210 & 00004211

██████████████████████████████████████████

███████████████████████████ Exhibit 30, Franklin Aug. 8, 2023 Dep. Tr. at 33:8-16 (explaining that MindGeek does *not* verify the ages of co-performers before content is uploaded onto its websites); (3) █████████████████████ ████████████████ *see* Ex. 15, T. Weaver Decl. ¶ 4(c); Exhibit 31, MindGeek_NDAL_00004493 at 2-4 █████████████████████████ ██████████████████████ Ex. 17 ████████████████ ████████████████████████████████████████ Exhibit 32, MindGeek_NDAL_00428230 ██████████████████████ ████████████████████████████████████████ ████ and (4) MindGeek monetizes and profits from the content on its websites, *see* Ex. 23 at 2; Ex. 6. By "connecting the dots" from this common evidence, Plaintiff and all class members can demonstrate that MindGeek has participated in a venture that MindGeek knew or should have known violated the TVPRA. *See generally MG Freesites*, 2022 WL 407147, at *18 (discussing evidence sufficient to demonstrate this element of TVPRA claim).

Moreover, MindGeek has an affirmative legal duty under U.S. law to not distribute CSAM on its websites, *see* 18 U.S.C. §§ 2252 & 2252A, but nonetheless common evidence demonstrates ████████████████████████████

███████████████████████   *See* Ex. 15, T. Weaver Decl. ¶ 4(c); Ex. 2.  In fact,

MindGeek itself has made more than 20,000 reports of apparent CSAM on its

websites to NCMEC just since 2020. *See* Ex. 1 at 9; Ex. 22.  MindGeek's "knowing

failure to act in accordance with [its] affirmative duty" to keep CSAM off its

websites further satisfies the "participation in a venture" element of the TVPRA

claim here. *Bridges*, 2022 WL 1598437, at *20.

### c. The venture violated the TVPRA as to the plaintiff

A plaintiff must prove "that 'the venture in which the defendant participated

and from which it knowingly benefited must have violated the TVPRA as to the

plaintiff.'" *J.G.*, 2022 WL 4482735, at *6 (quoting *Red Roof Inns*, 21 F.4th at 725).

"The TVPRA criminalizes various acts of human trafficking." *Id.* (citing 18 U.S.C.

§ 1591).  Here, "Plaintiff specifically alleges that she was trafficked in violation of

§ 1591(a), which makes it a crime to cause a person under 18 years old to 'engage

in a commercial sex act.' . . . Consequently, Plaintiff must [prove] that the venture

in which [defendant] participated caused Plaintiff to engage in a commercial sex

act." *Id.* (quoting § 1591(a)).   Under the TVPRA, the "term 'commercial sex act'

means any sex act, on account of which anything of value is given to or received by

any person."  18 U.S.C. § 1591(e)(3).

Accordingly, the TVPRA makes it illegal to benefit from the dissemination of

videos and images of minors engaging in sex acts for which anyone received

something of value (*e.g.*, the exposure, platform, and financial incentives provided to MindGeek's content providers *and* the profits MindGeek itself reaps from traffic on its websites), regardless of the minors' understanding or awareness of what they were doing or of the consequences of their actions. *See* § 1591(a) & (e)(3). The very fact that such conduct has occurred proves that the venture violated the TVPRA as to plaintiff, independent of any individualized consideration of how such conduct actually came to happen in each instance. The facts that (1) ███████████████ ████████████████████████████████ and (2) ████████████████ ██████████████████████ is indisputable and can be demonstrated by common evidence. *See* Ex. 3 at 5-6; Ex. 4 at 15-16, 23-26; *see also* Exs. 6, 16, 23, 28. Accordingly, that same generalized evidence common to all class members demonstrates that the ventures in which MindGeek participated have violated the TVPRA.

