# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

JANE DOE #1 and JANE DOE #2 on
behalf of themselves and all others
similarly situated,

        Plaintiffs,

   v.

MG FREESITES, LTD, d/b/a
"PORNHUB"; MG FREESITES II,
LTD; MINDGEEK S.A.R.L.;
MINDGEEK USA INCORPORATED;
MG CY HOLDINGS LTD;
MINDGEEK CONTENT RT LIMITED;
9219-1568 QUEBEC, INC., d/b/a
MINDGEEK);  MG BILLING LTD

        Defendants.

CIVIL ACTION NO. 7:21-CV-00220

Honorable L. Scott Coogler

---

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Sara M. Turner
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1901 Sixth Avenue North
Suite 2600
Birmingham, AL 35203
Phone: (205) 250-8316
smturner@bakerdonelson.com

Kathleen N. Massey (*pro hac vice*)
Hayden Coleman (*pro hac vice*)
DECHERT LLP
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND...............................................................................2

I. MindGeek's Best-in-Class Technology and Human Moderation to Detect and Report CSAM...............................................................................4

II. Cutting Edge Technology Tools to Detect CSAM Evolved .........................5

III. Human Moderation Experiences Decade-Long Growth ...............................6

IV. Other Functions to Assist Moderators Changed Over Time .........................8

V. CSAM Review and Reporting to NCMEC Undergoes Change....................8

VI. Plaintiff's Experience Is Unique and Differs Materially from that of Other Putative Class Members .....................................................................10

LEGAL STANDARD.......................................................................................12

ARGUMENT ....................................................................................................13

I. There Are No Qualifying Common Questions, and Individual Issues Predominate ..................................................................................................13

    A. Establishing Minority Is an Antecedent Requirement for Both of Plaintiff's Claims .........................................................................16

    B. Sex Trafficking Claims Raise Highly Individualized Issues ............17

        1. Sex Trafficking ....................................................................17

        2. Proving that MindGeek Is Secondarily Liable Raises Multiple Additional Plaintiff-Specific Issues. ........................20

    C. Plaintiff's Possession of CSAM Claim Cannot Be Addressed on a Classwide Basis ..........................................................................25

    D. Plaintiff's Demand for Compensatory, Punitive, and Statutory Damages Defeats Predominance and Makes Class Treatment Unmanageable. ..................................................................................29

II.     Plaintiff Does Not Satisfy the Remaining Requirements of Rule 23(a) ......32

        A.      Plaintiff Is Not an Adequate Representative ......................................32

        B.      Plaintiff Is Not a Typical Class Member Under Rule 23(a)(3)
                Because She Is Subject to Unique Defenses. .....................................34

III.    Plaintiff Cannot Establish the Elements for a Rule 23(b)(2) Class. .............36

IV.     Plaintiff's Proposed Class Is Not Ascertainable ...........................................39

V.      A Class Action Is Not a Superior Means of Adjudicating the Highly
        Individualized Claims of The Putative Class ................................................43

VI.     Plaintiff Cannot Solve These Individualized Issues by Seeking an
        Issues Class ...................................................................................................46

CONCLUSION ........................................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Marriott Int'l, Inc.*,
    455 F. Supp. 3d 171 (E.D. Pa. 2020)...................................................25

*A.D. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 8674205 (E.D. Va. July 22, 2020)......................................25

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*,
    938 F.3d 1170 (11th Cir. 2019) .............................................36, 37, 38

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).........................................................................12

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
    321 F.R.D. 430 (N.D. Ga. 2017) ...................................................46, 47

*Authors Guild v. Google, Inc.*,
    282 F.R.D. 384 (S.D.N.Y. 2012), *vacated in part sub nom Authors*
    *Guild, Inc. v. Google Inc.*, 721 F.3d 132 (2d Cir. 2013) ....................34

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. July 30, 2020) ....................................21

*Babineau v. Federal Express Corp.*,
    576 F.3d 1183 (11th Cir. 2009) ...................................................15, 19

*Baker v. State Farm Mut. Auto. Ins. Co.*,
    2022 WL 3452469 (11th Cir. Aug. 18, 2022) ....................................15

*Brown v. Electrolux Home Prod., Inc.*,
    817 F.3d 1225 (11th Cir. 2016) ...........................................12, 13, 29

*Bryant v. Southland Tube*,
    294 F.R.D. 633 (N.D. Ala. 2013) ...............................................34, 35

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
    562 F. App'x 782 (11th Cir. 2014).....................................................29

*Casa Orlando Apartments, Ltd. v. Fed Nat'l Mortg. Assoc.*,
   624 F.3d 185 (5th Cir. 2010) ...............................................................38

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) .................................................................47

*Cherry v. Dometic Corp.*,
   986 F.3d 1296 (11th Cir. 2021) ..........................................................39

*City of St. Petersburg v. Total Containment, Inc.*,
   265 F.R.D. 630 (S.D. Fla. 2010)..........................................................31

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013).......................................................................29

*Cordoba v. DIRECTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019) ..........................................................41

*Davis v. Mar-Jac Poultry*,
   2021 WL 2556012 (N.D. Ala. Mar. 30, 2021) (Coogler, J.).................13, 22, 37

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ............................................21, 23, 24

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) .......................................19, 20

*Drimmer v. WD-40 Co.*,
   2007 WL 2456003 (S.D. Cal. Aug. 24, 2007)....................................33

*Engel v. Scully & Scully, Inc.*,
   279 F.R.D. 117 (S.D.N.Y. 2011) .........................................................34

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011)............................................................................15

*In re Fibreboard Corp.*,
   893 F.2d 706 (5th Cir. 1990) ..............................................................17

*Fisher v. Ciba Specialty Chems. Corp.*,
   238 F.R.D. 273 (S.D. Ala. 2006) ........................................................47

*Fleites v. MindGeek S.A.R.L.*,
  2022 WL 1314035 (C.D. Cal. Feb. 10, 2022) ............................................*passim*

*Green v. Fed. Exp. Corp.*,
  614 F. App'x 905 (9th Cir. 2015) .......................................19

*Grimes v. Rave Motion Pictures Birmingham, L.L.C.*,
  264 F.R.D. 659 (N.D. Ala. 2010) ........................................44

*Herman v. Seaworld Parks & Ent., Inc.*,
  320 F.R.D. 271 (M.D. Fla. 2017) ........................................29

*Hurt v. Shelby Cnty. Bd. of Educ.*,
  2014 WL 4269113 (N.D. Ala. Aug. 21, 2014) .................................42

*Jackson v. Motel 6 Multipurpose, Inc.*,
  130 F.3d 999 (11th Cir. 1997) ............................................2

*Krukever v. TD Ameritrade, Futures & Forex LLC*,
  328 F.R.D. 649 (S.D. Fla. 2018) ........................................30

*L.H. v. Marriott Int'l, Inc.*,
  604 F. Supp. 3d 1346 (S.D. Fla. 2022) .............................25

*Likes v. DHL Exp.*,
  288 F.R.D. 524 (N.D. Ala. 2012) ........................................38

*Little v. T-Mobile USA, Inc.*,
  691 F.3d 1302 (11th Cir. 2012) ........................................39

*Menocal v. GEO Group, Inc.*,
  882 F.3d 905 (10th Cir. 2018) ........................................24

*Microsoft Corp. v. AT & T Corp.*,
  550 U.S. 437 (2007) ........................................43

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010) ........................................43

*MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*,
  342 F.R.D. 347 (S.D. Fla. 2022) ........................................42

*Postawko v. Missouri Department of Corrections.*,
910 F.3d 1030 (8th Cir. 2018) ..........................................................39

*Prado-Steiman v. Bush*,
221 F.3d 1266 (11th Cir. 2000) ........................................................34

*Ray v. Jud. Corr. Servs., Inc.*,
333 F.R.D. 552 (N.D. Ala. 2019) ......................................................46

*Reid v. Lockheed Martin Aeronautics Co.*,
205 F.R.D. 655 (N.D. Ga. 2001) ......................................................32

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
211 F.3d 1228 (11th Cir. 2000) ..................................................*passim*

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................20, 23

*Sacred Heart Health Systems, Inc. v. Humana Military Healthcare
Servs. Inc*,
601 F.3d 1159 (11th Cir. 2010) .................................17, 21, 30, 43

*Scott v. City of Anniston*,
682 F.2d 1353 (11th Cir. 1982) ........................................................39

*Tershakovec v. Ford Motor Co.*,
2023 WL 4377585 (11th Cir. Jul y7, 2023) ....................................45

*Tilton v. Playboy Entertainment Group, Inc.*,
554 F.3d 1371 (11th Cir. 2009) ...................................................21, 28

*In re Toys R Us*,
300 F.R.D. 347 (C.D. Cal. 2013).................................................33, 34

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023).........................................................................25

*Ulysse v. Waste Mgmt. Inc.*,
2013 WL 11327137 (S.D. Fla. Sept. 13, 2013)...........................*passim*

