## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA,
## WESTERN DIVISION

| | |
|---|---|
| JANE DOE #1 and JANE DOE #2 on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II, LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD;  MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC, INC., d/b/aMINDGEEK); MG BILLING LTD<br><br>          Defendants. | CIVIL ACTION NO. 7:21-CV-00220<br><br>Honorable L. Scott Coogler<br><br>**OPPOSED** |

## DEFENDANTS' MOTION TO EXCLUDE
## DECLARATION OF TIMOTHY WEAVER

Sara M. Turner
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1901 Sixth Avenue North, Suite 2600
Birmingham, AL 35203
Phone: (205) 250-8316
smturner@bakerdonelson.com

Kathleen N. Massey (*pro hac vice*)
Hayden Coleman (*pro hac vice*)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
kathleen.massey@dechert.com
hayden.coleman@dechert.com

***Attorneys for Defendants***

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................1

LEGAL STANDARD...............................................................................3

ARGUMENT .............................................................................................4

I.  Federal Rule of Evidence 702 Must Be Satisfied As Part of the Class
Certification Rigorous Analysis. ........................................................4

II. Weaver is Unqualified to Proffer Testimony on Appropriate Content
Moderation Policies. ...........................................................................5

III. Weaver's Declaration Is Unreliable Under F.R.E. 702. ...................10

    A.     Weaver Has No Methodology and His Opinions Are
Unconnected to Any Standard of Care..............................11

    B.     Weaver's Opinions Are Not Supported By Reliable Evidence. ........13

CONCLUSION .....................................................................................18

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Braggs v. Dunn*,
  317 F.R.D. 634 (M.D. Ala. 2016)....................................................................1, 4

*Brown v. Roche Labs., Inc.*,
  2013 WL 2457950 (N.D. Ga. June 6, 2013)........................................................6

*City of Tuscaloosa v. Harcros Chems.*,
  158 F.3d 548 (11th Cir. 1998) ............................................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)...................................................................................*passim*

*Dukes v. Georgia*,
  428 F.Supp.2d 1298 (N.D. Ga. 2006)................................................................10

*Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*,
  402 F.3d 1092 (11th Cir. 2005) ...................................................................11, 17

*Harvey v. Novartis Pharm. Corp.*,
  895 F. Supp. 2d 1206 (N.D. Ala. 2012)..........................................................5, 7

*Kilpatrick v. Breg, Inc.*,
  613 F.3d 1329 (11th Cir. 2010) ........................................................................11

*Krukever v. TD Ameritrade, Futures & Forex LLC*,
  328 F.R.D. 649 (S.D. Fla. 2018).........................................................................4

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  892 F.3d 624 (4th Cir. 2018) ............................................................................13

*Lopez v. I-Flow Inc.*,
  2011 WL 1897548 (D. Ariz. Jan. 26, 2011) .....................................................11

*Lowery v. Sanofi-Aventis LLC*,
  2021 WL 872620 (N.D. Ala. Mar. 9, 2021) ................................................5, 6, 7

*McClain v. Metabolife Int'l, Inc.*,
   401 F.3d 1233 (11th Cir. 2005) ......................................................................3, 11

*PODS Enters., Inc. v. U-Haul Int'l, Inc.*,
   2014 WL 12628664 (M.D. Fla. June 27, 2014) ...........................................11, 13

*Ray v. Jud. Corr. Servs., Inc.*,
   2017 WL 4180910 (N.D. Ala. Sept. 21, 2017).....................................................4

*Rink v. Cheminova, Inc.*,
   400 F.3d 1286 (11th Cir. 2005) ............................................................10, 11, 15

*Roberts v. The Scott Fetzer Co.*,
   2010 WL 3937312 (M.D. Ga. Sept. 30, 2010) .....................................................4

*Sher v. Raytheon Co.*,
   419 F. App'x 887 (11th Cir. 2011) .......................................................................4

*Skypoint Advisors, LLC. v. 3 Amigos Prods. LLC.*,
   585 F. Supp. 3d 1326 (M.D. Fla. 2022)................................................................5

