FILED

2023 Nov-15  AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

|  |  |
|---|---|
| JANE DOE #1 and JANE DOE #2 on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II, LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC, INC., d/b/a MINDGEEK);  MG BILLING LTD<br><br>              Defendants. | CIVIL ACTION NO. 7:21-CV-00220<br><br>Honorable L. Scott Coogler |

## DEFENDANTS' SURREPLY IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Sara M. Turner
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1901 Sixth Avenue North
Suite 2600
Birmingham, AL 35203
Phone: (205) 250-8316
smturner@bakerdonelson.com

Kathleen N. Massey (*pro hac vice*)
Hayden Coleman (*pro hac vice*)
DECHERT LLP
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

ARGUMENT ....................................................................................................1

    I.    Plaintiff's Proposed Bifurcation Scheme Does Not Cure the Multiple Defects with Her Proposed Rule 23(b)(2) and (b)(3) Classes. ...................................................................................1

    II.    Plaintiff's New Theories of Direct Trafficking and MindGeek's Knowledge Are Untimely Raised and Legally Incorrect....................8

        A.    Plaintiff's Reply Impermissibly Raises New Theories of Liability. ....................................................................................8

        B.    Plaintiff Cannot Circumvent the Need for Individualized Inquiry by Alleging "Direct Sex Trafficking." .........................9

        C.    18 U.S.C. § 1591(c) Does Not Allow Plaintiff to Prove Knowledge on a Class-Wide Basis. .......................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adler v. Wallace Computer Services, Inc.*,
   202 F.R.D. 666 (N.D. Ga. 2001) ........................................................................3

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ..............................................................................4

*Crump v. Dep't of Health & Hum. Servs.,*
   1992 WL 457270 (E.D. Va. Aug. 11, 1992) ....................................................5, 6

*Doe #1 v. MG Freesites, LTD*,
   2022 WL 407147 (N.D. Ala. Feb. 9, 2022)..........................................................8

*Doe #1 v. Twitter, Inc.* (*Twitter II*),
   2023 WL 3220912 (9th Cir. May 3, 2023)...................................................10, 11

*Doe v. Twitter, Inc.* (*Twitter I*),
   555 F. Supp. 3d 889 (N.D. Cal. 2021)..........................................................10, 11

*Fleites v. MindGeek S.A.R.L.*,
   617 F. Supp. 3d 1146 (C.D. Cal. 2022) ........................................................10, 11

*Gregware v. The Scotts Miracle-Gro Co.*,
   2014 WL 12531536 (S.D. Fla. Oct. 20, 2014) .....................................................6

*Hamett v. Am. Bankers Ins. Co of S. Fla.*
   203 F.R.D. 690 (S.D. Fla. 2001)..........................................................................3

*Harris v. Nortek Global HVAC LLC*,
   2016 WL 4543108 (S.D. Fla. Jan. 28, 2016)........................................................3

*Herring v. Sec'y, Dep. of Corr.*,
   397 F.3d 1338 (11th Cir. 2005) ...........................................................................1

*Holmes v. Continental Can Co.*,
   706 F. 2d 1144 (11th Cir. 1983) ..........................................................................2

*King. v. UA Local 91*,
   2020 WL 4003019 (July 15, 2020 N.D. Ala.) .....................................................5

*Reid v. Lockheed Martin Aeronautics Co.*
   205 F.R.D. 655 (N.D. Ga. 2001) ........................................................................3, 4

*In re Rhone-Poulenc*,
   51 F.3d 1293 (7th Cir. 1995) .................................................................................4

*Rivers v. United States*,
   2019 WL 1959583 (S.D. Cal. May 2, 2019) .......................................................13

*Rudolph v. Dep't of Corrections*,
   2006 WL 8443761 (N.D. Fla. Nov. 9, 2006)........................................................2

*Sharpe v. Global Sec. Int'l*,
   766 F.Supp.2d 1272 (S.D. Ala. 2011) ..................................................................1

*Shuford v. Conway*,
   326 F.R.D. 321 (N.D. Ga. 2018) ..........................................................................3

*Thompson v. Am. Tobacco Co.*,
   189 F.R.D. 544 (D. Minn. 1999) ..........................................................................4

*United States v. Koech*,
   992 F.3d 686 (8th Cir. 2021) ...............................................................................14

