FILED
2024 Mar-05  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| JANE DOE #1, and JANE DOE #2, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO: 7:21-cv-00220-LSC |
| v. | ) ) | Honorable L. Scott Coogler |
| MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC, INC., d/b/a MINDGEEK; MG BILLING LTD, | ) ) ) ) ) ) ) ) ) ) | OPPOSED |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO COMPEL

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiff Jane Doe #1 ("Plaintiff") moves this Court for an Order compelling Defendants MG Freesites, Ltd, MG Freesites II Ltd, Mindgeek S.A.R.L., Mindgeek USA Incorporated, MG CY Holdings Ltd, Mindgeek Content RT Limited, 9219-1568 Quebec, Inc., and MG Billing Ltd ("Defendants" or "Mindgeek") to provide documents in response to Plaintiff's Production Requests. Plaintiff has propounded Discovery requests, including Requests for Production of Documents and other

discovery, to which Defendants have not responded, or have responded inadequately, rendering this motion necessary.[1] For the reasons stated below, Plaintiff requests that her Motion to Compel be granted.

On February 2, 2024, Plaintiff's counsel wrote to Defendant's counsel regarding deficiencies and omissions in Defendants responses to Plaintiff's Requests for Production and requesting the missing discovery be provided by February 12, 2024. *See* Exhibit 1, February 2, 2024 Plaintiff's Counsel Deficiency Letter to Defendants. This letter also requested the Defendants provide Plaintiff the personal identifying information ("PII") associated with reports of potential, suspected, or apparent CSAM. *Id.* After no response, Plaintiff's counsel sent another letter to Defendants' counsel on February 16, 2024 to notify them of Plaintiff's intention to file a motion to compel. *See* Exhibit 2, February 16, 2024 Plaintiff's Counsel Follow Up Letter to Defendants. That day, Defendants' counsel responded to Plaintiff's counsel's second letter stating they would respond in the next few days and would like to meet and confer on such response the next week. *See* Exhibit 3, February 16, 2024 Email from D.Cafferata. Plaintiff's counsel wrote Defendants' counsel again on February 27, 2024. *See* Exhibit 4, February 27, 2024 Plaintiff's Counsel Final

---

[1] Due to the impending discovery deadlines, Plaintiff is seeking to file without opposition all documents marked by the Defendants as confidential under seal rather than complete the confer procedure outlined in the Protective Order, Section 13.3. Doc. 61 at 22-23. The Order prescribes a procedure for minimizing the need for filing under seal "when possible," but that procedure would require potentially up to another eight days of conferring with Defendants. *Id.*

Follow Up Letter to Defendants. Defendants' counsel has not sent any further response to date nor have they remedied the deficiencies in the Defendants' production.

## I.    PROCEDURAL HISTORY

On December 22, 2021, Plaintiff served Defendants with Requests for Production. Defendants served objections and responses to Plaintiff's Requests for Production on January 21, 2022. *See* Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production. But, Defendants did not begin producing documents to Plaintiff until January 26, 2023 and have continued to produce documents with the most recent production being provided on March 1, 2024. *See* Exhibit 6, January 26, 2023 Letter to Plaintiff's Counsel Regarding Defendants' Production Volume 1 and March 1, 2024 Letter to Plaintiff's Counsel Regarding Defendants' Production Volume 20-21.

Defendants failed to provide any responsive documents from Google Documents, Google Sheets, Jira, Internal Wiki, Zendesk, Kayako, and Google Analytics. Defendants alo failed to provide requested previous iterations of policies, content management system ("CMS") data exports, moderation employee records documenting compliance mistakes, documents relating to content designated as TOS-8 and TOS-14, ICQ messages, and other TOS-14 items.

