FILED
2024 Apr-10  PM 02:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| **on behalf of herself and all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **7:21-cv-00220-LSC** |
| | ) | |
| | ) | |
| **MG FREESITES, LTD, d/b/a** | ) | |
| **"PORNHUB", a foreign entity;** | ) | |
| **MG FREESITES II LTD, a foreign** | ) | |
| **entity; MINDGEEK, S.A.R.L., a** | ) | |
| **foreign entity; MINDGEEK USA,** | ) | |
| **INCORPORATED, a Delaware** | ) | |
| **corporation; MG CY HOLDINGS** | ) | |
| **LTD, a foreign entity; MINDGEEK** | ) | |
| **CONTENT RT LIMITED, a** | ) | |
| **foreign entity; 9219-1568 QUEBEC** | ) | |
| **INC. d/b/a MINDGEEK, a foreign** | ) | |
| **entity; MG BILLING LTD, a** | ) | |
| **foreign entity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF OPINION AND ORDER

On December 19, 2023, this Court granted Plaintiff's motion for class certification, certifying the following class under Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> All persons who were under the age of 18 when they appeared in a video or image that has been made available for viewing on any

1

website owned or operated by Defendants anytime from February 12, 2011, through the present.

(Doc. 147.) Currently before the Court is Plaintiff's "Motion to Approve Form and Manner of Class Notice." (Doc. 179.) Defendants take no position on most aspects of Plaintiff's proposed class notice plan, but they have submitted a limited opposition to address several issues. (Doc. 189.) For the following reasons, the motion to approve the form and manner of class notice is due to be **GRANTED IN PART and DENIED IN PART.**

## I.   Legal Standard

Rule 23(c)(2) outlines the standard for directing appropriate notice of the class certification to class members. Fed. R. Civ. P. 23(c)(2). Because this Court granted certification under Rule 23(b)(3) (common questions class) and 23(b)(2) (injunctive relief class), different notice provisions apply. For classes certified under Rule 23(b)(2), the court *may* direct appropriate notice to the class. *See* Fed. R. Civ. P. 23(c)(2)(A) (emphasis added). Since this class was also certified as a Rule 23(b)(3) class, "the court *must* direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (emphasis added). Rule 23(c)(2)(B) further provides:

> The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

   (i)     the nature of the action;

   (ii)    the definition of the class certified;

   (iii)   the class claims, issues, or defenses;

   (iv)   that a class member may enter an appearance through an attorney if the member so desires;

   (v)    that the court will exclude from the class any member who requests exclusion;

   (vi)   the time and manner for requesting exclusion; and

   (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Aside from Rule 23, the form and manner of class notice must comply with constitutional due process because parties are bound by the results of a certified Rule 23(b)(3) class action unless they opt out. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). To comport with the due process principle of adequate notice, it is necessary that class notice reach the parties affected and convey the required information, which includes describing the substantive claims adequately and conveying the information necessary to make a decision whether to remain a class member, and thus be bound by the final judgment, or opt out. *Adams v. S. Farm Bureau Life Ins. Co*., 493 F.3d 1276, 1286 (11th Cir. 2007). Courts look "solely to the language of the notices and the manner of their distribution" in determining

whether they satisfy these requirements. *Id.* (quoting *Twigg v. Sears & Roebuck & Co.*, 153 F.3d 1222, 1226 (11th Cir. 1998)).

## II.    Discussion

Plaintiff proposes a thorough class notice plan consisting of various forms of communication to potential class members: direct email and/or mail notice to individual identified class members using contact information from Defendants' records; direct email and/or mail notice to individual class members who have been identified through partnerships with the National Center for Missing & Exploited Children ("NCMEC") and law enforcement agencies; and indirect notice through a media notice plan, which will include the dissemination of various forms of notice, including press releases, digital notice, social media, internet-sponsored search listings, and audio notices through podcast and music streaming services. Additionally, NCMEC will aid in disseminating notice through survivor networks and non-governmental organizations. A case website will provide detailed information about the case and key documents, including the Complaint, Long Form Notice, Class Certification Order, and others. Class members will also be able to access information through a toll-free telephone number at any time of day or night. Class notice will be implemented by Epiq Class Action and Claims Solutions, Inc. and Hilsoft Notifications, and Plaintiff's expert opines that this notice plan will reach at least 70% of the target group with an average frequency of three times each. (*See*

Doc. 179-7.) Plaintiff has offered as exhibits the proposed long form notice, email notice, press release, banner notices that would appear on internet search browsers and social media sites, third party long form notice, and third party email notice. (Docs. 179-1 through 179-6.)

