FILED
2024 Sep-06  PM 11:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| JANE DOE #1 on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. |
| MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II, LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC INC., d/b/a MINDGEEK; and MG BILLING LTD, | ) ) ) ) ) ) ) ) ) ) ) | 7:21-CV-00220-LSC |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Seth R. Goldman
*(Pro hac vice)*
New York Bar 2815926
New Jersey Bar 42091996
**MINTZ, LEVIN, COHN, FERRIS,**
 **GLOVSKY and POPEO, P.C.**
919 Third Avenue
New York, New York 10022
Tel: (212) 692-6845
Fax: (212) 983-3115
SRGoldman@mintz.com

Arameh Zargham O'Boyle
*(Pro hac vice)*
California Bar 239495
Tel. (310) 226-7846
AZOboyle@mintz.com

Esteban Morales
*(Pro hac vice)*
California Bar 273948
Tel. (310) 226-7841
Emorales@mintz.com

**MINTZ, LEVIN, COHN, FERRIS,**
 **GLOVSKY and POPEO, P.C.**
Century Plaza Towers
2049 Century Park East, Suite 300
Los Angeles, California 90067
Fax: (310) 586-3200

Kevin M. McGinty
*(Pro hac vice)*
Massachusetts Bar 556780
**MINTZ, LEVIN, COHN, FERRIS,**
 **GLOVSKY and POPEO, P.C.**
One Financial Center
Boston, Massachusetts 02111
Tel. (617) 348-1688
Fax. (617) 542-2241
KMMcginty@mintz.com

OF COUNSEL:

Sara M. Turner (ASB-4388-R58T)
**BAKER, DONELSON,**
**BEARMAN, CALDWELL &**
**BERKOWITZ, P.C.**
1901 Sixth Avenue North
Suite 2600
Birmingham, Alabama 35203
Tel: (205) 328-0480
Fax: (205) 322-8007
smturner@bakerdonelson.com

*Counsel for MG Freesites Ltd, MG Freesites II Ltd, MindGeek S.à r.l., MindGeek USA Incorporated, MG CY Holdings Ltd, MindGeek Content RT Limited, 9219-1568 Quebec Inc., and MG Billing Limited*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES......................................................................... iii

INTRODUCTION ..................................................................................1

DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS.............2

    A.    MindGeek operates websites that enable third-party content providers to upload videos created by them for viewing by other users. .........................2

    B.    Plaintiff's relationship with ████████████. ...................................5

    C.    ████████████ posts the Videos to a MindGeek website. ........................6

    D.    Plaintiff discovers the ████████ and ████████ but does not notify MindGeek..............................................................................8

    E.    MindGeek learns about the videos and immediately responds. ...................9

    F.    The organization and relationships of the named Defendants.....................10

ARGUMENT ..................................................................................16

    I.    Summary Judgment Standard....................................................16

    II.    Defendants Are Entitled To Summary Judgment On Count I Because They Are Immunized By Section 230 Of The Communications Decency Act.18

        A.    Section 230 precludes recovery under the TVPRA from a publisher of information provided by a third-party. ................................................19

            1.    The element of Section 230 immunity are satisfied......................21

            2.    Defendants are not "content providers" of the videos at issue .....22

                a.    A defendant is a creator or developer only if it directly materially contributed to what made the content lawful............................23

                b.    MindGeek did not create or directly and materially contribute to the development of the content of the videos depicting Plaintiff ...............................................................................27

            3.    The "FOSTA" exception to Section 230 immunity does not apply ...............................................................................31

                a.    FOSTA applies only where the defendant-website has itself violated Section 1591(a) ........................................................32

                b.    MindGeek has not violated Section 1591 .................................34

III.  Defendants Are Entitled To Summary Judgment On Count II By Reason Of Section 230 Immunity And Because There Is No Evidence That Defendants Knew Plaintiff Was A Minor When The Videos Were Recorded. ............................................................................................38

   A.  Section 230 applies because Count II treats MindGeek as the publisher of the videos depicting Plaintiff. ........................................................39

   B.  There is no "child pornography exception" to Section 230................43

   C.  There is an absence of evidence to support the knowledge element of Plaintiff's claim under Sections 2252 and 2252A..............................46

      1. Plaintiff has the burden to prove actual knowledge that she was underage ......................................................................47

      2. There is no evidence that MindGeek knew the Plaintiff was underage ......................................................................49

IV.  The Court Should Grant Summary Judgment To Defendants MG Freesites II Ltd., MG Content RT Limited, MindGeek S.à r.l., MindGeek USA Incorporated, And MG Billing, Limited...................................................51

   A.  MG Freesites II Ltd and MG Content RT Limited have been dissolved and lack the capacity to be sued. ........................................................51

   B.  MindGeek S.à r.l., MindGeek USA Incorporated, and MG Billing Limited are distinct entities that had no involvement in the operation of Pornhub.com.........................................................................52

   C.  There is no basis for piercing the corporate veils of MindGeek S.à r.l., MindGeek USA Incorporated, or MG Billing Limited.......................53

   D.  MindGeek S.à r.l. is beyond the territorial reach of 18 U.S.C. §§ 1591 and 1595 ....................................................................56

CONCLUSION ...................................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.L. v. Jackson Cnty. Sch. Bd.*,
  635 Fed. App'x 774 (11th Cir. 2015) ...................................................................18

*Acosta v. Miami-Dade County*,
  97 F.4th 1233 (11th Cir. 2024) ...........................................................................47

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) ..........................................................................20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................................18

*Anderson v. TikTok, Inc.*,
  2024 WL 3948248 (3d Cir. Aug. 27, 2024) ........................................................30

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) .....................................................................41, 43

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) .....................................................................*passim*

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)....................................................................................17, 18

*d'Amico Dry d.a.c. v. Nikka Fin., Inc. (d'Amico)*,
  429 F. Supp. 3d 1290 (S.D. Ala. 2019) .......................................................54, 55

*Doe #1 v. Twitter, Inc.*,
  2023 WL 3220912 (9th Cir. May 3, 2023)..........................................................44

*Doe I v. Apple Inc.*,
  2021 WL 5774224 (D.D.C. Nov. 2, 2021) ..........................................................59

*Doe v. Bates*,
  2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ...................................................41

*Doe v. Kik Interactive, Inc.*,
  482 F. Supp. 3d 1242 (S.D. Fla. 2020)..................................................32, 34, 38

*Doe v. MG Freesites, Ltd.*,
   676 F. Supp. 3d 1136 (N.D. Ala. 2022)............................................32, 40, 44, 46

*Doe v. Reddit, Inc.*,
   2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) ......................................................22

*Doe v. WebGroup Czech Republic, A.S.*,
   2024 WL 3533426 (C.D. Cal. July 24, 2024)........................................28, 30, 52

*Does, No. 1-6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) .................................................................*passim*

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003)...............................................................................54

*Dyroff v. Ultimate Software Group, Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ..........................................................25, 29

*Edmondson v. Velvet Lifestyles, LLC*,
   43 F.4th 1153 (11th Cir. 2022) ...............................................................18

*Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*,
   749 F. App'x 765 (11th Cir. 2018) ..............................................56, 57

*Fair Housing Council of San Fernando Valley v. Roommates.com,*
   *LLC*,
   521 F.3d 1157 (9th Cir. 2008) ..................................................................*passim*

*FDIC v. Stahl*,
   89 F.3d 1510 (11th Cir. 1996) ...........................................................44

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) .....................................................................*passim*

*FTC v. Accusearch, Inc.*,
   570 F.3d 1187 (10th Cir. 2009) .........................................................26

*FTC v. LeadClick Media, LLC*,
   838 F.3d 158 (2d Cir. 2016) .......................................................23, 25

*G.G. v. Salesforce.com, Inc.*,
   603 F. Supp. 3d 626 (N.D. Ill. 2022).................................................33

*Goddard v. Google, Inc.*,
2008 WL 5245490 (N.D. Cal. Dec. 17, 2008).....................................................46

*Gonzalez v. Google LLC*,
2 F.4th 871 (9th Cir. 2021) ...................................................................*passim*

*Hudgens v. NLRB*,
424 U.S. 507 (1976)...........................................................................45

*Jones v. Dirty World Entertainment Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) .....................................................*passim*

*Jurin v. Google*,
695 F. Supp. 2d 1117 (E.D. Cal. 2010) ...............................................28

*M.H. v. Omegle.com, LLC*,
2022 WL 93575 (M.D. Fla. Jan. 10, 2022) ...........................................35

*MGF Healthcare*,
542 F. Supp. 3d.............................................................................57

*Morrison v. Nat'l Aus. Bank Ltd.*,
561 U.S. 247 (2010)....................................................................58, 60

*Murphy v. Twitter, Inc.*,
60 Cal. App. 5th 12 (2021) ...............................................................41

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) .........................................................21, 29

*Noah v. AOL Time Warner, Inc.*,
261 F. Supp. 2d 532 (E.D. Va. 2003) ...................................................41

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) ...............................................34, 38

*Obado v. Magedson*,
2014 WL 3778261 (D.N.J. July 31, 2014) ............................................46

*M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*,
809 F. Supp. 2d 1041 (E.D. Mo. 2011) ..................................21, 28, 29, 44

*Plaintiff A v. Schair*,
    2014 WL 12495639 (N.D. Ga. Sept. 9, 2014).....................................................58

*Poer v. Jefferson Cnty. Comm'n*,
    100 F.4th 1325 (11th Cir. 2024) .........................................................................17

*Pruneyard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980)...............................................................................................45

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016)..............................................................................................58

*Shades Ridge Holding Co. v. United States*,
    888 F.2d 725 (11th Cir. 1989), (Sept. 29, 1989) .................................................54

*Simmons v. Clark Equip. Credit Corp.*,
    554 So. 2d 398 (Ala. 1989)..............................................................................54, 57

*Tilton v. Playboy Entertainment Group, Inc.*,
    554 F.3d 1371 (11th Cir. 2009) .......................................................................50, 51

*United States SEC v. Big Apple Consulting USA, Inc.*,
    783 F.3d 786 (11th Cir 2015) ...............................................................................49

*United States v. Ayfare*,
    632 Fed. App'x 272 (6th Cir. 2016) ...............................................34, 35, 37, 39

*United States v. Green*,
    133 F. App'x 666 (11th Cir. 2005) ......................................................................59

*United States v. Johnston*,
    620 Fed. App'x 839 (11th Cir. 2015) ..................................................................49

*United States v. Lozano*,
    711 Fed. App'x 934 (11th Cir. 2017) ..................................................................48

*United States v. Miller*,
    416 Fed. App'x 885 (11th Cir. 2011) ..................................................................47

