# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| JANE DOE #1 on behalf of herself and all others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) ) MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II, LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC INC., d/b/a MINDGEEK; and MG BILLING LTD, ) ) ) ) ) ) ) ) ) ) Defendants. ) | Civil Action No.  7:21-CV-00220-RDP |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CERTIFICATION OF AN INTERLOCUTORY APPEAL**

Seth R. Goldman
*(Pro hac vice)*
New York Bar 2815926
New Jersey Bar 42091996
**MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY and POPEO, P.C.**
919 Third Avenue
New York, New York 10022
Tel: (212) 692-6845
Fax: (212) 983-3115
SRGoldman@mintz.com

Arameh Zargham O'Boyle
*(Pro hac vice)*
California Bar 239495
Tel. (310) 226-7846
AZOboyle@mintz.com

Esteban Morales
*(Pro hac vice)*
California Bar 273948
Tel. (310) 226-7841
Emorales@mintz.com
**MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY and POPEO, P.C.**
Century Plaza Towers
2049 Century Park East, Suite 300
Los Angeles, California 90067
Fax: (310) 586-3200

Kevin M. McGinty
*(Pro hac vice)*
Massachusetts Bar 556780
**MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY and POPEO, P.C.**
One Financial Center
Boston, Massachusetts 02111
Tel. (617) 348-1688
Fax. (617) 542-2241
KMMcginty@mintz.com

OF COUNSEL:

Sara M. Turner (ASB-4388-R58T)
**BAKER, DONELSON,
BEARMAN, CALDWELL &
BERKOWITZ, P.C.**
1901 Sixth Avenue North
Suite 2600
Birmingham, Alabama 35203
Tel: (205) 328-0480
Fax: (205) 322-8007
smturner@bakerdonelson.com

*Counsel for MG Freesites Ltd, MG Freesites II Ltd, MindGeek S.à r.l., MindGeek USA Incorporated, MG CY Holdings Ltd, MindGeek Content RT Limited, 9219-1568 Quebec Inc., and MG Billing Limited*

**TABLE OF CONTENTS**

Page

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 2

    I.    Section 1292(b) gives this court discretion to certify an interlocutory appeal. ...... 2

    II.    Denial of summary judgment on count i was predicated on a controlling question of law—whether the publishing activities of an interactive computer service constitute expressive conduct not protected by section 230—as to which there is a substantial ground for difference of opinion. .............................................................................................. 3

    III.    Denial of summary judgment on count ii was also predicated on a controlling question of law—that section 230 protects "information," but not "contraband"—as to which there is a substantial ground for difference of opinion. ............................................................................................................................. 6

    IV.    An interlocutory appeal will materially advance the termination of this lawsuit and ensure that defendants are not erroneously deprived of statutory immunity. ................................................................................ 8

CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003) ........................................................................................4

*Anderson v. TikTok Inc.*,
   116 F.4th 180 (3d Cir. 2024) ...............................................................................5, 6, 7, 8

*Australian Therapeutic Supplies Pty Ltd v. Naked TM, LLC*,
   No. 22-20493-CIV, 2024 WL 756212 (S.D. Fla. Feb. 23, 2024) ..............................................3

*Dial v. HealthSpring of Alabama, Inc.*,
   612 F. Supp. 2d 1205 (S.D. Ala. 2007) ................................................................................4

*Digeo, Inc. v. Audible, Inc.*,
   No. C05-464JLR, 2006 WL 828861 (W.D. Wash. Mar. 27, 2006) ...........................................9

*Doe #1 v. MG Freesites, LTD*,
   676 F. Supp. 3d 1136 (N.D. Ala. 2022) ...............................................................................11

*Doe #1 v. Twitter, Inc.*,
   Nos. 22-15103 and 22-15104, 2023 WL 3220912 (9th Cir. May 3, 2023) ..............................10

*Doe No. 1 v. United States*,
   749 F.3d 999 (11th Cir. 2014) ............................................................................................3

*Doe v. Bates*,
   No. 5:05-CV-91-DF-CMC, 2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) .............................11

*Drummond Co., Inc. v. Conrad & Scherer*, LLP
   885 F.3d 1324 (11th Cir. 2018) ..........................................................................................3

*Jones v. Dirty World Entertainment Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) .......................................................................................11, 12

