FILED

2025 Mar-31  PM 03:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| JANE DOE #1, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC, INC., d/b/a MINDGEEK; MG BILLING LTD,<br><br>     Defendants. | CIVIL ACTION NO:<br>7:21-cv-00220-RDP<br><br><br>Honorable R. David Proctor |

## PLAINTIFF JANE DOE #1'S REPLY IN SUPPORT OF BRIEF REGARDING PROPOSED STRUCTURE FOR TRIAL AND OTHER PROCEEDINGS

Gregory Zarzaur (ASB-0759-E45Z)
Kelsie Overton (ASB-1791-F80L)
Denise Wiginton (ASB-5905-D27W)
ZARZAUR LAW LLC
2850 Cahaba Road, Suite 220
Birmingham, Alabama 35223
T: (888) 505-0523
E: gregory@zarzaur.com
 kelsie@zarzaur.com
 denise@zarzaur.com

Joshua P. Hayes
Daniel Blake Williams
PRINCE GLOVER & HAYES
P.O. Box 20149
Tuscaloosa, Alabama 35402
T: (205) 345-1234
E: jhayes@princelaw.net
 bwilliams@princelaw.net

Kimberly Lambert Adams*
James Michael Papantonio*
LEVIN PAPANTONIO
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
T: (850) 435-7056
E: kadams@levinlaw.com
 mpapantonio@levinlaw.com

Victor Paul Bucci II*
Gaetano D'Andrea*
Jill P. Roth*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY BUCCI D'ANDREA REICH & RYAN
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
T: (215) 399-9255
E: pbucci@laffeybucci.com
 gdandrea@laffeybucci.com
 jroth@laffeybucci.com
 sryan@laffeybucci.com
 amacmaster@laffeybucci.com

*(attorneys continue on next page)*

Benjamin W. Bull*
Dani Bianculli Pinter*
Christen M. Price*
Peter A. Gentala*
NATIONAL CENTER ON
SEXUAL EXPLOITATION
1201 F Street NW, Suite 200
Washington, D.C. 20004
T: (202) 393-7245
E: lawcenter@ncose.com

*pro hac vice

Kevin Dooley Kent*
Mark B. Schoeller*
Vanessa L. Huber*
CLARK HILL PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
T: (215) 640-8500
E: kkent@clarkhill.com
   mschoeller@clarkhill.com
   vhuber@clarkhill.com

*Counsel for Plaintiff Jane Doe #1*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    I.    Nothing Warrants Overturning Judge Coogler's Prior Rulings in This Case.................. 1

        A.    The Standard for a Successor Judge to Overturn a Prior Judge's Rulings
            is Exceedingly High. ................................................................................... 1

        B.    Plaintiff's Proposed Trial Plan is Structured in Accordance with Judge
            Coogler's Prior Rulings. .............................................................................. 3

        C.    Other Courts Have Successfully Used Trial Structures Similar to Plaintiff's
            Proposed Structure. ..................................................................................... 4

    II.    Defendants' Response is Rife with Arguments that are Plainly Incorrect and/or
        Have Already Been Rejected by Judge Coogler ............................................................. 6

        A.    Defendants' Arguments Regarding the Evidence Presented in Plaintiff's
            Summary Judgment Motion are Wrong and Inconsistent with the
            "Representative" Nature of Class Actions ................................................... 6

        B.    Defendants Tag Along Arguments About Punitive Damages and Injunctive
            Relief Are Wrong ...................................................................................... 10

        C.    Plaintiff's Proposed Trial Plan Does Not Impair Any Due Process Rights.......... 12

CONCLUSION .................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Adams v. S. Farm Bureau Life Ins. Co.*,
    493 F.3d 1276 (11th Cir. 2007) ........................................................................... 13

*Ashcroft v. Free Speech Coalition*,
    535 U.S. 234 (2002) ........................................................................................... 10

*Barfield v. CSX Transportation, Inc.*,
    2017 WL 662012 (M.D. Fla. Feb. 17, 2017) .......................................................... 2

*Battle v. Liberty Nat. Life Ins. Co.*,
    770 F. Supp. 1499 (N.D. Ala. 1991) ..................................................................... 14

*Booth v. Appstack, Inc.*,
    2016 WL 3620798 (W.D. Wash. June 28, 2016) .................................................. 15

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .............................................................................. 14

*Brown v. DirecTV, LLC*,
    562 F. Supp. 3d 590 (C.D. Cal. 2021) ................................................................... 14

*Cote v. Philip Morris USA, Inc.*,
    985 F.3d 840 (11th Cir. 2021) .............................................................................. 10

*Crossroads Grp., LLC v. City of Cleveland Heights*,
    346 F.R.D. 75 (N.D. Ohio 2024) .......................................................................... 13

*Curtis v. Aetna Life Insurance Company*,
    648 F. Supp. 3d 358 (D. Conn. 2023) ..................................................................... 7

*Davis v. Bradshaw*,
    2020 WL 3507392 (S.D. Fla. June 29, 2020) .......................................................... 3

*Doe v. MG Freesites, LTD*,
    2024 WL 1564775 (N.D. Ala. Apr. 10, 2024) ...................................................... 13

*Doe v. MG Freesites, LTD*,
    2024 WL 5339485 (N.D. Ala. Dec. 19, 2024) .................................................... 4, 9

*Doe v. MG Freesites, LTD*,
    707 F. Supp. 3d 1157 (N.D. Ala. 2023) ......................................................... *passim*

*Doe v. Salesforce, Inc.*,
    2025 WL 888433 (N.D. Tex. Mar. 21, 2025) ......................................................... 8

iv

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ................................................................. 5, 6, 11

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................................. 5

*Hansberry v. Lee*,
   311 U.S. 32 (1940) ......................................................................................... 13

*Hastings-Murtagh v. Texas Air Corp.*,
   119 F.R.D. 450 (S.D. Fla. 1988) ................................................................. 12, 13

*Hoever v. Marks*,
   993 F.3d 1353 (11th Cir. 2021) ...................................................................... 11

*Holmes v. Continental Can Co.*,
   706 F.2d 1144 (11th Cir. 1983) ...................................................................... 14

*In re Hedron Holdings, LLC*,
   2025 WL 605189 (E.D. La. Feb. 25, 2025) ...................................................... 3