> **d.   Knew or should have known that the venture violated the TVPRA as to the plaintiff**

"This requires the plaintiff to [prove] that the defendant had either actual or constructive knowledge that the venture violated the TVPRA as to the plaintiff." *J.G.*, 2022 WL 4482735, at *6 (citing *Red Roof Inns*, 21 F.4th at 725). Knowledge is defined as "a[n] awareness or understanding of a fact or circumstance," while constructive knowledge is "that knowledge which 'one using reasonable care or diligence should have.'" *Red Roof Inns*, 21 F.4th at 725 (quoting Black's Law

Dictionary (11th ed. 2019)).  As a result, the plaintiff must prove that the defendant "had at least constructive knowledge that the venture in which it participated and from which it benefited violated the TVPRA as to Plaintiff." *Id.*; *see also J.G.*, 2022 WL 4482735, at *6; *Bridges*, 2022 WL 1598437, at *20.

In this case, the Court has explained that Plaintiff must show MindGeek had constructive knowledge that the venture was engaged in sex trafficking, which means "engaging someone under 18 in a sex act for which something of value is given to or received by any person."  *MG Freesites*, 2022 WL 407147, at *19. Significantly, Plaintiff need not prove "a quid pro quo between the sex act and an exchange of something of value" to prove that the sex trafficking was commercial and need not prove that her "abusers had the intent to monetize the CSAM videos at the time they were made" or "that the perpetrator compensate[d MindGeek] on account of the sex trafficking." *Id.*

This element of the TVPRA claim also can be proven through common evidence regarding MindGeek and its own actions and practices, including the presence of CSAM on MindGeek's websites, how MindGeek obtains and allows the content on its websites, the relationship between MindGeek and content providers, and how MindGeek monetizes and profits from that content.  For example, evidence shows that (1) MindGeek did not does not verify the ages of all individuals that appear in content uploaded onto their websites, *see* Ex. 30 at 33:8-16; (2) ■■

31

██████████████████████████████████████████████████

██████████████████ *see* Ex. 15, T. Weaver Decl. ¶ 7(h)(i); Ex. 8 at 15-20; (3)

███████████████████████████████████████████████████

██████████████████████████████ *see* Ex. 12; Ex. 5; (4) ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ *see* Ex. 7; (5) ███████████████████████████████

███████████████████████████████████████████ *see* Ex. 29;

and (6) MindGeek did not start reporting CSAM to NCMEC until April 2020, *see*

Ex. 30 at 20:16-21, ██████████████████████████████████████

█████ *see* Ex. 2 ████████████████████████████████████. And as to

Plaintiff specifically, evidence shows that ████████████████████████

█████████ ████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ *See* Ex. 21; Ex.

15, T. Weaver Decl. ¶ 6.  Plaintiff has more than sufficiently alleged that MindGeek

had constructive knowledge of her CSAM on its website. *See generally MG*

*Freesites*, 2022 WL 407147, at *18 (discussing evidence sufficient to demonstrate

this element of TVPRA claim).

Additionally, any differences in the ventures themselves are relatively minor, and all unlawful CSAM videos make their way onto MindGeek's websites through the same failures in MindGeek's own practices.  So while different traffickers may use different schemes to harm their victims, the focus of *this* action is on MindGeek and *its* behavior.  How MindGeek responded, when presented with uploaded CSAM, is the dominant factual inquiry here, not the circumstances of any specific trafficking incident.  MindGeek's collection, promotion, and distribution of that CSAM for profit presents core facts that do not vary from victim to victim.

Accordingly, all four elements of the TVPRA claims in this case present common issues of fact and law because "the same evidence [would] suffice for each [class] member" to prove their own TVPRA claims.  *Brown*, 817 F.3d at 1234.  And these common issues on the TVPRA claims predominate here as "the addition or subtraction of any of the plaintiffs to or from the class [will not] have a substantial effect on the substance or quantity of evidence offered" in this case.  *Id.* at 1235.

### 2.   Common Issues Predominate in Plaintiff's Child Pornography Claims (18 U.S.C. § 2252A)

In this case, the pertinent elements of a child pornography claim under 18 U.S.C. § 2252A are: (1) the defendant "receive[d] or distribute[d]" child pornography"; (2) in interstate or foreign commerce "by any means, including by computer"; and (3) the defendant did so "knowingly."  § 2252A(a)(2).  Liability for knowing distribution applies to the dissemination of "any child pornography" to

others, regardless of the material's publication status or whether a third party originally created it. *MG Freesites*, 2022 WL 407147, at *21 (discussing § 2252A).