*United States v. Pruitt*,
638 F.3d 763 (11th Cir. 2011) .........................................................27

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) ..........................................................................26, 27

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ...........................................19, 21, 44

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001), *abrogated by In re Initial Pub.*
    *Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ..............................29

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................*passim*

*Welch v. Atlas Roofing Corp.*,
    2007 WL 3245444 (E.D. La. Nov. 2, 2007) .......................................32

*Williams v. Reckitt Benckiser LLC*,
    65 F.4th 1243 (11th Cir. 2023) ...................................................36, 37

*Winston v. Jefferson County*,
    2006 WL 6916381 (N.D. Ala. June 26, 2006) ...................................39

*Wright v. Dep't of Ala. VFW*,
    2010 WL 11569414 (N.D. Ala. Mar. 24, 2010) .................................45

*Yates v. Collier*,
    868 F.3d 354 (5th Cir. 2017) ...........................................................39

*Zaklit v. Nationstar Mortg. LLC*,
    2017 WL 3174901 (C.D. Cal. July 24, 2017).....................................34

**Statutes**

18 U.S.C. § 1591 ......................................................................*passim*

18 U.S.C. §1595 ...................................................................1, 16, 41

18 U.S.C. §1596 ................................................................................43

18 U.S.C. § 2252 ..............................................................................27

18 U.S.C. § 2252A ...................................................................*passim*

18 U.S.C. § 2255 .................................................................27, 31, 44

## Other Authorities

Fed. R. Civ. P. 23 ...............................................................................*passim*

# PRELIMINARY STATEMENT

Plaintiff seeks to certify a class of tens of thousands of minors whose images purportedly appeared on any adult content sharing websites operated by Defendants over a period of more than ten years. Such images are generally referred to as child sexual abuse material or CSAM. According to Plaintiff, once she can establish that CSAM appeared on a website, she can prove that Defendants violated the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591 & 1595, and 18 U.S.C. § 2252A (knowingly possessing and distributing CSAM), through pattern and practice evidence of Defendants' conduct. From that point, Plaintiff posits that class certification is virtually automatic.

Plaintiff is incorrect. Sex trafficking claims identical to the ones that Plaintiff brings here turn on a multitude of individual factual and legal issues that defy aggregate adjudication. For example, in another case involving similar claims against MindGeek, Judge Cormac J. Carney of the Central District of California granted severance of 33 plaintiffs from the case. Judge Carney observed:

> The Plaintiffs' individual factual allegations differ greatly in several respects. Some of the key factual differences include: (1) how the underlying conduct featured in the videos occurred …; (2) where the underlying conduct occurred; (3) who recorded and posted the videos on MindGeek's platforms (some perpetrators were former romantic partners of the individual Plaintiffs while others were strangers); (4) how the MindGeek Defendants tagged, circulated, or featured the videos; (5) whether the Plaintiffs sought to have the videos removed; (6) how the MindGeek Defendants responded to any such requests to remove the videos; (7) the age of the Plaintiffs when the recordings

1

were made …; (8) when the videos were posted; and (9) how long the videos remained on MindGeek's platforms.

*Fleites v. MindGeek S.A.R.L.*, 2022 WL 1314035, at *2 (C.D. Cal. Feb. 10, 2022).[1]

In sum, despite Plaintiff's attempt to oversimply the case to make it appear as if the presence of CSAM on Defendants' sites is sufficient to establish their claims on a class-wide basis, Plaintiff's personal injury claims are uniquely ill-suited for class treatment because, among other reasons, determining class membership, liability, and damages "breaks down into an unmanageable variety of individual legal and factual issues." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (citation omitted). For these reasons and the reasons discussed below, the Court should deny Plaintiff's motion for class certification.

## FACTUAL BACKGROUND

Plaintiff Jane Doe seeks to certify a sprawling class asserting claims premised on MindGeek's purported involvement in alleged child sex trafficking and possession of alleged CSAM depicting Plaintiff and the putative class members. Her overarching theme is that MindGeek's liability can be decided on a classwide basis

---

[1] Although *Fleites* involved a motion to sever, courts have recognized that the severance inquiry and class certification inquiry are largely coextensive. *Ulysse v. Waste Mgmt. Inc.*, 2013 WL 11327137, at *4 (S.D. Fla. Sept. 13, 2013) ("Once the Court determined that Plaintiffs cannot proceed as a class, the decision to sever Plaintiffs' claims and order separate trials is uncomplicated."). Indeed, logic dictates that if 34 plaintiffs could not proceed in a unitary trial without creating intractable due process and managerial problems, adding thousands more to the case only makes things exponentially more difficult.

because MindGeek had a pattern and practice of allowing CSAM on its websites. As discussed below, she is wrong because there are manifest individual issues attendant to each of the putative class members' claims that have nothing to do with MindGeek's conduct. In any event, her theory does not even get out of the starting gate because it fails on its own terms. As the proponent of class certification, she cannot merely plead a pattern and practice; she must come forward with *facts* in the record. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). After two years of discovery, Plaintiff has not adduced *any* facts to support her allegations of a companywide policy favoring CSAM. To the contrary, the record establishes that MindGeek was an industry leader in content moderation. Sherrie Caltagirone—a world renowned expert on human trafficking and Executive Director of the Global Emancipation Network—states:

> [I]t is my opinion that MindGeek is the recognized leader in the industry among its peers and even ahead of many large electronic service providers and social media companies. No content moderation program can be 100% effective at preventing online harms; however, MindGeek has taken reasonable steps to limit exploitative material and to take appropriate steps to address such content when it is discovered.

Caltagirone Decl. ¶ 3. Likewise, ███████████, a former senior analyst for the National Center for Missing and Exploited Children ("NCMEC"), joined MindGeek as ████████████████████████████, with the "understanding that MindGeek was a standard bearer in moderation in the online adult entertainment industry." ████████ Decl. ¶ 2. A review of the extensive

programs that MindGeek has developed and implemented (summarized below) to combat CSAM establishes this conclusively; all Plaintiff comes forward with is allegations and innuendo. This is plainly insufficient to meet her burden at the class certification stage.

## I. MindGeek's Best-in-Class Technology and Human Moderation to Detect and Report CSAM

Since before the start of the class period, the MindGeek Tube Sites' Terms of Service ("TOS") have expressly prohibited "post[ing] any Content that depicts any person under 18 years of age . . . whether real or simulated." *See, e.g.*, Ex. 1 at 548; Ex. 2 at 587-88; Ex. 3, 2020 Transparency Report. Those who wish to upload content must create an account and agree to be bound by the TOS, including the prohibition against the upload of CSAM. ██████████ 30(b)(6) Tr. 28:10-14; 86:14-20. The TOS also require anyone who wants to post an adult video onto a MindGeek site to obtain and maintain written documentation sufficient to confirm all performers in the video are at least 18. *See, e.g.*, Ex. 1 at 587-88; Ex. 2 at 541-42.

In addition to the TOS, MindGeek has used a combination of technology and human moderation that continues to rapidly advance, such that content uploaded at the beginning of the class period was handled using different technology and processes than content today. *See Fleites* 2022 WL 1314035, at *5 ("[t]he difficulty of inquiring into Defendants' practices at varying time periods would compound the already arduous task of wading through the individualized circumstances giving rise

to Plaintiffs' claims."). As MindGeek's ████████████ explained, "we continue to try and evolve. The system today is better than the system was 10 years ago. The system 10 years from now will be better than the system that we have today." *See* Ex. 4, ██████ Tr. at 218:3-7.

## II. Cutting Edge Technology Tools to Detect CSAM Evolved

MindGeek integrated, developed, and improved upon a variety of technological tools that were developed over the course of the class period and designed to detect apparent CSAM before it is viewable by the public. Ex. 5, MindGeek_NDAL_00178853. These tools fall into two categories: (i) hash-related tools,[2] which create unique digital fingerprints—or hashes—for each piece of content by identifying, extracting, and summarizing characteristic components of the images and that compare the hashes of content sought to be uploaded against databases of hashes for known CSAM; and (ii) artificial intelligence ("AI") tools,[3] which use artificial intelligence to detect potential CSAM that is not otherwise contained in a known CSAM hash database.

---

[2] ██████ Decl. ¶ 8 (Vobile MediaWise has been used to screen content against known CSAM and to fingerprint suspected or potential CSAM since November 2019; CSAI Match/January 2020; PhotoDNA/2020; Safeguard/August 2020; Safer by Thorn/January 2021; Instant Image Identifier/December 2022).

[3] ██████ Decl. ¶ 8 (Google Content Safety API/June 2020; Microsoft Azure Face API, plus internal software/July 2021); Ex. 10 (Spectrum Labs AI for contextual comment moderation in September 2021); Ex. 11 (proprietary age estimation tool).