*Southern Indep. Bank v. Fred's Inc.*,
   2019 WL 1179396 (M.D. Ala. Mar. 13, 2019) .....................................................5

*United States v. City of Miami*,
   115 F.3d 870 (11th Cir. 1997) .......................................................................13, 18

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) .......................................................................6, 11

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000)...........................................................................................10

*Whiting v. Bos. Edison Co.*,
   891 F. Supp. 12 (D. Mass. 1995).........................................................................5

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
   644 F. Supp. 3d 1075 (S.D. Fla. 2022) ..............................................................14

**Statutes**

18 U.S.C. § 2257 ...........................................................................................................12

**Other Authorities**

7AA Fed. Prac. & Proc. Civ. § 1785 (3d ed.).............................................................4

Fed. R. Evid. 702 ...............................................................................*passim*

Fed. R. Civ. P. 23 .........................................................................................1

## INTRODUCTION

In support of her motion for class certification, Plaintiff submitted a declaration of Timothy Weaver ("Weaver"), a "digital forensic examiner expert" who is also a former law enforcement officer from Northern California. Decl. of Timothy Weaver ¶ 1, Curriculum Vitae (Sept. 8, 2023) ("Weaver Decl.") (attached as Ex. 1). Weaver's declaration purports to evaluate MindGeek's content moderation policies and procedures. Plaintiff, in turn, relies on Weaver's declaration in her motion for class certification to support her assertion that Plaintiff's claims may be proven on a classwide basis, utilizing what Weaver believes is common proof. *See* Class Cert. Mem. at 27-29, 32, 36. And Weaver's amorphous suggestions for how MindGeek should improve its human and technological content moderation is the cornerstone of Plaintiff's demand for an injunctive relief class. *Id.* at 21. On October 23, 2023, counsel for Defendants notified Plaintiff that they planned to move to exclude Weaver's declaration, and on October 24, 2023 Plaintiff indicated they would oppose any such motion. The present Motion is therefore opposed.

"The Eleventh Circuit and others have held that when a court relies on expert testimony to find that a Rule 23 requirement has been met, the court must conduct a *Daubert* analysis and conclude that the expert's opinions satisfy its standard." *Braggs v. Dunn*, 317 F.R.D. 634, 643 (M.D. Ala. 2016). Measured by that standard, Weaver's proffered opinion is inadmissible for multiple reasons.

Weaver is not qualified to offer opinions on MindGeek's content moderation policies and practices. Weaver Decl.¶¶ 5-8. He admittedly has no training or experience with either human or technology-based content moderation. Weaver Decl.¶¶ 7-8. He has never worked in content moderation, has never designed a content moderation system, has never drafted a content moderation policy, has no training in content moderation, and is aware of no industry standards that apply. Dep. Tr. of Timothy Weaver (Oct. 3, 2023) (Ex. 2) ("Weaver Dep.") at 29:15-30:18; 30:25-31:24; 32:11-19; 41:21-43:19; 78:13-81:4; 158:4-8; 165:1-5.

Weaver's proposed testimony is also unreliable under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993). His declaration is not based on any relevant training or objective facts. Rather, it is predicated entirely on Weaver's review of ***70*** documents hand-picked for him by Plaintiff out of the 96,498 documents produced in this case. He conducted no outside investigation of his own and admits that the opinions he offers are simply his own subjective beliefs. Weaver's conclusions and recommendations are not the byproduct of any expertise on his part and are unsupported factually. Given the lack of any evidence supporting Weaver's recommendations, they should be treated as improper lay opinion testimony that must be excluded. This is not bona fide expert testimony; this is cheerleading for Plaintiff's theory of the case.

For each of the foregoing reasons, and those contained herein, Weaver's declaration must be excluded.

## LEGAL STANDARD

Plaintiff bears the burden of showing Weaver's testimony is admissible. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592 n.10 (1993). Before admitting expert testimony, "*Daubert* requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005).

*Daubert* and its progeny are codified in Federal Rule of Evidence 702, which provides that if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," a "witness qualified as an expert" may testify thereto, but only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In conducting a *Daubert* analysis*,* courts consider the following nonexclusive factors: (1) whether a technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) the method's "known or potential rate of error," and (4) "general acceptance" in the relevant professional field. *Daubert,* 509 U.S. at 592-96.