*United States v. Lewis*,
   2017 WL 1652587 (S.D. Ga. Apr. 28, 2017) ......................................................13

*United States v. Sims*,
   11 F.4th 315 (5th Cir. 2021) ...............................................................................15

*United States v. Sparks*,
   2023 WL 2366607 (N.D. Cal. Mar. 6, 2023) .........................................13, 14, 15

*United States v. Valdez*,
   2021 WL 3478402 (11th Cir. Aug. 9, 2021) .......................................................13

*United States v. Whyte*,
   928 F.3d 1317 (11th Cir. 2019) ...........................................................................13

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994)...............................................................................................13

iii

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011).......................................................................................10

*Williams v. Mohawk Industries*,
    568 F.3d 1350 (11th Cir 2009) ...........................................................5

**Statutes**

18 U.S.C. § 1591(c) .................................................................................9, 12, 13

**Other Authorities**

161 Cong. Rec. S1596-02, S1621 (statement of Sen. Feinstein)............................11

161 Cong. Rec. S1403-02, S1410 (statement of Sen. Blunt) ................................11

Fed. R. Civ. P. 23 ...............................................................................*passim*

U.S. Const. amend. VII.........................................................................3, 4

Plaintiff's 64-page reply brief is a full 12 pages longer than her opening brief and 16 pages longer than MindGeek's Opposition.  It is jam-packed with new arguments and wild distortions of never before cited case law.  It is axiomatic that arguments raised for the first time in a reply memorandum are not properly before the Court and should not be considered.  *See Herring v. Sec'y, Dep. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005); *Sharpe v. Global Sec. Int'l*, 766 F.Supp.2d 1272, 1294 n.26 (S.D. Ala. 2011) ("Because it is improper for defendant to raise this new argument in its reply brief, that argument will not be considered.").

MindGeek's Surreply will not even attempt to address these myriad new and misguided arguments.  Rather, it will respond briefly to two new points raised:  (1) Plaintiff's demand for an injunctive relief trial followed by, at some undetermined point, a second trial to assess liability and damages; and (2) Plaintiff's novel contentions that the Court should certify a class based on a "direct sex trafficking" theory and that a presumption of knowledge in criminal cases applies to Plaintiff's trafficking claim, even though a direct trafficking claim is nowhere to be found in Plaintiff's Amended Complaint and these contentions are inconsistent with her briefing and this Court's prior rulings.

## **ARGUMENT**

## I.     **Plaintiff's Proposed Bifurcation Scheme Does Not Cure the Multiple Defects with Her Proposed Rule 23(b)(2) and (b)(3) Classes.**

Tacitly conceding that there are far too many individualized issues to certify

a nationwide opt-out damages class under Rule 23(b)(3), Plaintiff argues that she can nevertheless split her claims in two, proceed with a so-called mandatory Rule 23(b)(2) injunctive relief class on the front end, and circle back for damages in a separate class action proceeding under Rule 23(b)(3).  Plaintiff's Reply in Support of the Motion for Class Certification ("Reply") at 47.  This argument fails for multiple reasons.

*First*, this subterfuge has been tried and rejected before—the Eleventh Circuit has strongly admonished that "the policies underlying the requirements of (b)(3) should not be subverted by recasting and bifurcating every class suit for damage[s] as one for final declaratory relief of liability under (b)(2); followed by a class suit for damages under (b)(3)," which is exactly what Plaintiff is proposing here.  *Holmes v. Continental Can Co.*, 706 F. 2d 1144, 1158 n.10 (11th Cir. 1983).  Applying this rule, courts in this Circuit have repeatedly rejected attempts to bifurcate (b)(2) and (b)(3) classes unless the plaintiff can independently establish that she is entitled to certification under *both* subsections.  As one court in this Circuit succinctly explained: "Before a hybrid class can be certified under (b)(2) and (b)(3), the purported class must still satisfy the requirements of (b)(3).  In other words, the hybrid nature of the class action does not immunize the suit from the mandates of Rule 23(b)(3)."  *Rudolph v. Dep't of Corrections*, 2006 WL 8443761, at *4 (N.D. Fla. Nov. 9, 2006).  Here, Plaintiff cannot satisfy the requirements of either (b)(2) or

2

(b)(3).  Thus, her demand for hybrid certification is a non-starter.[1]