On August 17, 2023, this Court entered an Order stating that Defendants were not required to provide PII to Plaintiff at that time, but that Plaintiff could request the PII from Defendants at a later date. Doc. 92. As mentioned in the introduction, Plaintiff's counsel wrote to Defendants regarding their production deficiencies and requested PII related to CSAM on February 2, 2024. *See* Exhibit 1, February 2, 2024 Plaintiff's Counsel Deficiency Letter to Defendants. Plaintiff's counsel wrote again on February 16, 2024.  *See* Exhibit 2, February 16, 2024 Plaintiff's Counsel Follow Up Letter to Defendants. Defendants' counsel responded to say they would reach out the next week with their formal response and would like to confer after that, but Defendants' counsel never followed through with that commitment. *See* Exhibit 3, February 16, 2024 email from D. Cafferata. Plaintiff's counsel wrote Defendants' counsel again on February 27, 2024. *See* Exhibit 4, February 27, 2024 Plaintiff's Counsel Final Follow Up Letter to Defendants.

## II.   <u>LEGAL STANDARD</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure governs the scope of discovery requests which are appropriate for a party to propound:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

likely benefit. Information within this scope of discovery need not
be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "In the discovery context, relevance is 'construed broadly

to encompass any matter that bears on, or that reasonably could lead to other matters

that could bear on, any issue that is or may be in the case." *Sec. Pest Control, Inc. v.*

*Wells Fargo Bank Nat'l Ass'n*, 532 F. Supp. 3d 1221, 1233 (M.D. Ala. 2020)

(quoting *Oppenheimer Fund, Inc. v. Sanders*, 47 U.S. 340, 351 (1978)) "The general

rule is that a court should permit discovery even when the relevance of the requested

material is in doubt." *Id.* (citing *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685

(M.D. Ala. 1998). This Court has broad "discretion in defining the scope of

discovery under Rule 26(b)(1) and ruling  on a motion to compel under Rule

37(a)(3)(B). *Id.* (citing *Harris v. Chapman*, 92 F.3d 499, 506 (11th Cir. 1996) and

*Williams v. City of Dothan, Ala.*, 745 F.2d 1406, 1415 (11th Cir. 1984)).

Where a discovery request has been properly made and a party has failed to

respond or responds in an incomplete manner, the party may seek an order

compelling the other party's response to the request. Fed. R. Civ. P. 37(a)(3)(B)(iv)

and (4).

## III.   <u>ARGUMENT</u>

### A. Defendants failed to provide any responsive documents from Google Documents, Google Sheets, Jira, Internal Wiki, Zendesk, Kayako, and Google Analytics.

Through evaluation of the documents produced and the testimony of witnesses in this case, it has become apparent that Defendants used several different computer programs for tasks and communications responsive to Plaintiff's Requests and for which they have not produced any responsive documents. Defendants have failed to produce discovery in the format of Google Documents and Sheets, Jira, Internal Wiki, Zendesk, Kayako, Google Analytics, or CMS Data Exports. For example, Mindgeek_NDAL_00401190 is a spreadsheet that contains references to Jira Tickets related to potential CSAM, CMS pages related to potential CSAM, Google documents related to potential CSAM and links to an internal wiki with policy and procedure material related to potential CSAM. *See* Exhibit 7, Mindgeek_NDAL_00401190. But, Defendants have failed to produce any JIRA, CMS pages, GoogleDocs or Wiki pages.

### 1. Google Documents and Google Sheets

Employees of Defendants have testified on multiple occasions that they used Google Documents and Sheets in contexts that would be responsive to Plaintiff's Requests for Production. ███████████, the Director of Operations ███████████ ███████████████████████████. Exhibit 8, July 2023 Dep. of ███████████ at 168:4-15. This list in Google Documents is responsive to multiple Requests for Production including, but not limited to, Number 25, "[p]lease produce all Documents relating to training, materials, policies, procedures, support and

assistance provided to your employees or any ModelHub members, including, but not limited to, Documents pertaining to CSAM" and Number 26, "[p]lease produce all Documents pertaining to changes over time relating to training, materials, policies, and procedures regarding CSAM provided to the teams administering to the Content Partners, Viewshare Members, and Channel programs." Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production. ██████████████, an employee of Mindgeek, testified that written training materials for content moderation were created, edited, and provided on Google Documents. Exhibit 9, August 30, 2023 Deposition of ████████ at 164:23-165:2; 173:3-25.