As noted, Defendants consent to this multi-faceted notice plan in large part, and the Court finds as a general matter that it comports with the requirements of Rule 23 and due process because it appears to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Defendants oppose the notice plan as to only four discrete issues: (1) whether class notice should be posted on Defendants' own websites; (2) whether the opt out procedure should require class members to craft their own opt out form, postmark it, and physically mail it to the claims administrator; (3) whether class notice is sufficiently specific with regard to identifying the websites on which CSAM must have appeared for an individual to be a part of the class; and (4) whether the Court's order approving the form and manner of class notice should require Plaintiff to bear all costs. Each area of dispute is addressed in turn.

## A.    Notice on Defendants' Own Websites

Defendants argue that there is no need to post class notice on their websites because Plaintiff's other proposed forms of notice will be sufficient, and forcing Defendants to post notice on their own websites penalizes Defendants before

liability has been established. At first blush, it would seem that notice on Defendants' websites would be *especially* appropriate because class members probably regularly visit Defendants' websites to ensure that their CSAM has not been posted or reposted. However, as for class members who have visited Defendants' websites and reached out to Defendants to have their CSAM taken down, they will receive direct individual notice under Plaintiff's proposed notice plan. Indeed, Defendants have produced to Plaintiff all such takedown requests and any accompanying contact information, and Plaintiff seeks to use this information to provide direct notice to class members. Of course, potential class members might also receive notice through NCMEC, survivor networks, and law enforcement agencies who have agreed to partner with Plaintiff in this endeavor, as well as through the varied forms of digital notice and targeted social media outreach. Therefore, notice posted on Defendants' websites would be redundant for many potential class members except for that group of individuals who visit Defendants' websites regularly but who have never issued a takedown request and who are not likely to receive notice through any of Plaintiff's other proposed methods of notice. Defendants say that it is not likely that this group of individuals would be significantly large.

The Court is not sure it agrees. Surely not all CSAM victims—especially those who are still minors or who may have limited means or education—have submitted

a takedown request on Defendants' websites to have their images or videos removed. They may not have done so for a variety of reasons. Perhaps they fear that a takedown request would prompt retaliation from their perpetrator, or they are not aware that they can request that an image or video be taken down, or they might be embarrassed to contact the website for fear of drawing further attention to their situation, especially if they do not know if takedown requests could be made public. Notice of this class action lawsuit on Defendants' websites would be a simple and effective way of notifying these class members of their rights.

Defendants direct the Court to cases in which courts have rejected attempts to require defendants to post notice to their own websites or places of business because class members could be reached through other means and such notice has the potential to appear punitive. *See, e.g., Mark v. Gawker Media LLC*, 2014 WL 5557489, at *3-4 (S.D.N.Y. Nov. 3, 2014) (in a case where a class made up of unpaid interns for Gawker Media, LLC, had been conditionally certified under the Fair Labor Standards Act, denying plaintiff's request to post notice on Gawker's website and blogs because the class members "are likely to be reached and identified by other means," and recognizing that "[p]osting a link on their website extracts a cost from Defendants, and has the potential to appear punitive, while the incremental chance that potential plaintiffs who do not otherwise receive notice would see it and become aware of their rights is small"); *Doe v. Stephen*, 2022 WL 1700445, at *4-5 (S.D.

Iowa Feb. 2, 2022) (in a class action alleging claims of sexual abuse and misconduct by a former basketball coach, denying request that defendant Barnstormers Basketball, Inc. post class notice on its website and social media accounts as "unnecessary and redundant" in light of the fact that class members would be receiving individual notice through other means, including "notice to every individual who follows, likes, or affiliates with one or more of [Barnstormers] social media pages, as well as U.S. Mail and e-mail notice to every postal address and e-mail address in its possession affiliated with a past or present Barnstormers Basketball participant"); *Kaufman v. Am. Exp. Travel Related Servs., Inc.*, 283 F.R.D. 404, 408 (N.D. Ill. 2012) (denying request that defendants "post a link to a settlement web site on their home page" but stating that the court might reconsider the denial if the parties failed to craft a plan to provide notice to a meaningful proportion of class members); *Yeoman v. Ikea U.S. W., Inc.*, 2013 WL 5944245, at *4 (S.D. Cal. Nov. 5, 2013) ("posting notices at each point-of-sale location in each of Ikea's California locations is not practicable and not supported by law" and "is likely to cause confusion and would encourage inquiries by non-class members, which could interfere with Ikea's reputation and business").