*United States v. Pina-Suarez*,
    280 Fed. App'x 813 (11th Cir. 2008) ..................................................................36

*United States v. Potokri*,
    2024 WL 3027890 (11th Cir. June 17, 2024)......................................................48

*United States v. Wilson*,
    2010 WL 2991561 (S.D. Fla. July 27, 2010) ....................................................36

*United States v. X-Citement Video*,
    513 U.S. 64 (1994)...........................................................................................48

*United States v. Yousef*,
    327 F.3d 56 (2d Cir. 2003) ..............................................................................59

*United Steelworkers of Am., AFL-CIO-CLC v. Connors Steel Co.
    (Connors)*,
    855 F.2d 1499 (11th Cir. 1988) ..................................................................54, 55

*Wozniak v. YouTube, LLC*,
    100 Cal. App. 5th 893 (2024) ........................................................29, 30, 31, 46

**Statutes**

47 U.S.C.

§ 230.................................................................................................................*passim*

18 U.S.C.

§ 1591...............................................................................................................*passim*

§ 1595...............................................................................................................*passim*

§ 1596...............................................................................................58, 59, 60

§ 2252A.............................................................................................................*passim*

§ 2255.........................................................................................................39, 43, 48

§ 2256.....................................................................................................................39

# INTRODUCTION

The Court should grant summary judgment to all Defendants, and against Plaintiff "Jane Doe #1," on the claims asserted in the First Amended Complaint ("FAC"). Although the FAC purports to assert those claims on behalf of a class and includes sweeping allegations about Defendants' overall operations, Plaintiff's ability and right to function as the sole class representative depends in the first instance on the viability of her own, individual causes of action. The evidence of the specific conduct on which those individual claims are based—that is, the evidence concerning Plaintiff's own alleged trafficking and the two videos that supposedly depict it—is what matters here. That evidence is not in material dispute, and it establishes that Defendants are entitled to judgment as a matter of law.

First, Defendants are immune to suit under Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230, which immunizes an interactive computer service against any claim that seeks to treat it "as the publisher or speaker of any information provided by another information content provider." Both of Plaintiff's claims accuse Defendants of allowing just such a third-party content provider—an alleged miscreant named ▮▮▮▮▮▮▮▮▮▮—to post illegal videos on a website operated by one Defendant. This is the quintessential function of a "publisher" under Section 230, and Plaintiff cannot show that the narrow "FOSTA" exception to the statute applies. Defendants are immune to suit here.

Second, even if they did not have statutory immunity, all Defendants would be entitled to judgment as a matter of law on Count II—which alleges that they knowingly received, possessed, and distributed child pornography—because there is a complete absence of evidence to support an essential element of the claim: that Defendants knew Plaintiff was a minor when ███████████ allegedly recorded videos of her engaged in sexual conduct.

Third, certain Defendants are separately entitled to summary judgment, either because (i) they have been dissolved and lack the capacity to be sued under the laws of the jurisdictions in which they were organized, (ii) they are distinct corporate entities that had no involvement with the alleged possession and distribution of the videos involving Plaintiff, (iii) there are no grounds for piercing the corporate veil that separates them from the company that operated the website in question, or (iv) they are beyond the territorial reach of the statute upon which Count I is based.

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.    MindGeek operates websites that enable third-party content providers to upload videos created by them for viewing by other users.**

1.    MG Freesites Ltd ("MindGeek")[1] is and has been a limited liability company organized and operating under the laws of the Republic of Cyprus, with its

---

[1] As indicated in the Declaration of ████████████████ ("████ Dec."), a number of the MindGeek entities have been rebranded since the filing of this action. ██████ Dec. ¶ 4. For ease of reference, Defendants will continue to refer to those entities by the names under which they were sued.

head office located in Cyprus. ▮▮▮▮ Dec. ¶ 15 (Defendants' Evidentiary Submission ("D. Evid. Sub."), Ex. A).

2.     MG Freesites Ltd has during the relevant period been responsible for operating video sharing websites, including Pornhub.com (the "websites" or "MindGeek's websites"). ▮▮▮▮ Dec. ¶ 16.

3.     MindGeek's websites enable computer access by multiple users to a computer server and thus allow third-party content providers to upload videos created by them to the servers for viewing by other users. Dec. of ▮▮▮▮▮▮ ("▮▮▮▮ Dec.") ¶ 3 (D. Evid. Sub., Ex. B).

4.     Videos uploaded to MindGeek's websites frequently depict sexual activity. ▮▮▮▮ Dec. ¶ 3.

5.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ Dec. ¶ 12.

6.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮ Dec. ¶ 13.

7.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████. ███████ Dec. ¶¶ 36, 37; Tr. of Aug. 30, 2023 30(b)(6) Dep. of

████████████████ ("████████ 8/30/23 30(b)(6) Tr.") 86:4-87:6 (D. Evid. Sub., Ex. E).

8.    During the relevant period, MindGeek's Terms of Service prohibited

"post[ing] any Content that depicts any person under 18 years of age …." ████████

Dec. ¶¶ 36, 18, 19, 37; MindGeek_00000581 at 588 (██████ Dec. Ex. 1);

MindGeek_00000635 at 645 (████████ Dec. Ex. 2); Tr. of July 12, 2023 Dep. of

████████████████ ("████████ 7/12/23 Tr.") 194:7-20 (D. Evid. Sub., Ex. G);

Tr. of Aug. 8, 2023 30(b)(6) Dep. of ████████████ ("████████ 8/8/23 30(b)(6) Tr.")

271:19-272:7 (D. Evid. Sub., Ex. F); ████████ 8/30/23 30(b)(6) Tr. 280:20-25.

9.    MindGeek spends millions of dollars searching for and removing

apparent child sexual abuse material ("CSAM") from its websites. ████████ Dec. ¶ 5;

Dec. of ████████████████ ("████ Dec.") ¶¶ 9, 10, Ex. 1. (D. Evid. Sub.,

Ex. C).

10.    During the period in question, ████████████████████████



███████████████████████████████████████████. ████ Dec. ¶¶ 6, 7; ████████

8/30/23 30(b)(6) Tr. 195:22-197:24, 213:13-216:7; ████████ Dec. ¶ 10, Ex. 1.



11.     During the period in question, ██████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████. ██████ Dec. ¶¶ 11-16;

██████ Dec. ¶¶ 10, 16, 17, Ex. 1; ██████ Tr. 182:9-19, 183:8-22, 229:23-230:8;

██████ 8/08/2023 30(b)(6) Tr. 12:3-14, 24:2-5, 38:5-16.

**B.     Plaintiff's relationship with ██████████████.**

12.     Plaintiff, identified in the First Amended Complaint ("FAC") as "Jane

Doe #1", was born on January 8, ██████ JaneDoe!_0000406 (D. Evid. Sub., Ex. K);

Tr. of Sept. 29, 2023 Dep. of Pl. ("Pl. Tr."), 263:15-264:4 (D. Evid. Sub., Ex. I).

13.     ████████████████████████████████████

██████. Pl. Tr., 144:18-147:4, 151:18-152:13, 160:23-161:8.

14.     ████████████████████████████████████

████████████████████████████████████████████ ("the ██

██████"). ████████████████████████████. Pl.'s Aug. 1, 2022 Resp. to

Interrog. No. 11 ("ROG Resp. 11") (D. Evid. Sub., Ex. J); Pl. Tr. 212:21-213:14;

155:17-20.

15.     ████████████████████████████████████

████████████████████████████████████. Pl. Tr. 153:8-

22, 155:10-16, 156:7-22, 162:20-163:2.



16.  ████████████████████████████████████████

███████████████████████████████████████. Pl. Tr. 164:22-165:10,

167:19-168:9, 169:17-170:5, 170:15-171:12.

17.  ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ ("the ██████████"). Pl. Tr.

171:13-175:20; ROG Resp. 11. Together, the ████████ and the ████████ will be

referred to as the "Videos."

**C.** ████████████████ **posts the Videos to a MindGeek website.**

18.  ████████████████████████████████████████

████████████████████████████████████████████████

██████ Dec. ¶ 25.

19.  ████████████████████████████████████████

███████████████████████████████. Pl. Tr. 230:7-22.

20.  ████████████████████████████████████████████.

Pl. Tr. 232:20-233:9.

21.  ████████████████████████████████████████

████████████████████████████████████████. ████ Dec. ¶¶ 26, 34,

Ex. 7. ████████████████████████. ████ Dec. ¶ 26. ████████████████

██████████████████████████. ████ Dec. ¶ 26. ████████████████



████████ . ████████ Dec. ¶ 26; Tr. of Oct. 18, 2023 Dep. of ████████ ("██

10/18/23 Tr.") (D. Evid. Sub., Ex. H); 100:14-22, 107:21-108:3, 110:10-112:5.

22.   ████████████████████

████████████████████

████████████████████

████████████████████ .

████ Dec. ¶¶ 27, 35, Ex. 8; ████ 10/18/23 Tr. 100:14-22, 107:21-108:3, 110:10-

112:5; Dec. of Joseph Fonseca in Support of Defs.' Opp. to Pl.'s Mot. for Class Cert.

("Fonseca Dec.") ¶¶ 19, 30, 31 (D. Evid. Sub., Ex. D).

23.   ████████████████████

████████████████ . ████ Dec. ¶¶ 28, 34, Ex. 7.

24.   ████████████████████

████████████████ Pl. Tr. 233:19-234:11.

25.   ████████████████████

████████████████████

████████████████ . Pl. Tr. 199:3-200:1, 261:13-20;

████ Dec., Ex. 7. ████████████████ .

████ Dec. ¶¶ 28, 34, Ex. 7. ████████████

██████████████████████████████████████████. ████████ Dec. ¶ 28;

██████ 10/18/23 Tr., 100:14-22, 107:21-108:3, 110:10-112:5.

26.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████. ████████ Dec. ¶¶ 29, 35,

Ex. 8. ████████████████████████████████████████████

███████████████████████████████████. ████████ Dec. ¶¶ 29, 35, Ex. 8;

██████ 10/18/23 Tr. 100:14-22, 107:21-108:3, 110:10-112:5; Fonseca Dec. ¶¶ 19, 30,

31.

27.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████.

██████ Dec. ¶¶ 30, 35, Ex. 8.

28.    ████████████████████████████████████████

████████████████████████████████████████. ██████ Dec. ¶ 33.

**D.    Plaintiff discovers the ████████ and ████████ but does not notify MindGeek.**

29. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████. Pl. Tr. 210:2-212:3.

30. ███████████████████████████████████████

██████████████████. Pl. Tr. 250:2-5, 181:6-186:2, 200:12-201:4.

31. ███████████████████████████████████████

████████████████████████████████████████████

███████████████. Pl. Tr. 221:8-18.

32. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████. Pl. Tr. 207:1-8.

33. ███████████████████████████████████████

████████████████████████████████████████████. Pl.

Tr. 209:19-210:1.

**E.    MindGeek learns about the videos and immediately responds.**

34. ███████████████████████████████████████

████████████████████████. JaneDoe!_0000405-406; Pl. Tr.

226:15-227:15.

35. ███████████████████████████████████

███████████████████████████████████. ████

Dec. ¶ 43, Ex. 9.

36. ████████████████████████████

███████████████████████████████████

███████████████████████. █████ Dec. ¶ 44.

37. ███████████████████████████████

███████████████████████████████████

█████████████████████████. █████ Dec. ¶ 44.

**F.    The organization and relationships of the named Defendants.**

38.    **MG Freesites Ltd.** MG Freesites Ltd has during the relevant period been adequately capitalized. ██████ Dec. ¶ 17. MG Freesites Ltd has its own bank accounts and serves as a party to and is responsible for fulfilling its own contracts. ██████ Dec. ¶ 17.

39.    MG Freesites Ltd has had during the relevant period the equivalent of its own designated board of directors and observes all necessary corporate formalities. ██████ Dec. ¶ 19.

40.    **MG Freesites II Ltd.** MG Freesites II Ltd's assets and liabilities were transferred to MG Freesites Ltd on or around December 31, 2018. ██████ Dec. ¶ 47.

41.    MG Freesites II Ltd, a private company incorporated and registered in Cyprus, was dissolved on or around December 10, 2020. ███ Dec. ¶ 47.

42.    **MG Content RT Limited.** MG Content RT Limited's assets and liabilities were transferred to MG Freesites Ltd on or around December 31, 2018. ███ Dec. ¶ 48.

43.    MG Content RT Limited, a private limited company incorporated and registered in Ireland, was dissolved on or around December 30, 2020. ███ Dec. ¶ 48.

44.    **MindGeek S.à r.l.** MindGeek S.à r.l. is a private limited liability company (société à responsabilité limitée) incorporated under the laws of Luxembourg, with its registered office in Luxembourg, and is registered with the Luxembourg Register of Commerce and Companies. ███ Dec. ¶ 6.

45.    MindGeek S.à r.l. has been and is nothing more than a holding company, without any employees or operations of its own. ███ Dec. ¶ 7. MindGeek S.à r.l. does not have any offices or employees in the United States. ███ Dec. ¶ 8.

46.    MindGeek S.à r.l. has never exercised control over the day-to-day operations of the other MindGeek corporate entities. ███ Dec. ¶ 7.

47.    MindGeek S.à r.l. has been during the relevant period adequately capitalized. ███ Dec. ¶ 9. MindGeek S.à r.l. has its own bank accounts and

serves as a party to and is responsible for fulfilling its own contracts. ████ Dec. ¶ 10.

48.    MindGeek S.à r.l. has always had the equivalent of its own designated board of directors (a board of managers) and observes all necessary corporate formalities. ████ Dec. ¶ 11.

49.    MindGeek S.à r.l. has not operated, managed, maintained, supervised, or controlled the day-to-day operations of Pornhub.com or had any responsibility for reviewing and does not review any content that is uploaded to the website. ████ Dec. ¶ 12.

50.    MindGeek S.à r.l. does not have any responsibility for providing members of the public access to Pornhub.com. ████ Dec. ¶ 12.

51.    No employee or representative of MindGeek S.à r.l. has interacted with Plaintiff or ████ regarding the Videos. ████ Dec. ¶ 12.

52.    MindGeek S.à r.l. did not create, solicit, post, manage, or have any other involvement with the Videos. ████ Dec. ¶ 12.

53.    **MindGeek USA Incorporated.** MindGeek USA Incorporated is and has been incorporated under the laws of the State of Delaware. ████ Dec. ¶ 26.

54.    During the relevant period, MindGeek USA Incorporated distributed DVD-based content. ████ Dec. ¶ 27.

55.    32.    MindGeek USA Incorporated has not operated, managed, maintained, supervised, or controlled the day-to-day operations of Pornhub.com and has no responsibility for reviewing and does not review any content that is uploaded to the website. ███████ Dec. ¶ 28.

56.    MindGeek USA Incorporated does not have any responsibility for providing members of the public access to Pornhub.com. ███████ Dec. ¶ 28.

57.    No employee or representative of MindGeek USA Incorporated has interacted with Plaintiff or ███████ regarding the Videos. ███████ Dec. ¶ 28.

58.    MindGeek USA Incorporated did not create, solicit, post, manage, or have any other involvement with the Videos. ███████ Dec. ¶ 28.

59.    MindGeek USA Incorporated has during the relevant period been adequately capitalized. ███████ Dec. ¶ 29. MindGeek USA Incorporated has its own bank accounts and serves as a party to and is responsible for fulfilling its own contracts. ███████ Dec. ¶ 29.

60.    MindGeek USA Incorporated also has had during the relevant period its own designated board of directors and observed all necessary corporate formalities. ███████ Dec. ¶ 31.

61.    **MG CY Holdings, Ltd.** MG CY Holdings, Ltd is and has been a business organized and operating under the laws of the Republic of Cyprus, with its head office located in Cyprus. ███████ Dec. ¶ 33.

62.    MG CY Holdings, Ltd has during the relevant period been a service provider to MG Freesites Ltd and certain other affiliates. Those services have been and are provided pursuant to written agreements that respect the separateness of the service provider and the service receiver. ████ Dec. ¶ 35.

63.    MG CY Holdings, Ltd has during the relevant period been adequately capitalized. ████ Dec. ¶ 36. MG CY Holdings, Ltd has its own bank accounts and serves as a party to and is responsible for fulfilling its own contracts. ████ Dec. ¶ 36.

64.    MG CY Holdings, Ltd also has had during the relevant period its own designated board of directors and has observed all necessary corporate formalities. ████ Dec. ¶ 38.

65.    **9219-1568 Quebec Inc.** 9219-1568 Quebec Inc. is and has been a corporation organized and operating under the laws of the Provence of Quebec, Canada, with its head office located in Montreal, Canada. ████ Dec. ¶ 20.

66.    9219-1568 Quebec Inc. has during the relevant period been a service provider to MG Freesites Ltd and certain other affiliates. Those services have been and are provided pursuant to written agreements that respect the separateness of the service provider and the service receiver. ████ Dec. ¶ 22.

67.    9219-1568 Quebec Inc. has during the relevant period been adequately capitalized. ████ Dec. ¶ 23. 9219-1568 Quebec Inc. has its own bank accounts

and serves as a party to and is responsible for fulfilling its own contracts. ███

Dec. ¶ 23.

68.    9219-1568 Quebec Inc. also has had during the relevant period its own

designated board of directors and has observed all necessary corporate formalities.

███ Dec. ¶ 25.

69.    **MG Billing Limited.** MG Billing Limited is and has been an entity

organized under the laws of the Republic of Ireland with its principal office in

Cyprus. ███ Dec. ¶ 39.

70.    During the relevant period, MG Billing Limited has collected payments

for premium subscription websites. ███ Dec. ¶ 41.

71.    MG Billing Limited has not operated, managed, maintained,

supervised, or controlled the day-to-day operations of Pornhub.com and has no

responsibility for reviewing and does not review any content that is uploaded to the

website. ███ Dec. ¶ 42.

72.    MG Billing Limited does not have any responsibility for providing

members of the public access to Pornhub.com. ███ Dec. ¶ 42.

73.    No employee or representative of MG Billing Limited has interacted

with Plaintiff or ███ regarding the Videos. ███ Dec. ¶ 42.

74.    MG Billing Limited did not create, solicit, post, manage, or have any

other involvement with the Videos. ███ Dec. ¶ 42.

75.    MG Billing Limited has during the relevant period been adequately capitalized. ▮▮▮▮ Dec. ¶ 43. MG Billing Limited Incorporated has its own bank accounts and serves as a party to and is responsible for fulfilling its own contracts. ▮▮▮▮ Dec. ¶ 43.

76.    MG Billing Limited also has had during the relevant period its own designated board of directors and has observed all necessary corporate formalities. ▮▮▮▮ Dec. ¶ 45.

## **ARGUMENT**

### I.    SUMMARY JUDGMENT STANDARD.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (noting that summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole").

"Where a defendant moves for summary judgment on an issue for which it would not bear the burden of proof at trial, it is not necessary for the defendant to entirely negate the plaintiff's claim." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993)). "Instead, the movant 'has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence

to prove a fact necessary to the nonmoving party's case.'" *Id.* at 1135–36 (quoting *McGee v. Sentinel Offender Servs.*, 719 F.3d 1236, 1242 (11th Cir. 2013)).

"Once a summary judgment movant's initial burden is met, 'the burden shifts to the nonmoving party to bring the court's attention to evidence demonstrating a genuine issue for trial.'" *Id.* at 1136 (quoting *Paylor v. Hartford Fire Ins.*, 748 F.3d 1117, 1121 (11th Cir. 2014)). "Overcoming that burden requires more than speculation or a mere scintilla of evidence." *Id.* (quoting *Paylor*, 748 F.3d at 1122). "The non-movant must 'go beyond the pleadings,' to provide evidence and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). "If there is not sufficient evidence for a jury to find for the non-moving party, or '[i]f the evidence is merely colorable,' or if it 'is not significantly probative,' then summary judgment is appropriate." *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1159 (11th Cir. 2022) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

Additionally, it is the obligation of plaintiffs "to bring to the court's attention evidence that support[s] their claims." *A.L. v. Jackson Cnty. Sch. Bd.*, 635 Fed. App'x 774, 786 (11th Cir. 2015). As such, "district courts may decide a motion for summary judgment without undertaking an independent search of the record." *Id.* (citation omitted).

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I BECAUSE THEY ARE IMMUNIZED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT.

Count I purports to assert a claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591 and 1595. FAC ¶¶ 178-87. Section 1591 proscribes two forms of conduct. Section 1591(a)(1) makes it a crime, among other things, to cause a person under the age of eighteen to engage in commercial sex acts. Section 1591(a)(2) authorizes criminal punishment for anyone who "benefits, financially or by receiving anything of value, from participation in a venture" that has violated Section 1591(a)(1).

Section 1595(a) creates an adjunct civil cause of action. It allows the victim of a Section 1591 violation to sue either the perpetrator of the crime or a participant in that violation who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" a Section 1591 violation.

Plaintiff does not invoke Section 1591(a)(1) or allege that Defendants perpetrated a crime. Her claim is that "Defendants knowingly benefited from participation in what they knew or should have known was a sex trafficking venture, in violation of 18 U.S.C. §§ 1591(a)(2) and 1595(a)." FAC ¶ 181.