*Love v. Delta Air Lines*,
   310 F.3d 1347 (11th Cir. 2002) ..........................................................................................4

*M.A. v. Village Voice Media Holdings*,
   809 F. Supp. 2d 1041 (E.D. Mo. 2011) ..............................................................................10

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*,
   141 S. Ct. 13 (2020) ...........................................................................................................7

*McCall v. Zotos*,
   No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023) ...............................................7

*McFarlin v. Conseco Servs., LLC*,
   381 F.3d 1251 (11th Cir. 2004) ...................................................................................3

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) ..........................................................................................5, 6, 7, 8

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) .................................................................................11

*Tucker v. Fearn*,
   333 F.3d 1216 (11th Cir. 2003) ...............................................................................4

*United States v. Castro*,
   837 F.2d 441 (11th Cir. 1988) ................................................................................10

*United States v. Gonzales*,
   520 U.S. 1 (1997) ...................................................................................................10

*United States v. Harrison*,
   56 F.4th 1325 (11th Cir. 2023) ................................................................................9

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ...................................................................................7

**Constitution**

U.S. Const. amend. I ..................................................................................1, 5, 6, 7, 8

**Statutes**

18 U.S.C.

§ 1591 ..............................................................................................................................2

§ 1595 ..............................................................................................................................2

§ 2252 ..............................................................................................................................2

§ 2252A ......................................................................................................................2, 10

§ 2255 .........................................................................................................................2, 10

28 U.S.C.

§ 1292 ..................................................................................................................1, 3, 4, 12

47 U.S.C.

§ 230.......................................................................................................................... *passim*

............................................................................................................................. *passim*

Pursuant to 28 U.S.C. § 1292(b), Defendants request leave to appeal the Court's order denying their Motion for Summary Judgment (the "Order"), Dkt. Nos. 261 & 262. If granted leave, Defendants will ask the Eleventh Circuit to decide two issues about the application of 47 U.S.C. § 230(c)(1) to Counts I and II of the Complaint, respectively:

1.  Whether the immunity conferred by Section 230(c)(1) is unavailable to an interactive computer service that exercises editorial judgments about compiling third-party speech simply because such activity also qualifies as "expressive" conduct protected by the First Amendment.

2.  Whether the immunity conferred by Section 230(c)(1) is unavailable to an interactive computer service that allegedly distributed "child sexual abuse material" (CSAM) provided to it by a third person, on the grounds that, as such material is "contraband," it does not qualify as "information" within the meaning of the statute.

The Court should certify an appeal because these issues involve controlling questions of law as to which there is substantial ground for difference of opinion and because appellate resolution of the issues will materially advance the termination of this litigation. Interlocutory resolution of these controlling issues is especially warranted here because Section 230(c)(1) confers an immunity to suit that will effectively be lost if Defendants are required to try the case before obtaining appellate review.

## BACKGROUND

This lawsuit is predicated on allegations that Defendants allowed a third party to post CSAM depicting her on their website. Count I claims that Plaintiff is entitled to relief under 18 U.S.C. § 1595 because Defendants violated 18 U.S.C. § 1591(a) by facilitating and benefiting from the third party's alleged sex trafficking of Plaintiff. Count II seeks a remedy for Defendants' alleged receipt and distribution of CSAM depicting her, in violation of 18 U.S.C. §§ 2252 and 2252A.[1]

---

[1] Sections 1591 and 1595 are part of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Defendants will refer to Count I as "the TVPRA Claim" and they will refer to Count II as "the CSAM Claim."

1

From the outset, Defendants have contended that they are immunized by the Communications Decency Act ("CDA"), which establishes that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Defendants moved for summary judgment on this ground. In its order dated December 19, 2024, this Court (Coogler, J.) denied the motion, holding that Section 230(c)(1) did not apply to either the TVPRA Claim or the CSAM Claim. *See* Order at 22–31 & 33–35.