*In re Takata Airbag Prod. Liab. Litig.*,
   --- F.R.D. ----, 2025 WL 629640 (S.D. Fla. Feb. 26, 2025)................................. 12

*In re Takata Airbag Prod. Liab. Litig.*,
   677 F. Supp. 3d 1311 (S.D. Fla. 2023)......................................................... 14, 15

*In re: Syngenta AG MIR 162 Corn Litig.*,
   2016 WL 5371856 (D. Kan. Sept. 26, 2016) .................................................. 4, 8

*Johnson v. General Motors Corp.*,
   598 F.2d 432 (5th Cir. 1979)........................................................................... 14

*Jones v. Depuy Synthes Prods., Inc.*,
   330 F.R.D. 298 (N.D. Ala. 2018) .................................................................... 14

*Krakauer v. Dish Network, LLC*,
   2017 WL 3206324 (M.D.N.C. July 27, 2017) .................................................. 15

*Lisk v. Lumber One Wood Preserving, LLC*,
   792 F.3d 1331 (11th Cir. 2015)....................................................................... 15

*Moore v. Walter Coke, Inc.*,
   294 F.R.D. 620 (N.D. Ala. 2013) .................................................................... 13

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015)........................................................................... 14

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Company*,
    693 F.3d 145 (2d Cir. 2012) ................................................................................... 7

*New York v. Ferber*,
    458 U.S. 747 (1982) ................................................................................... 10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ................................................................................... 4, 8

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................... 12, 13

*Relevant Group, LLC v. Nourmand*,
    116 F.4th 917 (9th Cir. 2024) ................................................................................... 2

*Rudolph v. Department of Corrections*,
    2006 WL 8443761 (N.D. Fla. Nov. 11, 2006) ................................................................................... 11

*Securities and Exchange Commission v. Bankatlantic Bancorp, Inc.*,
    2014 WL 11531363 (S.D. Fla. Sept. 16, 2014) ................................................................................... 2

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ................................................................................... 12, 15

*St. Louis v. Perlitz*,
    176 F. Supp. 3d 97 (D. Conn. 2016) ................................................................................... 10

*Stevenson v. Four Winds Travel, Inc.*,
    462 F.2d 899 (5th Cir. 1972) ................................................................................... 2

*Technical Resource Services, Inc. v. Dornier Medical Systems, Inc.*,
    134 F.3d 1458 (11th Cir. 1998) ................................................................................... 1

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................................................... *passim*

*United States v. O'Keefe*,
    128 F.3d 885 (5th Cir. 1997) ................................................................................... 2

*United States v. Williams*,
    728 F.2d 1402 (11th Cir. 1984) ................................................................................... 1

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ................................................................................... 15

*Vasquez v. Leprino Foods Co.*,
    2023 WL 1868973 (E.D. Cal. Feb. 9, 2023) ................................................................................... 4, 15

*Velez v. Novartis Pharmaceuticals Corp.*,
  2010 WL 4877852 (E.D.N.Y. Nov. 30, 2010) ........................................................................... 5

*Victorino v. FCA US LLC*,
  2020 WL 2306609 (S.D. Cal. May 8, 2020) ........................................................................... 14

*Vintilla v. United States*,
  931 F.2d. 1444 (11th Cir. 1991) ........................................................................................... 3

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................................... 11, 12

*Williams v. Bexar County, Tex.*,
  2000 WL 1029171 (5th Cir. July 14, 2000) ........................................................................... 2

**Statutes**

18 U.S.C. § 2255 .................................................................................................... 11

18 U.S.C. § 2257 ..................................................................................................... 6

28 U.S.C. § 2072 .................................................................................................... 15

**Rules**

Fed. R. Civ. P. 54 .................................................................................................... 3

**Treatises**

1 Newberg and Rubenstein on Class Actions § 1:1 (6th ed. 2024) ................................................. 7

2 Newberg and Rubenstein on Class Actions § 4:38 (6th ed. 2024) ............................................. 11

## INTRODUCTION

However polite or facially respectful Defendants' Response to Plaintiff's Brief Regarding Proposed Structure for Trial and Other Proceedings (Doc. 278) may appear, make no mistake— Defendants' Response, and their Motion to Decertify the Class (Doc. 264), are nothing more than a cumulative and calculated request for this Court to second-guess Judge Coogler's major rulings in this case. When the layers of Defendants' rhetoric are peeled back, Defendants' Response (like their Motion to Decertify) is based on nothing new and cites no developments in the law or the facts of this case; it merely recites the same factual and legal arguments regarding the suitability of this case for class action treatment that Judge Coogler has considered—and rejected—on numerous prior occasions. Plaintiff respectfully submits that this Court should reject Defendants' invitation to second guess Judge Coogler's handling of this case for the past three years, deny Defendants' Motion to Decertify the Class (Doc. 264) and Motion for Certification of Interlocutory Appeal (Doc. 266), and schedule the trial and proceedings in this case as proposed in Plaintiff's Brief Regarding Proposed Structure for Trial and Other Proceedings (Doc. 277).

## ARGUMENT

**I.     Nothing Warrants Overturning Judge Coogler's Prior Rulings in This Case**

**A.     The Standard for a Successor Judge to Overturn a Prior Judge's Rulings is Exceedingly High.**

"In general, when a case is transferred from one district judge to another, the parties should not treat the transfer as an opportunity to relitigate all of the first judge's rulings." *Technical Resource Services, Inc. v. Dornier Medical Systems, Inc.*, 134 F.3d 1458, 1465 n.9 (11th Cir. 1998) (citing *United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984)). And the "rule in most of the national courts . . . is that where a judge of a United States District Court . . . renders a decision and makes a judicial order in such case, and thereafter the case is transferred to . . . another judge of

such District Court, the latter judge should respect and not overrule such decision and order." *Barfield v. CSX Transportation, Inc.*, 2017 WL 662012, at *6 n.3 (M.D. Fla. Feb. 17, 2017) (quoting *Stevenson v. Four Winds Travel, Inc.*, 462 F.2d 899, 904-05 (5th Cir. 1972)).