"Any person aggrieved by reason of the conduct prohibited under subsection [2252A(a)(2) cited above] may commence a civil action[.]" § 2252A(f)(1); *see also MG Freesites*, 2022 WL 407147, at *21. Accordingly, neither proof of actual damages nor proximate cause are elements of a civil child pornography claim. *See Doe v. Boland*, 698 F.3d 877, 883 (6th Cir. 2012) ("§ 2252A(f) contains no threshold damages provision."); *Unknown v. Webb*, 2015 WL 13914794, at *3 (C.D. Cal. Apr. 16, 2015) ("As to Plaintiff's § 2255(a) and § 2252A(f) claims . . . neither statutory provision requires proof of proximate cause" between defendant's conduct and any injury suffered by plaintiff).

All of the elements of the child pornography claims in this case are susceptible of common evidence regarding MindGeek's own actions and practices in obtaining, handling, and allowing child pornography on their websites.

### a.   Receipt and distribution of child pornography

Evidence of MindGeek's own practices and business operations demonstrates that (1) ███████████████████████████████████████████ *see* Exs. 3-4, 23;  (2) ████████████████████████████████████████████ ████████████████████████████ *see* Ex. 2; and (3) ███████████████████████████ ███████████████████████████████████████ *see* Exs. 17, 31-32.  This is all

34

common evidence that Plaintiff and the putative class members can use to satisfy the first element of their child pornography claims.

> **b. Receipt and distribution of child pornography in interstate or foreign commerce**

MindGeek operates some of largest commercial pornography websites in the world, and those websites are available worldwide and throughout the entire United States, *see* FAC ¶¶ 45-46—*i.e.*, those websites indisputably engage in "foreign or interstate commerce." *See United States v. Tuan Ngoc Luong*, 965 F.3d 973, 982 (9th Cir. 2020) ("Craigslist is an Internet site that facilitates commerce on a national and international level."); *United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) (eBay "is an avenue of interstate commerce, like an interstate highway or long-distance telephone service"); *see also* 18 U.S.C. § 2252A(a)(2) (relevant "means" of receipt/distribution include by "computer"). As noted above, MindGeek has admitted that large amounts of CSAM have appeared on its websites for many years. *See* Ex. 1 at 9. Through its Content Partner and ModelHub Programs, MindGeek receives the content for its websites—including the CSAM that has appeared on the websites—from third parties through its website platforms. *See, e.g.*, Ex. 23. In turn, much of the CSAM received through the websites subsequently has been distributed to MindGeek's users in the United States and worldwide through those same websites. This evidence of MindGeek's own operations

demonstrates that the interstate or foreign commerce element presents issues common to all class members.

### c.    Knowledge of the child pornography

The "knowledge" element of a child pornography claim can be proven by circumstantial evidence, and it is "not necessary . . . to prove that the defendant had actual knowledge" that the specific media constituted child pornography for the statutes to be violated. *MG Freesites*, 2022 WL 407147, at \*21 (citing *United States v. Dixon*, 589 F. App'x 427, 428 (11th Cir. 2014) and *United States v. Alfaro–Moncada*, 607 F.3d 720, 733 (11th Cir. 2010)).

"A person 'knowingly receives' child pornography when he 'intentionally views, acquires, or accepts child pornography on a computer from an outside source.'" *Id.* (quoting *United States v. Pruitt*, 638 F.3d 763, 766 (11th Cir. 2011)). Evidence that a defendant simply had taken any of the actions identified in § 2252A—received, possessed, accessed, or distributed content depicting underage persons—can be sufficient to prove that the defendant "knowingly" received, possessed, or distributed child pornography, even where "[t]here [is] no evidence the defendant had actual knowledge of the ages of those depicted in the videos." *Id.* (citing *Dixon*, 589 F. App'x at 428–29).[6]