In addition, MindGeek has had a practice for years of requesting government identification cards ("IDs") for performers when there is a question about the age of a performer. Ex. 6, ███████ 30(b)(6) Tr. 61:24-62:9; Ex. 7, ███████ Tr. 203:6-20; Ex. 8. In 2020, MindGeek added Yoti, a third-party tool, to verify the identities and ages of all uploaders to Pornhub. Ex. 9.

Although a cornerstone of Plaintiff's motion, and indeed the premise of this class action, is that MindGeek should have required all performers to present identification to show that they were over 18 years old, checking IDs is not a panacea. As former FBI Special Agent Joseph Fonseca notes in his expert declaration: "Age verification by requiring government issued ID for all performers of sexual content is not a cure-all because underage individuals and others doing illegal activity will often use fake identifications to conceal their identities." Fonseca Decl. ¶ 41. For example, much adult content does not include a performer's face; and even if it does, a video created when the performer is underage could still be uploaded with a performer ID once he or she has reached the age of majority. *See* Caltagirone Decl. ¶¶ 43-44; Fonseca Decl. ¶ 42.

## III. Human Moderation Experiences Decade-Long Growth

After content is subjected to the technological tools in place at the time of upload, and before the content "goes live," the content is reviewed by a human moderator to detect potential CSAM. Ex. 12 at 164. Moderators go through

extensive training to detect CSAM, including theoretical and practical training, shadowing senior moderators, and conducting supervised moderation. *See, e.g.*, Ex. 12**;** Ex. 6, ███████ 30(b)(6) Tr. 161:17-165:18.

As part of this process, moderators review the metadata associated with each piece of content (including titles and tags), Ex. 6, ███████ 30(b)(6) Tr. 86:4-87:6; 184:15-185:2, and use judgment in evaluating a number of factors through visual and audio review relating to how and where the individuals are depicted—*i.e.*, how developed individuals appear; what they are wearing; what the environment looks like; and what items are used. *Id.* at 260:21-261:10. If the content is determined to depict even potential CSAM, it is disabled so it cannot be searched or viewed. Ex. 3, 2020 Transparency Report.

The number of moderators employed increased over time as the number of uploads to the Tube Sites grew. Today, the Compliance Team, including moderation, has grown to approximately 186 members. ███████ Decl. ¶ 7.

Additional levels of review were added over time. Since at least 2013, the Compliance team began regularly auditing live content uploaded to the Tube Sites. Ex. 13; Ex. 7, ███████ Tr. 20:16-21:4. Starting in the Spring of 2020, a new Trust & Safety Group (T&S) was formed to improve MindGeek's ability to combat suspected CSAM.

## IV. Other Functions to Assist Moderators Changed Over Time

In addition to MindGeek's use of evolving technology and human review, content and uploaders were subjected to other important processes, depending on when the content was uploaded. Such functions included banned word detection starting in 2011, Ex. 14; banning users from before 2015, Ex. 6, ███████ 30(b)(6) Tr. 277:4-14; implementing an electronic content removal request form ("CRR") in 2015, Ex. 15; enhancing CRRs with automatic disabling of reported content in 2020, Ex. 16; and discontinuing the download feature in 2020 (*id.*). In 2020, MindGeek centralized its efforts to establish relationships with NGOs, non-profit organizations, and others to assist with MindGeek's mission to keep CSAM off its websites. *See, e.g.*, Ex. 17; Ex. 18.

One example of the progress made possible through those relationships is that in July 2020, MindGeek partnered with the Lucy Faithfull Foundation to deploy deterrence messaging on its websites to users who appear to be searching for CSAM. Caltagirone Decl. ¶ 52; Ex. 19.

## V. CSAM Review and Reporting to NCMEC Undergoes Change

In 2020, MindGeek took several steps to re-review live and previously removed content for potential CSAM. Ex. 20, ███████ 30(b)(6) Tr. at 64:4-11; 101:3-5. As part of this effort, MindGeek reviewed content removal requests (CRRs) and comments identified via keywords; re-reviewed user flags that

suggested the presence of potential CSAM; searched for titles with newly banned words; and re-reviewed content of previously banned users. Ex. 6, ████████ 30(b)(6) Tr. 96:15-97:3; 105:23-106:1; 109:25-110:9; 117:18-120:21; Ex. 20, █ ████████ 30(b)(6) Tr. 76:12-22 ; 103 :2-104 :25. MindGeek also scanned all previously uploaded content using the then-available hashing tools to determine if any content matched to databases of known CSAM hashes. ████████ 30(b)(6) at 76:8-11; 103:2-104:25.

While MindGeek has cooperated with law enforcement requests for years, in March of 2020, MindGeek began voluntarily reporting all apparent CSAM— regardless of whether it is in fact CSAM—to NCMEC. Ex. 5; Ex. 21; Ex. 20, █ ████████ 30(b)(6) Tr. 21:13-18; 149:11-18; 187:10-13. Although Plaintiff argues that MindGeek should have begun reporting to NCMEC earlier, NCMEC's written statements have confirmed there is no legal requirement for websites located outside the U.S. (like MindGeek) to do so. *See, e.g.,* Ex. 22.

In June 2020, MindGeek began to reclassify content previously uploaded and new content sought to be uploaded under a designation "TOS08" for potential CSAM. ████████ Decl. ¶¶ 9-11. The TOS08 list referred to by Plaintiff is not limited to actual CSAM but also includes *all* potential CSAM content identified through the efforts described above, moderation, and external complaints. This includes content as to which it was not possible to determine whether the content

actually depicts an underage person; it also includes duplicate content; content that never went live; and multiple videos depicting the same individuals. Ex. 20, ███ ███ 30(b)(6) Tr. at 151:13-152:3; ███████ Decl. ¶¶ 9-14.

## VI. Plaintiff's Experience Is Unique and Differs Materially from that of Other Putative Class Members

Plaintiff's claims require a fact-intensive inquiry, and the record demonstrates her experience is unique. Plaintiff was ████████████████████ ████████████████████████████████ Ex. 23, Angie Stephens' Notes ; Ex. 24, Powe Evaluation; Ex. 25. Doe Tr. at 143:20-144:3. █████████████████████████████████████ ████████████████████ Ex. 26; Ex. 27; Ex. 25, Doe Tr. at 202:18-204:4. █████████████████████ Ex. 25, Doe Tr. at 202:18-204:4. ███████████████████ █████████████████████ Ex. 23, Angie Stephens' Notes; Ex. 25, Doe Tr. at 174:7-175:5.

████████████████████████████████ ██████████ Ex. 28, Police Report; Ex. 25, Doe Tr. at 224:12-19. ██ ████████████████████ Ex. 25, Doe Tr. at 144:12-15. █████████████████████████████████████ █████████████████████████████████████ ████████████████████ Ex. 25, Doe Tr. at 244:18-245:6. ████





Ex. 29.

Ex. 25, Doe Tr. at 212:5-19.

Ex. 25, Doe Tr. at 225:13-21.

Ex. 28 at 453-54.

Ex. 28, Police Report; Ex. 25, Doe Tr. at 165:13-167:4; 191:16-20.

Exs. 24, 30.

*Id.*

Apart from the word ▮ in the title of the second video, Plaintiff concedes the videos had no titles, tags, flags or comments suggesting the videos were CSAM. Exs. 29, 30, 31. In fact, Plaintiff admits that there is nothing in the two videos that

suggests they contain underage content.  Ex. 25, Doe Tr. at 249:11-22; 251:16-23; 255:6-11.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████  Ex. 27.  MindGeek fingerprinted the videos, and reported the ones with potential CSAM to NCMEC.  Ex. 30.  ████████

███████████████████████████████████████████████████████

████████████████████████████████████  Ex. 25, Doe Tr. at 248:4-7.

## LEGAL STANDARD

To demonstrate that class certification is appropriate, Plaintiff must prove she meets all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997).  "Rule 23 does not set forth a mere pleading standard." *Dukes,* 564 U.S. at 350.  Certification is proper only if, after "rigorous analysis"—which may entail some overlap with the merits of Plaintiff's claims—Plaintiff satisfies all of the requirements of Rule 23. *Id.* at 351.

"[T]he presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation."  *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).  Accordingly, "[t]he party seeking class certification has the burden of proof" that a class should

be certified, *id.*, and "if doubts remain about whether the standard is satisfied," the motion for class certification must be denied. *Id.*; *accord Davis v. Mar-Jac Poultry*, 2021 WL 2556012, at *12 (N.D. Ala. Mar. 30, 2021) (Coogler, J.).

## ARGUMENT

## I. There Are No Qualifying Common Questions, and Individual Issues Predominate

Rule 23(a)(2) requires Plaintiff to show "there are questions of law or fact common to the class." *Dukes*, 564 U.S. at 345. To satisfy this requirement, the claims "must depend upon a common contention . . . which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 (citation omitted) (internal quotations and citation omitted) (ellipsis in original).