**ARGUMENT**

**I.    Federal Rule of Evidence 702 Must Be Satisfied as Part of the Class Certification Rigorous Analysis.**

"The Eleventh Circuit has indicated that … a court must examine a class certification expert's testimony under *Daubert* if the expert's testimony is critical to resolving class certification." *Ray v. Jud. Corr. Servs., Inc.*, 2017 WL 4180910, *4 (N.D. Ala. Sept. 21, 2017); *cf. Sher v. Raytheon Co.*, 419 F. App'x 887, 888 (11th Cir. 2011) ("We hold that the district court erred as matter of law by not sufficiently evaluating and weighing conflicting expert testimony presented by the parties at the class certification stage."); *Braggs*, 317 F.R.D. at 643.  The proffered opinions must be admissible; a possibility that "the testimony could evolve into something admissible by the time of trial" is insufficient.  7AA Fed. Prac. & Proc. Civ. § 1785 (3d ed.).

As a practical matter, where, as here, a plaintiff's class certification motion is deficient for reasons that do not depend on the admissibility of the proffered expert testimony, courts deny certification, rendering the *Daubert* motions moot.  *See, e.g.*, *Krukever v. TD Ameritrade, Futures & Forex LLC*, 328 F.R.D. 649, 664 (S.D. Fla. 2018) (denying as moot the defendant's motions to exclude the plaintiff's experts in light of denial of class certification); *Roberts v. The Scott Fetzer Co.*, 2010 WL 3937312, at *1 (M.D. Ga. Sept. 30, 2010) (denying as moot the defendant's motions to exclude the plaintiff's experts in light of denial of class certification).  But if the

Court considers Weaver's declaration, it is "necessary to resolve the *Daubert* objections to [Weaver's] testimony before turning to the motion for class certification." *Southern Indep. Bank v. Fred's Inc.*, 2019 WL 1179396, at *6 (M.D. Ala. Mar. 13, 2019).

## II.    Weaver Is Unqualified to Proffer Testimony on Appropriate Content Moderation Policies.

"The first requirement for the admissibility of expert testimony is that the expert is qualified to testify competently regarding the matters he or she intends to address." *Skypoint Advisors, LLC. v. 3 Amigos Prods. LLC.*, 585 F. Supp. 3d 1326, 1331 (M.D. Fla. 2022) (*citing City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 563 (11th Cir. 1998)). "[T]he issue raised under the qualification prong is not whether the proffered expert is qualified in a general field but whether his training, education, or experience qualify him to render an opinion on a *specific* issue before the court." *Lowery v. Sanofi-Aventis LLC*, 2021 WL 872620, at *7 (N.D. Ala. Mar. 9, 2021) (emphasis in original) (internal quotation and citation omitted). "This means that a witness must be qualified in the ***specific*** subject for which his testimony is offered." *Whiting v. Bos. Edison Co.*, 891 F. Supp. 12, 24 (D. Mass. 1995) (emphasis in original). Even a well credentialed expert in one field may not be an expert in every related field. *See id.*; *Lowery*, 2021 WL 872620, at *8 (family medicine doctor not qualified to offer opinion on causes of septic arthritis); *Harvey v. Novartis Pharm. Corp.*, 895 F. Supp. 2d 1206, 1211 (N.D. Ala. 2012) (holding

that while an expert was "qualified to treat [a condition], he is not necessarily qualified to opine about its cause."). "Particularly where an expert's qualifications rest on his experience (as opposed to education or training), the expert 'must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Lowery*, 2021 WL 872620, at *7 (emphasis in original) (*quoting United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004)).

Relevant considerations to assess whether someone is qualified as an expert in a particular field include whether he has "conducted any research or published any articles" on the topic, as well as whether he is familiar enough with the literature to identify publications that support his conclusions when questioned. *See Brown v. Roche Labs., Inc.*, 2013 WL 2457950, at *3 (N.D. Ga. June 6, 2013), *aff'd*, 567 F. App'x 860 (11th Cir. 2014).