*Second*, perhaps the most important reason this subterfuge fails is that it would violate Seventh Amendment rights—not just of Defendants, but also of absent putative class members.  Courts in this Circuit have repeatedly held exactly that regarding analogous hybrid certification.  *See Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 686 (N.D. Ga. 2001); *Adler v. Wallace Computer Services, Inc.*, 202 F.R.D. 666, 673-74 (N.D. Ga. 2001).  The *Adler* court explained, "[t]he Seventh Amendment provides the most compelling justification for denying the request for hybrid certification."  *Id.* at 673.  This is so because the "Seventh Amendment guarantees the right to a jury trial 'in [s]uits at common law.'"  *Id.*; U.S. Const. amend. VII.  "The Supreme Court has made clear that the right to a jury trial applies in suits determining both legal rights and administering equitable remedies."  *Adler*, 202 F.R.D. at 673 (citing *Ross v. Bernhard*, 396 U.S. 531, 533 (1970)).  Here, Plaintiff wants damages, has demanded a jury trial, and has expressly argued that

---

[1] *See also Hamett v. Am. Bankers Ins. Co.,* 203 F.R.D. 690, 701 (S.D. Fla. 2001) (denying hybrid certification under *Holmes* where "Plaintiff has failed to meet the requirements of certification under either Rule 23(b)(2) or (3)"); *Harris v. Nortek Global HVAC LLC*, 2016 WL 4543108, at *16 (S.D. Fla. Jan. 29, 2016) ("To the extent that Plaintiffs seek to certify a hybrid class, the Court declines to do so, given its hesitation to grant class certification under 23(b)(2) or 23(b)(3)"); *Shuford v. Conway*, 326 F.R.D. 321, 339 (N.D. Ga. 2018) ("emphatically" rejecting certification of a bifurcated issues class "as a means for achieving an end run around the (b)(3) predominance requirement").

certain evidence in this case "must be resolved by the jury at trial." Reply at 19. And the factual issues relevant to Plaintiff's damages claims are virtually identical to those relevant to her demand for injunctive relief. "As such, the litigants have the right to a determination of these issues by a single jury." *Reid*, 205 F.R.D. at 686

The Fifth Circuit's seminal decision in *Allison v. Citgo Petroleum Corp.*— which is grounded in Supreme Court and pre-circuit split precedent—highlights the Constitutional problem that hybrid certification would cause. In rejecting an analogous hybrid certification scheme, the court explained:

> The claims for injunctive relief, declaratory relief, and any equitable or incidental monetary relief cannot be litigated in a class action bench trial (in the same case prior to certification of any aspects of the pattern or practice claim) without running afoul of the Seventh Amendment. Nor may they be advanced in a subsequent class action without being barred by *res judicata* and collateral estoppel because all of the common factual issues will already have been decided, or could have been decided, in the prior litigation.

151 F.3d 402, 425 (5th Cir. 1998) (internal citations omitted); *accord In re Rhone-Poulenc*, 51 F3d 1293, 1304 (7th Cir. 1995) (vacating bifurcated class action due in part to "looming infringement of Seventh Amendment rights"). In other words, all issues that can be brought in any Phase I trial that Plaintiff proposes—including liability for damages—have to be brought before a Phase I jury. Allowing Plaintiff to proceed with her so-called hybrid certification where liability for damages is not addressed could actually result in claim and/or issue preclusion of her fellow putative class members. *See Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 550-51 (D.

4

Minn. 1999) (rejecting certification of class that reserved the personal injury and damages claims; explaining that these efforts "may, in fact, jeopardize the class members' rights to bring such claims in a subsequent case" where "[t]he governing legal principle is that of *res judicata*").  Plaintiff's willingness to sacrifice the absent class members' ability to seek damages in order to enhance her ability to get a class—any class—certified vividly underscores why Plaintiff is not an adequate class representative.  *See* Opp. at 32-34.[2]

Finally, but no less fundamentally, the record in this case establishes that the injunctive relief sought does not support a (b)(2) class.  First, the demand for additional moderation efforts is based not on legal requirements but rather Plaintiff's and her expert's personal preferences about what MindGeek should do.  Plaintiff cannot identify a single legal requirement related to content moderation with which MindGeek fails to comply.  Courts have recognized and rejected this scenario before.  In *Crump v. Dep't of Health & Hum. Servs.,* for example, the plaintiff sought to