███████████████████████████████████████████████████████

██████████████████████    The documents Mr. Ignatiou testified about are clearly responsive to Plaintiff's Request Numbers 24, "[p]lease provide all documents that reflect ongoing support, benefits, and/or assistance to MindGeek Content Partners, Viewshare Members, and Channel partners including documents that reflect the monitoring or enforcement of MindGeek's policies as to members of these programs[,]" 25, "[p]lease produce all Documents relating to training, materials, policies, procedures, support and assistance provided to your employees or any ModelHub members, including, but not limited to, Documents pertaining to CSAM[,]" and 26 "[p]lease produce all Documents pertaining to changes over time relating to training, materials, policies, and procedures regarding CSAM provided

to the teams administering to the Content Partners, Viewshare Members, and Channel programs." Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production. Plaintiff believes Defendants have Google Documents and Sheets that would be responsive to Requests for Production Numbers 29-34, and 38 as well. *See Id.* Defendants' Objections and Responses to Plaintiffs' Requests for Production.

### 2. Jira System

Tickets from the Jira System are clearly responsive to Plaintiff's Request for Production Number 3, which required Defendants to "[p]lease produce all help desk tickets (such as Jira, Zendesk, or any other program used for this purpose) or reports in order to document, review, or request the removal of videos for suspected CSAM from 2008 to present." Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production. ▮▮▮▮▮▮▮▮▮, former employee of Defendants, testified that the Defendants would have determined what information was reported regarding CSAM to NCMEC by looking at documents in the JIRA system. Exhibit 10, January 2024 Deposition of ▮▮▮▮▮▮ at 171:1-19. Goldenberg also testified that he received an email from the JIRA system regarding tasks surrounding issues with content removal request process not functioning correctly. *Id.* at 234:7-237:17. ▮▮▮▮▮▮, who had a position as Pornhub support staff at Mindgeek and as model support, testified that JIRA tickets were created to

remove potential CSAM content flagged through by trusted flaggers. Exhibit 11, Deposition of ▮▮▮▮ at 99:25-101:23. Documents from the Jira System are also likely responsive to Plaintiff's Requests for Production Numbers 4-7, 18, 24-26, 29-35, and 38. *See* Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production.

### 3. Internal Wiki



Mindgeek's Vice President of Engineering ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit 12, 30(b)(6) Dep. of ▮▮▮▮ at 8:3-9, 200:12-21, 233:24-234:12. Plaintiff has issued multiple requests for production that would touch on technical documentation done by engineers at Mindgeek. For instance, Plaintiff's Request Number 12 requires Defendants to "[p]lease produce all Documents concerning systems used by MindGeek to identify, track, ban or restrict search terms relating to CSAM." *See* Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production. ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit 12, 30(b)(6) Dep. of ▮▮▮▮ at 213:3-23. Accordingly, there would likely be Internal Wiki documents responsive to this Request for Production. Internal Wiki documents are also likely

responsive to Requests Numbers 10-11, 17-18, 2935, and 38. Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production.

### 4. Zendesk

Defendants use Zendesk to create tickets when potential CSAM is being flagged and marked as CSAM. Exhibit 13, August 9, 2023 Dep. of ███████, 45:2-14 and Exhibit 9, August 30, 2023 Dep. of ███████ at 146:14-148:2. For example, Mindgeek_NDAL_00472614 is a spreadsheet containing URLs of many Zendesk tickets that were flagged because they reference potential CSAM. Exhibit 14, Mindgeek_NDAL_00472614. No actual tickets have been produced, only references to them and reviews of them. These tickets are responsive Plaintiff's Requests for Production Number 2 which required Defendants to "[p]lease provide all Documents, requests, reports, notifications, or complaints from the public to Mindgeek related to CSAM from 2008 to present and any documents related to the resolution of these reports." *See* Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production. They are also responsive to Request for Production Number 3 which required Defendants to "[p]lease produce all help desk tickets (such as Jira, Zendesk, or any other program used for this purpose) or reports in order to document, review, or request the removal of videos for suspected CSAM from 2008 to present." *Id.* They would further be responsive to Requests for Production Numbers 4, 6, and 7. *Id.*