Some of these cases are distinguishable. For instance, the court in *Yeoman* appeared concerned about class notice at Ikea's stores causing confusion or encouraging inquiries by non-class members. Here, it is highly unlikely that one of

Defendants' "customers"—a viewer of pornography on its websites—would be confused as to whether they are a class member or not. You either know that you were a minor when your CSAM was posted online or you do not. In *Gawker*, the chance that Gawker's former unpaid interns, who had moved on to other employment, would access the website and blogs where they used to post content was small, but the same cannot be said for CSAM victims who are concerned about posting or reposting of their images and videos on Defendants' sites.

Requiring a class action defendant to post class notice on its own websites, at its own places of business, and on its social media pages is not uncommon. Plaintiff points to cases in which courts have upheld such as conforming with Rule 23(c), but Defendants attempt to distinguish each case, usually because such notice was permitted as a last resort to reach potential class members. *See Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 718807, at *2-4 (S.D. Cal. Feb. 5, 2019) (in a class action alleging that Ocean Spray deceived customers about artificial ingredients in its products, the court approved class notice on Ocean Spray's website, even though Ocean Spray does not sell products directly through its website, but only after it disapproved of plaintiff's direct notice plan due to the potential that it would be giving notice to an overly broad group); *Stuart v. State Farm Fire & Cas. Co.*, 332 F.R.D. 293, 297-300 (W.D. Ark. 2019) (the class consisted of the defendant's customers, and class notice on the defendant's website was accessible

only after a current customer logged into the payment portal and would not be seen by the public accessing the website); *Jermyn v. Best Buy Stores, L.P.*, 2010 WL 5187746, at *8 (S.D.N.Y. Dec. 6, 2010) (in a consumer class action alleging that Best Buy was not honoring its guarantee to match prices, there was a real possibility that class members whose rights would be affected by class certification might not receive notice through other means, so while the court permitted notice on Best Buy's website, it was only after the court had rejected every other form of the plaintiff's proposed direct notice as underinclusive because there was no conceivable way to craft a targeted list of individuals who might have claims); *Stoffels exrel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 254 F.R.D. 294, 299-300 6 (W.D. Tex. 2008) (the class consisted of the defendant's current and former employees, and the proposed notice plan contemplated notice on the defendant's "intranet" site where class members were "likely to seek information about their Telephone Concession Benefits"); *Martin v. Weiner*, 2007 WL 4232791, at *3 (W.D.N.Y. Nov. 28, 2007) (the class consisted of individuals who had applied for certain government assistance, and the website notice was intentionally targeted toward those applicants with disabilities who might not be able to access the notice posted at defendant's physical location).

While an examination of these decisions is helpful, the Court is reminded that this is not a consumer class action but involves victims of federal crimes, if those

crimes were proven beyond a reasonable doubt in court. The importance of apprising potential class members of their rights cannot be overstated, and for some, the only way to learn about this lawsuit may be through accessing Defendants' websites. Accordingly, the Court finds that using Defendants' websites to host banners about the class certification and directing individuals to the appropriate class website complies with Rule 23(c).

### B.      Procedures Required to Opt Out

Defendants claim that the manner in which Plaintiff proposes that class members can opt out is unduly burdensome in this digital age. Despite Plaintiff's notice plan being largely digital-and media-based and targeting younger individuals between 13 and 34 years of age, Plaintiff proposes that in order to opt out, class members must draft their own opt out request, postmark it, and physically mail it to the class administrator. Defendants say that this method does not reflect how people communicate in this century and will not provide class members with a meaningful way to opt out.

Defendants propose that at the least, a standard opt out form should be available that can be filled out and signed, rather than class members having to draft their own opt out request. Defendants have submitted two such forms, one for electronic submission and the other for physical mailing. (*See* Docs. 189-2 & 189-3.) Defendants also propose that opt outs should be permitted by email and through

forms submitted on the administrator's website. Defendants cite cases in which courts have approved notice procedures that permit electronic opt outs. *See, e.g., Walney v. Swepi LP*, 2017 WL 319801, at *16 (W.D. Pa. Jan. 23, 2017) (approving a notice procedure providing for opt out via email, interactive website, and U.S. Mail); *In re Wholesale Grocery Prod. Antitrust Litig.*, 2017 WL 826917, at *5 (D. Minn. Mar. 1, 2017) ("Courts also approve the use of online forms which allow class members to opt out electronically."); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 331 (C.D. Cal. 2016) (approving class settlement notice plan that "provides that class members may elect to exclude themselves by completing and submitting online or mailing a simple Opt Out Form, which will be available by phone and on the settlement website").