Defendants are entitled to judgment as a matter of law on Count I for two reasons. First, Defendants are immunized by Section 230 of the Communications

Decency Act ("CDA"), 47 U.S.C. § 230(c), because they operate an "interactive computer service" (a website) and Plaintiff seeks to hold them liable for "publishing" (allowing the upload of) content provided to them by another "information content provider" (the alleged trafficker). Second, the "FOSTA" exception to Section 230 does not apply here because there is no evidence that any Defendant knowingly violated Section 1591. Consequently, Defendants are immune to suit and any disputed facts concerning the Section 1595 claim are immaterial as a matter of law.

### A.    Section 230 precludes recovery under the TVPRA from a publisher of information provided by a third-party.

"Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties…." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (citing 47 U.S.C. § 230(c)).[2] The statute was designed "[t]o avoid chilling speech…." *Gonzalez v. Google LLC*, 2 F.4th 871, 886 (9th Cir. 2021), *rev'd on other grounds*, *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). It manifests a Congressional "policy choice … not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries

---

[2]    Section 230(c) reads, in relevant part: "No provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."

for other parties' potentially injurious messages." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (citation omitted).

Because its purpose is to preserve the internet as a forum for speech and not to favor or disfavor any particular message, Section 230 creates "broad federal immunity to *any* cause of action that would make service providers liable for information originating with a third-party user." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (emphasis added) (citing *Zeran v. Am. Online, Inc.* 129 F.3d 327, 330 (4th Cir. 1997)). The statute has been applied to claims asserted on such diverse grounds as tort law, *see, e.g.*, *Carafano*, 339 F.3d at 1122, anti-discrimination statutes, *Roommates*, 521 F.3d at 1162, anti-terrorism laws, *Force v. Facebook, Inc.*, 934 F.3d 53, 57 (2d Cir. 2019), and the TVPRA, *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1045 (E.D. Mo. 2011). *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) ("Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process. As we have often explained in the qualified immunity context, 'immunity is an immunity from suit rather than a mere defense to liability' and 'it is effectively lost if a case is erroneously permitted to go to trial.'" (quoting *Brown v. Gilmore*, 278 F.3d 362, 366 n. 2 (4th Cir. 2002) (emphasis in original)); *see also Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014).

20

### 1. The elements of Section 230 immunity are satisfied.

Section 230 applies when: (1) the defendant is a provider or user of an "interactive computer service" (or "ICS"); (2) the claim treats the defendant as a "publisher or speaker" of information; and (3) the information was provided by another "information content provider." *Gonzalez*, 2 F.4th at 891. All three elements are satisfied here.

First, Defendants operate an ICS. "[T]he most common interactive computer services are websites." *Roommates*, 521 F.3d at 1162 n.6. There is no dispute that Defendants own and operate websites, FAC ¶¶ 15-22, and that Count I seeks to hold them liable for allowing certain content to be posted on those platforms. FAC ¶¶ 155, 163, 182-83.

Second, Count I treats Defendants as "publishers." Count I alleges that Defendants have incurred "beneficiary" liability under the TVPRA by allowing video content of Plaintiff to be "uploaded . . . and disseminated through websites owned, operated and/or controlled by Defendants." FAC ¶ 155. "The decision to permit users to upload content to a website is a quintessential function of a publisher under § 230." *Doe v. Reddit, Inc.*, No. SACV2100768JVSKESX, 2021 WL 5860904, at *6 (C.D. Cal. Oct. 7, 2021), *aff'd sub nom. Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022).

Third, the videos at issue were provided to MindGeek by another content provider. The CDA defines "information content provider" as someone who is "responsible, in whole or in part for the creation or development of" the content at issue. 47 U.S.C. § 230(f)(3). There is no dispute that the videos here were created—that is, filmed and edited—by the alleged sex trafficker, ███████, who provided the content to Defendants by uploading the videos to MindGeek's website.

### 2.    Defendants are not "content providers" of the videos at issue.

Under certain circumstances, "[a] website operator can be both a service provider and a content provider … as to content that it creates itself, or is 'responsible, in whole or in part' for creating or developing." *Roommates*, 521 F.3d at 1162. An ICS may not qualify for Section 230 immunity if it goes beyond "publishing" or "speaking" and "function[s] as an 'information content provider,'" *Carafano*, 339 F.3d at 1123, with respect to the "particular information" for which a plaintiff seeks to hold it liable. *Id.* at 1125.

Plaintiff's theory appears to be that MindGeek can be held liable as a "developer" because it supposedly facilitated ███████ efforts to market or "match" his videos to prospective viewers. FAC ¶ 66 (alleging that keywords and tags "are essential for search engine optimization"). This theory fails because MindGeek indisputably played no role in the creation or development of the Videos.

### a. A defendant is a creator or developer only if it directly materially contributed to what made the content unlawful.

To distinguish "creators and developers" from "publishers or speakers" the courts ask whether "the defendant directly and 'materially' contributed to what made the content itself 'unlawful.'" *Force*, 934 F.3d at 68 (quoting *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016)); *see also Jones*, 755 F.3d at 413 ("material contribution" doctrine has been broadly adopted). They "draw[] the line at the 'crucial distinction between, on the one hand, taking actions … to … display… actionable content and, on the other hand, responsibility for what makes the displayed content [itself] illegal or actionable." *Force*, 934 F.3d at 68 (citation omitted). A "material contribution" therefore "does not refer to 'merely … augmenting the content generally, but to materially contributing to *its alleged unlawfulness*.'" *Gonzalez*, 2 F.4th at 892 (quoting *Roommates*, 521 F.3d at 1167-68 (emphasis and ellipses in *Gonzalez* opinion)). An ICS can be deprived of immunity, in other words, only if it is "responsible for what makes the displayed content allegedly unlawful." *Jones*, 755 F.3d at 410.

Close cases "must be resolved in favor of immunity . . . ." *Roommates*, 521 F.3d at 1174. When they apply the material contribution test, moreover, the courts bear in mind that "[w]ebsites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that *something* the website operator

did encouraged the illegality." *Id.* To ensure that Section 230's purpose is fulfilled, the courts have developed "a capacious conception of what it means to treat a website operator as the publisher … of information provided by a third party." *Force*, 934 F.3d at 65 (quoting *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016)). Immunity will be lost only when "it is very clear that the website directly participates in developing the alleged illegality." *Roommates*, 521 F.3d at 1174. Conversely, in cases where the purpose and effect of the defendant's participation is not so obvious—what the Ninth Circuit has called cases of "enhancement by implication or development by inference,"—the statute "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Id.* at 1174-75.

The decisions thus draw a dispositive distinction between (1) contributions that are "content in and of themselves," and (2) the use of "tools meant to facilitate the communication and content of others." *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019). On one side of the line are website operators that have been deemed "content providers" and denied Section 230 immunity because their "contributions" involved the authorship or direct solicitation of the illegal content at issue.

So, for example, in *Roommates*, 521 F.3d at 1166, the website did not merely allow user-supplied material to be posted; it required prospective users to answer

particular questions that elicited information about their gender and sexual orientation, and about the gender and sexual orientation of their preferred housemates, and then posted the answers in violation of the federal Fair Housing Act. This "direct and palpable" connection to the alleged discrimination, *id.* at 1169, satisfied the material contribution requirement: "When a business enterprise extracts such information from potential customers as a condition of accepting them as clients, it is no stretch to say that the enterprise is responsible, at least in part, for developing that information." *Id.* at 1166; *see also LeadClick Media LLC,* 838 F.3d at 171, 176 (defendant functioned as content provider with respect to false advertising posted by affiliates where it required alterations to the content of the affiliates' "fake news pages"); *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1198-99 (10th Cir. 2009) (website was "responsible for the development" of posts containing confidential telephone records where it hired researchers to dig up the records, knowing that their confidentiality was protected by law, and for the purpose of posting the information on the defendants' website).

On the other side of the line are claims against defendants that did not have a "direct and palpable" connection to the illegality of the content at issue. The case law "[p]lainly" rejects claims based on the mere fact that offending content has appeared on a defendant's website. *Gonzalez*, 2 F.4th at 893. The courts have disposed similarly of claims asserting that a defendant tried but failed to *prevent* the

appearance of illegal material on its platform. *See Roommates*, 521 F.3d at 1170 (determining whether or not to prevent posting is "precisely the kind of activity for which section 230 was meant to provide immunity"). Section 230 even protects websites that have "selected" content for publication, *Jones*, 755 F.3d at 415-16; *see also Roommates*, 521 F.3d at 1170 n.29, and immunizes publishers that have affirmatively "encouraged" objectionable postings. *Jones,* 755 F.3d at 414 ("an encouragement test would inflate the meaning of 'development' to the point of eclipsing the immunity from publisher-liability that Congress established").

> **b.    MindGeek did not create or directly and materially contribute to the development of the content of the videos depicting Plaintiff.**

Defendants are not "content providers" with respect to the videos at issue because nothing in the record says or suggests that MindGeek is in any way "responsible for what makes the displayed content allegedly unlawful." *Jones*, 755 F.3d at 410. MindGeek certainly played no part in the *creation* of the Videos, which appeared on its platforms as they were uploaded by ███████████, without any editing, amendment, or augmentation by anyone associated with MindGeek. *See supra* ¶¶ 3, 18-28; ██████ Dec. ¶ 32.

Nor can MindGeek be characterized as "developers" of the videos in question. As noted, subjecting Defendants to suit—much less to liability—simply for allowing (or even "approving" or "encouraging") the appearance of CSAM on their websites

would "read the term [development] so broadly" as to "defeat the purposes of the CDA and swallow the core immunity that § 230(c) provides for the 'exercise of a publisher's traditional editorial functions.'" *Jones*, 755 F.3d at 409 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

The law is equally clear that a website operator does not become a "developer" simply by enabling the third-party creators of information to add descriptive material such as tags or categories, or by using other "tools … that are designed to match that information with a consumer's interests." *Force*, 934 F.3d at 66. The descriptors that MindGeek offers to content creators are identical to the "titles, tags, keywords, search terms, and categories"—all of them supposedly "indicative of CSAM"—that the defendants allegedly made available to users in *Doe v. WebGroup Czech Republic, A.S.*, 2024 WL 3533426, at *8 (C.D. Cal. July 24, 2024). The District Court in *WebGroup* relied on Section 230 to dismiss claims based on these allegations because such tools would be "either a standard publishing function or a neutral tool made available to all third parties seeking to upload material onto Defendants' websites." *Id.*

Websites do not take on "developer" status by offering or deploying tools that enable posters to "form[] 'connections' and 'matches' among speakers, content, and viewers of content," a task that is "an essential result of publishing." *Force*, 934 F.3d at 66. In this regard, the functions that ██████████ used to "match" his content

with potential viewers are legally indistinguishable from: (i) the algorithms that Facebook used to "organiz[e] and display[] content exclusively used by third parties" in *Force*, 934 F.3d at 66; (ii) the questionnaire that "facilitated the expression of information by individual users" in *Carafano*, 339 F.3d at 1124; (iii) the suggested "keywords" that helped content creators "to refine their content" and direct their posts "where they might be most readily received" in *Jurin v. Google*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. 2010); (iv) the "search engine to allow focused searches by keywords of the postings" in *Village Voice Media Holdings, LLC*, 809 F. Supp. 2d at 1044; (v) the "features and functions" the defendant used to "analyze user posts" and "recommend[] other user groups" in *Dyroff*, 934 F.3d at 1098; (vi) the means by which the defendants in *Nemet Chevrolet, Ltd.*, 591 F.3d at 256, "steered" complaints posted by users into "specific categor[ies] designed to attract attention;" and (vii) the algorithms that "result[ed] in recommending the scam videos to certain targeted users" in *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 917 (2024).