## ARGUMENT

**I.      Section 1292(b) gives this court discretion to certify an interlocutory appeal.**

The Court may authorize an appeal of an interlocutory order when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256–59 (11th Cir. 2004) (reviewing history and purpose of 28 U.S.C. § 1292(b) and noting that 1292(b) appeals are appropriate where the "court of appeals can rule on a pure, controlling question of law"). The Court has "substantial discretion in certifying issues for this purpose." *Australian Therapeutic Supplies Pty Ltd v. Naked TM, LLC*, 2024 WL 756212, *1 (S.D. Fla. Feb. 23, 2024). Consistent with these principles, the Eleventh Circuit and its district courts have granted interlocutory review pursuant to Section 1292 in numerous cases presenting a broad variety of dispositive issues. *See Drummond Co., Inc. v. Conrad & Scherer*, LLP, 885 F.3d 1324, 1328 (11th Cir. 2018) (granting § 1292(b) review of whether work product protection may be invoked when a lawyer and law firm are found to have engaged in a crime or fraud but there is no such finding as to the client or clients they represented); *Doe No. 1 v. United States*, 749 F.3d 999, 1007–08 (11th Cir. 2014) (granting § 1292(b) review of whether plea negotiations are

privileged under Federal Rule of Evidence 410, the work-product privilege of attorneys, and a common-law privilege for plea negotiations in criminal proceedings); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1252–53 (11th Cir. 2003) (granting § 1292(b) review of whether district court has jurisdiction over class members who do not satisfy the amount in controversy requirement, and whether following a jury verdict in favor of the class the district court should have awarded aggregate damages to the class); *Tucker v. Fearn*, 333 F.3d 1216, 1218 (11th Cir. 2003) (granting § 1292(b) review of whether a nondependent parent may recover loss of society damages for the wrongful death of his minor child under general maritime law); *Love v. Delta Air Lines*, 310 F.3d 1347, 1351 (11th Cir. 2002) (granting § 1292(b) review of whether the Air Carrier Access Act of 1986 implies a private right of action, and, if so, what remedies are available to private litigants); *Dial v. HealthSpring of Alabama, Inc.*, 612 F. Supp. 2d 1205, 1208 (S.D. Ala. 2007) (granting § 1292(b) review of whether Section 1395w–26(b)(3) of the Medicare Act is a complete preemption statute).

**II.  Denial of summary judgment on Count I was predicated on a controlling question of law—whether the publishing activities of an interactive computer service constitute expressive conduct not protected by section 230—as to which there is a substantial ground for difference of opinion.**

With respect to the TVPRA Claim in Count I, the controlling questions of law were whether Defendants (i) acted as the "publishers" of the videos depicting Plaintiff, in which case they would be entitled to Section 230(c)(1) immunity, or (ii) are not protected by the statute because they were themselves "providers" of the offending information by virtue of functions of their website that (a) created "thumbnails" of videos posted by third parties, (b) allowed the third-party posters to select categories and tags for their videos, and (c) employed algorithms to enable viewers to search for videos. Order at 24–26. The Court's analysis of these controlling issues was guided by a recent

3

decision of the Third Circuit. *Id.* at 27–30 (*citing and discussing Anderson v. TikTok Inc.*, 116 F.4th 180 (3d Cir. 2024)).

In *Anderson*, the plaintiff sued for wrongful death and other state-law violations after her daughter died emulating a TikTok video that encouraged viewers to engage in self-asphyxiation. 116 F.4th at 181–182 & n. 3. TikTok claimed immunity under Section 230(c)(1), and the trial court dismissed the complaint on that basis, but the Third Circuit reversed. *Id.* at 182–85. Its analysis was also guided by a single decision—the Supreme Court opinion in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). *See Anderson*, 116 F.4th at 183–184.

*NetChoice* was a constitutional case that did not implicate Section 230(c)(1). 603 U.S. at 772 n. 8 (noting that Section 230 preemption issue raised below was not reached by appeals court and was "not before us"). The issue was whether state laws that limited the capacity of large social-media platforms "to engage in content moderation" violated the First Amendment. *Id.* at 717. The Supreme Court remanded the matter for further development that was needed to assess the plaintiff's facial constitutional challenge, *id.*, but, in doing so, it offered some substantive dicta. Among other things, the Supreme Court emphasized that courts have long held that the Constitution protects the "right of editorial control," *id.* at 728, because (i) the First Amendment "offers protection when an entity [is] engaging in expressive activity," and (ii) an entity "exercis[ing] editorial discretion in the selection and presentation of content" is engaged in such activity. *Id.* at 731 (internal quotation marks and citation omitted).