Importantly, while "a successor judge has the same discretion to reconsider an order as would the first judge, [the successor judge] should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently." *United States v. O'Keefe*, 128 F.3d 885, 891 (5th Cir. 1997); *see also Securities and Exchange Commission v. Bankatlantic Bancorp, Inc.*, 2014 WL 11531363, at *1 (S.D. Fla. Sept. 16, 2014) (cleaned up) (when a case is reassigned to another judge, "it is an improper use of 'the motion to reconsider to ask the Court to rethink what the Court already thought through rightly or wrongly'"); *Williams v. Bexar County, Tex.*, 226 F.3d 643 (Table), 2000 WL 1029171, at *2 (5th Cir. July 14, 2000) (citation omitted) ("[R]econsideration of a ruling by a prior judge is within a judge's discretion" but that discretion "is not unlimited" and "does not permit a subsequent judge to 'overrule the earlier judge's order or judgment merely because the latter judge might have decided matters differently'"). These general principles are "essential to the prevention of unseemly conflicts, to the speedy conclusion of litigation, and to the respectable administration of the law[.]" *Barfield*, 2017 WL 662012, at *6 n.3.

As a result, when a case is reassigned to another judge in the same district court, the new judge should not reconsider or undo the first judge's rulings absent "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Bankatlantic Bancorp*, 2014 WL 11531363, at *1.[1]

---

[1]    *See also Relevant Group, LLC v. Nourmand*, 116 F.4th 917, 926 (9th Cir. 2024) (citation omitted) ("[A] second district judge may review an interlocutory order by a prior judge in the same case when '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial'"); *Williams*, 2000 WL 1029171, at *2 (successor judge has discretion to reconsider prior judge's rulings "when it is made in order to correct a clear error of law, take account of a clarification in the applicable law from a higher court, or reflect new facts that are part of a better-developed record"); *compare Davis v. Bradshaw*, 2020 WL 3507392, at *3 (S.D. Fla. June

Although Judge Coogler explicitly found that there is common, class-wide evidence regarding all of the elements of the TVPRA and CSAM claims in this case, *see Doe v. MG Freesites, LTD*, 707 F. Supp. 3d 1157, 1177-82 (N.D. Ala. 2023), Defendants' Response attacks Plaintiff's proposed trial plan by rearguing (yet again) that "individualized" evidence about each class member is "required," and that there is insufficient common, class-wide evidence on the TVPRA and CSAM claims. (*See* Doc. 278 at 2-18). In doing so, Defendants do not cite any changes in controlling law, point to any new factual developments in this case, or explain how Judge Coogler's prior rulings were clearly erroneous. The Response just echoes, once again, that Defendants disagree with Judge Coogler's prior rulings, nothing more. This all is nothing new and falls woefully short of satisfying the exceedingly high standard for this Court to overturn Judge Coogler's prior rulings in this case.[2]

## B.    Plaintiff's Proposed Trial Plan is Structured in Accordance with Judge Coogler's Prior Rulings.

As explained above, nothing warrants this Court overturning three years' worth of rulings issued by Judge Coogler. This Court should therefore give credence to Plaintiff's proposed trial plan that was constructed in direct accordance with Judge Coogler's prior rulings.

The overview of evidence set forth in Plaintiff's Brief that she intends to present to prove each element of her claims directly follows and is precisely in line with the Court's class certification Opinion, in which Judge Coogler detailed the kinds of class-wide evidence that

---

29, 2020), *order amended on reconsideration*, 2020 WL 5750019 (S.D. Fla. Sept. 25, 2020) (cited in Doc. 278 at 20) (granting the defendants' renewed summary judgment motion when the originally *pro se* prisoner-plaintiff obtained counsel, two amended complaints were filed, and new facts emerged from depositions and discovery in the three years *after* the first judge denied the defendants' original summary judgment motion); *see also Vintilla v. United States*, 931 F.2d. 1444, 1447 (11th Cir. 1991) ("law of the case" doctrine did not foreclose court from determining scope of its jurisdiction despite making earlier rulings on other issues which plaintiffs argued was a tacit assumption of jurisdiction).

[2]      *See In re Hedron Holdings, LLC*, 2025 WL 605189, at *4 (E.D. La. Feb. 25, 2025) ("Petitioners ask for a re-do of the . . . analysis Judge Guidry has already done. The Court declines the invitation. The . . . arguments . . . in their reconsideration briefing are substantially similar to the . . . arguments they made in their brief in opposition to the [initial motion on this subject]. Judge Guidry considered and rejected those arguments in his 'sound discretion.' . . . This Rule 54(b) motion is 'not the proper vehicle' for 'rehashing' those arguments."); *see generally* Fed. R. Civ. P. 54(b) (a decision that "adjudicates fewer than all the claims" in a case "may be revised at any time before the entry of a [final] judgment").

Plaintiff had developed and could present to attempt to prove each element of her claims.  *See MG Freesites*, 707 F. Supp. 3d at 1177-82.  And in regard to the CSAM Claim, Judge Coogler already found that such evidence was sufficient for a jury to find Defendants liable.  *See Doe v. MG Freesites, LTD*, 2024 WL 5339485, at *13-15 (N.D. Ala. Dec. 19, 2024).[3]

Plaintiff likewise constructed the proposed trial plan in accordance with prior directives from Judge Coogler.  (*See* Doc. 277 at 10-17).  And where Judge Coogler had not previously addressed a specific issue regarding trial or post-trial proceedings, Plaintiff relied on other class action case law, leading treatises on complex litigation and, most notably, directives in other class actions that actually proceeded to trial.[4]

Accordingly, because nothing warrants this Court overturning Judge Coogler's prior rulings, Plaintiff's proposed trial plan—which heavily relies on, and directly accords with, Judge Coogler's rulings—is reasonable and appropriate.