---

[6]    *See also Alfaro–Moncada*, 607 F.3d at 733 (explaining that "the jury was free to reject [the defendant's] testimony" that "he had bought the DVDs without knowing that they contained child pornography" because the "the covers of the DVD cases" showed "young girls [of unstated ages]

Here, MindGeek actively controls what content it allows on its websites. Nonetheless, MindGeek has admitted that it has made more than 20,000 reports of apparent CSAM on its websites to NCMEC since 2020.  *See* Ex. 1 at 9.  ███████

████████████████████████████████████████████████████

███████████████████████████████  *See* Ex. 15, T. Weaver Decl. ¶¶ 4(c), 7(f)(ii)(1)  (citing  Exhibit  33,  MindGeek_NDAL_00181353);  Ex.  28;  Ex.  16

█████████████████████████████████████████████

████████████████████████████  MindGeek's own actions in reporting and removing apparent CSAM ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████  is  common  evidence  that  all  class members can use to prove that MindGeek had "knowledge" that content on its websites constituted child pornography.  *See* Section V.A.1.d, *supra*; *see also generally MG Freesites*, 2022 WL 407147, at *21 (discussing evidence sufficient to demonstrate knowledge element of child pornography claim).  The "knowledge" element involves issues common to the claims of all class members.

---

engaging in sex acts" and the defendant admitted that "he watched a 'little bit' of the DVDs inside those cases).

### 3.   Damages Do Not Present Individual Issues that Predominate Over Common Issues.

In this case, the issue of damages is not an impediment to class certification under Rule 23(b)(3).   Any argument that individual damages issues may predominate is contrary to the damages structure available in this case, as well as to established precedent holding that individualized damages issues generally do *not* defeat class certification and describing how the Court has various management tools to address any individualized damages issues that may arise.

### a.   The availability of statutory damages for child victims of sex trafficking and child pornography means that damages present common—not individual—issues

18 U.S.C. § 2255 provides persons who were victims of violations of 18 U.S.C. §§ 1591 and 2252A while a minor with civil causes of action for which the victims can recover their actual damages *or* liquidated damages of $150,000.[7] Accordingly, statutory damages are available in this case as an *alternative* remedy for the child pornography claims (*i.e.*, violation of 18 U.S.C. §2252A) and for the

---

[7]   Section 2255(a) specifically states:

> Any person who, while a minor, was a victim of a violation of section . . . 1591 . . . 2252, 2252A . . . of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2255(a).

beneficiary liability for sex trafficking claims (*i.e.*, to the extent the plaintiff is a victim of a violation of 18 U.S.C. § 1591).

The availability of statutory damages means that individualized proof of personal injury or actual damages is *not* necessary for Plaintiff or the class to prevail on their child pornography and sex trafficking claims.[8]  *See Doe v. Boland*, 698 F.3d 877, 880–83 (6th Cir. 2012).

The predominance requirement is satisfied when a class is pursuing statutory damages because each class member need not present individualized evidence of injury or damages.  *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 130 (S.D.N.Y. 2011) ("[b]ecause the complaint seeks statutory damages, [so] there will be no need for individualized damages determinations"); *see also Zaklit v. Nationstar Mortgage LLC*, 2017 WL 3174901, at *9 (C.D. Cal. Jul. 24, 2017); *In re Toys R Us-Delaware,*

---

[8]    To recover statutory damages under 18 U.S.C. § 2255, a plaintiff need only show that they were a child victim of sex trafficking or child pornography and are not required to provide any evidence of actual injury:

> Most tort plaintiffs, it is true, must show the amount of their damages. But  § 2255 is no ordinary cause of action. The statute declares that any victim "shall be deemed to have sustained damages of no less than $150,000 in value."  18 U.S.C. § 2255(a) [earlier version]. . . . <u>The point of a minimum-damages requirement is to allow victims of child pornography to recover without having to endure potentially damaging damages hearings.</u> Were it otherwise, a fresh damages hearing might inflict fresh wounds, increasing the child's suffering and increasing the compensatory damages to which she is entitled. . . . <u>Once a child has shown she was the victim of a sex crime, there is little point in forcing her to prove an amount of damages,</u> only to have the court disregard that figure and award the statutory minimum.