Plaintiff must also establish that any qualifying common issues predominate over non-common issues. *See* Fed. R. Civ. P. 23(b)(3). "The predominance inquiry focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (citation omitted).

Plaintiff attempts to avoid these requirements by listing eight purportedly "common" questions. Mot. at 14-15. But it is not enough to merely point to some common element that each class member must prove. "What matters to class

certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original). Here, the *answers* to the questions of whether MindGeek "received or distributed CSAM" depicting a particular class member—or "participated in sex trafficking ventures" involving a particular class member—depend on circumstances specific to *that class member*. *See id.*

Tellingly, none of the so-called "common issues" have anything to do with Plaintiff or any putative class member. Instead, Plaintiff focuses on abstractions such as whether MindGeek "participated in sex trafficking ventures." That is not a common question under *Dukes* because it is not susceptible to a classwide common answer. To the contrary, "human trafficking crimes are highly unique in their circumstances." Caltagirone Decl. ¶ 29; *see also* Fonseca Decl. ¶¶ 23-30 (discussing case specific nature of trafficking investigations).

Likewise, knowing "[w]hether CSAM has appeared on MindGeek's websites," Mot. at 14, is neither necessary nor sufficient to establish a trafficking claim. Even if the questions raised by Plaintiff could be answered using common evidence (and most cannot), those answers would not resolve the essential elements of any putative class member's claims.

Proper consideration of whether questions of law or fact common to class members predominate "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). But establishing the required elements for each of the claims Plaintiff seeks to certify would necessitate "individualized mini-trials" to establish liability. Plaintiff's reference to purportedly common "practices and policies that MindGeek has used to operate its websites," Mot. at 15, does not solve this problem. Mot. at 9. Even where class members' injuries arise out of a common policy (which is not the case here), individual issues predominate unless the policy affected every class member in the same way. "The idea that proof of a policy or practice of discrimination could establish that *every member* of the class is entitled to such damages is, given the substantive elements of the underlying cause of action, untenable." *Rutstein*, 211 F.3d at 1241 (emphasis in original). This point is illustrated by *Babineau v. Federal Express Corp.*, 576 F.3d 1183 (11th Cir. 2009). There, the Eleventh Circuit held that plaintiffs could not maintain a class action based on a theory that FedEx's policies pressured employees to work unpaid overtime. *Id.* at 1193-94. While plaintiffs might be able to prove that "FedEx had a policy of holding its employees to efficiency standards that were difficult to meet," individual issues regarding that policy's effect on each employee would still predominate. *Id.* at 1194; *see also Baker v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 3452469, at *4 (11th Cir. Aug.

18, 2022) (holding that plaintiffs could not maintain a class action based on an insurer's formula that systematically undervalued policyholders' claims unless they could show that "[the] formula *always* resulted in the underassessment of diminished value claims").

### A. Establishing Minority Is an Antecedent Requirement for Both of Plaintiff's Claims

To prevail on either of her claims, or even be a member of the proposed class, Plaintiff and each of the absent class members must establish that they were a minor at the time content depicting them was created. 18 U.S.C. §§ 1591(a), 1595, & 2252A. This question presents a highly individualized inquiry and, in most cases, cannot be done through the inspection of a photo or video. Joseph Fonseca, who submitted a declaration in support of MindGeek's Opposition, is a 23 year veteran of the Federal Bureau of Investigations who spent his career investigating crimes against children and violent crimes, including child sex trafficking and child pornography. Fonseca Decl. ¶¶ 4-8. As part of his investigation, he regularly reviewed potential CSAM and explains:

> Absent direct evidence, such as the image or video being of a known victim, it is very difficult to tell whether an individual is underage from a photo or video once they have gone through puberty. As a result, experienced law enforcement personnel frequently think a person in an image or video that appears to be CSAM is a juvenile, but upon investigation, discover they are generally over 18 years old.

Fonseca Decl. ¶ 35. This is true even for law enforcement officers who receive extensive specialized training and have access to law enforcement databases that the private companies do not have. *Id.* ¶ 36. Thus, in most cases, it is impossible to determine whether a video contains CSAM without a field investigation, which generally involves interviews of the purported victim. *Id.* ¶ 24. MindGeek has an inviolate due process right to hold Plaintiff and each of the absent class members to their proofs for each element of their claims, including minority at the time of filming. *See, e.g., Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Servs. Inc,* 601 F.3d 1159, 1171 (11th Cir. 2010) (holding that where claims were subject to different contract terms and different courses of dealing, class certification was improper because each plaintiff needed to demonstrate breach of contract as to them); *In re Fibreboard Corp.*, 893 F.2d 706, 711-12 (5th Cir. 1990) (holding procedure whereby class action trial would determine defendants' liability to 2,990 class members based on evidence regarding 41 plaintiffs violates due process).

### B. Sex Trafficking Claims Raise Highly Individualized Issues

#### 1. Sex Trafficking

Under the TVPRA, "Plaintiff[s] will have to show that they were trafficked within the meaning of the sex trafficking statute" which is "a fact-specific and plaintiff-specific inquiry." *Fleites*, 2022 WL 1314035, at *7. Specifically, to obtain

standing or prove her claim, each Plaintiff must establish she was a "victim" of a Section 1591 violation, and therefore each putative class member would need to prove (1) that someone "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed]" her; (2) "to engage in a commercial sex act;" (3) while knowing or recklessly disregarding that; (4) she was under 18 years old at the time. 18 U.S.C. § 1591(a). There are no common answers to the questions these required elements raise.

**First**, determining whether a plaintiff was recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited requires a highly individualized analysis. Here, for example, ███████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████ *See supra* Factual Background Part VI. Those circumstances differ from each other, let alone from the experiences of other class members. Whether an individual was "recruited" or "enticed" for purposes of a sex-trafficking claim requires investigation and cannot be detected with the information available to MindGeek, even if that information included Plaintiff's picture ID verification. *See* Fonseca Decl. ¶ 17. Making this determination for thousands of class members—each with very different experiences—cannot be done on a group basis.

**Second**, each plaintiff would need to prove the uploader's state of mind with respect to her age. *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 840 (C.D. Cal. 2021) ("*MindGeek I*"). But establishing whether a person "knew or recklessly disregarded" a fact is necessarily based on a variety of different facts and circumstances and is not amenable to a "common method of proof." *Green v. Fed. Exp. Corp.*, 614 F. App'x 905, 908 (9th Cir. 2015); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (holding that individualized questions regarding what customers "knew or should have known" about the defendant's policies precluded class certification). Here, the required proof will turn on the states of mind of thousands of *third parties* who created or uploaded the content, rendering the inquiry exponentially more difficult—while some class members may have been the subject of content created by an ex-boyfriend who might have known their age, others might appear in content created by a total stranger with no such knowledge.

**Third**, each plaintiff will need to prove that the uploader "had the intent to monetize the videos at the time they were made." *MindGeek I*, 558 F. Supp. 3d at 840. The Eleventh Circuit has recognized that establishing whether someone has "an expectation of compensation" presents an individualized question. *Babineau*, 576 F.3d at 1194–95. Here again, the circumstances and motives behind the creation of each video vary considerably. For example, some uploads are homemade "selfies" that are made and posted by the person in the video with no intent to

monetize.  Fonseca Decl. ¶ 39.  Others are made by couples for private viewing but subsequently uploaded.

### 2. Proving that MindGeek Is Secondarily Liable Raises Multiple Additional Plaintiff-Specific Issues.

In addition to the required showings necessary to prove trafficking occurred, to hold MindGeek liable, Plaintiff must prove it had knowledge of, and participated in, the sex trafficking venture.  These required showings give rise to a host of additional plaintiff-specific issues that are not amenable to class treatment.

***Knowledge of Each Plaintiff's Circumstances Is Necessarily An Individualized Inquiry.***  Knowledge may be established only by showing that MindGeek "knew or should have known that *[the] plaintiff* was the victim of sex trafficking *at the hands of [the] user who posted the content.*"  *MindGeek I*, 558 F. Supp. 3d at 839 (cleaned up) (emphasis added); *see also* Mot. at 30.  Under the statute, Plaintiff may satisfy that standard by proving MindGeek knew or recklessly disregarded the fact that Plaintiff was underage at the time the content of her was made.  18 U.S.C. § 1591(a)(2).

Contrary to Plaintiff's suggestion, this element cannot be established by showing MindGeek had a general awareness of CSAM on its sites.  Mot. at 14-15.  "[K]nowledge or willful blindness of a general sex trafficking problem … does not satisfy the *mens rea* requirements of the TVPRA."  *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).  Rather, *each class member* is required

to show that MindGeek had knowledge that the venture "violated the TVPRA *as to the plaintiff*." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) (dismissing TVPRA claim where the plaintiff failed to "allege facts showing these Defendants knew or should have known of [his] trafficking" specifically). By definition, this is an individualized inquiry.