Weaver's experience in the internet technology space is exclusively in the context of law enforcement and related digital forensics, with a focus on the latter. As Weaver explained, digital forensics:

> involves the examination of data stored on digital devices, so it would be data that's stored in a binary fashion. So zeros and 1s are used to compose letters; the letters and -- and characters are used to compose words; the words are used to compose documents. Operating system is composed of digital data and words to make up an operating system. So we examine anything that contains digital data. It would be computers, cell phones, USB digital storage, server files.

Weaver Dep. at 24:1-12.  Weaver is not proffering any opinions that have anything to do with his experience in digital forensics or law enforcement.  Examining devices or computer networks to locate things and determine their provenance has nothing to do with designing and operating a content moderation system to prevent the upload of illegal content.  Similarly, conducting criminal investigations involving CSAM does not have anything to do with content moderation policies and practices for websites.  Because Weaver lacks relevant experience regarding content moderation, he is unqualified to offer expert testimony in that field.  *See, e.g.*, *Lowery*, 2021 WL 872620, at *8; *Harvey,* 895 F. Supp. 2d at 1211.

Nevertheless, Weaver opines that MindGeek's content moderation policies are inadequate and proposes an amorphous laundry list of alternative steps that Weaver believes MindGeek should adopt.  He admits that he has no experience, education, or training that would make him an expert on the design or efficacy of a particular content moderation program.  He has never worked for companies operating websites or consulted on developing a content moderation program:

> Q.    Have you ever been employed by a company whose business was operating websites?
>
> A.    No.
>
> Q.    Have you ever been employed by a social media company?
>
> A.    No.
>
> *    *    *

Q.    Have you ever been directly contracted to do consulting work by an Internet service provider?

A.    No.

*        *        *

Q.    Have you ever done any consulting work for a company whose business was operating websites?

A.    No.

Q.    Have you ever done any consulting work for a social media company?

A.    No.

Q.    Have you ever been employed in the trust and safety department of a website that allows user-generated content?

A.    No.

Q.    Have you ever provided consulting services to the trust and safety department of a website that allows user-generated content?

A.    No.

Weaver Dep. at 28:6-30:3. Nor has Weaver ever designed or implemented a content moderation policy for a website:

Q.    Have you ever designed a content moderation system?

A.    No.

Q.    Have you ever drafted a content moderation policy?

A.    No.

Q.    Have you ever created content moderation practices?

A.    No.

*Id.* at 32:11-19.  Weaver has also never written about content moderation, conducted any independent research about content moderation, or taught any course or training about content moderation or related issues.  Weaver Dep. at 158:4-8; 165:1-5.  Nor is he aware of any research paper, textbooks, or other scholarly materials discussing appropriate content moderation.  *Id.* at 78:13-81:4. Tellingly, his declaration does not cite a single academic or industry source.

Despite this obvious lack of experience, Weaver claims he is an expert on content moderation on the internet because "an expert is a person who can have an opinion about something, so in that sense, yes," and his "experience and [] review of documents can allow [him] to make opinions about the data involved in those situations." *Id.* at 30:25-31:8.  When asked what experience he was referring to, Weaver responded "investigation of CSAM data, investigation of those who possess CSAM data, discussions with those people who upload and download and traffic in CSAM data, those who create data by manipulating or blackmailing or forcibly influencing people to create CSAM data; these are all types of cases I've investigated both federally and locally." *Id.* at 31:9-24.  This criminal investigation experience does not, however, permit him to render expert opinions on MindGeek's content moderation in a court of law.

## III.    <u>Weaver's Declaration Is Unreliable under F.R.E. 702.</u>

"In ascertaining reliability under the second *Daubert* prong, [the Eleventh Circuit has] identified several factors which can be considered: (1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1292 (11th Cir. 2005). Weaver's declaration does not satisfy any of these factors. To the extent it contains any analysis at all, it is unreliable under *Daubert* and inadmissible because it is based entirely on Weaver's own subjective belief and innuendo. Rule 702 demands that expert testimony relate to "scientific, technical or other specialized knowledge," which does not include unsubstantiated "speculation or subjective belief." *Dukes v. Georgia*, 428 F.Supp.2d 1298, 1308-09 (N.D. Ga. 2006) *aff'd*, 212 F. App'x 916 (11th Cir. 2006).