---

[2] Plaintiff contends that the pre-*Dukes* decision in *Williams v. Mohawk Industries*, 568 F.3d 1350 (11th Cir. 2009), supports her bifurcation scheme.  Reply at 52.  The continued validity of *Williams* on this point has been called into serious question.  *See King. v. UA Local 91*, 2020 WL 4003019 (July 15, 2020 N.D. Ala.) (Bowdre, J.).  But this Court need not resolve that issue because *Williams* itself makes clear that it is addressing bifurcation where liability and damages are decided *first*.  *Williams*, 568 F.3d at 1360 ("If the employees succeed in establishing the liability of Mohawk in their suit for damages under subsection (b)(3), the district court would consider whether to fashion equitable relief under subsection (b)(2).")  That's the opposite of what Plaintiff proposes here.

enjoin the manufacture and sale of cigarettes.  1992 WL 457270 (E.D. Va. Aug. 11, 1992), *aff'd sub nom. Crump v. U.S. Dep't of Health & Hum. Servs.*, 986 F.2d 1413 (4th Cir. 1993).  The court dismissed the complaint, explaining:  "[T]he Court cannot enjoin activity which is lawful. Plaintiff is advised that his concerns might be better addressed through political means, such as by educating and enlightening the voting public and their elected representatives."  *Id.* at *2.

Second, the demand for injunctive relief rings particularly hollow, because MindGeek has already taken multiple steps to address much of the challenged conduct.  *See Gregware v. The Scotts Miracle-Gro Co.*, 2014 WL 12531536, at *9 (S.D. Fla. Oct. 20, 2014) (denying certification of (b)(2) class where "most if not all of the injunctive relief requested here has been rendered moot by changes the Defendants have made").  For example, Plaintiff pounds the table demanding that "every person appearing in every video must be appropriately verified as age of consent," Am. Compl., Prayer (C)(1), but MindGeek is already implementing protocols that require performer IDs for all Model-uploaded content.  In particular, effective October 16, 2023, MindGeek required valid ID information for all performers featured in content uploaded by new Models registering on or after that date.  MindGeek is also in the process of implementing a requirement that ID information be on file for every performer included in new content uploaded by all Models, not just new Models.  *See* ECF 134-1 at 6.  Thus, Plaintiff's demands

regarding performer age ID are moot.

Equally frivolous is Plaintiff's demand for enhanced technical moderation tools. As MindGeek detailed in its Opposition, MindGeek integrated, developed, and improved upon a variety of technological tools that were developed over the course of the class period and designed to detect apparent CSAM before it is viewable by the public. Defendants' Opposition to Plaintiff's Motion for Class Certification ("Opp.") Ex. 5, MindGeek_NDAL_00178853. These tools fall into two categories: (i) hash-related tools,[3] which create unique digital fingerprints—or hashes—for each piece of content by identifying, extracting, and summarizing characteristic components of the images and that compare the hashes of content sought to be uploaded against databases of hashes for known CSAM; and (ii) artificial intelligence ("AI") tools,[4] which use artificial intelligence to detect potential CSAM that is not otherwise contained in a known CSAM hash database. They are among the most advanced technological tools utilized by any website, adult or otherwise, and Plaintiff's unsupported demand that the Court enter a nonspecific

---

[3] Opp. ████████ Decl. ¶ 8 (Vobile MediaWise has been used to screen content against known CSAM and to fingerprint suspected or potential CSAM since November 2019; CSAI Match/January 2020; PhotoDNA/2020; Safeguard/August 2020; Safer by Thorn/January 2021; Instant Image Identifier/December 2022).

[4] Opp., ████████ Decl. ¶ 8 (Google Content Safety API/June 2020; Microsoft Azure Face API, plus internal software/July 2021); Opp. Ex. 10 (Spectrum Labs AI for contextual comment moderation in September 2021); Opp. Ex. 11 (proprietary age estimation tool).

injunction is baseless.