### 5. Kayako

Defendants replaced Kayako with Zendesk, so Defendants used Kayako to process and respond to customer webviewers requests for content removal and reports of suspected CSAM. *See* Exhibit 15, Mindgeek_NDAL_00105634. So, documents from Kayako would be responsive to the same Requests for Production to which the Zendesk documents are responsive. *See supra* section III.A.4

### 6. Google Analytics

Defendants has used Google Analytics since at least 2015.  *See* Exhibit 16, Mindgeek_NDAL_00505219-20. Google Analytics tracks the traffic on Defendants' sites. *Id.* "Google Analytics is a platform that collects data from your websites and apps to create reports and provide insights into your business." How Google Analytics Works: https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=1408993 9&sjid=18375388503322020954-NA. Google Analytics can also track things like language setting and what brought the user to the site. *Id.* Defendants used Google Analytics website traffic information when making decisions on whether to leave up the metadata from removed content.  *See* Exhibit 17, Mindgeek_NDAL_00503225-26. There are clearly documents from Google Analytics that would be responsive to Plaintiff's Request for Production Number 37, which requires Defendants "[p]lease produce all generally reports, dashboards, and other documents containing data

collected from or provided by the business intelligence tools used during the period 2008 through the present in connection with PornHub." Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production. Documents from Google Analytics may also be responsive to Plaintiff's Requests for Production Numbers 9, 12-14, 17, and 28. Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production.

Because no documents from these systems have been produced, there may be other Requests that apply here as well.

### B. Defendants failed to produce previous iterations of policies and the associated metadata.

Mindgeek has not produced previous iterations of their responsive policies, including documentation which allows Plaintiff to track what policy changes were made, when, and by whom, including any metadata and comments which reveal any decision-making regarding such changes.

### C. Defendants failed to produce CMS Data Exports.

Mindgeek has not produced records relating to the moderation team's review of TOS-8 content and Level 3 violations for CSAM. █████████, former Mindgeek employee, testified that he could pull the number of NCMEC reports made through the CMS database. *See* Exhibit 10, January 2024 Deposition of █████████ at 168:19-169:13. ████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████  *See* Exhibit 18, January 24, 2024 30(b)(6) Dep. of ████████ at 200:17-25, 202:14-21; 294:18-21; 298:21-299:16, *see also* Exhibit 9, ████████ August 30, 2023 Dep. at 189-190. In particular, Defendants have not provided this material for Plaintiff's abuser, ████████. This information is responsive to Plaintiff's Requests Number Numbers 4, 5, and 28. Request for Production Number 4 required to Defendants to "[p]lease produce all Documents relating to the removal of CSAM from MindGeek's websites, from 2008 to present." Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production. Request for Production. Number 5 required to Defendants to "[p]lease produce all Documents relating to Mindgeek's policies or procedures for the identification and removal of CSAM from 2008 to present, including but not limited to complaint investigation processes, employee training materials on CSAM; removal processes and guidelines; storage of materials after removal; and Mindgeek's policies regarding reporting to law enforcement, the Canadian Centre for Child Protection, or the National Center for Missing and Exploited Children (NCMEC)." *Id.* Request for Production Number 28 required Defendants to "[p]lease produce all Documents relating to the quantity and content of videos uploaded daily to MindGeek websites

since 2008, including but not limited to the number of videos screened and flagged as suspected or confirmed CSAM." *Id.*

### D. Defendants failed to produce Moderation Employment Records for Compliance Mistakes

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████ *See* Exhibit 18, January 24, 2024 30(b)(6) Dep. of ███████ at 37:17-38:5, 198:24-200:25, and 202:14-21. But, Defendants have not produced any employment records documenting this process and the specific instances of warnings in the employee's records who have made such compliance mistakes. These documents should have been produced as they are responsive to Plaintiff's Requests Numbers 4, 5, and 28. Request for Production Number 4 required to Defendants to "[p]lease produce all Documents relating to the removal of CSAM from MindGeek's websites, from 2008 to present." *See* Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production. Request for Production Number 5 required to Defendants to "[p]lease produce all Documents relating to Mindgeek's policies or procedures for the identification and removal of CSAM from 2008 to present, including but not limited to complaint investigation processes, employee training materials on CSAM; removal processes and guidelines; storage of materials after removal; and Mindgeek's policies regarding reporting to law enforcement, the