The opportunity to opt out should not be unduly restricted. *See* Manual for Complex Litigation (Fourth) § 1.321 (2004) ("The opt-out procedure should be simple and should afford class members a reasonable time in which to exercise their option."). The Federal Judicial Center's Manual for Complex Litigation advises that a "simple and clear form for opting out is often included with the [class action] notice." Manual for Complex Litigation (Fourth) § 21.311 (2016). The use of an opt out form on paper and online to simplify the opt out process is appropriate here, where no action is required for a class member to be included in the class. The Court sees little potential that such a form could confuse class members or cause them to

inadvertently opt out of the class, as the instructions are clear with regard to remaining a class member or choosing to opt out. Additionally, although Plaintiff proposes that all opt out requests must be signed, this is no barrier to permitting electronic opt outs because digital signatures are ubiquitous in the modern world, and federal law expressly recognizes their validity. *See* 15 U.S.C. § 7001, *et seq.*

Accordingly, Plaintiff shall include an opt out form with the direct notice that is mailed or emailed to class members. For the same reasons that the paper form is appropriate, the Court will also order that the case-specific website include an online opt out form that can be completed and submitted electronically. Plaintiff may use Defendants' proposed forms (docs. 189-2 & 189-3) if she wishes, but she may also craft her own, and if the parties require this Court's intervention on the agreed-upon format, they may seek it.

### C.   Mention of Other Websites Operated by Defendants

Defendants take issue with the fact that Plaintiff's proposed class notices provide a non-exhaustive list of the websites operated by Defendants, listing 13 websites by name but also stating "or others" or "as well as other Mindgeek operated websites". (*See* Doc. 179-1 at pages 2, 5 (long form notice); doc. 179-2 at page 2 (email notice); doc. 179-3 at page 2 (press release); doc. 179-4 at pages 2-5 (digital banner notice); doc. 179-5 at page 2 (third party long form notice); doc. 179-6 at 2

(third party email notice)). For instance, Plaintiff's proposed long form notice leads

with the following statement in larger, bolded font:

> If you were under 18 when you appeared in a video or image viewable on a pornographic website, including Pornhub.com, YouPorn.com, Redtube.com, XTube.com, and Tube8.com, or others, a class action lawsuit may affect your rights.

Doc. 179-1 at 2. And further down on the first page of the long form notice, in

smaller font, is stated:

> This means that if you were under the age of 18 and appeared in a photo or video on sites like Pornhub, Redtube, YouPorn, XTube, Tube8, or others, your rights are affected by this lawsuit. An expanded list of included websites can be found in Question 9 below.

*Id*. On page 5, Question 9 reads:

> 9. What websites did the Defendants own or operate?
>
> The websites that Defendant owned or operated include the following, as well as other Mindgeek operated websites:
>
> • Pornhub.com
> • Pornhubpremium.com
> • Redtube.com
> • Redtubepremium.com
> • YouPorn.com
> • YouPornpremium.com
> • Tube8.com
> • Mofosex.com
> • ExtremeTube.com
> • Spankwire.com
> • Keezmovies.com
> • Thumbzilla.com
> • Xtube.com

*Id.* at 5.

Defendants say that without identifying each site, there is no way for notice recipients to determine whether they might be part of the class. Defendants have offered new versions of Plaintiff's proposed notices with all references to other websites stricken. (Docs. 189-4 through 189-13 (clean and black-lined versions)).

The Court will require Plaintiff to eliminate references to "other" unnamed websites, as leaving the list of websites incomplete may lead to confusion among class members. Plaintiff may use Defendants' proposed forms (docs. 189-4 through 189-13) if she wishes, but she may also craft her own, and if the parties require this Court's intervention on the agreed-upon format, they may seek it.

### D.    Whether Plaintiffs Should Bear the Cost of Notice to the Class

Defendants state that this Court's order approving the notice plan should make clear that Plaintiff bears the cost of the notice to the class. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178–79 (1974) ("Where, as here, the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit."). The Court is also aware, however, that some courts have shifted the cost of class notice to the defendants if liability has been established. *Bakov v. Consol. World Travel, Inc*., 68 F.4th 1053, 1059 (7th Cir. 2023) ("We thus agree with the courts that have said that the district court may elect to shift the cost of class notice (with or without a security bond) to the defendant after the plaintiff's success on the merits has been established.").

Regardless, Plaintiff does not appear to be asking that Defendants bear the costs of notice to the class. Thus, the Court will not issue a ruling on an issue that is not in dispute. Should the parties reach an impasse as to this issue in the future, they may brief the issue then.

## III.   Conclusion

For the foregoing reasons, Plaintiff's motion to approve form and manner of class notice (doc. 179) is **GRANTED IN PART and DENIED IN PART.**

**DONE** and **ORDERED** on April 10, 2024.

_____
L. Scott Coogler
United States District Judge

160704