In each of those cases, as in this one, the effect of the tools was to "form[] 'connections' and 'matches' among speakers, content, and viewers of content," a task that is "an essential result of publishing." *Force*, 934 F.3d at 66. Rather, the websites were deemed not to be developers, and retained their Section 230 immunity, because the devices they offered were "meant to facilitate the communication and content of others. They [were] not content in and of themselves." *Dyroff*, 934 F.3d

at 1098. Tags, titles, and other "search engine optimization" tools, FAC ¶ 66, may make "content more visible or available," but they "do not amount to *developing* the underlying information." *Gonzalez*, 2 F.4th at 895 (emphasis in original). Plaintiff "cannot plead around Section 230 immunity by framing these website features as content." *Dyroff*, 934 F.3d at 1098. Her claim therefore fails because it relies on exactly the sort of "development by inference," *Roommates*, 521 F.3d at 1174–75, that the courts have vigilantly disallowed.

The Third Circuit's recent decision in *Anderson v. TikTok, Inc.*, No. 22-3061, 2024 WL 3948248 (3d Cir. Aug. 27, 2024), is of no consequence here. MindGeek's conduct is well to the protected side of the line drawn by the Third Circuit because nothing in the record suggests that MindGeek—unlike the defendant in *Anderson*— curated, organized, presented, and recommended third-party content to individual viewers in such a way as to put its own creative stamp on the amalgamated material and thus engage in its own first-party speech. *See id.*, at \*3. The videos at issue reached viewers exactly as ▮▮▮▮▮▮▮ posted them, without any "creative" input from MindGeek. *See supra* ¶¶ 18-28; ▮▮▮ Dec. ¶ 32.

Count I would fail as a matter of law even if tools such as tags and titles could be equated to "content." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

*See supra* ¶¶ 21-22, 26. *WebGroup Czech Republic A.S.*, 2024 WL 3533426, at \*8.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Fonseca Dec. ¶¶ 19, 30, 31. Thus, the tag menus provided by MindGeek were "content neutral" in the dispositive sense that they did not "treat [illegal] content differently than any other third-party content," *Wozniak*, 100 Cal. App. 5th at 917, and MindGeek is not responsible for the manner in which ████████████ may have used (or misused) the available descriptors.

Finally, even if the titles and tags could be described as "content," and even if Defendants could be said to have created or developed them, Section 230 would still immunize Defendants because those descriptors are not "the content for which [Plaintiff] seek[s] to hold [Defendants] liable." *Carafano*, 339 F.3d at 1125 (quoting *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833 n.11 (2002)). Videos created and posted by third parties without any input from Defendants *might* be CSAM, but the descriptors accompanying the videos are not—whatever words such as "young" or "teen" may sometimes be taken to mean, they are not themselves CSAM or commercial sex acts. Thus, they are not "what makes the displayed content allegedly unlawful," *Jones*, 755 F.3d at 410, and their presence on the website will not expose Defendants to suit. *Id.* at 416–17; *see also Wozniak*, 100 Cal. App. 5th at 925–26.

> **3.    The "FOSTA" exception to Section 230 immunity does not apply.**

In 18 U.S.C. § 230(e)(5)(A), Congress created a narrow exception to the broad grant of immunity under Section 230(c). The exception was enacted as part of the Allow States and Victims to Fight Online Sex Trafficking Act of 2018, also known as "FOSTA." *Does, No. 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1139 (9th Cir. 2022). As enacted, FOSTA "retains only a limited capacity … of allowing trafficking victims to hold websites accountable." *Id.* at 1145. The record establishes beyond the possibility of genuine dispute that FOSTA's "limited capacity" does not encompass the Section 1595 claim against MindGeek.

### a.    FOSTA applies only where the defendant-website has itself violated Section 1591(a).

When it denied Defendants' motion to dismiss in February 2022, the Court observed that the law was then unsettled about the scope of the FOSTA exception. According to its text, the exception does not "impair or limit" civil claims under 18 U.S.C. § 1595 "if the conduct underlying the claim constitutes a violation of section 1591…." 47 U.S.C. § 230(e)(5)(A). As the Court noted, some District Courts in the Ninth Circuit had interpreted this to mean that a Section 1595 plaintiff "need only allege a predicate violation of section 1591 by *someone*, meaning that they can bring the civil beneficiary claim against Defendants for the underlying sex trafficking perpetrated by their traffickers without showing that Defendants themselves would be criminally liable." *Doe v. MG Freesites, Ltd.*, 676 F. Supp. 3d 1136, 1155 (N.D. Ala. 2022) (emphasis in original); *see also id.* at 1156 (listing cases). One District

31

Court in the Eleventh Circuit has read the statute to mean that "FOSTA only exempts civil claims brought pursuant to section 1595 from immunity under section 230 if the plaintiff has pled that the defendant's [own] conduct met the criminal *mens rea* standard in section 1591." *Id.* at 1156–57 (citing *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020)); *but see id.* at 1157–58 (recognizing that a court in the Northern District of California disagreed with *Kik Interactive, Inc.* and ruled that the "'known or should have known' language of Section 1595 . . . applies") (quoting *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 918 (N.D. Cal. 2021)). This Court noted the controversy but did not take a position on the scope of the FOSTA exception, instead deciding the motion to dismiss on other grounds. *Id.* at 1159.

Since then, the law in the Ninth Circuit has been settled by a panel of that court, which held that "the availability of FOSTA's immunity exception is contingent upon a plaintiff proving that a defendant-website's own conduct—rather than its users' conduct—resulted in a violation of 18 U.S.C. § 1591." *Reddit,* 51 F.4th at 1139; *see also G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626, 641 (N.D. Ill. 2022), *rev'd on other grounds*, 76 F.4th 544, 565 n.21 (7th Cir. 2023) ("the text, both by its plain terms and statutory structure, is clear that the FOSTA exemption applies only where the civil defendant's actions violated §1591").

As the matter currently stands, then, the narrow interpretation of the FOSTA exception is the law in every federal jurisdiction that has decided the issue. Although

the decisions by the Ninth Circuit, Southern District of Florida, and Northern District of Illinois are not binding here, the Court should adopt the consensus position because it is manifestly correct. As the Ninth Circuit explained in *Reddit*, its holding is (i) compelled by both "the plain text of FOSTA" and Supreme Court precedent "interpreting a similar immunity exception" in the Foreign Sovereign Immunities Act," 51 F.4th at 1141-43 (citing *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015)), and (ii) confirmed by "FOSTA's wider statutory context" and legislative history, *id.* at 1143–45.

### b.    MindGeek has not violated Section 1591.

The record establishes that MindGeek has not violated Section 1591 and that FOSTA therefore does not apply. In order to trigger the FOSTA exception, Plaintiff must show that Defendants themselves violated Section 1591, and in order to do that she must prove that Defendants: (i) knowingly benefited, (ii) from their participation in a sex trafficking venture, (iii) while knowing or recklessly disregarding that participants in the venture would cause a person under the age of 18 to engage in a commercial sex act. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 523–24 (S.D.N.Y. 2018); *see also United States v. Ayfare*, 632 Fed. App'x 272, 283 (6th Cir. 2016).

**Knowing Benefit.** "Knowingly benefiting" from a sex trafficking venture "requires actual knowledge and a 'causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit.'" *Reddit*, 51 F.4th at

1145 (quoting *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019)). Actual knowledge is required because the statute "does not target those that merely 'turn a blind eye to the source of their [revenue].'" *Id.* (quoting *Ayfare*, 632 Fed. App'x at 286).

**Participation.** "Participation" in a sex trafficking venture means "actual knowledge and overt participation…." *Kik Interactive Inc.*, 482 F. Supp. 3d at 1250–51; *see also M.H. v. Omegle.com, LLC*, No. 8:21-CV-814-VMC-TGW, 2022 WL 93575, at *3 (M.D. Fla. Jan. 10, 2022), *appeal docketed*, No. 22-10338 (11th Cir. Jan. 31, 2022); 18 U.S.C. § 1591(e)(4). The defendant must "actually participate and commit some 'overt act' that furthers the sex trafficking aspect of the venture." *Ayfare*, 632 Fed. App'x at 286. "[G]eneralized knowledge without active participation is insufficient," *Omegle.com*, 2022 WL 93575, at *3, because criminalizing a defendant's "mere negative acquiescence" to trafficking activity "would create 'a vehicle to ensnare conduct that the statute never contemplated.'" *Ayfare*, 632 Fed. App'x at 286 (citation omitted); *see also Reddit*, 51 F.4th at 1145 ("[T]o hold a defendant criminally liable as a beneficiary of sex trafficking, the defendant must have actually engaged in some aspect of the sex trafficking . . . . [A] plaintiff must [show] some specific conduct [by the defendant] that furthered the sex trafficking venture . . . undertaken with knowledge of the venture[.]") (citations and internal quotation marks omitted).