The Third Circuit took this dictum and ran with it—in the wrong direction. First, it posited that Section 230(c)(1) draws a binary distinction between (i) "someone else's expressive activity or content," which it called "third-party speech," and (ii) an interactive computer service's "own expressive activity or content," which it called "first-party speech." *Anderson*, 116 F.4th at 183.

4

Only third-party speech is covered by the statutory grant of immunity; first-party speech is not. *Id.* Then, citing the decision in *NetChoice*, the Third Circuit reasoned that, "[g]iven the Supreme Court's observations that platforms engage in protected first-party speech under the First Amendment when they curate compilations of others' content via their expressive algorithms . . . , it follows that doing so amounts to first-party speech under § 230, too." *Id.* at 184.

The Third Circuit thus excluded from the scope of Section 230(c)(1) an entire range of "editorial control" and "editorial discretion" simply because such editorial functions have been deemed "expressive" and therefore worthy of First Amendment protection. By doing so, the *Anderson* decision effectively abrogated—at least in the Third Circuit—a wealth of decisional law holding that Section 230(c)(1) immunity attaches to the "exercise of a publisher's traditional editorial functions . . . ." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *2–3 (11th Cir. June 12, 2023) (same); *see also Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 16 (2020) (noting that, "from the beginning, courts have held that § 230(c)(1) protects the 'exercise of a publisher's traditional editorial functions'"). The Third Circuit's opinion neither mentioned nor accounted for its impact on existing jurisprudence, but this Court's summary judgment order tacitly acknowledged that applying *NetChoice* according to *Anderson*'s logic will obviate case law that applies Section 230(c)(1) to such basic editorial functions as "curat[ing] content." Order at 30 (distinguishing cases cited by Defendants because they "pre-date the Supreme Court's decision in *NetChoice*, which held that a platform engages in protected speech when it curates content").

When this Court relied on *Anderson* to deny the motion for summary judgment on Count I, it applied the same dualistic structure as the Third Circuit—if a website's editorial functions qualify for First Amendment protection as "expressive" activity, then the website cannot qualify

5

for Section 230 immunity as a "publisher" of the information at issue. *See* Order at 28 (concluding that the Defendant's "curation processes, including Defendants' proprietary algorithm, are Defendants' own expressive—and in this case illegal—activity"). Because the Court tied its reasoning so tightly to the Third Circuit's, its denial of summary judgment on Count I is only as defensible as *Anderson*'s conflation of "expressive activity" under the First Amendment with "first-person speech" under Section 230(c)(1).

There is, at the very least, substantial ground for a difference of opinion about the validity of this approach. In fact, Defendants submit that the rationale articulated by the Third Circuit and adopted by this Court is untenable because it threatens to disrupt decades of case law and to radically shrink the scope of Section 230(c)(1) immunity. Nothing in the *NetChoice* opinion suggests that long-standing Section 230(c)(1) jurisprudence cannot harmoniously co-exist with settled First Amendment principles; *i.e.*, that a website's exercise of editorial functions cannot be both "expressive" activity protected from governmental infringement by the First Amendment and "publishing" activity immunized from private lawsuits by Section 230(c)(1). The Third Circuit's either/or logic is arbitrary; the Section 230(c)(1) case law—which the Supreme Court did not even question, much less overrule, in *NetChoice*—makes clear that the categories of constitutionally and statutorily protected activity overlap, and that a publisher's qualification for First Amendment protection by no means disqualifies it from Section 230(c)(1) immunity.

### III. Denial of summary judgment on Count II was also predicated on a controlling question of law—that section 230 protects "information," but not "contraband"—as to which there is a substantial ground for difference of opinion.

With respect to the CSAM Claim, the Court took a different approach. It drew a distinction between (i) "information," which is immunized by the CDA, *see* 47 U.S.C. § 230(c)(1) (precluding treatment of an interactive computer service as the publisher of "any information" provided by a

6

third party), and (ii) "contraband," which the Court excluded from the scope of Section 230(c)(1). Order at 35. CSAM, the Court ruled, is "itself a violent crime, a record of that crime, and contraband—not information." *Id.*

There is substantial ground for difference of opinion on this issue as well. The Court cited no authority for the distinction it made between "contraband" and "information." In their ordinary senses, "information" and "contraband" do not denote mutually exclusive categories; "information," moreover, *does* encompass the sorts of sounds and images imparted by a video recording. *Digeo, Inc. v. Audible, Inc.*, 2006 WL 828861, *11 (W.D. Wash. Mar. 27, 2006) (in patent infringement case, defining "information" to mean "anything that can be represented in electronic form, including text, numbers, **sound recordings, and/or visual representations**") (emphasis added)).