**C.     Other Courts Have Successfully Used Trial Structures Similar to Plaintiff's Proposed Structure.**

As noted in Plaintiff's Brief, Plaintiff's proposed trial plan—which proposes trying liability and punitive damages in a jury trial along with the Court's consideration of class-wide injunctive

---

[3]        Though already raised in Plaintiff's initial Brief, *see* Doc. 277 at 3 n.1, it bears repeating that whether class-wide evidence will ultimately be sufficient to prove Defendants' liability at trial has no bearing on the propriety of class certification.  *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) ("[A] district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue."); *Vasquez v. Leprino Foods Co.*, 2023 WL 1868973, at *11 (E.D. Cal. Feb. 9, 2023) (emphasis added) ("Plaintiffs' survey is sufficiently reliable representational evidence in light of *Tyson Foods*[*, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)] . . . .  Whether the survey is representative of the class is a merits dispute, and the jury might agree with Defendants' interpretation of the survey and determine that Plaintiffs' theory is incorrect.  *Such a finding by the jury would not mean that individual issues predominate; rather, it would mean that Plaintiffs could not prove their case*."); *In re: Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at *7 (D. Kan. Sept. 26, 2016) (finding that an expert opinion regarding class-wide evidence could be used "to show liability and damages in an individual class member's suit; thus, under *Tyson Foods*, a plaintiff class may rely on those opinions to show class-wide liability" and further noting that "[t]he Court does not weigh the class-wide evidence . . . however, as the persuasiveness of such evidence is for the jury at trial.").

[4]        *See* Section I.C, *infra*.

relief in Phase One, and thereafter handling the entitlement of absent class members to damages and any individual damages assessments in mini-trials or hearings before a magistrate or special master in Phase Two—is similar to the procedure used in *Velez et al. v. Novartis Corporation*, No. 1:04-cv-09194 (S.D.N.Y.).  (*See* Doc. 277 at 13 n.7 & Ex. A); *Velez v. Novartis Pharmaceuticals Corp.*, 2010 WL 4877852 (E.D.N.Y. Nov. 30, 2010).  Defendants do not mention or try to distinguish *Velez* in their Response.

Like *Velez*, the trial plan in *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012)[5] is analogous to the trial plan Plaintiff has proposed here.  *Ellis* was a class action involving claims that the defendant had unlawfully denied promotions to female employees under its established policies and practices. The named plaintiffs sought "a hybrid certification of both a Rule 23(b)(2) (for liability and injunctive relief) and (b)(3) (for monetary relief) class" and "to utilize a multi-staged bifurcated trial system" to "first litigate" class-wide liability, punitive damages, and injunctive relief, and thereafter have "individual hearings" to determine individual compensatory damages and individual defenses.  *Id.* at 503-05.  Despite the defendant's opposition to class certification, including the argument that bifurcating liability from individual damages would violate the Seventh Amendment's reexamination clause, the court certified a hybrid class under Rule 23(b)(2) for liability and class-wide injunctive relief and under Rule 23(b)(3) for compensatory damages and any other individual issues.  *See id.* at 537, 540.

The *Ellis* court also adopted a two stage, bifurcated trial plan.  In stage one, a trial would be held in which the jury would decide "liability for classwide disparate treatment" and whether

---

[5]    In *Ellis*, a successor judge adopted this trial plan and granted class certification of a hybrid class under 23(b)(2) for equitable relief and 23(b)(3) for monetary relief *after* and pursuant to the Ninth Circuit's earlier decision affirming in part and vacating in part the first judge's original class certification ruling on the defendant's Rule 23(f) interlocutory appeal.  *See Ellis*, 285 F.R.D. at 496-97, 502-03 (discussing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)).

the defendant's conduct met the standard for an award of punitive damages,[6] while the court would decide the equitable issues (*i.e.*, whether there was a "prima facie case of disparate impact," the "business necessity" defense, and "appropriate injunctive relief"). *Id.* at 545-46. In stage two, "individual hearings" would be held for individual compensatory damages, individual defenses, and each class member's share of punitive damages. *See id.* at 546. One month before the trial was scheduled to begin, the *Ellis* court approved a class settlement. *See* Docket, *Ellis v. Costco Wholesale Corp.*, No. 3:04-cv-03341 (N.D. Cal.) Docs. 746, 780, attached hereto as Exhibit A.[7]

As *Velez* and *Ellis* demonstrate, the type of bifurcated trial plan that Plaintiff has proposed has been utilized in other class actions without any issues, even though the defendants in those cases initially raised the same types of objections as Defendants do in their Response here.

## II. Defendants' Response is Rife with Arguments that are Plainly Incorrect[8] and/or Have Already Been Rejected by Judge Coogler

### A. Defendants' Arguments Regarding the Evidence Presented in Plaintiff's Summary Judgment Motion are Wrong and Inconsistent with the "Representative" Nature of Class Actions

In their Response, Defendants argue that Plaintiff's use of evidence about her own videos and circumstances in her Motion for Summary Judgment somehow means that "individualized"

---

[6]    The trial plan in *Ellis* also indicated that in stage one, the jury would decide "[w]hether Costco is liable to the Named Plaintiffs for gender discrimination and, if so, in what amount." 285 F.R.D. at 546.

[7]    Among other things, the *Ellis* class settlement provided that the defendant would pay $8 million into a non-reversionary settlement fund for the class, and that the class members' personal awards from the settlement fund would be determined though a "monetary claims process" using individual arbitrations for each class member. *See* Order Granting Motion for Preliminary Approval of Class Settlement Ex. 1 ¶¶ 3, 5, attached hereto as Exhibit B; *see also* Stipulation and Order on Claims Procedure, Attorneys Fees and Costs ¶¶ 4-5 (noting 81 claimants went through individual arbitration process), attached hereto as Exhibit C. The settlement also allowed the named plaintiffs to pursue their individual claims and damages in court, and one named plaintiff settled her individual claims shortly before her individual trial was to begin. *See id.* ¶ 10.2, Ex. A, Doc. 907. And the settlement agreement included extensive "programmatic" changes to defendant's employment practices. *See* Ex. C ¶¶ 4.1–4.10.1.