*Doe v. Boland*, 698 F.3d 877, 882 (6th Cir. 2012) (emphasis added).

*Inc.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013); *Authors Guild v. Google, Inc*., 282 F.R.D. 384, 395 (S.D.N.Y. 2012).

> **b.   The class's other damages claims do not defeat class certification**

In this case, potential individualized damages issues only could arise to the extent that Plaintiff and class members pursue their actual damages claims under the TVPRA and/or the child pornography statute pursuant to 18 U.S.C. §§ 1595 and 2255(a), rather than just pursuing the alternative $150,000 liquidated damages discussed above.   However, even in that scenario, the Eleventh Circuit has recognized that the "presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Brown*, 817 F.3d at 1239; *see also Green-Cooper v. Brinker International, Inc*., 73 F.4th 883, 893 (11th Cir. 2023).

In fact, it "is commonplace in class actions certified under Rule 23(b)(3)" that damages may "have to be resolved on an individualized basis." *Doe 1 v. JPMorgan Chase Bank N.A.,* 2023 WL 3945773, at *10 (S.D.N.Y. Jun. 12, 2023) (holding individualized damages do not defeat class certification of TVPRA § 1595 claims). Accordingly, the "'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'" *Brown*, 817 F.3d at 1239 (quoting William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed.)).  Individualized damages issues only predominate

if "computing them will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable" or if "significant individualized questions go[ ] to liability." *Green-Cooper*, 73 F.4th at 893 (quoting *Brown*, 817 F.3d at 1240). In contrast, "[i]ndividualized damages issues are of course least likely to defeat predominance where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods." *Id.* (quoting *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010)).

"Furthermore, courts have also recognized that many 'tools' exist to allow courts to effectively and efficiently deal with individualized damages issues that may arise in a class action." *Herman v. Seaworld Parks & Entertainment, Inc.*, 320 F.R.D. 271, 299 (M.D. Fla. 2017). Such tools include: "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *Brown*, 817 F.3d at 1239 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001), *abrogated in part on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006)); *see also Herman*, 320 F.R.D. at 299; 2 Newberg and Rubenstein on Class

Actions § 4:54 (6th ed. June 2023 Update) ("a class may also be certified solely on the basis of common liability, with individualized damages determinations left to subsequent proceedings").  Also, as discussed more fully below, Rule 23 itself provides that the Court can certify an "issues class" and allow a case to be "maintained as a class action with respect to particular issues" but not as to other issues.  Fed. R. Civ. P. 23(c)(4).

To the extent the Court is concerned that individualized proof of actual damages may raise predominance issues here, the Court can address such concerns in various ways, including:

- certifying the class for liability only;

- certifying the class for TVPRA and child pornography liability and statutory damages only;

- certifying the class and providing class notice thereby allowing class members to opt-out to the extent they would like to pursue their own individual damages claims;

- certifying the class and creating a mechanism to address individual damages claims *after* liability and the right to statutory damages is established on behalf of the class (*e.g.*, bifurcation of individual damages, appointment of a special master for the resolution of individual damages, constructing the claims process to identify class members/criteria to be considered for individual damages);

- creating sub-classes for (1) liability, (2) statutory damages claims, and/or (3) individual damages claims; or

- decertifying the class *after* liability is established and then providing notice to class members regarding how they can  claim the statutory damages or prove their own individual damages.

*See Brown*, 817 F.3d at 1239; *Herman*, 320 F.R.D. at 299.

As liability here overwhelmingly involves common issues that can be proven for all class members though generalized evidence of MindGeek's business practices and operations—and in light of the fact that liquidated damages are available to the class without requiring any individual evidence of actual damages—this case is a paradigm for when a common wrong inflicted in the same exact way on thousands of victims can most efficiently and expeditiously be redressed through a class action. Damages issues do not predominate over the qualitatively more significant common liability (and statutory damages) issues here, and the Court nonetheless can exercise its discretion and implement various case management tools to handle any individualized damages issues if the need arises.  *See generally Brown*, 817 F.3d at 1239 (Rule 23(b)(3) predominance is "a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance").