For example, in *Tilton v. Playboy Entertainment Group, Inc.*, 554 F.3d 1371 (11th Cir. 2009), the plaintiff brought a claim under 18 U.S.C. § 2252A against a defendant who had taken sexual pictures of her when she was 17 years old. In affirming summary judgment for the defendant, the Eleventh Circuit held that proving the defendant's knowledge would require identifying specific facts or circumstances that would establish that he knew the images depicted a minor. *Id.* at 1378. The mere fact that the defendant observed the plaintiff did not confer knowledge that she was underage where she did not have "the obvious appearance of a minor." *Id.*

Proving specific knowledge or states of mind involves individualized questions unsuitable for class certification. *E.g.*, *Vega*, 564 F.3d at 1274 (11th Cir. 2009) (refusing to certify class where individualized evidence was required to show what each plaintiff "knew or should have known"); *Sacred Heart*, 601 F.3d at 1178 ("[W]here the defendant proffers individualized and varying evidence to defend

against claims of individual class members by showing what they knew or should have known about an allegedly illegal course of conduct … common questions will not predominate.") (internal quotations and citation omitted); *Davis*, 2021 WL 2556012, at *11 (Coogler, J.) (determining whether defendant had a discriminatory motive in not hiring applicants raised "plaintiff-specific issues").

Plaintiff does not proffer any realistic trial plan for how she could show MindGeek's knowledge that each class member was a victim of child sex trafficking at the hands of the uploader. She summarily contends the *mens rea* requirement can be established across the class because CSAM was present on MindGeek's sites and MindGeek did not do enough to remove and report such content. Mot. at 30-31. But viewing a video does not imbue knowledge of the subject's age or circumstances of the subject's participation. *See supra* Part I.A; Fonseca Decl. ¶¶ 35-36. Plaintiff also claims that MindGeek's knowledge can be inferred on a class-wide basis from the fact that MindGeek failed to ban certain keywords, including "preteen" and "underage." Mot. at 32. But Plaintiff does not contend that all—or even most— CSAM videos had such words in the titles, tags, or comments. For example, ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████ Ex. 25, Doe Tr. at 252:13-17. Apart from the word ███

Plaintiff concedes the videos had no titles, tags or comments suggesting the content depicted an underage person; and the videos were never flagged by the public for underage content. Exs. 29, 30, 31. She also admits that there is nothing in the two videos themselves that suggests they contain underage content. Ex. 25, Doe Tr. at 252:13-17. Indeed, ██████████████████████████████████████ ████████████████████████████████████████ Ex. 32, Aventa Medical Records.

*Participation In A Trafficking Venture Likewise Turns On Each Plaintiff's Circumstances.* Each putative class member must show that MindGeek participated in the "particular sex trafficking venture" that victimized her. *S.J. v. Choice Hotels Int'l*, 473 F. Supp. 3d at 154; *see also Red Roof Inns*, 21 F.4th at 725. This cannot be shown by common proof. This is not a case where a "single defendant [] harmed each" of the absent class members "in a nearly identical way." *Fleites*, 2022 WL 1314035, at *5. When Judge Carney severed 33 plaintiffs from the *Fleites* case, he observed that: "Plaintiffs' perpetrators are [] not the same individuals [and] Plaintiffs' interactions with the MindGeek Defendants also vary widely." *Id.* He added that the "difficulty of inquiring into Defendants' practices at varying time periods would compound the already arduous task of wading through the individualized circumstances giving rise to Plaintiffs' claims." *Id.*

This case stands in stark contrast to the cases on which Plaintiff relies—unlike here, each involved a *single* trafficking venture with a standardized *modus operandi*. In *Menocal v. GEO Group, Inc.*, 882 F.3d 905 (10th Cir. 2018), the sole defendant operated immigrant detention facilities and forced all detainees to perform similar labor pursuant to a uniform policy. And *Doe 1 v. JPMorgan Chase Bank, N.A.*, involved the defendant bank's relationship with a *single* perpetrator (Jeffrey Epstein), whose conduct constituted a single "sex-trafficking venture" using a "common *modus operandi*." 2023 WL 3945773, at *4, *9 (S.D.N.Y. June 12, 2023).

Nevertheless, Plaintiff argues MindGeek's participation in thousands of discrete trafficking ventures around the world can be presumed because MindGeek failed to prevent some users from posting CSAM to its sites. Mot. at 27-29. The Eleventh Circuit rejected this exact argument in *Red Roof Inns*. 21 F.4th 714. There, the plaintiffs alleged that defendant hotel companies participated in sex trafficking ventures by knowingly allowing criminals to use their hotels for prostitution and profiting from renting rooms to them. *Id.* at 719-20, 726. The Eleventh Circuit disagreed, explaining that the TVPRA requires proof the defendant "participated in a common undertaking … that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures" and that even if the defendants knew of and profited from the trafficking, "observing something is not the same as participating in it." *Id.* at 726-27. The Supreme Court reaffirmed this general principle earlier this year in the context of

civil aiding and abetting liability under the Justice Against Sponsors of Terrorism Act, noting that "aids and abets" refers to "a conscious, voluntary, and culpable participation in another's wrongdoing." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023). Passive awareness is simply not enough; individual participation must be shown.

Plaintiff's reliance on *Bridges v. Poe* for the proposition that MindGeek's alleged failure to prevent illegal conduct constitutes participation in it is misplaced. In *Bridges*, the defendant prison officials had an "affirmative duty under the Constitution to provide for the safety of inmates." 2022 WL 1598437, at *20 (N.D. Ala. May 19, 2022) (Coogler, J.). By contrast, "[t]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking." *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) (citation omitted); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020) (holding same); *see also A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) ("[A] failure to affirmatively prevent or inhibit sex trafficking does not constitute participation.").

### C. Plaintiff's Possession of CSAM Claim Cannot Be Addressed on a Classwide Basis

To prevail on their possession and distribution claim under 18 U.S.C. § 2252A, each putative class member would need to prove, among other elements, (1) that they were a minor when depicted in content that appeared on MindGeek's

websites and (2) that MindGeek actually knew they were underage at the time it received, possessed or distributed their videos. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Both questions present plaintiff specific individual inquiries that cannot be resolved through common evidence.

Plaintiff cites *United States v. Alfaro-Moncada* and *United States v. Dixon* for the proposition that "it is 'not necessary to prove that the defendant had actual knowledge' that the specific media constituted child pornography." Mot. at 36 (ellipses omitted). Plaintiff has it backwards. The criminal defendants in both of those cases appealed their convictions, arguing that the government had not presented sufficient evidence to the respective juries that the defendants had actual knowledge that the materials they possessed were child pornography. 607 F.3d 720, 733 (11th Cir. 2010); 589 F. App'x 427, 428 (11th Cir. 2014). In *Alfaro-Moncada*, while assessing the defendant's sufficiency challenge, the court first noted that: "To satisfy the knowledge element of § 2552(a)(4)(B), the government had to prove that Alfaro-Moncada **knew** the DVDs in his possession showed minors engaging in sexually explicit conduct." 607 F.3d at 733 (emphasis added). Likewise, in *Dixon*, the court reiterated that "the government must make a showing that the defendant knew the files in question contained a visual depiction of minors engaging in sexually explicit conduct." 589 F. App'x at 428. The court in both cases found sufficient evidence supporting the convictions. In *Dixon*, the defendant confessed

to searching for pornography online using search terms "that he knew would produce search results that often included very young girls" and to having "been downloading videos containing child pornography for about a year." *Id.* at 428.[4]  The court affirmed that the defendant's confession was sufficient evidence to support the jury verdict as to actual knowledge.

Plaintiff also claims that "[e]vidence that a defendant simply had taken any of the actions identified in § 2252A—received, possessed, accessed, or distributed content depicting underage persons—can be sufficient to prove that the defendant knowingly received, possessed, or distributed child pornography, even where there is no evidence the defendant had actual knowledge of the ages of those depicted in the videos."  Mot. at 36 (cleaned up).  This argument is contrary to the Supreme Court's holding in *X-Citement Video* that "'knowingly' in § 2252 extends both to the sexually explicit nature of the material *and to the age of the performers*." 513 U.S. at 78 (emphasis added).[5]

---

[4] These cases, as well as *United States v. Pruitt*, 638 F.3d 763, 767 (11th Cir. 2011) (where defendant also confessed to downloading child pornography), are also distinguishable because they were criminal cases where the government needed to prove only that the criminal defendants knowingly received *some* CSAM to obtain a conviction.  Here, to prosecute separate civil claims, each class member would need to prove that MindGeek violated § 2252A with respect to her specifically.  *See* 18 U.S.C. §§ 2252A(f), 2255(a).