The Court must exclude expert testimony that is not "the product of reliable principles and methods" and is not "based on sufficient facts or data," or where the expert has not "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. These are "exacting standards of reliability." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

**A.    Weaver Has No Methodology and His Opinions Are Unconnected to Any Standard of Care.**

Rule 702 requires that experts employ a valid "methodology." *Rink*, 400 F.3d at 1292. This requires the expert to have one in the first place. "Thus, a trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting *Frazier,* 387 F.3d at 1266). Expert testimony that does not identify a reliable methodology is inadmissible. *See, e.g.*, *Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1341 (11th Cir. 2010); *McClain*, 401 F.3d at 1237.

Here, Weaver admittedly does not employ any objective methodology. Instead, he reviewed a small subset of documents hand selected by Plaintiff's counsel, and then offered his personal opinions about them unsupported by any objective standard. Weaver Dep. at 10:22-11:22. He did not conduct any independent research beyond looking at the preselected documents apart from trying to log into Pornhub using a virtual private network ("VPN"). *See, e.g.*, *id.* at 51:24-55:8; 62:25-63:25; 95:16-96:8; 130:21-131:13; 188:2-20. "[B]lind acceptance of and reliance on one-sided data" and "failure to apply any analytical methodology whatsoever" render Weaver's opinions "unreliable and therefore inadmissible." *PODS Enters., Inc. v. U-Haul Int'l, Inc.,* 2014 WL 12628664, at *4 (M.D. Fla. June 27, 2014); *Lopez v. I-Flow Inc.*, 2011 WL 1897548, at *10 (D. Ariz. Jan. 26, 2011)

(presenting a "narrative of selected [facts]… and quotations and then leap[ing] to a conclusion without sufficient explanation" is not a reliable methodology).

Weaver also acknowledges that he did not apply any recognized standards in evaluating MindGeek's content moderation process. The sole legal standard Weaver identified, 18 U.S.C. § 2257,[1] does not apply to MindGeek with respect to the content at issue in this case. Weaver Dep. at 71:6-71:24 ("Q. Are there any laws that tell websites with user-generated content how they must moderate that content? A. I'm not aware of any."). He is not aware of any written industry standards on how to moderate user-generated content. *Id.* at 72:19-73:21. Nor has he compared MindGeek's content moderation practices with those of any other website. *Id.* at 74:21-76:8. And he conceded that the "recommendations" he offers in his declaration cannot be found in any written source material. *Id.* at 77:23-81:4 ("Q. Apart from your declaration, is there – is there any source material where I could go and – and view these criteria? A. I don't know about that.").

Because he does not employ any objective standard, Weaver cannot say what "adequate" moderation would look like or even whether it is possible at all. Weaver

---

[1] 18 U.S.C. § 2257 requires that the producer of sexually explicit visual content "create and maintain individually identifiable records pertaining to every performer portrayed in such a visual depiction." But the provision does not apply to entities like MindGeek that only ***distribute*** such content. *Id.* at § 2257(h)(B)(ii).

Dep. at 51:24-55:8.  In the absence of any objective standard, Weaver simply opines *ipse dixit* that the mere fact that *any* CSAM was posted to MindGeek's sites is *per se* proof that its policies were inadequate.  Weaver Dep. at 54:20-55:8 ("Q. Do you think that it -- the content moderation system could be adequate at any number above zero? A. I'm not willing to say that any victim is not worthy of having the system changed for them.").  But in the next breath he also freely acknowledged that he is unaware of any website meeting that standard, and acknowledged that CSAM exists on every major social media site including Facebook, X (f/n/a Twitter), Reddit, YouTube, and Instagram.  Weaver Dep. at 56:4-57:22. And he has no idea what moderation processes are in place at any of those websites because he made no effort to find out.  *Id.* at 74:21-75:12 ("I wasn't asked to do an industry analysis and comparison.").