Plaintiff's demands that MindGeek further enhance its human moderation protocols also ignore the record, which established that moderators go through extensive training to detect CSAM, including theoretical and practical training, shadowing senior moderators, and conducting supervised moderation.  *See, e.g.*, Ex. 12**;** Opp., Ex. 6, ▮▮▮▮▮ 30(b)(6) Tr. 161:17-165:18.  Indeed, there are currently 186 employees on MindGeeks' Compliance Team.  Opp., ▮▮▮▮▮ Decl. ¶ 7.

Given this record, there is simply no basis or need to certify a (b)(2) class.

## II.  Plaintiff's New Theories of Direct Trafficking and MindGeek's Knowledge Are Untimely Raised and Legally Incorrect.

### A.   Plaintiff's Reply Impermissibly Raises New Theories of Liability.

Plaintiff now contends for the first time in her Reply that MindGeek engages in "direct sex trafficking" every time CSAM is posted to its website and that the *mens rea* elements of her new claims can be established with a presumption of knowledge in *criminal* cases.  Reply at 12-22.  This is error on top of error.

First, Plaintiff did not plead a direct trafficking theory, and it is inconsistent with everything Plaintiff has actually pleaded and argued.  As this Court previously observed, "it is undisputed that Plaintiffs seek to hold Defendants liable as *beneficiaries* of sex trafficking."  *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147, at *11 (N.D. Ala. Feb. 9, 2022) (emphasis added) (citing FAC ¶ 56, styling Count I as "benefiting from a sex trafficking venture").  Likewise, in opposing MindGeek's

motion to dismiss, Plaintiff's arguments focused on beneficiary liability under Section 1595, *see, e.g.*, ECF No. 25 at 5-7, 11-12, and she distinguished key cases on the basis that they dealt with "criminal prosecution[s] under § 1591, *not a civil lawsuit under § 1595*." *Id.* at 11 (emphasis added).  Most important, Plaintiff's motion for class certification focuses solely on "'beneficiary liability' under the TVPRA," Plaintiff's Memorandum of Law in Support of the Motion for Class Certification, ECF No. 95-1, ("Mot.") at 24-33, and "[w]hether MindGeek knowingly *benefitted from and/or participated in* sex trafficking ventures."  *Id.* at 15.  Simply put, Plaintiff has ***never*** alleged MindGeek engaged in "direct sex trafficking" until her Reply brief, which is woefully too late.

Plaintiff's reliance on the presumption of knowledge in *criminal* cases created by 18 U.S.C. § 1591(c) is also newly raised in her Reply.  Reply at 14-19, 22-24.  Plaintiff has never mentioned this provision in prior briefing.  Rather, her motion for class certification argues that she can show "constructive knowledge" under Section 1595 based on MindGeek's purported "actions and practices."  *See* Mot. at 31-32.  Likewise, with respect to "Plaintiff specifically" she argues she "has more than sufficiently alleged that MindGeek had ***constructive knowledge*** of her CSAM." *Id.* at 32 (emphasis added).  These theories and arguments raised for the first time in her Reply should be disregarded.

**B.     Plaintiff Cannot Circumvent the Need for Individualized Inquiry by Alleging "Direct Sex Trafficking."**

Under Plaintiff's new theory, "MindGeek itself … directly violated § 1591(a) and trafficked the victims by 'obtaining,' 'maintaining,' and 'providing' the victims engaging in 'commercial sex acts' to the public on its websites." Reply at 12 (emphasis omitted).  Plaintiff is not just too late; she is wrong categorically.  Section 1591(a)(1) does not fit the facts of the case at all, and, even if it did, individualized questions would still predominate.

The "rigorous analysis" demanded by Rule 23 would require the Court to look at the purported merits of Plaintiff's direct trafficking theory.  *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-51 (2011).  Plaintiff will not be able to prove direct trafficking against MindGeek on behalf of anyone.  Section 1591(a)(1) prohibits the soliciting of "a person," not a video or an image.  *Doe #1 v. Twitter, Inc.* (*Twitter II*), 2023 WL 3220912, at \*2 (9th Cir. May 3, 2023).  Where, as here, the "conduct relates only to CSAM depicting Plaintiffs, not to their persons (as required to implicate a direct violation of the TVPRA)," Section 1591(a)(1) does not apply as a matter of law.  *Id.*  Thus, even the *Fleites* and *Twitter* courts, which permitted TVPRA beneficiary claims to advance, rejected the theory of direct trafficking Plaintiff puts forth here.  *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1159 (C.D. Cal. 2022) (knowingly hosting CSAM could only constitute direct sex trafficking if the content was intended to "effectuate advertisement of a minor that

10

leads to further sex acts"); *Doe v. Twitter, Inc.* (*Twitter I*), 555 F. Supp. 3d 889, 915 (N.D. Cal. 2021) (same), *aff'd in relevant part, Twitter II*, 2023 WL 3220912, at *2. Plaintiff cites no authority to the contrary.