Canadian Centre for Child Protection, or the National Center for Missing and Exploited Children (NCMEC)." *Id.*  Request for Production Number 28 required Defendants to "[p]lease produce all Documents relating to the quantity and content of videos uploaded daily to MindGeek websites since 2008, including but not limited to the number of videos screened and flagged as suspected or confirmed CSAM." *Id.*

### E. Defendants failed to produce Documents Relating to TOS-8 Numbers and TOS-14 Numbers

Defendants' moderation process involves a moderator reviewing submitted content. *See* Exhibit 9, ████████ August 30, 2023 Dep. at 89, 188-191. If a piece of content was not compliant with Defendants' terms of service, then it was placed in a folder to escalate the content. *See Id.*, *see also* Exhibit 18, ████████ January 24, 2024 30(b)(6) Dep. at 52:12-20. ████████████████████

████████████████████████ *Id.* at 91:7-92:3; 101:4-102:3. ████████████████████████ *Id.* at 108:14-25, 149:14-150:14. ████████████████████████

████████████████████████████

████ *Id.* at 341:15-344:3; ████████████████

████████████████████ *Id.* at 341:15-342:17, 345:7-346:9.

████████████████████

████████████████████████████



████████████████ *See* Exhibit 9, ████████ August 30, 2023 Dep. at 83:2-7.

██████████ *Id.* at 81:11-14. Defendants' employees also designated some content as Terms of Service Violation 14 for Brand Safety or TOS-14 when they were concerned the content displayed underage individuals. *See* Exhibit 19, Mindgeek_NDAL_00186696. █████████████

████████████████ *See* Exhibit 18, ████████ January 24, 2024 30(b)(6) Dep. at 337:18-25.

Mindgeek has documents or software that tracks how many pieces of content were "blocked at upload or removed for violating" their Terms of Service. *See* Exhibit 20, 2021 PornHub Transparency Report at 2. It also tracks how many pieces of content were removed from the site for violating their Terms of Service. *Id.* It also tracks the reason the content was removed, for example, Mindgeek has reported that 1.49% of the content removed that was uploaded in 2021 was removed for being potential CSAM. *Id.*

Defendants have not provided documents indicating the number of pieces of content placed in the Moderation Folders A and B and marked as TOS-1 or TOS-8, including documents indicating the number of pieces of content that were in these folders and later approved to go live by the secondary reviewers. Defendants have also not provided documents indicating the number of pieces of content that were

labeled TOS-14 due to uncertainty about age, including documents indicating the number of pieces of content that were approved to go live and then taken down and whether such content was flagged by first level moderators or after the content was live on the site. These documents, reports, or information were requested through Plaintiff's Requests for Production Numbers 1, 2, 3, 4, and 28. Exhibit 5, Defendants' Objections and Responses to Plaintiffs' Requests for Production.

### F.  Defendants failed to produce ICQ Messages

Mindgeek also testified in its 30(b)(6) deposition regarding moderation that its moderation employees used a messaging system called ICQ.  *See* Exhibit 18, January 24, 2024 30(B)(6) Dep. of ███████ at 376:11-377:23. Defendants have not produced any ICQ messages to date. Defendants should produce any ICQ messages that are responsive to Plaintiff's Requests for Production.