The plaintiff or prosecution must, moreover, "prove that the defendant actually participated in a *sex-trafficking venture.*" *Ayfare*, 632 Fed. App'x at 286 (emphasis in original). Evidence of a defendant's participation in an ancillary venture that involved the alleged traffickers, but that was not itself the venture that trafficked the putative victim, is not just inadequate but irrelevant. *Id.*

**Knowledge or reckless disregard.** "Knowing" participation in a sex trafficking venture means participating with knowledge that sex trafficking is occurring or will occur, for example, with knowledge that the venture will cause a person under the age of 18 to engage in a commercial sex act. The "reckless disregard" alternative does not water down the *mens rea* requirement; in this context, reckless disregard "means 'to be aware of, but consciously and carelessly ignore, facts and circumstances clearly indicating that the person' had not yet achieved the age of majority." *United States v. Wilson*, No. 10-60102-CR-ZLOCH, 2010 WL 2991561, at *6 (S.D. Fla. July 27, 2010) (quoting *United States v. Pina-Suarez*, 280 Fed. App'x 813, 817–18 (11th Cir. 2008)), *report and recommendation adopted,* No. 10-60102-CR, 2010 WL 3239211 (S.D. Fla. Aug. 16, 2010). Here, as elsewhere, "generalized knowledge" of trafficking will not suffice. To be responsible for sex trafficking under Section 1591(a)(2), the defendant must know that a particular victim—"the person" being trafficked—had been caused to engage in commercial sex acts while underage. *Cf. Pina-Suarez*, 280 Fed. App'x at 818 (reckless disregard

element of crime of transporting illegal aliens requires proof that defendant was aware of but ignored facts and circumstances indicating "that the person transported was an alien who had entered or remained in the United States in violation of law") (cite and internal quotation marks omitted).

**The evidence fails with respect to all three elements.** As to the first and third elements, the record lacks evidence that MindGeek—or, for that matter, anybody associated with any of the defendants—actually knew that Plaintiff was not yet 18 when she appeared in the videos at issue. The most that could be said—and in fact, all that Plaintiff *has* said— ██████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████ , and that MindGeek therefore knew or should have known that *some* of the content posted on its websites must have reflected sex trafficking. But such generalized knowledge is inadequate as a matter of law, and evidence that an ICS merely acquiesced to the possibility or probability of trafficking cannot and will not satisfy the *mens rea* requirement of the criminal statute. *Does 1-6 v. Reddit, Inc.*, 51 F.4th at 1145 ("The statute does not target those that merely 'turn a blind eye to the source of their [revenue].'") (quoting *Ayfare*, 632 Fed. App'x at 286).

Plaintiff fares no better when it comes to the second element—knowing participation in a sex trafficking venture. The claim fails for lack of any evidence

that MindGeek participated actively or overtly in the putative sex trafficking venture conducted by ███████████. If Plaintiff was trafficked, the crimes occurred when, in the words of the statute, ███████████ "cause[d]" her to engage in a commercial sex act," 18 U.S.C. § 1591(a)—that is, ███████████████ ███████████████. But there is no evidence that MindGeek participated in any "overt" way in those acts or that anybody associated with MindGeek knew that such acts were taking place. If sex trafficking occurred, the crime was committed by ███████████ before he even uploaded the evidence to MindGeek's website.

Nothing that MindGeek did, then, constituted "participation in the sex trafficking act itself." *Weinstein*, 335 F. Supp. 3d at 524. With respect to Plaintiff, the "sex trafficking act" was completed before each offending video was uploaded to MindGeek's website. MindGeek had no "overt participation" in the alleged crimes, *Kik Interactive Inc.*, 482 F. Supp. 3d at 1250, and neither knew nor had any plausible way of knowing that those specific crimes were or would be taking place.

MindGeek's only "participation" involving ███████████ was in a separate and distinct venture—the uploading of the videos onto MindGeek's website, which is the sort of commercial relationship that exists between MindGeek and any third-party content provider who uses MindGeek's platforms. But *that*

venture was not the sex trafficking venture that allegedly victimized Plaintiff; indeed, it was not a "sex trafficking venture" at all.

The record gives the Court no reason to blur the clear distinction between ████████████ alleged sex trafficking venture (which may have been a criminal venture, but in which Defendants did not participate) and the commercial venture (in which Defendants participated, but which was not a crime). The only link between the two ventures is that ████████████ posted evidence of his crimes on MindGeek's website, at worst with MindGeek's "mere negative acquiescence," *Ayfare*, 632 Fed. App'x at 282, 286. Such an attenuated—and, from MindGeek's perspective, passive and uninformed—connection is insufficient to establish that any Defendants themselves committed a Section 1591 violation. The FOSTA exception therefore does not apply, and Defendants retain their Section 230 immunity. The Court should accordingly grant summary judgment to Defendants on Count I.

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT II BY REASON OF SECTION 230 IMMUNITY AND BECAUSE THERE IS NO EVIDENCE THAT DEFENDANTS KNEW PLAINTIFF WAS A MINOR WHEN THE VIDEOS WERE RECORDED.

Count II alleges that Defendants "knowingly received, possessed, and distributed child pornography" in violation of 18 U.S.C. §§ 2252 and 2252A. These are criminal statutes. Section 2252 proscribes "knowingly" receiving and distributing any visual depiction involving the use of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(2); *see also* 18 U.S.C. § 2256(1) (defining

"minor" to mean "any person under the age of eighteen years"). Section 2252A makes it a crime to "knowingly receive[] or distribute[]" any "child pornography." 18 U.S.C. § 2252A(a)(2). Although the FAC does not mention it, 18 U.S.C. § 2255(a) creates a civil remedy, authorizing suit by any person who, while a minor, was a victim of a violation of Sections 2252 or 2252A.

Count II fails as a matter of law for two reasons. First, Section 230(c) again immunizes Defendants. Second, there is an absence of evidence to support an essential element of the claim: that Defendants knew Plaintiff was a minor when the videos of her were recorded by ███████████ .

### A.   Section 230 applies because Count II treats MindGeek as the publisher of the videos depicting Plaintiff.

Section 230(c) applies to Count II for much the same reasons as those stated above with respect to Count I. MindGeek operates an "interactive computer service" and the "information" at issue was provided to it by "another information content provider." In its Rule 12(b)(6) decision, the Court suggested that Section 230(c) was factually inapposite to Count II because (i) the CDA immunizes an ICS only from claims that require it to "be treated as the publisher or speaker" of the information at issue, 47 U.S.C. § 230(c)(1), and (ii) Count II accuses MindGeek of "receipt" and "possession" of child pornography, as well as its "distribution." *MG Freesites, Ltd.,* 676 F. Supp. 3d at 1170 ("Receipt and possession of child pornography, alone, are criminal acts, and are not shielded by Section 230 immunity").

The application of Section 230, however, depends not on the name or potential scope of the stated cause of action, but on the actual, practical bases and effects of the plaintiff's claim. The question is whether the defendant will be "treated as a publisher," and to answer that question "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009) (issue is not the "name of the cause of action" but whether the claim "inherently requires the court to treat the defendant" as a publisher).

Section 230(c) therefore provides immunity whenever the gravamen of the claim—as reflected by, among other things, the injury alleged or the relief sought—is the publication of the offending material. Thus, the California Court of Appeals held that Section 230 immunized Twitter from breach of contract claims, despite plaintiff's contention that the breaches included notice and retroactivity violations that had nothing to do with publication or speech, where "the gravamen of each of her causes of action concern[ed] Twitter's editorial decisions not to publish content—as reflected by the fact that she allege[ed] no specific injury from the alleged notice and retroactivity violation but complain[ed] instead of the harm caused by Twitter's ban on her and others' free speech rights." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 30 n.6 (2021); *see also Doe v. Bates*, 2006 WL 3813758, at *20 (E.D. Tex. Dec. 27, 2006) (claim alleging violation of Section 2252A was

40

precluded by Section 230 where the "injury claimed by Plaintiffs is grounded in the pornographic photographs having been 'published to the world' and the injunction Plaintiffs seek is to prevent such publication"); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 538 (E.D. Va. 2003) (Section 230 precluded civil rights claim where "[a]n examination of the injury claimed by plaintiff and the remedy he seeks clearly indicates that his … claim seeks to 'place' AOL 'in a publisher's role'").

This is exactly the basis on which Plaintiff seeks to recover from MindGeek. She treats MindGeek as a publisher because her claim rests on the statute's imposition of liability against one who "distributes" child sex abuse material. 18 U.S.C. § 2252(a)(2). Although the words "received" and "possessed" appear in Count II, FAC ¶ 189, the gist of the claim is neither receipt nor possession, but "distribution." *Id.* The FAC alleges that Plaintiff was harmed by "[t]he broad ***dissemination*** of child sex abuse material depicting [her]," FAC ¶ 159 (emphasis added), not by MindGeek's receipt or possession of that material. ██████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████ Pl.'s Resp. to Defs.' Interrog. No. 15 (D. Evid. Sub., Ex. J). ████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████  *Id.*, Pl.'s Resp. to Defs.' Interrog.

No. 18 (D. Evid. Sub., Ex. J).

Plaintiff's request for injunctive relief similarly confirms that the gravamen of Count II is publication, not receipt or possession. Plaintiff asks the Court to issue an injunction designed "to identify and ***remove*** child pornography and implement corporate-wide policies and practices to prevent continued ***dissemination*** of child pornography or child sex trafficking . . . ." FAC, Prayer for Relief, ¶ C (emphasis added). Both dissemination and removal are core editorial functions protected by Section 230. *Barnes*, 570 F.3d at 1102 ("publication involves … deciding whether to publish or withdraw from publication third-party content").

No plausible scenario exists, therefore, in which a jury could return a rational verdict for Plaintiff based solely on MindGeek's receipt and possession of the videos at issue. "Personal injury" is an express statutory element of the claim asserted in Count II, 18 U.S.C. § 2255(a), and the only personal injury that Plaintiff has identified allegedly arose from (and only from) the "publication" of the videos on Defendants' websites. On Plaintiff's own stated terms, therefore, Count II requires MindGeek to "be treated as the publisher" of the information in question, and Section 230(c) must apply.

**B.      There is no "child pornography exception" to Section 230.**

In its Rule 12(b)(6) decision, the Court also expressed the opinion that Section 230 does not have even potential application to a claim under the child-pornography laws because "child pornography is not lawful 'information provided by another information content provider' as contemplated by Section 230," but "illegal contraband, stemming from the sexual abuse of a child, beyond the covering of First Amendment protection, and wholly outside any other protection or immunity under the law, including Section 230." *MG Freesites, Ltd.*, 676 F. Supp. 3d at 1169.

Because it was not expressed in a final judgment, this determination "was not the law of the case." *FDIC v. Stahl*, 89 F.3d 1510, 1514 n.7 (11th Cir. 1996). Defendants urge the Court to reconsider it in light of, among other things, the Ninth Circuit's intervening decision in *Doe #1 v. Twitter, Inc.*, No. 22-15103, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023), in which that court held "that section 230 precluded Plaintiffs from stating a viable claim for possession and distribution of child pornography under 18 U.S.C. §§ 2252A and 2255." *See also M.A. ex rel. P.K. v. Village Voice Media Holdings, Inc.*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011) (dismissing Section 2255 claim on Section 230 grounds). These decisions are not binding here but they are correct and therefore persuasive for the following reasons.