When "interpreting any statute, [courts] must give effect to its plain and ordinary meaning." *United States v. Harrison*, 56 F.4th 1325, 1333 (11th Cir. 2023). Nothing in Section 230(c)(1) suggests that Congress intended the word "information" to convey anything other than its ordinary meaning. And the fact that Congress immunized interactive computer services that publish "**any** information" militates against the sort of carve-out made by the summary judgment decision. "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)); *see also United States v. Castro*, 837 F.2d 441, 445 (11th Cir. 1988) (as used in a statute, "any" means "ever" and "all").

In any event, the existence of substantial grounds for a difference of opinion on this issue is demonstrated by the fact that a difference of opinion actually *exists* among the courts that have considered it. Three federal courts, including the Ninth Circuit, have reached a contrary

7

conclusion, holding that Section 230(c)(1) can—and, in the cases before them, did—immunize a defendant against claims under Section 2255 for possession and distribution of CSAM. *Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, *2 (9th Cir. May 3, 2023) (district court "correctly ruled that section 230 precluded Plaintiffs from stating a viable claim for possession and distribution of child pornography under 18 U.S.C. §§ 2252A and 2255"); *M.A. v. Village Voice Media Holdings*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011) (giving website immunity under Section 230(c)(1) against claims under Section 2255); *Doe v. Bates*, 2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) (same). These courts could not have made these decisions if they agreed with this Court that CSAM is "contraband" and that "contraband" is not "information."

### IV. An interlocutory appeal will materially advance the termination of this lawsuit and ensure that defendants are not erroneously deprived of statutory immunity.

An interlocutory appeal will materially advance the termination of this lawsuit because there are only two claims and both will be dismissed, ending the litigation, if the Eleventh Circuit determines that Section 230(c)(1) applies here. Interlocutory review is especially warranted here because of "the role that the CDA plays in an open and robust internet by preventing the speech-chilling threat of the heckler's veto . . . ." *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014). Section 230(c)(1) furthers the statute's purpose by providing an "immunity from suit," *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1153 (N.D. Ala. 2022), rather than "a mere defense to liability," *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (internal quotation marks and citation omitted). But this immunity "is effectively lost if a case is erroneously permitted to go to trial." *Id.* (internal quotation marks and citation omitted). Consequently, it is appropriate "that determinations of immunity under the CDA should be resolved at an earlier stage of litigation." *Jones*, 755 F.3d at 417 & n.4

(noting that certification of an interlocutory appeal sought by defendants could have obviated the need for a trial).

## CONCLUSION

The Court should certify the controlling questions of law identified in this motion for interlocutory appeal under 28 U.S.C. § 1292(b). A proposed Order is attached as Exhibit 1.

Dated: January 15, 2025

/s/ Kevin M. McGinty
Kevin M. McGinty
*Pro hac vice approved*
Massachusetts Bar 556780
MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY and POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel. (617) 348-1688; Fax. (617) 542-2241
Email KMMcginty@mintz.com

OF COUNSEL:

Dated: January 15, 2025

/s/ Sara M. Turner
Sara M. Turner (ASB-4388-R58T)
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
1901 Sixth Avenue North, Suite 2600
Birmingham, Alabama 35203
Tel: (205) 328-0480; Fax: (205) 322-8007
smturner@bakerdonelson.com
*Counsel for MG Freesites Ltd, MG Freesites II, Ltd, MindGeek S.à r.l., MindGeek USA Incorporated, MG CY Holdings Ltd, MindGeek Content RT Limited, 9219-1568 Quebec Inc., and MG Billing Limited*

9

## **CERTIFICATE OF SERVICE**

I certify that on this day, January 15, 2025, this document was filed conventionally with the Clerk of the United States District Court for the Northern District of Alabama and will be served electronically by the Defendants to all participants of record.

                                                        */s/ Sara M. Turner*
                                                       Sara M. Turner