[8]    Of note, Defendants state that they "had received age verification certificates under 18 U.S.C. § 2257" for a Pornhub advertisement that led to Judge Coogler's development of the Discovery Protocol. (Doc. 287 at 12). However, Defendants have *never* before indicated that they actually possess the 2257 documentation; they have only ever stated that the advertisement "producer's website had a link to a 2257 compliance statement[.]" (Doc. 85-3 at 1).

evidence is "required" to be presented on behalf of all class members at trial.  (*See* Doc. 278 at 5-7).  Defendants' argument is wrong for several reasons.[9]

*First*, Defendants' argument entirely ignores that "[c]lass actions are a form of *representative* litigation." 1 Newberg and Rubenstein on Class Actions § 1:1 (6th ed. 2024) (emphasis added).  The very point of class actions is to allow the named plaintiffs to represent other similarly situated people and spare them from presenting their own claims in litigation when "the proof the named plaintiff develops for his or her individual claims also tends to prove the class claims."[10]  *Curtis v. Aetna Life Insurance Company*, 648 F. Supp. 3d 358, 388 (D. Conn. 2023) (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Company*, 693 F.3d 145, 161 (2d Cir. 2012)).  In a class action trial, the named plaintiff can present "representative evidence," and the jury determines whether it is persuaded by all of the evidence that the named plaintiff presents.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) ("In a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class.").[11]  As a

---

[9]     Contrary to Defendants' suggestion, *see* Doc. 278 at 7, the majority of evidence Plaintiff presented in her Summary Judgment Motion came from Defendants' own business records and largely involved Defendants' own business practices and policies. (*See* Doc. 223 at 8-36 ¶¶ 28-144).

[10]     Under Defendants' mistaken syllogism, most class actions could not proceed to trial.  Clearly, class actions are not open to decertification *just because* the named plaintiffs present evidence about, for example, their own exposure to toxic substances, how they came to take a certain drug, or their failure to get a job promotion, but do not present equally detailed evidence about every absent class member.

[11]     *Tyson Foods* was a class action that resulted in a jury verdict in favor of the class on claims that the defendant improperly failed to account for time spent "donning and doffing" protective gear when calculating overtime pay for their workers. 577 U.S. at 446, 452. Since the defendant did not keep records on "donning and doffing" time, the named plaintiffs presented "representative evidence" at trial, including individual employee testimony, video footage of individual employees "donning and doffing" protective gear, and an expert analysis of a sample of observations at defendant's plant. *See id.* at 450. The defendant argued that the "representative evidence" was insufficient to sustain class certification since it did not provide direct evidence about all class members, and that using only such limited "representative evidence" deprived the defendant's ability to present individualized defenses. *See id.* at 454-55. Noting that each class member was subject to the same overtime policy, the Supreme Court rejected the defendant's arguments, affirmed class certification, and explained that such arguments related to the probative value of "representative evidence" which was an issue for the jury, not a problem related to class certification. *See id.* at 457-59. Notably, "[w]hen, as here, 'the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—an alleged failure of proof as to an element of the plaintiffs' cause of action—courts should

result, class treatment is proper when the named plaintiff can present evidence that "each class member could have relied on . . . to establish liability if he or she had brought an individual action," including "representative evidence" from which the jury can draw inferences class wide.  *Id.*[12]

*Second*, the well-established legal standards for the TVPRA and CSAM claims, *see* Doc. 261 at 31-33, 36-37; Doc. 270 at 5-6; Doc. 277 at 2-9, control what evidentiary showing will be required at trial.[13]  Judge Coogler already has considered these standards and held that the evidence that Plaintiff has developed is sufficient to certify the class, to deny Defendants' Summary Judgment Motion, and to allow Plaintiff to present the class claims to a jury—which ultimately will decide if Plaintiff has proven the class claims or not.

*Third*, Judge Coogler specifically recognized the relevance of "representative evidence" when he concluded that evidence regarding Defendants' handling of particular CSAM videos is

---

engage that question as a matter of summary judgment [or trial], not class certification."  *Id.* at 457; *see also id.* at 459 ("Reasonable minds may differ as to whether [the representative evidence] is probative as to the time actually worked by each employee. Resolving that question, however, is the near-exclusive province of the jury.").

[12]     *See also Olean*, 31 F.4th at 667; *In re: Syngenta*, 2016 WL 5371856, at *7 (in the absence of direct evidence regarding changes in local corn prices, "under *Tyson Foods*, a plaintiff class may rely on [an expert's opinion that the Chicago Board of Trade futures prices are representative of local prices] to show class-wide liability. . . . The Court does not weigh the class-wide evidence concerning the relationship between CBOT and local prices, however, as the persuasiveness of such evidence is for the jury at trial.").

[13]     On March 27, 2025, Defendants submitted *Doe v. Salesforce, Inc.*, 2025 WL 888433 (N.D. Tex. Mar. 21, 2025) as supplemental authority, arguing that *Salesforce*—which is *not* a class action—is relevant to their Response and Motion to Decertify. (*See* Doc. 279). In *Salesforce*, the court determined that the defendant's general practice of "sanitizing" advertisements, and the allegation that that defendant possessed the plaintiffs' advertisements, was sufficient to show that the defendant "had actual knowledge of the Plaintiffs' trafficking." 2025 WL 888433, at *4. The court noted that the "fact that Salesforce was [generally] aware of a sex trafficking problem on Backpage's website combined with the fact that Plaintiffs' advertisements indicated they were being advertised for commercial sex further suggests that Salesforce should have known Plaintiffs were forced to engage in a commercial sex act" in violation of the TVPRA.  *Id.* at *7.  The court also explained that in determining whether the "totality of the circumstances" shows that a defendant had "constructive knowledge" under the TVPRA requires looking at "the totality of the circumstances alleged" and "the whole body of allegations" (or evidence) *actually brought forth by the plaintiff* (*i.e.*, *not* that the "totality of the circumstances" fails to prove a defendant's knowledge simply because the plaintiff did not present evidence regarding every theoretically relevant fact, as Defendants argue in this case. *Id.* at *6. And, as further discussed in this Reply and in Judge Coogler's rulings, Plaintiff here has developed common, class-wide evidence (regarding, *inter alia,* Defendants' general awareness of CSAM and self-identification of the class members' CSAM) on the elements of the TVPRA claim; the court's articulation of the standard for TVPRA claims in *Salesforce* is entirely consistent with Plaintiff's evidence developed in this case and Judge Coogler's analysis of the same standard in certifying the class.

highly probative of Defendants' culpability class wide.[14]  In this way, evidence about any particular victim or instance of CSAM is circumstantial evidence relevant to the claims of the entire class.  Likewise, the presentation of evidence at trial regarding Plaintiff's videos, her age, etc. is relevant not just to her own personal claims, but also to the claims of the entire class—just as the admissions of Defendants' moderators about particular videos, the descriptive tags and titles Defendants added to certain CSAM videos, Defendants' identification of specific videos as CSAM, etc. are *both* direct evidence about particular class members *and* circumstantial evidence relevant to the claims of the entire class. *See generally Tyson Foods*, 577 U.S. at 455-59 (approving use of "representative evidence" in class actions).