### c.    Punitive damages are a common class issue

Punitive damages are available for Plaintiff's TVPRA and child pornography claims.  *See Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir.

2017) (punitive damages available for TVPRA claims); *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011) (same); 18 U.S.C. § 2252A(f)(2)(B).  The "focus [of punitive damages] is on the character of the [defendant's] conduct," *Hoever v. Marks*, 993 F.3d 1353, 1359 (11th Cir. 2021), and not on anything unique to each class member.  Accordingly, punitive damages are a common issue for the class. *See Palmer v. Combined Ins. Co. of America*, 217 F.R.D. 430, 440 (N.D. Ill. 2003) ("Because the focus of punitive damages is on the defendant's conduct, not the class members, it is possible to fashion a punitive damages award that would punish [the defendant] for past wrongdoing, if such wrongdoing was proved, and not require individualized inquiry.").

## B.     A Class Action is a Superior Method for Resolving the Parties' Dispute

In addition to the predominance requirement, Rule 23(b)(3) requires a finding that a class action is superior to other available methods of adjudication of the claims in dispute.  "[T]he focus of this analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Public Employees'*, 2022 WL 17920570, at *11 (quoting *Sacred Heart*, 601 F.3d at 1183–84).

"In many respects, the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individualized issues, the more desirable a class action lawsuit will

be as a vehicle for adjudicating the plaintiffs' claims." *Williams*, 568 F.3d at 1358 (quoting *Klay*, 382 F.3d at 1269). The Eleventh Circuit has explained that there are "two reasons that the factor of manageability is ordinarily satisfied so long as common issues predominate over individual issues":

> First, <u>we are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives</u> . . . . Second, where a court has already made a finding that common issues predominate over individualized issues, we would be hard pressed to conclude that a class action is less manageable than individual actions.

*Id.* (emphasis added) (quoting *Klay*, 382 F.3d at 1273). "If a district court determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions." *Id*. Accordingly, "administrative difficulties—whether in class-member identification or otherwise—do not alone doom a motion for certification. Indeed . . . manageability problems will 'rarely, if ever, be in [themselves] sufficient to prevent certification.'" *Cherry*, 986 F.3d at 1304 (last alteration in original) (quoting *Klay*, 382 F.3d at 1272).

Rule 23(b)(3) provides a non-exhaustive list of four factors that are pertinent to the finding of superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

*First*, in light of the highly personal and sensitive subject matter involved, and personally intrusive nature of discovery and trial in such cases, class members likely do not have a great interest in individually controlling the prosecution of their own separate actions against MindGeek, especially when Plaintiff has stepped up and endeavoring to prosecute these claims on their behalf.

*Second*, there is a later-filed, uncertified putative class action pending in the Central District of California (*Doe v. MindGeek USA Inc., et al.*, No. 8:21-cv-00338-CJC-ADS (C.D. Cal)) involving similar sex trafficking and child pornography claims against MindGeek and some (but not all) of the other Defendants in this case.[9] There also are two individual cases filed after the present case in which the plaintiffs are asserting similar claims only on their own behalf against MindGeek (*Fleites v. MindGeek S.A.R.L.*, No. 21-cv-04920 (C.D. Cal.) and *CVI Mother v. Franklin et al.*, No. 2:22-cv-00605-ECM-KFP (M.D. Ala.)).  Because the instant case was filed before these other cases and involves claims against more defendants (including

---

[9]   All of the defendants in the California class action also are defendants in this case.

MindGeek's European affiliates that manage MindGeek's billing revenues abroad) than either of the other known pending cases, this case presents the best opportunity for victims to obtain full and effect relief for MindGeek's wrongful profiteering from the sex trafficking and child pornography of the class.