[5] The Eleventh Circuit Pattern Jury Instructions (Criminal Cases) further confirm that in an 18 U.S.C. § 2252 case the government must prove that "the Defendant knew that at least one performer in the visual depiction was a minor and knew that

In light of the applicable legal standard, each class member will need to show that MindGeek received, possessed or distributed the content *while* knowing it was CSAM. Thus, in *Tilton*, the Eleventh Circuit held that a Section 2252A claim failed as a matter of law because the defendant posted images to his website that he believed depicted an adult and promptly removed them after being told they depicted a minor. 554 F.3d at 1378. Here, Plaintiff claims that MindGeek violated Section 2252A because it "has distributed CSAM and child pornography on its websites." Mot. at 34. But that is not enough. Assessing each putative class member's claims will require evaluating on a video-by-video basis whether it was obvious at the time of upload that the video depicted a minor, whether MindGeek later learned the video depicted CSAM, and, if so, whether MindGeek promptly removed the video, all of which require individualized inquiry. As discussed above, the record here is insufficient to support the *mens rea* standard for a claim under § 1595; it falls even further short of satisfying the actual knowledge standard for § 2252A. That is particularly so given that ███████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████ Ex. 27.

---

the depiction showed the minor engaged in sexually explicit conduct." Pattern Instruction O83.2 (2020) available at https://www.ca11.uscourts.gov/sites/default/ files/courtdocs/clk/FormCriminalPatternJuryInstructionsCurrentComplete.pdf at 564 (last visited 10/6/2023).

### D. Plaintiff's Demand for Compensatory, Punitive, and Statutory Damages Defeats Predominance and Makes Class Treatment Unmanageable.

"[I]ndividual damages defeat predominance if computing them "will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable." *Brown*, 817 F.3d at 1240 (citation omitted). "[I]ndividual damages [also] defeat predominance when they are accompanied by "significant individualized questions going to liability." *Id.* Both are true here. Plaintiff bears the burden of providing the Court with a methodology that accurately calculates damages across the entire class. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Here, Plaintiff has not proffered any feasible plan to calculate damages for the class at trial. *See Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 790 (11th Cir. 2014) (vacating class certification where Plaintiffs "did not identify … any method for quantifying their losses"). While Plaintiff suggests a list of "management tools" and proposals for alternative classes, Mot. at 41-42, *none* of these proposals provide any reasonable plan to calculate individual damages, and all would negatively impact manageability.[6] *See infra* Part IV. Plaintiff alleges:

---

[6] Plaintiff's cited cases do not support her arguments. Mot. at 40; *Brown*, 817 F.3d at 1240 (vacating district courts certification order and remanding with instruction to consider whether class members' claims present fact specific damage calculations); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (management tools could be used if necessary in case where "damages could be determined with the aid of a class-wide formula"), *abrogated by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006); *Herman v. Seaworld Parks*

"Defendants' conduct has caused class members including Plaintiffs serious harm including, without limitation, physical, psychological, financial, and reputational harm." FAC at ¶ 187, *see also id.* ¶¶ 192-93. There is no "formula, statistical analysis, or other easy or essentially mechanical method" to calculate these damages in a way that would ease predominance concerns and eliminate the need for individual inquiry. *Sacred Heart*, 601 F.3d at 1179. The "myriad of individual issues involved in the calculation of damages" including, but not limited to, physical and psychological damages that could have multiple contributing factors, "would place the court in the intolerable position of having to hold [thousands] of mini-trials" to determine damages. *Krukever v. TD Ameritrade, Futures & Forex LLC*, 328 F.R.D. 649, 662 (S.D. Fla. 2018).

Furthermore, Plaintiff admits that individualized damages predominate when "significant individualized questions go to liability." Mot. at 41. But to establish liability, it would need to be determined, at a minimum, (1) whether the class member appeared in content made available on one of MindGeek's websites and (2) whether the class member was under the age of 18 when the content was created—both highly individualized questions. *See supra* Part I.A and *infra* Part IV.

---

*& Ent., Inc.*, 320 F.R.D. 271, 296 (M.D. Fla. 2017) (individualized damages varied only "depending on the amount of the monthly payment and the number of … payments that were charged," and could be easily calculated based off of defendant's data).

Appointing a claims administrator or special master as suggested by Plaintiff would not alleviate these issues. *See City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 643 (S.D. Fla. 2010) (finding adjudication of liability, compensatory damages, and punitive damages via special master would be inappropriate and require hundreds of mini-trials).

Plaintiff's primary proposed solution to these problems is to suggest that the Court skip past any consideration of the extensive compensatory damages that Plaintiff alleges in her Complaint because an individual plaintiff may elect to receive liquidated damages as an alternative remedy under 18 U.S.C. § 2255. Mot at 38, 42. But as discussed in more detail *infra*, this willingness to give away rights renders Plaintiff an inadequate representative of the class. *See* Part II.A. Plaintiff cannot ameliorate her predominance problem by forfeiting the rights of absent class members.

Plaintiff's demand for punitive damages further underscores the inherent complexity of her damages request. In *State Farm Mutual Automobile Insurance Co. v. Campbell*, the Supreme Court admonished that any award of punitive damages must bear a sufficient nexus to the actual and potential harm to the individual plaintiff. 538 U.S. 408 (2003). Indeed, courts have recognized punitive damages cannot be awarded without first establishing individualized harm. *Rutstein*, 211 F.3d at 1228 (individual issues related to punitive damages made class action treatment

even less inviting since actual injury must be shown); *Ulysse v. Waste Mgmt. Inc.*, 2013 WL 11327137, at *2 (S.D. Fla. Sept. 13, 2013) (punitive damages "inherently individualized"); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 681 (N.D. Ga. 2001) ("punitive damages seek to remedy inherently individual injuries and can be recovered only after examining the particular circumstances of each individual class member"). As the court in *Ulysse* recognized, when different plaintiffs are seeking different damages, based on different conduct, that caused different injuries, "claims for compensatory and punitive damages necessitate an individualized inquiry inappropriate for certification under Rule 23(b)(3)." 2013 WL 11327137 at *3.

## II.     Plaintiff Does Not Satisfy the Remaining Requirements of Rule 23(a)

### A.     Plaintiff Is Not an Adequate Representative

To try to increase the odds that she will get a class—any class—certified, Plaintiff has suggested that the Court should certify a class for statutory damages only, Mot. at 42, rather than allow all class members to pursue compensation for the egregious physical and emotional damages that Plaintiff alleges she and all of the absent class members sustained. She has adduced no evidence or trial plan for how these compensatory damages can be addressed on a classwide basis and has thus constructively abandoned them.

"Courts have held that a class representative is inadequate when he abandons particular remedies to the detriment of the class." *Welch v. Atlas Roofing Corp.*, 2007 WL 3245444, at *4 (E.D. La. Nov. 2, 2007); *see also Drimmer v. WD-40 Co.*, 2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007) (finding plaintiff an inadequate representative where plaintiff failed to "seek[] all available remedies for the class members."). For example, in *Rollins v. Alabama Community College System*, the plaintiffs brought a gender discrimination case seeking both compensatory damages and injunctive relief claiming that they suffered compensable humiliation due to the defendant's discriminatory practices. 2010 WL 4269133, at *1 (M.D. Ala. Oct. 25, 2010). At the certification stage, plaintiffs had no plan for addressing compensatory damages on a classwide basis and simply disavowed them on behalf of the absent class members. *Id.* at *10. The court found this rendered the plaintiffs inadequate class representatives because they were willing to strip the class members of their "opportunity to prove the humiliation and suffering the Plaintiffs state that they experienced" and recover related compensatory damages, the adequacy requirement of Rule 23(a) was not satisfied. *Id.* at *11 (internal quotations and citation omitted). So, too, here.

In arguing that her pursuit of only statutory damages overcomes the insurmountable hurdles her actual damages claims would present, Plaintiff cites *In re Toys R Us*, 300 F.R.D. 347, 377 (C.D. Cal. 2013). Mot. at 17. In *Toys*, however,

plaintiffs were *only* seeking statutory damages for a technical violation of the Fair and Accurate Credit Transaction Act (receiving a receipt that did not omit the credit card number) and had not sustained any actual damages. 300 F.R.D. at 377 ("no class member seeks actual damages"). Thus, the class representatives' decision not to pursue such claims did not present the adequacy issues that arise here. The decision to elect actual or statutory damages is an individual's personal choice, not that of Plaintiff's or her counsel.[7]

## B. Plaintiff Is Not a Typical Class Member Under Rule 23(a)(3) Because She Is Subject to Unique Defenses.

The typicality requirement of Rule 23(a) "focus[es] on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000). "[T]ypicality may be defeated if factual

---

[7] Plaintiff's other cited cases likewise involve situations where actual damages were negligible or non-existent. Mot. at 39-40. The plaintiffs in *Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017), and *Authors Guild v. Google, Inc.*, 282 F.R.D. 384, 395 (S.D.N.Y. 2012), *vacated in part sub nom. Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132 (2d Cir. 2013), only asked for statutory damages, so there was "no need for any individualized inquiry into the harm suffered." *Authors Guild*, 282 F.R.D. at 395. Likewise, in *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 126, 130 (S.D.N.Y. 2011), which is not a case alleging personal injury as Plaintiff does here, the plaintiff did not allege that he or any member of the class sustained actual damages as a result of defendant's FACTA violations and only sought statutory damages, thereby "rais[ing] no other issue that could require individualized determination."