### B. Weaver's Opinions Are Not Supported by Reliable Evidence.

Weaver's declaration should also be excluded because his opinions are not based on reliable evidence.  "Opinions derived from erroneous data are appropriately excluded."  *United States v. City of Miami*, 115 F.3d 870, 873 (11th Cir. 1997).  "Result-driven analysis, or cherry-picking, undermines principles of the scientific method and is a quintessential example of applying methodologies (valid or otherwise) in an unreliable fashion."  *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 634 (4th Cir. 2018); *see also PODS*

13

*Enters.*, 2014 WL 12628664, at \*4. "Courts have held that such cherry-picking of data demonstrates unreliability and may justify the exclusion of an expert's testimony." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1158-59 (S.D. Fla. 2022), *appeal dismissed,* 2023 WL 2849068 (11th Cir. Mar. 22, 2023).

Every opinion offered by Weaver is tainted by the fact that it is based exclusively on data contained within the 70-odd documents curated by Plaintiff's counsel:

> Q.   So they gave you a group of 70 documents, and those were the foundation for your declaration?
>
> A.   Yes.
>
> \*      \*      \*
>
> Q.   Was there anything else that you reviewed in putting together your declaration apart from those 70 documents?
>
> A.   No. I -- I think that -- that was -- that was it, 70 -- about 70 documents.

Weaver Dep. at 11:13-22; *see also id.* at 215:20-216:3 ("Q. Did you ask to receive any additional documents, beyond the 70 you were provided from Plaintiffs' Counsel? A. No …"). Indeed, Weaver had no idea that MindGeek produced 96,498 in this case (as of the time of the deposition), and accordingly did not know that he had only been given access to roughly 0.073% of the total universe. Weaver Dep. at 215:3-16. By limiting Weaver's review to less than one tenth of one percent of

the documents produced in the case, Plaintiff's counsel assured that they would get the testimony they wanted, regardless of whether it was supported by the complete record. The inevitable result was robbing Weaver of the necessary context to verify whether his claims were true, and his willingness to go along with this plan demonstrates his lack of reliability. Indeed, Weaver tried to defend the limited scope of his review by claiming:

> "[s]o some of the statements and the data in the documents I received are represented as fact, so it doesn't really -- unless those statements and representations are incorrect, I would have to say that it doesn't really matter how many documents would say the same thing. I am sure a lot of them say the same thing in different ways."

Weaver Dep. at 216:10-17. But it defies logic that over 96,000 documents would need to be produced if they all were just saying "the same thing in different ways." Weaver's willingness to limit his review to only 70 documents provided to him by Plaintiff's counsel at a minimum demonstrates a lack of rigor in his investigation of the facts.

This lack of rigor is also evident in examining Weaver's conclusions. Courts must be careful not to allow parties to present lay evidence under an imprimatur of expertise. *See Rink*, 400 F.3d at 1292. That, however, is precisely what Weaver's declaration does. Paragraph 8 of Weaver's declaration contains a lengthy list of steps MindGeek could purportedly take "to catch and to eliminate CSAM on Pornhub and its other sites." Weaver Decl. ¶ 8. But leaving aside that MindGeek is

already doing many of the things Weaver claims it must do (reflecting Weaver's unfamiliarity with the basic facts of the case), Weaver has no evidence supporting that any of his proposals would actually be effective.

For example, Weaver states in his declaration that MindGeek must "[a]udit/review all content on Pornhub and all sites for CSAM using state-of-the-art AI and moderation practices."  Weaver Decl. ¶ 8.o.  But his knowledge of the tools MindGeek currently employs is limited to his minimal review of documents in this case.  As noted by Sherrie Caltagirone, a recognized expert on eradicating human trafficking form the internet, this recommendation "reflect[s] a lack of understanding of the processes MindGeek currently has in place as well as what is reasonably possible in this space and demonstrate[s] a lack of understanding of the current state of artificial intelligence particularly in the applications to counter-trafficking and CSAM moderation."   Decl. of Sherrie Caltagirone ¶ 42 ("Caltagirone Decl.") (attached as Ex. 3).