This interpretation is supported by the TVPRA's text and history.  As *Twitter I* observed:  "Section 1591(a)(1) contains a series of verbs, all of which relate to a 'person'" not to videos.  555 F. Supp. 3d at 915.  Therefore, where the "alleged conduct relates not to a person but to the [v]ideos" of the person, section 1591(a)(1) does not apply.  *Id.*  This interpretation is consistent with the legislative history.  The TVPRA was intended to criminalize "advertisement[s] … for commercial sex with a minor," 161 CONG. REC. S1596-02, S1621 (daily ed. Mar. 18, 2015) (statement of Sen. Feinstein), and situations where "[w]omen and children … are advertised online where buyers purchase them with ease." *Id.* at S1403-02, S1410 (daily ed. Mar. 11, 2015) (statement of Sen. Blunt).  These scenarios are facially inapposite here. Plaintiff does not cite any evidence that MindGeek did anything to "obtain," "maintain," or "provide" *her* (or anyone) for future sex acts.  Rather, as in *Twitter* and *Fleites*, Plaintiff claims MindGeek publicized, obtained and provided *videos* of her.  Plaintiff's theories are the same as those rejected in *Fleites* and *Twitter*.

Moreover, even if Plaintiff had alleged that MindGeek's websites were used for direct trafficking of certain class members (and she did not), ***that would still be a predominating individualized question***.  Each class member would need to prove

11

(1) that their videos were posted for the purpose of offering them for *future* sex acts, which depends on the uploader's subjective motive, (2) that they would still be a minor when those future sex acts took place, (3) that MindGeek was aware of that intent with respect to the specific person depicted, and (4) that MindGeek was aware the future sex acts would take place when the victim was still underage. These are necessarily individualized questions. As MindGeek's experts state, "human trafficking crimes are highly unique in their circumstances." Opp. Caltagirone Decl., ECF No. 102-2, ¶ 29; *see also* Opp. Fonseca Decl., ECF No. 102-3, ¶¶ 23-29. Whether under a "direct sex trafficking" theory or a secondary beneficiary one, the bottom line is that Plaintiff offers no way to answer these questions on a class-wide basis.

### C.    18 U.S.C. § 1591(c) Does Not Allow Plaintiff to Prove Knowledge on a Class-Wide Basis.

Plaintiff attempts to avoid the need to prove the knowledge elements required for TVPRA claims by pointing to a presumption under 18 U.S.C. § 1591(c) that a criminal defendant who had a "reasonable opportunity to observe" a victim is deemed to know whether the victim is underage. Reply at 14-19, 22-24. This argument is misplaced. But even if it were not, Section 1591(c) would not allow knowledge to be proven on a class-wide basis.

Plaintiff cannot invoke Section 1591(c) for at least three reasons. First, the presumption applies only to a criminal "prosecution under subsection (a)(1)," not

civil actions. 18 U.S.C. § 1591(c). Second, it applies only to direct trafficking "under subsection (a)(1)," not beneficiary violations under subsection (a)(2) or Section 1595. *Id.* Third, subsection 1591(c) has only been applied to in-person meetings. *See Rivers v. United States*, 2019 WL 1959583, at *3 (S.D. Cal. May 2, 2019) (collecting cases). MindGeek only viewed the putative class members in videos. As the Supreme Court has observed, observing someone in person and observing them in a video are not the same thing, and the risk of "reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 66 n.1 (1994).

Unsurprisingly, all of the cases Plaintiff cites applying 1591(c) were criminal prosecutions based on extensive in-person interactions. *E.g.*, *United States v. Valdez*, 2021 WL 3478402, at *1 (11th Cir. Aug. 9, 2021) (defendant had sex with a minor); *United States v. Whyte*, 928 F.3d 1317, 1323 (11th Cir. 2019) (defendant lived with victim and pressured her to perform sex work).