### G. Defendants failed to produce TOS-14 Items

████████████████████████████████████████████

████████████████████████████████████████████

███████  *See* Exhibit 19, Mindgeek_NDAL_00186696; ███████ January 24, 2024 30(b)(6) Dep. at 337:18-25. The Documents relating to this content and the designation are all responsive to Plaintiff's Requests for Production relating to potential or suspected CSAM, Request Numbers 1-6, 8-11, and 25-26. *See* Exhibit 5.  Defendants should produce redacted versions of any responsive TOS-14

documents, and should provide unredacted versions of the content to the Alabama State Attorney General's Office in accordance with this Court's Order, doc. 92, issued August 17, 2023.[2]

### H. Defendants failed to produce Personal Identifying Information

Plaintiff moves for this Court to order Defendants to provide them with the personal identifying information ("PII") associated with reports of potential, 20 suspected or apparent CSAM. This Court's August 17, 2023 Order provided that

> should Plaintiff wish to receive unredacted versions of the material Defendants produce, it will submit such a request to Defendants identifying the specific purpose for which Plaintiff desires to view it. The Court will review such a request(s) if intervention is needed. Many factors may influence the decision about whether such unredacted material should be produced, such as whether PII is of potential witnesses or of potential class embers; and whether such individual are represented by counsel or other agencies.

Doc. 92.  On February 2, 2024, Plaintiff's counsel wrote Defendant's counsel requesting the PII for the CSAM. *See* Exhibit 1, February 2, 2024 Plaintiff's Counsel Deficiency Letter to Defendants. Plaintiff's counsel explained that the PII for the CSAM is needed for Plaintiff to be able to track and identify all additional victims. It is also needed to understand the breadth of the failures of Mindgeek's internal

---

[2] In the Court's August 17, 2023 Order, this Court wrote, "[t]he Court will consider how to structure the process for the review of CSAM, if it is at all possible to conduct such review, at a later date." Doc. 92 at 16. The Court also ordered that any disclosure regarding CSAM produced to the Alabama Attorney General's Office by the National Center for Missing and Exploited Children "shall be determined at a later date." *Id.* at 18.

policies and failure to abide by the law to report and eliminate CSAM on its sites. To date, Defendants have not provided any answer regarding whether they are willing to provide this PII. Plaintiff now seeks this Court's intervention.

## IV.    <u>CONCLUSION</u>

For all of the reasons set forth, Plaintiff respectfully requests that this Court grant her Motion to Compel.

*/s/ Joshua P. Hayes*
Joshua P. Hayes
PRINCE GLOVER HAYES
701 Rice Mine Road
Tuscaloosa, Alabama 35406
T: (205) 345-1234
E: jhayes@princelaw.net

Gregory Zarzaur (ASB-0759-E45Z)
Kelsie Overton (ASB-1791-F80L)
THE ZARZAUR LAW FIRM
2332 Second Avenue North
Birmingham, Alabama 35203
T: (205) 983-7985
E: gregory@zarzaur.com
    kelsie@zarzadur.com

Kimberly Lambert Adams*
Kathryn L. Avila*
LEVIN PAPANTONIO RAFFERTY
316 S. Bavlen Street, Suite 600
Pensacola, FL 32502
T: (850) 435-7056
E: kadams@levinlaw.com
    kavila@levinlaw.com
*pro hac vice*

Brian Kent*
Gaetano D. Andrea*
Jill P. Roth*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI & KENT, LLP
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
T: (215) 399-9255
E: bkent@lbk-law.com
   gdandrea@lbk-law.com
   jroth@lbk-law.com
   sryan@lbk-law.com
   amacmaster@lbk-law.com
*pro hac vice

Benjamin W. Bull*
Dani Bianculli Pinter*
Christen M. Price*
Peter A. Gentala*
NATIONAL CENTER ON SEXUAL
EXPLOITATION
1201 F Street NW, Suite 200
Washington, D.C. 20004
T: (202) 393-7245
E: lawcenter@ncose.com
*pro hac vice

Kevin Dooley Kent*
Mark B. Schoeller*
Joseph W. Jesiolowski*
Vanessa Huber*
CONRAD O'BRIEN PC
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
T: (215) 864-9600
E: kkent@conradobrien.com
mschoeller@conradobrein.com
jjesiolowski@conradobrien.com

vhuber@conradobrien.com
*pro hac vice*

*Counsel for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify on this 5th day of March 2024, this document was filed conventionally with the Clerk of the United States District Court for the Northern District of Alabama and will be served electronically by the Plaintiff to all participants of record along with copies of the sealed documents.


*/s/ Joshua P. Hayes*
Joshua P. Hayes