First, the scope of the First Amendment is not relevant. Defendants' immunity derives from a statute—Section 230—not the Constitution. The First Amendment

prohibits laws that "abridge" the freedom of speech, but nothing in it—or in its interpretation and application over the years—prevents Congress from passing laws that ***protect*** speech which might otherwise be "beyond the covering" of the Constitution. Certain kinds of defamatory statements, for example, are not protected from civil liability by the First Amendment, and yet nothing in the Constitution would prevent Congress or a state legislature from enacting a statute that immunized such constitutionally-unprotected speech from claims for libel or slander. *See Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 81 (1980) (recognizing "the authority of the State to exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution"); *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("[W]hile statutory or common law may in some situations extend protection or provide redress against a private corporation or person who seeks to abridge the free expression of others, no such protection or redress is provided by the Constitution itself.").

Section 230 is just such a statute. On its face it prohibits treating an ICS as the publisher or speaker of "***any information***" provided by a third-party, 47 U.S.C. § 230(c)(1) (emphasis added), and in practice this unqualified grant of immunity has routinely been extended to various categories of information that lie beyond the covering of the First Amendment—including defamatory speech, *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398 (6th Cir. 2014), discriminatory

speech, *Roommates*, 521 F.3d at 1162, fraudulently deceptive speech, *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893 (2024), and even incitements to terrorist activity, *Force*, 934 F.3d at 57.

Indeed, protecting the online publishers of "unprotected otherwise actionable speech" is the *raison d'etre* of Section 230. *Obado v. Magedson*, 2014 WL 3778261, at *7 (D.N.J. July 31, 2014) *aff'd,* 612 F. App'x 90 (3d Cir. 2015). Section 230 immunity applies "regardless of whether the third-party speech itself is unlawful," *id.*, because the statute was designed "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Carafano*, 339 F.3d at 1122.

It may be true, as the Court observed in its Rule 12(b)(6) decision, that "Congress enacted Section 230 to incentivize ICSs to protect children," 676 F. Supp. 3d at 1170, but Congress decided that the way to do so was to *protect* website operators from liability for illegal speech provided by third parties. "Congress enacted this provision as part of the Communications Decency Act of 1996 for two basic policy reasons: to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *See Carafano,* 339 F.3d at 1122. Thus, Section 230 is meant "to encourage efforts by Internet service providers to eliminate [unlawful] material by *immunizing* them from liability where those efforts failed." *Goddard v. Google, Inc.*, 2008 WL 5245490, at

*6 (N.D. Cal. Dec. 17, 2008) (emphasis added). It is under the aegis of this protection that MindGeek deploys its robust trust and safety efforts—. ▇▇▇ Dec. ¶ 10, Ex. 1. Removing Section 230 immunity would discourage MindGeek from undertaking any efforts to detect and eradicate CSAM. A "child pornography exception" to Section 230 would not only disregard the plain text of the statute but would frustrate the method Congress selected to achieve its stated purpose.

### C.    There is an absence of evidence to support the knowledge element of Plaintiff's claim under Sections 2252 and 2252A.

Because Plaintiff bears the burden of proving that Defendants violated Sections 2252 and 2252A, the defense can satisfy its *prima facie* obligation under Rule 56 by showing "that there is an 'absence of evidence to support'" the claim. *Acosta v. Miami-Dade County*, 97 F.4th 1233, 1243 (11th Cir. 2024) (citation omitted). Defendants are entitled to summary judgment on Count II because there is a complete absence of evidence to support an essential element of the claim: MindGeek's alleged knowledge of Plaintiff's underage status.

### 1.    Plaintiff has the burden to prove actual knowledge that she was underage.

Every prosecution or civil claim under Sections 2252 and 2252A requires proof that the defendants "knowingly" received or distributed CSAM. 18 U.S.C.

§ 2252(a)(2); 18 U.S.C. § 2252A(a)(2). The term "knowingly" applies to (i) the receipt of the materials, (ii) the sexually explicit nature of the material, and (iii) the age of the performers. *United States v. Miller*, 416 Fed. App'x 885 (11th Cir. 2011); *see also United States v. X-Citement Video*, 513 U.S. 64, 78 (1994) ("the term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and to the age of the performers"). Since a civil cause of action arises only if (i) the defendant has violated Sections 2252 or 2252A, and (ii) the plaintiff has suffered a "personal injury" as a result of that violation, 18 U.S.C. § 2255(a), the focus must be on whether the defendant had the requisite knowledge with respect to both the material in which plaintiff appeared and the age of the plaintiff herself. Evidence that concerns other material or performers might (or might not) be circumstantially relevant, but the claim rises or falls on the plaintiff's ability to prove all three elements of knowledge specifically with respect to the plaintiff.

Generally speaking, "the knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance." *United States v. Potokri*, No. 23-12199, 2024 WL 3027890, at *1 (11th Cir. June 17, 2024) (quoting *United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006)) (internal quotation marks omitted). In the Eleventh Circuit, the alternative method of proof is available "only when the facts support an inference the defendant was aware of a high probability of the existence of a fact in question and purposely

47

avoided learning all of the facts." *United States v. Lozano*, 711 Fed. App'x 934, 940-41 (11th Cir. 2017). Thus, if the deliberate ignorance doctrine applied here, Defendants might be liable for violating Sections 2252 or 2252A only if Plaintiff could prove that they deliberately closed their eyes to what would otherwise have been obvious about (among other things) Plaintiff's age. *United States v. Johnston*, 620 Fed. App'x 839, 850 (11th Cir. 2015); *see also United States SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 804 (11th Cir 2015) (approving instruction that "knowledge may be established by proving … that a defendant deliberately closed his eyes to what would otherwise have been obvious to him").

### 2. There is no evidence that MindGeek knew Plaintiff was underage.

Even if the Court applies the deliberate ignorance doctrine, Count II thus requires proof either that MindGeek actually knew of facts and circumstances that made Plaintiff's underage status "apparent," or that it deliberately closed its eyes to what would otherwise have been "obvious" about Plaintiff's minority.

The necessary proof is lacking. First, there is no evidence of actual knowledge. ██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████████ *See supra*

¶¶ 33, 35. From that point forward, MindGeek may have known about Plaintiff's

age, but there is no evidence that MindGeek thereafter "received, possessed, or

distributed" the videos in which she appeared. To the contrary, the record shows that

upon receiving notice, MindGeek immediately divested itself of all connection to

the videos and their creator, ███████████████████████████████

████████████████████████████████████████████████

████████████████████████  ████████  Dec. ¶ 44; *Cf. Tilton v. Playboy*

*Entertainment Group, Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009) (affirming grant of

summary judgment to website operator who posted sexually explicit pictures and

videos of plaintiff where plaintiff "concede[d] that she cannot produce evidence that

[the website operator] was informed of her age or likeness before the filing of her

complaint" and there was no evidence that images remained on the website after

plaintiff sued).

Second, there is no evidence that the content of the videos made it "obvious"

to MindGeek that Plaintiff was underage. ████████████████████████

████████████████████████████████████████████████ *See*

*supra* ¶ 24. ████████████████████████████████████████

████ the record does not suggest that she was visibly underage. ███████████

████████████████████████████████████████████████

[REDACTED] would have made her underage status so "obvious" or "apparent" that any MindGeek representatives who saw the videos could only have ignored it purposefully. *Cf. Tilton,* 554 F.3d at 1378 (11th Cir. 2009) (affirming grant of summary judgment where the "pictures in question do not depict anyone with the obvious appearance of a minor").

Finally, nothing in the activity associated with the videos made it apparent that Plaintiff was a minor when she was recorded. [REDACTED]

*See supra* ¶¶ 21, 25. [REDACTED]

[REDACTED]. *See supra* ¶ 27. [REDACTED]

[REDACTED]. *See supra* ¶¶ 22, 26. [REDACTED]

[REDACTED] *See supra* ¶¶ 22, 26. [REDACTED]

[REDACTED] *See supra* ¶¶ 21-26. That being so, the tags could not have

made it "obvious" or "apparent" that the videos contained CSAM, and their presence does not create a genuine issue of material fact about the essential element of knowledge. *See WebGroup Czech Republic, A.S.*, 2024 WL 3533426, at *10 (dismissing civil claim alleging violation of Section 2252 and rejecting contention that the use of tags—even the tag "toddler"—was sufficient to show knowing receipt of CSAM). Defendants are therefore entitled to judgment on Count II.

## IV. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS MG FREESITES II LTD., MG CONTENT RT LIMITED, MINDGEEK S.À R.L., MINDGEEK USA INCORPORATED, AND MG BILLING, LIMITED.

In addition to MG Freesites, Ltd, Plaintiff also sued a number of ostensibly affiliated entities, including (i) MG Freesites II Ltd, FAC ¶ 16, (ii) MG Content RT, Limited, FAC ¶ 20, (iii) MindGeek S.à r.l., FAC ¶ 17, (iv) MindGeek USA Incorporated ¶ 18; (v) and MG Billing Limited FAC ¶ 22. Each of these defendants is entitled to summary judgment for the reasons given above, but also on one or more of the following grounds.

### A. MG Freesites II Ltd and MG Content RT Limited have been dissolved and lack the capacity to be sued.

"Capacity to sue or be sued is determined . . . for a corporation, by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). MG Freesites II Ltd was organized under the laws of the Republic of Cyprus. ███ Dec. ¶ 47. MG Content RT Limited was organized under Irish law. ███ Dec. ¶ 48. Both entities were dissolved in late 2020. ███ Dec. ¶¶ 47, 48. They consequently lack the capacity

to be sued under laws by which they were organized. *See* The Companies Law of Cyprus Republic § 326(1) (courts may void dissolution of dissolved company to allow proceedings against it only within two years of the date of dissolution); State Property Act §§ 27, 28 (Act. No. 25/1954) (Ir.) (under Irish law, action against dissolved company may be brought only by the government).

**B.    MindGeek S.à r.l., MindGeek USA Incorporated, and MG Billing Limited are distinct entities that had no involvement in the operation of Pornhub.com.**

MindGeek S.à r.l., MindGeek USA Incorporated, and MG Billing Limited are distinct corporate entities. To hold them directly liable on the claims she asserted, therefore, Plaintiff has the burden of proving that they themselves violated the TVPRA and the child-pornography statutes. There is no evidence to support a direct claim against these entities. Indeed, there is no evidence that any of these entities have, or ever have had, any connection to Plaintiff, the Videos, or the underlying allegations. None ever possessed the videos in question in either a legal or practical sense. None were involved in operating Pornhub.com. ███████ Dec. ¶¶ 12, 28, 42. None has any responsibility for reviewing any content that was uploaded to those websites. *Id.* None has any responsibility for providing access to those websites. *Id.* And neither ████████████ nor (to Defendants' knowledge) Plaintiff herself have interacted, in any way, with any of those companies. *Id.* There is no evidence that MindGeek S.à r.l., MindGeek USA Incorporated, or MG Billing Limited benefitted

from the Videos. On the record, therefore, a rational jury could not find any of those entities directly liable for the claims asserted in the FAC.