*Fourth*, Plaintiff will be presenting evidence about individual class members at trial. Specifically, Plaintiff will present Defendants' own audit reports identifying all of the CSAM on their sites (which includes, *inter alia*, upload dates, uploader information, dates when present on the websites, tags, titles, number of views, removal requests, law enforcement inquiries, notices from internet flaggers, user comments) and Defendants' reports of more than 22,000 CSAM videos to NCMEC.  (*See* Doc. 277 at 9).  Those business records identify the specific CSAM of each class member, prove that each class member's CSAM was provided to Defendants and appeared on their websites, and are evidence that Defendants ultimately acknowledged that the class members appearing in each of those videos were minors.  Indeed, Defendants' CSAM records contain much of the same type of "individualized" evidence about every class member that Defendants argue Plaintiff relied on in her Summary Judgment Motion.  (*See* Doc. 278 at 5-6).  In short, just because

---

[14]    For instance, Judge Coogler's summary judgment Opinion discussed how Defendants received complaints regarding particular CSAM videos from website users, law enforcement, and Internet watch groups and reviewed three such specific complaints regarding videos of 12, 14, and 15-year-olds. *See MG Freesites*, 2024 WL 5339485, at *14 (emphasis added) (noting that "[t]hese are just three *representative examples* out of many in the record"); *see also MG Freesites*, 707 F. Supp. 3d at 1178; Doc. 148 at 31 (reviewing specific examples where CSAM was identified in Defendants' internal chat and email systems and law enforcement inquired about certain videos)).

Defendants' business records represent a significant part of the evidence Plaintiff intends to present at trial does not mean that evidence about individual class members will *not* be presented at trial.[15]

## B. Defendants' Tag Along Arguments About Punitive Damages and Injunctive Relief Are Wrong

Defendants' assertion that "punitive damages cannot be awarded without first establishing individualized harm" (Doc. 278 at 18) disregards the type of harm and injury involved in this case. As Judge Coogler explained in granting class certification, such an "argument ignores that each CSAM victim suffers a personal injury due to the very fact that CSAM of them exists, regardless of whether that injury manifests in emotional distress, physical symptoms, or in some other fashion." *MG Freesites*, 707 F. Supp. 3d at 1173-74 (citing *New York v. Ferber*, 458 U.S. 747, 758-59 (1982), *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002), and *St. Louis v. Perlitz*, 176 F. Supp. 3d 97, 99 (D. Conn. 2016)).

In this context, the three factors set forth in *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840 (11th Cir. 2021) for determining the size of a punitive damage award are not problematic for either class treatment or Plaintiff's proposed trial plan, contrary to Defendants' suggestion. (*See* Doc. 278 at 18). In fact, all of the *Cote* factors are the same for every class member in this case. First, *reprehensibility* is based entirely on evidence of Defendants' misconduct (*e.g.*, What did Defendants do? Why did they do it? What did they know or should have known about the

---

[15] Similarly, Defendants' assertion that Plaintiff's "proposed Trial Plan would deny absent class members—and Defendants—any recourse to any of those types of highly-probative individualized evidence" (Doc. 278 at 7-8) misses the mark. Of course, absent class members cannot be sure that such "individualized evidence" about their personal circumstances will be presented in any class action. And, as discussed in Section II.C, *infra*, the Rule 23 requirements ensure that absent class members' rights are fully protected. With regard to Defendants themselves, nothing has denied them "recourse" to any "highly-probative individualized evidence" about absent class members. Defendants' own business records contain a great deal of detailed information regarding individual class members. Also, even though Plaintiff identified several absent class members in discovery, Defendants made no attempt to obtain discovery from any absent class members or apparently to investigate any of the individual CSAM or victim-related information in their own records. In the similar class action in California and several individual cases, Defendants have access to discovery from other victims who opted out of this class action. Plaintiff's proposed trial plan does not deny Defendants' ability to try to use any relevant evidence regarding absent class members.

consequences of their actions?). *See MG Freesites*, 707 F. Supp. 3d at 1183 (alterations in original) (quoting *Hoever v. Marks*, 993 F.3d 1353, 1359 (11th Cir. 2021)) ("The 'focus [of punitive damages] is on the character of the [defendant's] conduct.'"). Next, as noted, all of the class members suffered the *same harm*. *See id.* at 1173-74. Lastly, the *civil penalty* for the wrongful conduct asserted in this case is at minimum $150,000 per victim. *See* 18 U.S.C. § 2255(a). In short, when the types of claims and injury involved are duly considered, it is clear that punitive damages are susceptible to common, class-wide evidence regarding Defendants' own conduct, and they should thus be considered and resolved at the same time the jury is reviewing the very same evidence to decide the liability issues in this case.[16]

Finally, contrary to Defendants' argument (Doc. 278 at 19), their criticisms of the 23(b)(3) certification in this case cannot be grafted onto the 23(b)(2) class for injunctive relief. The Supreme Court has clearly explained that the requirements for 23(b)(2) classes are different and do not include the requirements for 23(b)(3) classes. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362-63 (2011) (holding that damages claims generally cannot be pursued under 23(b)(2) but should proceed under 23(b)(3) specifically because 23(b)(3) contains additional procedural requirements and protections for absent class members, like notice and opt-out opportunities, that are *not* required under 23(b)(2)). In the wake of *Dukes*, hybrid certifications of 23(b)(2) classes for injunctive/declaratory relief and 23(b)(3) classes for monetary relief have become commonplace.[17] *See* 2 Newberg and Rubenstein on Class Actions § 4:38 (6th ed. 2024); *Ellis*, 285 F.R.D. at 546.

---

[16]    Even if the Court were to disagree with Plaintiff and conclude that individual evidence of harm is needed to quantify punitive damages for each class member, the jury at the trial in Phase One of Plaintiff's proposed trial plan should, at a minimum, determine "[w]hether [Defendants'] conduct meets the standard for an award of punitive damages" (*i.e.*, the class's entitlement to punitive damages) as the court did in *Ellis*. *See Ellis*, 285 F.R.D. at 546.