*Third*, Plaintiff is an Alabama resident, and she was sex trafficked in Alabama. Plaintiffs' counsel team includes lawyers from Alabama and Florida who have extensive experience representing the victims of sex trafficking and abuse. Due the problematic nature of the child pornography subject matter involved, the Court here already has approved of the Alabama State Attorney General as the repository for potentially illegal material that may be produced and/or needed to prove or administer the class members' claims. *See* ECF No. 92. To the best of Plaintiff's knowledge, no similar procedure has been discussed, let alone implemented, in the California class action.

*Fourth*, any difficulties in managing this class action do not outweigh the superiority of maintaining a class action over other available methods of adjudicating these claims. As noted above, the only potential difficulties that may arise in managing this class action would relate to any individual damages claims (but only to the extent that anyone may desire actual damages instead of the liquidated statutory damages). But courts routinely and successfully manage those types of difficulties in class actions, particularly when the alternative is to require

thousands of putative class members to pursue virtually identical and largely formulaic claims individually.

In fact, the difficulties posed by *not* adjudicating the present TVPRA and child pornography claims in a class action would be monumental. Here, there are literally tens of thousands of potential class members. While some of MindGeek's victims may not choose to pursue their own claims in court,[10] the denial of certification nonetheless likely would mean that hundreds or thousands of victims would either deluge the U.S. court system with individual suits (especially if just one victim wins on liability and others subsequently can use collateral estoppel to easily establish liability themselves). *See generally* 2 Newberg and Rubenstein on Class Actions § 4:72 (*quoting Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 660 (7th Cir. 2004)) (explaining that class actions with large number of class members generally satisfy superiority because the "more claimants there are, the more likely a class action is to yield substantial economies in litigation" regardless of any individual issues). That flood of duplicative, formulaic cases would overburden the U.S. court system needlessly, especially as this Court has multiple tools and broad discretion to manage the present case and to handle any limited individualized issues that arise,

---

[10]    The fact that some victims may not be comfortable to pursue their own claims due to the sensitive nature of these types of claims itself weighs in favor of a class action being a superior method of adjudicating this dispute. *See Public Employees'*, 2022 WL 17920570, at *11 (emphasis added) (explaining that the "focus of [the superiority] analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be *realistically* available to the plaintiffs").

and thereby resolve this dispute (in whole or at least in large part) in one proceeding. *See generally Williams*, 568 F.3d at 1358 (in considering superiority, "we are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives").

All of the relevant factors support the conclusion that a class action is superior to other available methods for adjudication of the claims in dispute here.

## VI.    In the Alternative, a Rule 23(c)(4) Issues Class is Appropriate

Plaintiff has demonstrated that class certification of this entire case is appropriate under Rule 23(b)(2) and/or (b)(3).  In the alternative, however, Plaintiff respectfully requests certification of a Rule 23(c)(4) issues class.  *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.").

More specifically, the Court can certify an issues class resolving the common issues of liability like the ones identified in Section III.B *supra*, such as whether MindGeek knowingly benefitted from sex trafficking ventures in violation of the TVPRA and whether MindGeek received and distributed child pornography in violation of 18 U.S.C. § 2252A.  *See Harris v. Medical Transp. Mgmt., Inc.*, 2023 WL 4567258, at *9 (D.C. Cir. July 18, 2023) ("One common use of Rule 23(c)(4) is for resolving the issue of liability."); 2 Newberg and Rubenstein on Class Actions §

4:92 (6th ed. June 2023 Update) (noting that certification of a liability issue class is "likely the most typical use of issue class certification as it is not unusual that liability would be common across the class").  An issues class promotes efficiency and judicial economy by resolving and providing preclusive effect on issues applicable to the entire class and thereby streamlining the overall resolution of a particular dispute involving many claimants.  *See* 2 Newberg and Rubenstein on Class Actions § 4:92 (in light of its potential preclusive effect, certification of an issue class is "appropriate" under Rule 23(c)(4) when "it will expedite resolution of the litigation as a whole").