differences dominate." *Bryant v. Southland Tube*, 294 F.R.D. 633, 648 (N.D. Ala. 2013) (citation omitted). "Typicality is not present if the class representatives are subject to unique defenses that could be central to the litigation." *Id.* Although similar individualized issues are an unavoidable component of *any* trafficking or CSAM claim, these plaintiff-specific inquiries would necessarily be a central focus when prosecuting Plaintiff's own claim—because resolution of these questions shed no light on the claims of the absent class members, she is atypical of the class. *Id.*

That is particularly so regarding the determination of what injury is attributable to the uploading of content to Pornhub as opposed to other events given

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████ *See* Shelby Decl. ¶¶ 17, 19; Ex. 23, Angie Stephens' Notes; Ex. 24, Powe Evaluation; Ex. 25, Doe Tr. at 73:12-19; 92:16-93:19; 124:3-127:1. As Dr. Janine Shelby, a trauma psychologist that works with survivors of sexual abuse, explains in her declaration submitted in conjunction with MindGeek's Opposition: "[t]here is neither a uniform nor universal response among individuals who experience significantly adverse events." Shelby Decl. ¶¶ 26-31. Because resolution of these Plaintiff-specific questions would shed no light on the claims of the absent class members, she is atypical of the class.

## III. Plaintiff Cannot Establish the Elements for a Rule 23(b)(2) Class.

Because Plaintiff has failed to satisfy Rule 23(a)'s commonality, adequacy, and typicality requirements, she cannot proceed with an injunctive relief class. Plaintiff's injunctive relief class also fails for numerous additional reasons.

*First*, Plaintiff lacks Article III standing to seek injunctive relief because she has not established a threat of actual or imminent harm that is required to support injunctive relief. It is axiomatic that "actual or imminent"—not "conjectural [and] hypothetical"—injury is required for Article III standing to pursue prospective injunctive relief. *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1255 (11th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1176 (11th Cir. 2019) ("[W]ithout any threat of future injury, injunctive relief is unavailable."). In *Williams*, the Eleventh Circuit reversed the district court's certification of a settlement class under Rule 23(b)(2) and (b)(3) that included both damages and injunctive relief because none of the named plaintiffs had standing to seek injunctive relief. 65 F.4th at 1254-55. This was true even though the plaintiffs had standing to seek damages. *Id.* Here, Plaintiff does not identify any imminent harm that she would suffer absent injunctive relief. Nor can she because the record is clear: ███████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████ Mot. at 8, and Plaintiff is not aware of any re-uploads of the videos to any of MindGeek's sites.  Ex. 25, Doe Tr. at 248:4-13.  Any "fear" that the videos may be re-uploaded, *id.*, is "a plainly insufficient expression of future harm to confer Article III standing."  *Williams*, 65 F.4th at 1256; *see also Suncoast*, 938 F.3d at 1177 ("The chance that lightning might strike twice is not enough to justify injunctive relief.").

*Second*, there is no qualifying injunction that can support a (b)(2) class.  "'Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.'"  *Davis*, 2021 WL 2556012, at *12 (quoting *Dukes*, 564 U.S. at 360).  "'The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory relief warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them'"  *Id.* (*quoting Dukes*, 564 U.S. at 360).  As in *Davis*, "the plaintiffs have not identified an injunction or declaration that would provide relief to each member of the putative class."  *Id.*  To the contrary, Plaintiff's so-called "injunctive relief" is a hodgepodge of steps that her so-called expert posits would prevent CSAM from appearing on its websites in the future.  Weaver Decl. ¶¶ 14-17.  Plaintiff cannot even show how the injunction would provide relief to her since her offending videos were removed, fingerprinted, and reported to NCMEC, and

Plaintiff testified she is not aware that they have been re-uploaded to a MindGeek site or any other site.

**Finally**, but no less fundamentally, the putative class does not qualify for certification under (b)(2) because Plaintiff seeks vast amounts of money, including statutory, compensatory, and punitive damages. Mot. at 38-43. As the Supreme Court clarified in *Dukes*, "Rule 23(b)(2) does not authorize class certification when each individual class member would be entitled to . . . an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61; *accord Likes v. DHL Exp.*, 288 F.R.D. 524, 537-38 (N.D. Ala. 2012) (class certification under Rule 23(b)(2) inappropriate "because of the non-incidental monetary damages sought under the WARN Act and the Supreme Court's decision in *Dukes*). "In the instant case, plaintiffs have prayed for compensatory and punitive damages . . . . These forms of relief are anything but equitable in nature; they are, in fact, the very definition of *legal* relief. *Rutstein*, 211 F.3d at 1239 (rejecting (b)(2) certification) (emphasis in original). "Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery." *Suncoast*, 938 F.3d at 1176–77 (citation omitted); *see also Casa Orlando Apartments, Ltd. v. Fed Nat'l Mortg. Assoc.*, 624 F.3d 185, 198-99, 201 (5th Cir. 2010) (denying (b)(2) certification "[b]ased on the significant monetary relief sought

and less central injunctive relief," which would have benefited less than forty percent of the class).[8]  Plaintiff's demand for a Rule 23(b)(2) class should be denied.

## IV.    Plaintiff's Proposed Class Is Not Ascertainable.

Rule 23(a) requires Plaintiff to show that her proposed class is "adequately defined and clearly ascertainable."  *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).  The proposed class consists of:

> All persons, who were under eighteen years of age at the time they were depicted in any video or image, (1) in any commercial sex act as defined under 18 U.S.C. §§ 1591 and 1595, or (2) in any child pornography as defined under 18 U.S.C. § 2252A, that has been made available for viewing on any website owned or operated by the Defendants.

Mot. at 1.  It fails to satisfy either the ascertainability or definition requirement.

***First***, the class is not clearly ascertainable because it is defined through "vague or subjective criteria."  *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th

---

[8] The cases that Plaintiff cites are worlds away from this case.  *Postawko v. Missouri Department of Corrections.*, 910 F.3d 1030, 1040 (8th Cir. 2018), and *Yates v. Collier*, 868 F.3d 354, 367–68 (5th Cir. 2017), are suits brought by prison inmates seeking more humane treatment, such as medical care or air conditioning.  The suits were not seeking damages.  The remaining cases that Plaintiff cites—*Winston v. Jefferson County*, 2006 WL 6916381 (N.D. Ala. June 26, 2006), and *Scott v. City of Anniston*, 682 F.2d 1353 (11th Cir. 1982)— are civil rights cases, which is the core of what a (b)(2) case is about.  They also predate *Dukes* so to the extent that Plaintiff relies on them to suggest that individual damage assessment can be part of a (b)(2) class, they have been abrogated by *Dukes*.  *See Dukes*, 564 U.S. at 360 ("[A]t a minimum, claims for individualized relief (like the backpay at issue here) do not satisfy the Rule."); *see also Rutstein*, 211 F.3d at 1240. ("[M]oney damages are directly related to the disparate merits of individual claims and are not generally applicable to the claims of the class as a whole.") (citation omitted).

Cir. 2021).  Although Plaintiff makes conclusory arguments that her definition involves "objective criteria," Mot. at 12, she does not explain how one could objectively determine for all putative class members whether they were even in any content depicted on a MindGeek Tube Site.  This is difficult, if not impossible, to determine with objective criteria especially where the faces in the videos are either not shown or not clear enough to identify the person depicted.

> There are many difficulties even experienced and trained law enforcement officers encounter when attempting to identify victims of child sex trafficking.  Children who are advertised on the internet for prostitution by traffickers (also known as pimps) are more conservative about their appearance.  For example, they would typically turn from a camera and provide pictures only of their breasts, vagina, or penis.  It is nearly impossible to identify post-pubescent children simply by these types of pictures.  Similarly, it is nearly impossible to identify post-pubescent children by videos where there is no dialogue between the potential victim and the exploiter, and it is not possible to hear whether the diction appears to be from a young teen or someone who is over 18 years old.

Fonseca Decl. ¶ 36.

Plaintiff also does not explain how one can determine for all class members whether they were underage when depicted in a commercial sex act or any CSAM; it will not be possible in most cases to determine with objective criteria when content uploaded to a MindGeek site was created, precluding one from determining how old each class member was on the creation dates.  As to whether someone was engaged in a commercial sex act, there would also need to be a subjective determination as

to whether there was a sex act on account of which "anything of value" is given to or received by any person. 18 U.S.C. § 1591(e)(3).