Indeed, his deposition showed that he knew almost nothing about the automatic tools and AI programs that MindGeek is already employing or how those tools work.  Weaver was unfamiliar with the distinction between cryptographic hashing and perpetual image hashing; and is "not an expert" on how certain state-of-the-art programs used by MindGeek, such as Google CSAI Match, Vobile and Safeguard, function, when any of those technologies were employed by MindGeek,

Case 7:21-cv-00220-RDP    Document 120    Filed 10/24/23    Page 22 of 25
or even that certain technologies such as Safer by Thorn were being used by MindGeek. Weaver Dep. at 122:17-123:15; 174:19-176:6; 179:11-25 ("I didn't memorize how each tool worked and what each tool did"); 181:6-18; 182:12-183:2. His "recommendation to 'ban all videos identified as potential CSAM by AI' suggests Weaver does not understand how risk scoring works in artificial intelligence and risk classification models and does not account for the certainty of false positives within these sorts of algorithms." Caltagirone Decl. ¶ 42. Weaver's lack of even basic knowledge about the tools used by MindGeek and their relative limitations further demonstrates the lack of expertise he is bringing to bear and shows that Weaver's opinion is based on nothing more than his subjective feelings that tools might be beneficial. Accordingly, there is nothing expert about them. *See, e.g.*, *Cook*, 402 F.3d at 1111.[2]

---

[2] Similarly, Weaver's claim that "[i]nternal [MindGeek] moderation has only caught approximately 57% of all uploaded CSAM historically" also well illustrates the problem. Weaver Decl. ¶ 5.a.ii. Weaver bases this opinion exclusively on a spreadsheet that was among the 70 curated documents provided him by Plaintiff. Weaver Dep. at 101:13-102:1. But Weaver has no idea who created the document, when it was created, what time-period it was purporting to measure, whether the document was a draft or final document, why the document was made or whether it is representative. *Id.* at 103:20-106:5; 119:22-120:11. Unsurprisingly given these deficiencies, the figure Weaver reports is inaccurate. *See* Pornhub 2021 Transparency Report (noting that for content uploaded in 2021, 79.87% of the CSAM detected and removed was identified by MindGeek's internal content moderation systems rather than by third parties.) (*available at* https://help.pornhub.com/hc/en-us/articles/5357457259155-2021-Transparency-Report).

Nearly all of the statements in Weaver's declaration suffer from this same problem; they rely on an unrepresentative universe of documents created by Plaintiff's counsel and Weaver lacks relevant knowledge and expertise to fill in the gaps. "Relevant expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion" and that is simply not the case here. *City of Miami,* 115 F.3d at 873. Weaver admittedly has only limited knowledge of cherry-picked facts making his proffered expert opinions inadmissible.

## CONCLUSION

For the foregoing reasons, the Declaration of Timothy Weaver should be excluded from the class certification record.

DATED: October 24, 2023                    Respectfully submitted,

                                           /s/ *Sara M. Turner*
                                           Sara M. Turner
                                           BAKER, DONELSON, BEARMAN,
                                           CALDWELL & BERKOWITZ, PC
                                           smturner@bakerdonelson.com
                                           1901 Sixth Avenue North
                                           Suite 2600
                                           Birmingham, AL 35203
                                           Phone: (205) 250-8316

                                           Kathleen N. Massey (*pro hac vice*)
                                           Hayden Coleman (*pro hac vice*)
                                           DECHERT LLP
                                           kathleen.massey@dechert.com

Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
*Attorneys for Defendants*

Michael Ernest Williams
Diane L. Cafferata
Michael Zeller
Robert Jason Becher
QUINN EMANUEL URQUHART &
SULLIVAN
865 South Figueroa Street, 10th Floor
Ste Los Angeles
Los Angeles, CA 90017
213-443-3182
michaelwilliams@quinnemanuel.com
dianecafferata@quinnemanuel.com
michaelzeller@quinnemanuel.com
robertbecher@quinnemanuel.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of October 2023, this document was filed conventionally with the Clerk of the United States District Court for the Northern District of Alabama and will be served electronically by the Defendants to all participants of record along with copies of the sealed documents.

/s/ *Sara M. Turner*
Sara M. Turner