Plaintiff *grossly* mischaracterizes *United States v. Lewis*, 2017 WL 1652587 (S.D. Ga. Apr. 28, 2017), and *United States v. Sparks*, 2023 WL 2366607 (N.D. Cal. Mar. 6, 2023), as standing for the proposition that "the opportunity to see the victim 'via pictures' constitutes a 'reasonable opportunity to observe' under § 1591(c)." Reply at 16. In *Lewis*, "[t]he Government presented evidence that Defendant had a

reasonable opportunity to observe all of the Jane Does ... both in person and via pictures." 2017 WL 1652587, at *3. This does not mean that seeing a person in pictures alone is sufficient. Plaintiff's presentation of *Sparks* is even more distorted. Sparks was a pimp who was caught with an underage prostitute in his car. *United States v. Sparks*, No. 21-cr-00281, Crim. Compl., ECF No. 1 ¶¶ 35-36, 39 (N.D. Cal. July 17, 2020). In *dicta*, the court opined that one can have an "opportunity" to observe a person "even if he never takes advantage of that opportunity," such as if the person is in a van the defendant is driving. *Sparks,* 2023 WL 2366607, at *3. Neither *Sparks* nor its hypothetical has anything to do with seeing someone "via pictures."

MindGeek is not aware of any case where a court applied Section 1591(c) to a defendant who had only seen the victim in videos or photographs. Indeed, such an interpretation would flout the Supreme Court's concerns in *X-Citement Video*. As former FBI Special Agent Joseph Fonseca has explained in this case, "[a]bsent direct evidence, such as the image or video being of a known victim, it is very difficult to tell whether an individual is underage from a photo or video once they have gone through puberty." Opp. Fonseca Decl., ECF No. 102-3, ¶ 35.

Finally, even if Plaintiff could rely on Section 1591(c)—she cannot—whether MindGeek had a "reasonable opportunity to observe" each class member would still be an individualized factual inquiry based on what the video shows. *See United*

14

*States v. Koech*, 992 F.3d 686, 688 (8th Cir. 2021) (holding that whether there was a "reasonable opportunity to observe" is based on the "common understanding" of the jury); *United States v. Sims*, 11 F.4th 315, 322 (5th Cir. 2021) (assessment of whether there was a "reasonable opportunity to observe" a person in a hotel room depends on physical configuration of the room); *Sparks*, 2023 WL 2366607, at *3 (contrasting hypothetical where defendant had "opportunity" to look inside a van with an example where the van was locked).

Plaintiff claims MindGeek had a "reasonable opportunity to observe" every person shown in a video posted to MindGeek's websites. But different videos show different things. In Plaintiff's case, for example, ███████████████████████ ██████████████████████████████████. Ex. 1, Jane Doe Dep. Tr. at 234:1-11. ████████████████████████████████████ ███████████████████████ *Id.* at 263:9-14. Whether any video of Plaintiff, and the alleged CSAM videos of other persons, gave MindGeek a "reasonable opportunity to observe" the person in it would require a video-by-video finding of fact by the jury.

For the foregoing reasons and the reasons enumerated in MindGeek's Opposition, Plaintiff's Motion for Class Certification should be denied.

DATED: November 15, 2023                    Respectfully submitted,

                                            /s/ *Sara M. Turner*
                                            Sara M. Turner

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
smturner@bakerdonelson.com
1901 Sixth Avenue North
Suite 2600
Birmingham, AL 35203
Phone: (205) 250-8316

Kathleen N. Massey (*pro hac vice*)
kathleen.massey@dechert.com
Hayden Coleman (*pro hac vice*)
hayden.coleman@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Michael T. Zeller (*pro hac vice*)
michaelzeller@quinnemanuel.com
Michael E. Williams (*pro hac vice*)
michaelwilliams@quinnemanuel.com
Diane Cafferata (*pro hac vice*)
dianecafferata@quinnemanuel.com
Robert Becher (*pro hac vice*)
robertbecher@quinnemanuel.com
Thomas Nolan (*pro hac vice*)
thomasnolan@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of November 2023, this document was filed through the Electronic Case Filing System of the United States District Court for the Northern District of Alabama and will be served electronically by the Defendants to all participants of record along with copies of all sealed and unredacted documents.

/s/ *Sara M. Turner*
Sara M. Turner