### C.    There is no basis for piercing the corporate veils of MindGeek S.à r.l., MindGeek USA Incorporated, or MG Billing Limited.

Recognizing as much, Plaintiff attempts to invoke the "alter ego" doctrine, *see* FAC ¶ 24, but the record gives the Court no occasion to pierce the corporate veil or otherwise hold these entities indirectly liable. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). Piercing the corporate veil "is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Id.*; *see also Simmons v. Clark Equip. Credit Corp.*, 554 So. 2d 398, 400 (Ala. 1989) ("Piercing the corporate veil is not a power that is lightly exercised.").

The standards for determining "alter ego" liability under federal common law and Alabama law "are so similar that the distinction is of little moment." *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir. 1989), *as amended on denial of reh'g* (Sept. 29, 1989). To justify veil-piercing, a plaintiff must prove three elements: (1) the dominant entity controlled the subservient entity; (2) such control was used by the dominant entity to commit a fraud or wrong; and (3) the misuse of control proximately caused the alleged harm. *United Steelworkers of Am., AFL-CIO-CLC v. Connors Steel Co. (Connors)*, 855 F.2d 1499, 1507 (11th Cir. 1988) (citation omitted); *Simmons*, 554 So. 2d at 400–01. The burden of proof,

"which is significant, rests squarely on the party seeking to pierce the veil." *d'Amico Dry d.a.c. v. Nikka Fin., Inc. (d'Amico)*, 429 F. Supp. 3d 1290, 1301 (S.D. Ala. 2019) (citation and internal quotation marks omitted).

The "control" element is not satisfied by "mere majority or complete stock control." *Connors*, 855 F.2d at 1507. It requires "*complete domination*, not only of finances, but of policy and business practices in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Id.* (emphasis added). The requisite level of control may be shown through evidence of: (1) common stock ownership; (2) common directors or officers; (3) common business departments; (4) consolidated financial statements and tax returns; (5) the parent's financing of the subsidiary; (6) the parent's incorporation of the subsidiary; (7) the subsidiary's operation with grossly inadequate capital; (8) the parent's payment of the salaries and other expenses of the subsidiary; (9) the subsidiary's lack of business except that given to it by the parent; (10) the parent's use of the subsidiary's property as its own; (11) the lack of separation between the daily operations of the two corporations; and (12) the subsidiary's failure to observe basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings. *Connors*, 855 F.2d at 1505. Courts only pierce the corporate veil where multiple control factors are evident. *Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*, 749 F. App'x 765,

771 (11th Cir. 2018) ("enough of the factors must exist to indicate the necessary degree of control by one company over the other to constitute an alter ego relationship.").

Here, there is no evidence that MindGeek USA Incorporated, MindGeek S.à r.l., or MG Billing Limited completely dominated another corporation. Each of them maintained corporate separateness. All non-dissolved defendants have been adequately capitalized—they have their own bank accounts and perform their own contracts. ███████ Dec. ¶¶ 9, 17, 23, 29, 36, 43. All non-dissolved defendants have their own boards of directors and observe all necessary corporate formalities, including holding regular meetings. ███████ Dec. ¶¶ 11, 19, 25, 31, 38, 45. The non-dissolved defendants also maintain separate daily operations and prepare financial statements and their own tax documents. ███████ Dec. ¶¶ 3, 8, 10, 18, 22, 24, 27, 30, 35, 37, 41, 44. Neither MindGeek USA Incorporated, MindGeek S.à r.l., nor MG Billing Limited incorporated MG Freesites Ltd or 9219-15568 Quebec Inc., or used their property as their own. ███████ Dec. ¶¶ 13, 32, 46.

Setting the conclusory allegations of the FAC aside, Plaintiff's alter ego claim is based entirely on common ownership by MindGeek S.à r.l. of MG Freesites Ltd, 9219-1568 Quebec Inc., MindGeek USA Incorporated, and MG Billing Limited. But ownership alone is insufficient as a matter of law. *See Eitzen Chem.*, 749 Fed. App'x at 771 ("the fact that two companies have 'one-hundred percent' common ownership

is, alone, 'an insufficient basis for applying the alter ego theory to pierce the corporate veil.'") (citation omitted); *MGF Healthcare*, 542 F. Supp. 3d at 1244 (plaintiff did not "carry [its] burden of satisfying the control element" where it only established common ownership factor).

There is, moreover, no evidence that MindGeek USA Incorporated, MindGeek S.à r.l., or MG Billing Limited used MG Freesites Ltd or 9219-1568 Quebec Inc. to commit a fraud or wrong that caused Plaintiff's alleged harm. *Simmons*, 554 So. 2d at 400 ("[M]ere domination cannot be enough for piercing the corporate veil. There must be the added elements of misuse of control and harm or loss resulting from it."); *Eitzen Chem.*, 749 F. App'x at 770 (same). It is undisputed that neither MindGeek USA Incorporated nor MindGeek S.à r.l. nor MG Billing Limited operated, managed, maintained, supervised, or controlled the day-to-day operations of Pornhub.com or any other website on which images of Plaintiff may have appeared. ███ Dec. ¶¶ 12, 28, 42. Thus, there is no basis for holding MindGeek USA Incorporated, MindGeek S.à r.l., or MG Billing Limited liable under an "alter ego" theory of liability, and summary judgment should be entered in their favor.

### D.   MindGeek S.à r.l. is beyond the territorial reach of 18 U.S.C. §§ 1591 and 1595

MindGeek S.à r.l. is also entitled to judgment on Plaintiff's Section 1591 and 1595 claims because (1) Section 1595 does not apply extraterritorially and (2) she

cannot establish the extraterritorial jurisdiction requirement for her section 1591 claim. "The scope of an extraterritorial statute . . . turns on the limits Congress has (or has not) imposed." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337-38 (2016). "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears," applies "only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Aus. Bank Ltd.*, 561 U.S. 247, 255 (2010) (citation and quotation marks omitted). Thus, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none," *id.*, and "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Id.* at 265.

In 2008, Congress amended the TVPRA to add a limited grant of extraterritorial jurisdiction for certain criminal statutes, including section 1591. *Plaintiff A v. Schair*, No. 2:11-CV-00145-WCO, 2014 WL 12495639, at *1 (N.D. Ga. Sept. 9, 2014). Section 1596(a) provides:

> In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if—
>
> (1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence …; or
>
> (2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

57

18 U.S.C. § 1596(a). Critically, although "Congress could have easily included § 1595 in § 1596 . . . it did not." *See Doe I v. Apple Inc.,* 2021 WL 5774224, at *15 (D.D.C. Nov. 2, 2021) (noting Congress amended the text of section 1595 at the same time it added section 1596). As to the second prong of section 1596, although the Eleventh Circuit has not definitively resolved the meaning of the phrase "present in the United States," it has treated "found in the United States" as synonymous with "present in the United States." *See e.g., United States v. Green*, 133 F. App'x 666, 668 (11th Cir. 2005); *see also United States v. Yousef,* 327 F.3d 56, 90 (2d Cir. 2003) (same).

Here, even if Section 1595 applied extraterritorially (which it does not), neither Section 1595 nor Section 1591 would reach MindGeek S.à r.l. because MindGeek S.à r.l. is not a national of the U.S., an alien lawfully admitted for permanent residence, or "present in" the U.S. 18 U.S.C. § 1596(a). Rather, MindGeek S.à r.l. is a private limited liability company incorporated under the laws of Luxembourg. ███████ Dec. ¶ 6. MindGeek S.à r.l. has been and is nothing more than a holding company, without any employees or operations of its own. *Id*. ¶ 7. And it has never had any offices or employees in the U.S. *Id*. ¶ 8. MindGeek S.à r.l. is therefore beyond the territorial reach of Section 1591.

Additionally, even if Section 1591 could apply extraterritorially to MindGeek S.à r.l., there is no basis for applying section 1595 extraterritorially. As noted above,

Section 1596 "does not mention . . . § 1595." *Apple,* 2021 WL 5774224, at *15. Moreover, "the text and structure of § 1596 suggest that it was focused on criminal, not civil, applications." *Id.* "[T]he title of § 1596 is 'Additional jurisdiction in certain trafficking offenses.'" *Id.* "It extends 'extra-territorial jurisdiction over any *offense* (or any attempt or conspiracy to commit *an offense)* to the above-mentioned sections of the TVPRA, all criminal provisions." *Id.* (emphasis in original). Thus, Congress's decision to omit section 1595 from Section 1596's list of offenses likely "was an intentional decision not to extend extraterritorially the reach of the statute's civil component." *Id.* at *16. In any event, when a statute such as Section 1595 "gives no clear indication of an extraterritorial application, it has none." *Morrison,* 561 U.S. at 255. Thus, even if MindGeek S.à r.l. could, in theory, be prosecuted for violating Section 1591, there is no basis for extraterritorial application of Section 1591's civil analogue, Section 1595, to MindGeek S.à r.l.

## <u>CONCLUSION</u>

The Court should grant summary judgment to all Defendants on all counts and dismiss the FAC in its entirety.

Dated:    September 6, 2024         /s/ Kevin M. McGinty

Kevin M. McGinty
*Pro hac vice approved*
Massachusetts Bar 556780
MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY and POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel. (617) 348-1688
Fax. (617) 542-2241
Email KMMcginty@mintz.com

OF COUNSEL:

Dated:    September 6, 2024         /s/ Sara M. Turner

Sara M. Turner (ASB-4388-R58T)
**BAKER, DONELSON,**
**BEARMAN, CALDWELL &**
**BERKOWITZ, P.C.**
1901 Sixth Street North
Suite 2600
Birmingham, Alabama 35203
Tel: (205) 328-0480
Fax: (205) 322-8007
smturner@bakerdonelson.com

*Counsel for MG Freesites Ltd, MG*
*Freesites II Ltd, MindGeek  S.à r.l.,*
*MindGeek USA Incorporated, MG CY*
*Holdings Ltd, MindGeek Content RT*
*Limited, 9219-1568 Quebec Inc., and*
*MG Billing Limited*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day, September 6, 2024, this document was filed conventionally with the Clerk of the United States District Court for the Northern District of Alabama and will be served electronically by the Defendants to all participants of record.

<i>/s/ Sara M. Turner</i>

Sara M. Turner

520590631v.10