[17]    The only case that Defendants cite regarding hybrid classes, *Rudolph v. Department of Corrections*, 2006 WL 8443761 (N.D. Fla. Nov. 11, 2006) (*see* Doc. 278 at 19), predates *Dukes*, which was a time when many thought that plaintiffs could pursue monetary relief in 23(b)(2) classes so long as the monetary relief was only "incidental" to and did not "predominate" over the requested injunctive or declaratory relief. *See Rudolph*, 2006 WL 8443761, at *4. Perhaps

**C.      Plaintiff's Proposed Trial Plan Does Not Impair Any Due Process Rights**

Finally, Plaintiff's proposed trial plan does not impair absent class members' or Defendants' due process rights, as Defendants suggest.  (*See* Doc. 278 at 15, 20).  The Supreme Court has explained that for class actions, due process requires that (1) class members "receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel"; (2) "be provided with an opportunity to remove [themselves] from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court"; and (3) that "the named plaintiff at all times adequately represent the interests of the absent class members."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).  By its very nature, "[t]he mechanics of Fed.R.Civ.P. 23 assure that the class plaintiffs before a court are afforded minimal due process."  *Hastings-Murtagh v. Texas Air Corp.*, 119 F.R.D. 450, 456 n.4 (S.D. Fla. 1988); *see also In re Takata Airbag Prod. Liab. Litig.*, --- F.R.D. ----, 2025 WL 629640, at *7 (S.D. Fla. Feb. 26, 2025) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)) ("A class action comports with notions of due process and 'leaves the parties' legal rights and duties intact and the rules of decision unchanged.").  As a Florida district court has aptly explained:

> If a class action is maintained under subsection (b)(3), minimum due process is guaranteed through the requirements of subsection (c)(2). The class would be entitled to notice, as well as to "opt-out" of the litigation and not be bound by the class judgment.  If they decide to stay "in," a court still must determine whether they would be adequately represented under Fed.R.Civ.P. 23(a)(4).  If a class action is sustained under subsection (b)(1) or (b)(2), minimal due process is assured through other provisions.  A court may exercise its discretion and order that notice plus an opt-out provision be sent to the class.  Otherwise, a court must specifically

---

foreshadowing *Dukes*, the problem the court identified in *Rudolph* was that the plaintiff was seeking substantial, not merely incidental, monetary relief under both 23(b)(2) and (b)(3) and, for that reason, the court determined that the plaintiff must satisfy the predominance and superiority requirements in 23(b)(3) before any damages class could be certified under either subpart. In *Dukes*, the Supreme Court resolved the conundrum arising in *Rudolph* when it clarified that 23(b)(2) certification is generally only for injunctive or declaratory relief, 23(b)(3) certification generally is needed to obtain monetary relief, and that courts should look to the different requirements of each subpart when considering class certification under (b)(2) or (b)(3).  As a result, the use of hybrid 23(b)(2) classes for injunctive relief and 23(b)(3) classes for monetary relief follows directly from the Supreme Court's analysis in *Dukes*.

define the class in the final substantive judgment, as well as determine whether the interests of the absent class members were adequately represented.

*Hastings-Murtagh*, 119 F.R.D. at 456 n.4 (citations omitted). Simply put, a court's assessment of the Rule 23 requirements for class certification inherently involves a consideration of due process concerns. If a court concludes that the requisite Rule 23 requirements are satisfied, then a court is inherently concluding that absent class members' due process rights will be protected.[18]

Here, Judge Coogler's thorough, well-reasoned analysis of the Rule 23 requirements in granting class certification inherently involved consideration of absent class members' due process rights. Following class certification, Judge Coogler then approved a modified form of Plaintiff's proposed class notice that he found "comports with the requirements of Rule 23 *and due process* because it appears to be 'the best notice that is practicable under the circumstances.'"[19] *Doe v. MG Freesites, LTD*, 2024 WL 1564775, at *2 (N.D. Ala. Apr. 10, 2024) (emphasis added) (quoting Fed. R. Civ. P. 23(c)(2)(B)). Accordingly, the grant of class certification and subsequent approval/ issuance of class notice (with the right to opt-out) has satisfied the due process rights of absent class members. Defendants' assertion that absent class members' due process rights would be impaired by the "adjudication of knowledge without individualized evidence" is thus meritless and ignores the practical reality that any class members who would have rather "present[ed]

---

[18]    *See Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 628 (N.D. Ala. 2013) (emphasis added) (citing *Hansberry v. Lee*, 311 U.S. 32, 44 (1940) and *Shutts*, 472 U.S. at 809-12) ("To represent a class of absent parties, a plaintiff must show that it and the class meet the four requirements of Rule 23(a) and the requirements of at least one of the categories in Rule 23(b). *The requirements of Rule 23 prevent a plaintiff from representing absent entities when it would violate due process.*"); *Crossroads Grp., LLC v. City of Cleveland Heights*, 346 F.R.D. 75, 82-83 (N.D. Ohio 2024) (emphasis added) ("Because it binds absent class members to judgments in actions in which they did not participate, and about which they might not even be aware, representative litigation violates due process *unless* the person seeking to proceed on behalf of a class demonstrates compliance with all the requirements of Rule 23.").

[19]    *See Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1287 n.5 (11th Cir. 2007) ("Our case law makes clear that Rule 23's mandate that absentee class members be given 'the best notice practicable under the circumstances,' Fed.R.Civ.P. 23(c), is consistent with the due process requirements of the Constitution, and, in fact, that Rule 23 goes beyond those requirements.").

individualized evidence to attempt to establish a more powerful inference of knowledge" *could have opted out of the class to do so.*[20]  (Doc. 278 at 15).