To the extent the Court disagrees with Plaintiff and concludes that this case may not be certified in its entirety under Rule 23(b)(2) and/or (b)(3), the Court alternatively should certify a class under Rule 23(c)(4) on the issues of whether MindGeek has violated the TVPRA and § 2252A as well as any other issues the Court finds are common to the entire class.

## VII.  The Court Should Appoint Plaintiff's Counsel as Class Counsel

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  "In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's

50

knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(a).

Under this criteria, Plaintiff's counsel meet Rule 23(a)(4)'s adequacy requirement and should be appointed as Class Counsel under Rule 23(g). Plaintiff's counsel have already invested substantial time and resources in investigating Plaintiff's claims, prosecuting this case, and gathering discovery from MindGeek and third parties. Since the filing of this case, Plaintiff's counsel have been involved in, *inter alia*, identifying and investigating Plaintiff's claims, responding to MindGeek's motion to dismiss and other motion practice, producing discovery to MindGeek, reviewing the documents produced by MindGeek to date, obtaining documents from third parties by subpoena, engaging consultants, mediating this dispute, investigating witnesses, and facilitating the handling of potential CSAM by the Alabama Attorney General's Office. *See* Ex. 19, G. Zarzaur Decl. Plaintiff's counsel have committed, and continue to commit, substantial time and resources this case, and have worked vigorously and zealously to represent the interests of Plaintiff and the entire class. *See id.*

Plaintiff's counsel are eminently qualified to represent the proposed class and its interests. Plaintiff's counsel have substantial experience handling cases involving child sexual abuse and child sex trafficking, as well as complex litigation including

class actions. *See id.* ¶¶ 2-8. Accordingly, Rule 23(g) is satisfied, and the Court should appoint Plaintiff's counsel as class counsel in this case.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and certify the class pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3), or, alternatively, certify an issues class pursuant to Rule 23(c)(4). Additionally, Plaintiff respectfully requests that the Court appoint Plaintiff's counsel as Class Counsel pursuant to Rule 23(g).

Respectfully submitted this 8th day of September 2023,

/s/ *Gregory Zarzaur*
Gregory Zarzaur (ASB-0759-E45Z)
Kelsie Overton (ASB-1791-F80L)
THE ZARZAUR LAW FIRM
2332 Second Avenue North
Birmingham, Alabama 35203
T: (205) 983-7985
E: gregory@zarzaur.com
    kelsie@zarzaur.com

Joshua P. Hayes
PRINCE GLOVER HAYES
701 Rice Mine Road
Tuscaloosa, Alabama 35406
T: (205) 345-1234
E: jhayes@princelaw.net

Kimberly Lambert Adams*
Kathryn L. Avila*
LEVIN PAPANTONIO RAFFERTY
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
T: (850) 435-7056
E: kadams@levinlaw.com

kavila@levinlaw.com
*pro hac vice*

Brian Kent*
Gaetano D'Andrea*
Jill P. Roth*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
T: (215) 399-9255
E: bkent@laffeybuccikent.com
   gdandrea@laffeybuccikent.com
   jroth@laffeybuccikent.com
   sryan@laffeybuccikent.com
   amacmaster@laffeybuccikent.com
*pro hac vice*

Benjamin W. Bull*
Dani Bianculli Pinter*
Christen M. Price*
Peter A. Gentala*
NATIONAL CENTER ON SEXUAL
EXPLOITATION
1201 F Street NW, Suite 200
Washington, D.C. 20004
T: (202) 393-7245
E: lawcenter@ncose.com
*pro hac vice*

Kevin Dooley Kent*
Mark B. Schoeller*
Vanessa L. Huber*
CLARK HILL PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
T: (215) 640-8500
E: kkent@clarkhill.com
   mschoeller@clarkhill.com
   vhuber@clarkhill.com
*pro hac vice*

*Counsel for Plaintiff Jane Doe #1*

## **CERTIFICATE OF SERVICE**

I hereby certify on this 8th day of September 2023, this document was filed through the Electronic Case Filing System of the United States District Court for the Northern District of Alabama and will be served electronically by the court to all participants of record.

*/s/ Gregory Zarzaur*
Gregory Zarzaur