It is not clear what Plaintiff means by including references to §§ 1591, 1595 and 2252A in her proposed class definition. But if the intent is to define the class to include individuals with claims under those provisions, membership would be even less susceptible to evaluation using objective criteria. Under §§ 1591 and 1595, one would need to evaluate whether someone had enticed or solicited each person to engage in a commercial sex act knowing or recklessly disregarding that they were underage; whether someone who satisfied the foregoing requirement did so with the intent to monetize the recordings when they were made; whether MindGeek participated in a particular commercial sex trafficking venture involving each individual class member; and whether MindGeek knew or should have known of such venture at the time. Under § 2252A, it would be necessary to consider whether MindGeek had actual knowledge that each image depicting a putative class member depicted an underage person at the time it was made.

Moreover, a class definition that requires determinations of legal issues such as whether someone was a victim of "commercial sex trafficking" or "child pornography" would constitute a prohibited "'fail-safe' class[], whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury." *Cordoba v. DIRECTV, LLC*, 942 F.3d

1259, 1277 (11th Cir. 2019).  Such a class definition that "uses legal terminology whose application is linked to the ultimate merits of this case" is impermissible because it makes class eligibility dependent on "finding that any given plaintiff had a viable claim against [the defendant]" in the first place.  *Hurt v. Shelby Cnty. Bd. of Educ.*, 2014 WL 4269113, at *1 (N.D. Ala. Aug. 21, 2014).  These kinds of class definitions are "patently unfair" because they allow plaintiffs to "circumvent res judicata" and "rig the certification process so that they cannot lose."  *Id.* at *8; *see also MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, 342 F.R.D. 347, 355 (S.D. Fla. 2022) ("[s]uch a class 'precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class.'" (quoting *In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012)).

**Second**, the proposed class is not adequately defined but is instead fatally overbroad.  For example, the proposed definition contains no geographical limitation and would apparently sweep in class members that suffered their injuries in multiple foreign countries.  In fact, according to NCMEC only 10% of all CSAM reported by U.S. companies comes from the United States.  NCMEC, *CyberTipline 2022 Report*, https://www.missingkids.org/cybertiplinedata ("[M]ost CyberTipline reports, 89.9% in 2022, involve the upload of child sexual abuse material by users outside of the U.S.").  The statutes at issue in this case do not apply to sex crimes committed abroad involving non-U.S. persons.  "When a statute gives no clear indication of an

extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010); *see also Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454 (2007) ("United States law governs domestically but does not rule the world"); *cf. Fleites*, 2022 WL 1314035, at *7 (recognizing that the attempt to bring claims by foreign plaintiffs in U.S. courts raises multiple legal and factual issues).[9]

Plaintiff's definition would also include potential *perpetrators* of sex crimes, such as teenagers who post content of themselves or other teenagers and includes no time limiter.

## V.    A Class Action Is Not a Superior Means of Adjudicating the Highly Individualized Claims of The Putative Class

Class certification is equally unwarranted because Plaintiff has failed to demonstrate how "the class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The focus is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart*, 601 F.3d at 1184. Therefore, predominance has a tremendous impact on the superiority analysis. *Id.* Where, as here, there is no predominance, "a class action is almost

---

[9] The TVPRA provides for limited extraterritorial jurisdiction over sex trafficking committed outside the United States by U.S. persons. 18 U.S.C. § 1596. That provision would not apply to content posted by foreign users depicting foreign victims. Nor could it apply to claims by such victims against non-U.S. companies like MG Freesites Ltd.

certainly not superior to other available methods for fairly and efficiently adjudicating the controversy." *Vega*, 564 F.3d 1256, 1278 n.18 (11th Cir. 2009).

Superiority is clearly lacking here for a number of additional reasons. ***First***, "[s]ubsection (b)(3) was designed to provide vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Ulysse*, 2013 WL 11327137, at *4, 6 (citations omitted). The statutes under which Plaintiff seeks class relief allow recovery of substantial statutory and punitive damages as well as attorneys' fees for a successful litigant. 18 U.S.C. §§ 1595(a), 2255(a). Given "the relative substantial value of these claims … and the availability of attorney's fees eliminate financial barriers that might make individual lawsuits unlikely or infeasible," Plaintiff cannot establish superiority. *Ulysse*, 2013 WL 11327137, at *4; *see also Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 669 (N.D. Ala. 2010) (superiority not met in part because statutory damages, punitive damages, attorney's fees and costs available). Under these circumstances, it becomes clear that there is nothing to be gained by certifying this case as a class action; nothing, that is, except the blackmail value of a class certification that can aid the plaintiffs in coercing the defendant into a settlement." *Rutstein*, 211 F.3d at 1228 n. 21.

***Second***, Plaintiff and her counsel have presented no workable trial plan to explain how they intend to resolve—class-wide—the many issues her claims

present. Plaintiff argues that "the only potential difficulties that may arise in managing this class action would relate to any individual damages claims …," Mot. at 47, but Plaintiff fails to consider the myriad issues—such as whether each Plaintiff was a victim of commercial sex trafficking under § 1591, whether MindGeek participated in any sex trafficking venture involving each class member, and whether MindGeek possessed the requisite *mens rea* for each of her claims—that must be resolved before reaching any question of damages. Indeed, Plaintiff has not even explained how class membership—which requires as a threshold issue proof that individuals were, in fact, in content uploaded to a MindGeek Tube Site and that they were underage when the content was created—can be determined without the need for mini-trials. *Ulysse*, 2013 WL 11327137, at *4. Simply put, class certification is "improper for classes that require individualized proof" of each plaintiff's claim and to the extent each plaintiff would be required to present proof of individualized damages. *Tershakovec v. Ford Motor Co.*, 2023 WL 4377585, at *11 (11th Cir. July 7, 2023) (vacating and remanding the district court's certification of classes with instructions to consider the necessary individualized proof of each plaintiff's claims); *Wright v. Dep't of Ala. VFW*, 2010 WL 11569414, at *7 (N.D. Ala. Mar. 24, 2010) (holding class action was not superior where "each class member would be required to present evidence of the dates on which he or she played a game, which

game or games he or she played, and the amount of money won or lost in each game").

## VI. Plaintiff Cannot Solve These Individualized Issues by Seeking an Issues Class

As a fallback, Plaintiff proposes a number of issue classes, the number of which is unclear but appears to be at least five, pursuant to Rule 23(c)(4). Mot. at 42, 49. But this proposal would do little to advance resolution of this case because, as set forth above, none of the elements of either of Plaintiff's claims can be resolved via common proof. *See supra* Parts I.A-C. Even if certain general issues related to MindGeek's conduct could theoretically be addressed on a uniform basis (and most cannot), resolving those issues would still leave a host of issues individual to each plaintiff. "[I]f [the Court] certified an issue class, each class member's claim would still need to be separately tried to determine issues such as" whether a member is a victim of commercial sex trafficking; MindGeek's knowledge of any specific member's content; and MindGeek's participation in a venture with the class member's trafficker. *Ray v. Jud. Corr. Servs., Inc.*, 333 F.R.D. 552, 580 (N.D. Ala. 2019). The Rule 23(c)(4) class thus "would not promote judicial efficiency" because "Plaintiffs' case for certification collapses when it confronts the fact that certification of a common issues class will not dispose of a single case or eliminate the need for a single trial." *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 321 F.R.D. 430, 447 (N.D. Ga. 2017).

Moreover, the remaining individual issues would unquestionably continue to predominate over any purportedly common issues. "[C]ourts have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement." *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 316 (S.D. Ala. 2006) (collecting authorities); *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial."). *In re Atlas Roofing* is illustrative. In that case, Plaintiff sought to bring a class action against the manufacturer of allegedly defective roofing shingles alleging breach of warranty and consumer fraud. 321 F.R.D. at 436-37. Plaintiff argued that, at a minimum, the court could address whether the shingles were defective via a Rule 23(c)(4) class. *Id.* at 447. The court rejected this argument, holding that "even if the Plaintiff could establish in a class-wide trial that the shingles suffer from a common manufacturing defect, each class member's claim will still need to be separately tried to determine issues like causation, notice, and statute of limitations. It is these individual issues that will predominate." As individual issues predominated and the proposed Rule 23(c)(4)

class would not have served to resolve any of the plaintiff's claims, Rule 23(c)(4) class certification was rejected. *Id.* The same result is warranted here.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification should be denied.

DATED: October 10, 2023

Respectfully submitted,

/s/ *Sara M. Turner*
Sara M. Turner
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
smturner@bakerdonelson.com
1901 Sixth Avenue North
Suite 2600
Birmingham, AL 35203
Phone: (205) 250-8316

Kathleen N. Massey (*pro hac vice*)
Hayden Coleman (*pro hac vice*)
DECHERT LLP
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October 2023, this document was filed through the Electronic Case Filing System of the United States District Court for the Northern District of Alabama and will be served electronically by the Defendants to all participants of record along with copies of all sealed and unredacted documents.


/s/ *Sara M. Turner*
Sara M. Turner