"[T]he certification procedures set forth in Rule 23 not only protect absent class members' due process rights *but also the rights of defendants*."  *Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298, 312 (N.D. Ala. 2018) (Coogler, J.) (emphasis added).  In their Response, Defendants suggest that their due process rights would be impaired by Plaintiff's proposed trial plan because of a purported inability for class members to prove that their CSAM was on Defendants' websites (*i.e.*, proof of their membership in the class).  (*See* Doc. 278 at 9-10).  This assertion, like several others raised by Defendants, has already been considered—and rejected—by Judge Coogler when granting class certification.  *See MG Freesites*, 707 F. Supp. 3d at 1179 (quoting *In re Takata Airbag Prod. Liab. Litig.*, 677 F. Supp. 3d 1311, 1331-32 (S.D. Fla. 2023)) (explaining that "Defendants' due process right to ensure that each class member prove his or her claim to relief is not offended by the class certification process" because "'[s]o long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process, its due process rights have been protected.'").[21]

---

[20]    In certain circumstances, an absent class member may be able to pursue their claims after a class judgment.  *See Battle v. Liberty Nat. Life Ins. Co.*, 770 F. Supp. 1499, 1516 (N.D. Ala. 1991), *aff'd*, 974 F.2d 1279 (11th Cir. 1992) (citing *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) and *Johnson v. General Motors Corp.*, 598 F.2d 432, 437 (5th Cir. 1979)) (explaining that where an absent class member challenges the preclusive effect of a class judgment, "the due-process inquiry focuses more specifically on the substantive claim or request for relief that the absent member now seeks to litigate or relitigate; if it involves individual, usually monetary, relief, then it will not be barred unless he was provided with notice and a chance to opt-out of the prior proceedings.").

[21]    *See also Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021) (defendant's ability to "challenge the class membership of claimants during class administration. . . . as opposed to at trial, does not run afoul of Rule 23 or due process."); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) (defendant's due process rights are protected "so long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process" and "is given the opportunity to challenge each class member's claim to recovery during the damages phase"); *Victorino v. FCA US LLC*, 2020 WL 2306609, at *4 (S.D. Cal. May 8, 2020) (collecting cases and noting "district courts are in agreement that the determination of class membership and protecting the defendant's due process rights can be done during the claims administration process.").  And contrary to Defendants' unsupported assertion (*see* Doc. 278 at 9), claims administrators routinely engage in individualized fact-finding to confirm class membership. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) (emphasis added) (quoting *Mullins*, 795 F.3d at 667) ("At the claims

Defendants also suggest that Plaintiff's intent to use class-wide evidence to prove her claims would impair their due process rights. (*See* Doc. 278 at 20). "This argument fails, however, as both Supreme Court and Eleventh Circuit precedent confirm that class actions and the use of class-wide or representative evidence to establish common elements of a claim do not 'abridge, enlarge, or modify' any substantive rights." *In re Takata*, 677 F. Supp. 3d at 1331 (citing *Shady Grove*, 559 U.S. at 408, *Tyson Foods*, 577 U.S. at 454-57, *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1337 (11th Cir. 2015), and *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155-56 (9th Cir. 2016)). In fact, demanding that Plaintiff's claims be proven with individualized evidence from class members "could violate the Rules Enabling Act by improperly '*enlarging*' the class action defendant's 'substantive rights[,]'" as it "would obliterate the use of representative evidence and defy the class action device's purpose to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Vasquez*, 2023 WL 1868973, at *11 (emphasis added) (quoting 28 U.S.C. § 2072(b)).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff submits that the Court should not undo Judge Coogler's well-grounded rulings, should deny Defendants' Motion to Decertify and Motion for Interlocutory Appeal, and should adopt a bifurcated trial plan as proposed in Plaintiff's Brief (Doc. 277).

---

administration stage, parties have long relied on 'claim administrators . . . follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims. *Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability.*"); *Krakauer v. Dish Network, LLC*, 2017 WL 3206324, at *10 (M.D.N.C. July 27, 2017) ("Where circumstances raise a question about whether the claimant is a class member, the claims administrator can seek additional specific information from a particular claimant by mail, email, phone, text, or other reasonable means in order to give the claimant a full opportunity to establish class membership."). "In the event this lawsuit reaches the claims stage, the court [can] solicit further input from the parties before finalizing an approach to verifying class membership." *Booth v. Appstack, Inc.*, 2016 WL 3620798, at *3 (W.D. Wash. June 28, 2016).

Respectfully submitted this 31st day of March 2025,

/s/ Gregory Zarzaur
Gregory Zarzaur (ASB-0759-E45Z)
Kelsie Overton (ASB-1791-F80L)
Denise Wiginton (ASB-5905-D27W)
ZARZAUR LAW LLC
2850 Cahaba Road, Suite 220
Birmingham, Alabama 35223
T: (888) 505-0523
E: gregory@zarzaur.com
    kelsie@zarzaur.com
    denise@zarzaur.com

Joshua P. Hayes
Daniel Blake Williams
PRINCE GLOVER & HAYES
P.O. Box 20149
Tuscaloosa, Alabama 35402
T: (205) 345-1234
E: jhayes@princelaw.net
    bwilliams@princelaw.net

Kimberly Lambert Adams*
James Michael Papantonio*
LEVIN PAPANTONIO
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
T: (850) 435-7056
E: kadams@levinlaw.com
    mpapantonio@levinlaw.com
*pro hac vice

Victor Paul Bucci II*
Gaetano D'Andrea*
Jill P. Roth*
M. Stewart Ryan*
Alexandria MacMaster*
LAFFEY, BUCCI D'ANDREA REICH & RYAN
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
T: (215) 399-9255
E: pbucci@laffeybucci.com
    gdandrea@laffeybucci.com

16

jroth@laffeybucci.com
sryan@laffeybucci.com
amacmaster@laffeybucci.com
*pro hac vice*

Benjamin W. Bull*
Dani Bianculli Pinter*
Christen M. Price*
Peter A. Gentala*
NATIONAL CENTER ON SEXUAL EXPLOITATION
1201 F Street NW, Suite 200
Washington, D.C. 20004
T: (202) 393-7245
E: lawcenter@ncose.com
*pro hac vice*

Kevin Dooley Kent*
Mark B. Schoeller*
Vanessa L. Huber*
CLARK HILL PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
T: (215) 640-8500
E: kkent@clarkhill.com
   mschoeller@clarkhill.com
   vhuber@clarkhill.com
*pro hac vice*

*Counsel for Plaintiff Jane Doe #1*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify on this 31st day of March 2025, the foregoing Reply in Support of Plaintiff's Brief Regarding Proposed Structure for Trial and Other Proceedings was filed through the Electronic Case Filing System of the United States District Court for the Northern District of Alabama and will be served electronically by the court to all participants of record.

*/s/ Gregory Zarzaur*
Gregory Zarzaur

*Counsel for Plaintiff Jane Doe*