FILED
2025 May-06 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **JANE DOE # 1, on behalf of herself and all others similarly situated,** | } } } | |
| **Plaintiff,** | } } | |
| **v.** | } } | **Case No.:  7:21-cv-00220-RDP** |
| **MG FREESITES, LTD, d/b/a "PORNHUB" et al.,** | } } } | |
| **Defendants.** | } } | |

### MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' Motion for Certification of an Interlocutory Appeal. (Doc. # 266). The Motion has been fully briefed (Docs. # 266, 267, 269, 274) and is ripe for review. After careful consideration, and for the reasons outlined below, Defendants' Motion (Doc. # 266) is due to be denied.

## I.    Background and Procedural History

On February 11, 2021, Plaintiff, on behalf of herself and all others similarly situated, filed this action against Defendants MG Freesites, LTD, d/b/a "Pornhub"; MG Freesites II, LTD; Mindgeek S.A.R.L.; Mindgeek USA Incorporated; MG CY Holdings LTD; Mindgeek Content RT Limited; 9219-1568 Quebec, Inc., d/b/a Mindgeek; and MG Billing LTD ("Defendants"). (Doc. # 1). Plaintiff alleges that Defendants violated federal sex trafficking and child pornography laws by owning, operating, and profiting from websites that provide public video platforms to share and view illegal child sexual abuse material ("CSAM"). (*See* Doc. # 22 (Plaintiff's Amended Complaint)). Plaintiff's Amended Complaint contains two counts: one alleges that Defendants

knowingly benefitted from participating in what they knew or should have known was a sex trafficking venture, in violation of the Trafficking Victim Protection Reauthorization Act ("TVPRA") 18 U.S.C. §§ 1591 and 1595 (the "TVPRA claim"), and the other alleges that Defendants received and distributed child pornography in violation of 18 U.S.C. §§ 2252 and 2252A (the "CSAM claim"). (Doc. # 22 ¶¶ 178-193).

On August 6, 2021, Defendants filed a Motion to Dismiss the First Amended Complaint arguing that Plaintiff's claims were barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section 230"). Section 230 affords a provider of interactive computer services immunity from liability for content posted by third parties to its websites. (Doc. # 24). On February 9, 2022, the Hon. L. Scott Coogler (Ret.) issued a Memorandum of Opinion and Order denying the Motion to Dismiss. (Doc. # 42). Judge Coogler concluded that Defendants are not entitled to Section 230 immunity from Plaintiff's TVPRA claim because Plaintiff "plausibly alleged that Defendants [] materially contribute to the provision of child pornography on their platforms" such that "Defendants are providers of illegal CSAM content, not merely publishers of third-party created content." (*Id.* at 50, 52). Judge Coogler also held that Defendants are not shielded by Section 230 immunity from Plaintiff's CSAM claim because Plaintiff's "section 2252 and 2252A claims allege that Defendants are not only distributors of but also *receivers and possessors of* child pornography[,]" and "receipt and possession of child pornography, alone, are criminal acts." (*Id.* at 69). As Judge Coogler reasoned, "child pornography is not lawful 'information provided by another information content provider' as contemplated by Section 230. Rather, it is illegal contraband, stemming from the sexual abuse of a child." (*Id.* at 68). Therefore, posting CSAM deserves no First Amendment protection, and it is wholly outside any other protection or immunity under the law, including Section 230." (*Id.* at 68).

On September 8, 2023, Plaintiff filed a Motion for Class Certification under Federal Rule of Civil Procedure 23. (Doc. # 95). On December 19, 2023, Judge Coogler granted the motion and certified a class under Rule 23(b)(2) and (b)(3) consisting of "[a]ll persons who were under the age of 18 when they appeared in a video or image that has been made available for viewing on any website owned or operated by Defendants anytime from February 12, 2011, through the present." (Doc. # 147 at 53).

On September 6, 2024, the parties filed cross motions for summary judgment. (Docs. # 221, 223). In Defendants' Motion, they reasserted their argument that Section 230 immunizes them from Plaintiff's claims. (Doc. # 222 at 19). On December 19, 2024, Judge Coogler issued a Memorandum of Opinion and Order denying the cross motions for summary judgment. (Doc. # 261). Judge Coogler again held that Section 230 did not shield Defendants from liability as to either of Plaintiff's claims. (*Id.*). As to the TVPRA claim, Judge Coogler explained:

> In denying Defendants' motion to dismiss Plaintiff's complaint, this Court ruled that Plaintiff had plausibly alleged that Defendants materially contribute to the provision of CSAM on their platforms by generating tags, categories, and keywords that users wishing to post CSAM can use (such as "teen," "abused teen," and "middle school girls") as well as generating thumbnail images of CSAM, and are thus "content providers" and disqualified from [the protection of] Section 230(c)(a) immunity. (Doc. # 42 at 50-51; *Doe # 1 v. MG Freesites, LTD, et al.*, 676 F. Supp. 3d 1136, 1159-60 (N.D. Ala. Feb. 9, 2022)). The undisputed facts that have now been submitted by the parties in conjunction with the pending motions for summary judgment only bolster Plaintiff's allegations and certainly do not do anything to undercut this Court's ruling that Defendants are not due immunity as a matter of law.

(*Id.* at 24). As Judge Coogler concluded: "In sum, because Defendants materially contributed to and developed the illegal content, Section 230(c) does not insulate Defendants from liability." (*Id.* at 31).

Judge Coogler also held that Defendants are not entitled to Section 230 immunity on the CSAM claim for the same reasons as those set forth in his Opinion on the motion to dismiss,

explaining that CSAM "is itself a violent crime, a record of that crime, and contraband – not information" (*id.* at 35) and that "because Plaintiff seeks to hold Defendants liable for their own acts, and not just publishing of other parties' content, Section 230(c) immunity does not apply." (*Id.* at 34). Judge Coogler further explained that "no evidence has been offered in conjunction with the pending motions for summary judgment to disturb the Court's conclusions when it ruled on the motion to dismiss." (*Id.*).

Following Judge Coogler's Memorandum of Opinion and Order denying the cross motions for summary judgment, on January 15, 2025, this case was reassigned to the undersigned. (Doc. # 263). That same day, Defendants filed a Motion to Decertify the Plaintiff Class (Doc. # 265) and the instant Motion for Certification of an Interlocutory Appeal. (Doc. # 266).

In their Motion for Certification of an Interlocutory Appeal, Defendants ask this court to certify the following two issues for an interlocutory appeal to the Eleventh Circuit under 28 U.S.C. § 1292(b):

> (1) whether the immunity conferred by Section 230(c)(1) is unavailable to an interactive computer service that exercises editorial judgments about compiling third-party speech simply because such activity also qualifies as "expressive" conduct protected by the First Amendment; and

> (2) whether the immunity conferred by Section 230(c)(1) is unavailable to an interactive computer service that allegedly distributed CSAM provided to it by a third person, on the grounds that, as such material is "contraband," it does not qualify as "information" within the meaning of the statute.

(Doc. # 266 at 2). For the reasons explained below, that motion (Doc. #266) is due to be denied.

## II.    Standard of Review

Nearly seventy years ago, Congress recognized a need for the prompt review of certain non-final orders that involve potentially dispositive questions of law. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978). Section 1292(b) allows for discretionary appellate review of a district court's interlocutory order. But, the statute requires a district court to certify "that such

order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Absent such a certification, and unless there is another avenue for doing so, the court of appeals may not agree to hear the interlocutory appeal. A certified interlocutory appeal is a "rare exception" to the rule that appellate review is to be conducted after final judgment. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004); *see also OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008) (noting that Section 1292(b) "sets a high threshold for certification to prevent piecemeal appeals" and that "[m]ost interlocutory orders do not meet this test").

To obtain certification of an interlocutory order under Section 1292(b), a party must demonstrate that (1) the order presents controlling questions of law (2) over which there is a substantial ground for difference of opinion among courts, and (3) the immediate resolution of the issues would materially advance the ultimate termination of the litigation. *See McFarlin*, 381 F.3d at 1257-59 (describing the three requirements for certifying an issue for interlocutory review). A party seeking certification bears the burden of persuading the court "that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand*, 437 U.S. at 475 (citation and internal quotation marks omitted); *McFarlin*, 381 F.3d at 1256 (internal quotations omitted) (holding that certification is proper "only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation . . . and there is serious doubt as to how [a dispositive question] should be decided"). Moreover, interlocutory appeals under § 1292(b) "were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of

law without having to delve beyond the surface of the record in order to determine the facts." *McFarlin*, 381 F.3d at 1259.

Therefore, certification is by a wide margin the exception, not the rule. "Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy." *Id.* "Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule." *Caterpillar v. Lewis*, 519 U.S. 61, 74 (1996) (internal quotation marks omitted).

## III.    Analysis

The court separately addresses Defendants' two proposed issues and the propriety of certifying them to the Eleventh Circuit under § 1292(b).

**A.    Issue 1: Whether the immunity conferred by Section 230(c)(1) is unavailable to an interactive computer service that exercises editorial judgments about compiling third-party speech simply because such activity also qualifies as "expressive" conduct protected by the First Amendment.**

After careful review, the court concludes that there is an insufficient basis to certify an interlocutory appeal as to Issue 1.

### i.    Controlling Question of Law

In the context of § 1292(b), a controlling issue of law is a question about the meaning of a statutory or constitutional provision, regulation or common law doctrine that is a question "of pure law" which "the court of appeals can decide quickly and cleanly without having to study the record." *Mamani v. Berzain*, 2010 WL 11442696, at *1 (S.D. Fla. Mar. 17, 2010); *see McFarlin*, 381 F.3d at 1258. "Additionally, the issue must be 'controlling of at least a substantial part of the case.'" *Id.* (quoting *McFarlin*, 381 F.3d at 1264).

In their Motion, Defendants contend that "[d]enial of summary judgment on [the TVPRA Claim] was predicated on a controlling question of law – whether the publishing activities of an interactive computer service constitute expressive conduct not protected by section 230 – as to which there is a substantial ground for difference of opinion." (Doc. # 267 at 9). In support of their argument, Defendants contend that Judge Coogler incorrectly relied on the Third Circuit's opinion in *Anderson v. TikTok Inc.*, 116 F.4th 180 (3d. Cir. 2024) to hold that Defendants were not "publishers" entitled to Section 230 immunity, but rather, they were "'providers' of the offending information by virtue of functions of their websites." (*Id.*).

In *Anderson*, the plaintiff sued for wrongful death and other state-law violations after her daughter died emulating a TikTok video that encouraged viewers to engage in self-asphyxiation. 116 F.4th at 181-82. TikTok claimed immunity under Section 230, and the district court dismissed the complaint on that basis. The Third Circuit reversed, holding "[TikTok's] algorithm that decided whether third-party speech would be included or excluded from compilation presented on users' unique feed was first-party speech, so as to fall outside of [TikTok's] immunity under [Section 230]." *Id.* at 180.

In its decision, the Third Circuit was guided by the Supreme Court's decision in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). *See Anderson*, 116 F.4th at 183 ("The Supreme Court's recent discussion about algorithms, albeit in the First Amendment context, supports this view."). In discussing *NetChoice*, the Third Circuit noted:

> In *Moody v. NetChoice, LLC*, the Court considered whether state laws that "restrict the ability of social-media platforms to control whether and how third-party posts are presented to other users" run afoul of the First Amendment. The Court held that a platform's algorithm that reflects "editorial judgments" about "compiling third-

party speech it wants in the way it wants" is the platform's own "expressive product" and is therefore protected by the First Amendment.

*Id.* at 184 (internal citations omitted). The Third Circuit thus reasoned, "[g]iven the Supreme Court's observations that platforms engage in protected first-party speech under the First Amendment when they curate compilations of others' content via their expressive algorithms, it follows that doing so amounts to first-party speech under Section 230, too." *Id.* (internal citations omitted). This reasoning led the Third Circuit to its holding: "Section 230 immunizes only information 'provided by another[,]' 47 U.S.C. § 230(c)(1), and here, because the information that forms the basis of [plaintiff's] lawsuit – *i.e.*, TikTok's recommendations via its . . . algorithm – is TikTok's own expressive activity, Section 230 does not bar [plaintiff's] claims." *Id.* at 184.

In their Motion, Defendants argue that Judge Coogler relied on *Anderson* to deny their Motion for Summary Judgment on the TVPRA claim by "appl[ying] the same dualistic structure as the Third Circuit – if a website's editorial functions qualify for First Amendment protection as 'expressive' activity, then the website cannot qualify for Section 230 immunity as a 'publisher' of the information at issue." (Doc. # 267 at 11-12). In her response, Plaintiff contends that the question presented is not "controlling" because it was not "the sole basis for [Judge Coogler's] decision" or "the decisive factor underlying [Judge Coogler's] conclusion." (Doc. # 269 at 13). Plaintiff further contends that Judge Coogler also relied on "independent reasons" for declining to apply Section 230 immunity to Defendants – in particular, that Defendants were content providers by virtue of the attachment of "thumbnails" and "tags" to videos posted by third parties on their websites. (*Id.* at 12-13). The court agrees with Plaintiff.

Although Judge Coogler considered *Anderson*, his reliance on the Third Circuit's opinion does not rise to the level of a controlling question of law. As the Eleventh Circuit has held, a question is controlling if it "is controlling of at least a substantial part of the case." *Drummond Co.*

*v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1336 (11th Cir. 2018). *Anderson* was not controlling of a substantial part of the case because Judge Coogler would have come to the conclusion that Defendants were content providers and thus not entitled to immunity under Section 230 even if he had not considered *Anderson*.

Judge Coogler began his analysis regarding Defendants' Section 230 immunity as to the TVPRA claim by examining the text of Section 230: "Subsection (c)(1) of Section 230 provides that '[n]o provider . . . of an interactive computer service shall be treated as a publisher or speaker of any information provided by another information content provider.'" (Doc. # 261 at 22-23 (citing 47 U.S.C. § 230(c)(1))). He then considered when Section 230 immunity does not apply: "'[The] grant of immunity [under Section 230(c)] applies only if the interactive computer service is not also an "information content provider," which is defined as someone who is "responsible, in whole or in part, for the creation or development of" the offending content.'" (*Id.* at 23 (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (in turn citing 47 U.S.C. § 230(f)(3) (defining "information content provider")))). Judge Coogler also took account of the record. He made the Rule 56 finding that the summary judgment evidence "reveal[ed] several ways that Defendants provide content on their websites." (*Id.* at 24).

Judge Coogler concluded that Defendants were content providers for the following reasons: (1) "Defendants create new CSAM by creating thumbnails that advertise CSAM videos to users, which is done for every video on the sites"; (2) "Defendants contribute to the content's illegality by creating tags and categories associated with CSAM, and by adding, removing, and modifying tags, categories, and sometimes titles, of videos"; and (3) "the entire algorithm that Defendants created and employ for their sites uses the tags and categories it created and the keywords in titles to help uploaders advertise CSAM and help users seeking CSAM locate it." (*Id.* at 24-26). Because

Judge Coogler concluded that Defendants materially contributed to the provision of CSAM on their platforms in these ways, he held that Defendants were content providers and thus not entitled to Section 230 immunity.

Without question, Judge Coogler noted parallels between the conduct of Defendants and that of TikTok in *Anderson*: "As in *Anderson*, Defendants' tags, categories, and search function (including recommended and keyword searches), are designed to curate content, including illegal CSAM, to users looking for it." (*Id.* at 28). However, this does not mean there is a controlling question of law. Judge Coogler merely highlighted the *Anderson* decision to *support* what he had independently concluded: Defendants were content providers. To be sure, Judge Coogler in no way relied solely on *Anderson* to come to his holding; rather, he evaluated the factual record and observed the different ways in which Defendants provided content. Therefore, whether Section 230 immunity "is unavailable for an interactive computer service that exercises editorial judgments about compiling third-party speech" is not a controlling question here because it was not the question that Judge Coogler based his holding on. Nor is it the question this court relies on in denying Defendants' motion.[1] "A question is controlling [if it is one that] is 'outcome determinative.'" *Rodriguez v. Proctor & Gamble Co.*, 499 F. Supp. 3d 1202, 1207 (S.D. Fla. 2020) (quoting *Javier Rivera v. Sellers*, 2019 WL 2583634, at *3 (S.D. Ga. June 21, 2019)). Here, Judge Coogler's reliance on *Anderson* was not outcome determinative to his holding that Defendants were not entitled to Section 230 immunity.

Finally, a party must clear a high bar when attempting to show that a question involves a question of law, not just a blended question of law and fact or a question of law that depends on

---

[1] There is a question presented here as to whether the application of Section 230 immunity in this context involves such a new frontier that it would be difficult to even tee up a question of law on the matter. Although the court is cognizant of this concern, it does not rely on it in its ruling today.

the factual record. First and foremost, a district court must not certify issues which need significant factual development to flesh out, or which will require the circuit court to "delve beyond the surface of the record in order to determine the facts." *McFarlin*, 381 F.3d at 1259. The "substantial ground" for difference of opinion, addressed below, must be about a purely legal issue, not a factual one or "the application of settled law to fact." *Id*. at 1258. "[I]t is beyond cavil that '[t]he antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case.'" *Odom v. Se. Supply Header, LLC*, 675 F. Supp. 2d 1105, 1125 (S.D. Ala. 2009), *aff'd*, 418 F. App'x 871 (11th Cir. 2011) (quoting *McFarlin*, 381 F.3d at 1259). Here, Plaintiff has not shown there is a pure question of law that the court of appeals can answer without reviewing factual nuances in the record.

### ii.    Substantial Ground for Difference of Opinion Among Courts

Substantial ground for difference of opinion exists when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue. *Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013); *see also United States. ex rel. Powell v. Am. InterContinental Univ., Inc.*, 756 F. Supp. 2d 1374, 1378-79 (N.D. Ga. 2010) (citing *In re Scientific-Atlanta, Inc. v. Secs. Litig.*, 2003 WL 25740734, at *1 (N.D. Ga. Apr. 15, 2003) ("neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion")).

Defendants have not demonstrated that there is a substantial ground for difference of opinion among the courts. Defendants merely disagree with Judge Coogler's consideration of *Anderson*. But, that does not amount to a substantial ground for difference of opinion. *See In re Veros Energy, LLC*, 2018 WL 2676068, at *6 (Bankr. N.D. Ala. June 1, 2018) ("The legislative

history of § 1292(b) indicates that a 'mere question as to the correctness of the ruling' is not sufficient to warrant interlocutory review.") (citing *McFarlin*, 381 F.3d at 1256).

Moreover, although Defendants contend that Issue 1 is an issue of first impression in the Eleventh Circuit and "a difficult one because [it] (1) implicates the relationship between the constitutional protection of the First Amendment and the statutory protections afforded by Section 230 and (2) threatens to *create* a split between this Circuit and other jurisdictions" (Doc. # 274 at 14), this is not enough. Even assuming Defendants' statement is correct, it is well settled that "the fact that [a] question is one of first impression, standing alone, is insufficient." *Ga. State Conference of NAACP*, 952 F. Supp. 2d at 1362 (citing *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)); *see also Havana Docks Corp. v. Carnival Corp.*, 2019 WL 88895240, at *1 (S.D. Fla. Oct. 8, 2019) ("[Q]uestions of first impression or an absence of binding authority of an issue, without more, are insufficient to demonstrate a substantial ground for difference of opinion.") (citing *In re Flor*, 79 F.3d at 284). Moreover, while Defendants argue there is a *potential* for a circuit split, this argument is without merit. There is no current circuit split on this question. Mere speculation that (at some point in time) there *may* be a circuit split is insufficient to pass the high bar a party must meet in order to establish a substantial ground for difference of opinion.

For all of these reasons, the court concludes that Defendants have merely argued they disagree with Judge Coogler's conclusion and have not shown that this disagreement constitutes a substantial ground for difference of opinion.

### iii.     Material Advancement of the Litigation

The third element – "[t]he requirement that a proper interlocutory appeal advance the termination of litigation" – is not difficult to understand. *Ibrahim v. FINR III, LLC*, 2016 WL 409630, at *3 (M.D. Fla. Feb. 3, 2016) (quoting *McFarlin*, 381 F.3d at 1259). "It means that the resolution of the controlling legal question would serve to avoid a trial or otherwise substantially

shorten the litigation." *McFarlin*, 381 F.3d at 1259. But, on this score, Defendants again fail. Resolution of their question at issue would not aid in advancing the termination of this litigation because even if the Eleventh Circuit concluded that Section 230 immunity may apply to internet service providers' "editorial judgments," this was not the sole basis for Judge Coogler's holding that Section 230 immunity did not apply. In other words, the Eleventh Circuit may answer this question, but it would not dispose of the TVPRA Claim in its entirety because Judge Coogler also found that Section 230 immunity was unavailable because Defendants materially contributed to the creation of CSAM on their platforms beyond exercising "editorial judgments."[2]

    **B.**    **Issue 2: Whether the immunity conferred by Section 230(c)(1) is unavailable to an interactive computer service that allegedly distributed CSAM provided to it by a third person, on the grounds that, as such material is "contraband," it does not qualify as 'information' within the meaning of the statute.**

After careful review, and for the reasons explained below, the court concludes that there is an insufficient basis to certify an interlocutory appeal on Issue 2.

### i.    Controlling Question of Law

In their Motion, Defendants argue that "[d]enial of summary judgment on [the CSAM Claim] was also predicated on a controlling question of law – that Section 230 protects 'information,' but not 'contraband' – as to which there is a substantial ground for difference of opinion." (Doc. # 267 at 12). Much like Defendants' first issue presented, Issue 2 is not a controlling question of *law*.

In his Memorandum of Opinion and Order, Judge Coogler held that Section 230(c) immunity does not apply to Plaintiff's CSAM claims because (1) CSAM is not "information" as contemplated by Section 230(c) and (2) Defendants are not only publishers or speakers of

---

[2] To be fair, this is the second issue Defendants request certification on. The court explains below why they are not entitled to that certification on that question either.

information provided by a third party, but they are "also *receivers and possessors* of it." (Doc. # 261 at 33-34) (emphasis in original). Judge Coogler dismissed Defendants' argument that Section 230(c) does not limit its scope to publication of only "lawful" information by third parties but by its terms applies to "any information." Instead, Judge Coogler reasoned that CSAM "is itself a violent crime, a record of that crime, and contraband – not information." (*Id.* at 35).

Defendants contend that their controlling question of law is whether "contraband" is considered "information" within the meaning of Section 230. *See* 47 U.S.C. § 230. However, as with Issue 1, this does not amount to a controlling question of law because it was not the sole basis for Judge Coogler's holding. Rather, Judge Coogler concluded that Defendants were not entitled to Section 230 immunity because "Plaintiff seeks to hold Defendants liable for their own acts" in receiving, possessing, and distributing CSAM. (Doc. # 261 at 33-34). Therefore, even if Judge Coogler had not considered whether or not "contraband" was "information" under Section 230, he would have come to the same conclusion that Defendants were not entitled to Section 230 immunity because Plaintiff was not seeking to hold them liable as mere "publishers." Instead, Judge Coogler found there was substantial evidence that Defendants are receivers and possessors of CSAM; for that reason, he concluded that they could not be shielded by Section 230 immunity. (*See id.* at 34 ("[Section 230] immunity applies when a website is treated as a publisher or speaker of the information provided by a third party, but Plaintiff's [CSAM] claims allege that Defendants are not only distributors of CSAM but also *receivers and possessors* of it"). Judge Coogler's conclusion that "contraband" was not "information" under Section 230 was only an additional

reason to support why Defendants were not entitled to Section 230 immunity. Therefore, it is not a controlling question of law in this case.

Furthermore, Defendants have done nothing to refute Judge Coogler's alternative reasoning for finding that they were not entitled to Section 230 – *i.e.*, that they were not just publishers of CSAM but receivers and possessors. In fact, Defendants do not even address Judge Coogler's alternative bases in their Motion (Doc. # 267) or their reply in support of their Motion. (Doc. # 274). Their argument only soap boxes disagreement with Judge Coogler's "'contraband' theory." (*Id.* at 15). This is not enough to present a controlling question of law considering Judge Coogler did not rely solely on this "theory" to reach his conclusion.

For these reasons, the court concludes that Defendants' Issue 2 is not a controlling question of law.

### ii.    Substantial Ground for Difference of Opinion Among Courts

In their Motion, Defendants point to three cases where courts have reached opposite conclusions to Judge Coogler and held that Section 230 immunity shielded defendants against claims under Section 2255 for possession and distribution of CSAM. (*See* Doc. # 267 at 13-14 (citing *Doe # 1 v. Twitter, Inc.*, 2023 WL 3220912 (9th Cir. May 3, 2023); *M.A. v. Village Voice Media Holdings*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011); *Doe v. Bates*, 2006 WL 3813758 (E.D. Tex. Dec. 27, 2006)). In the cases Defendants cited in support of their Motion, the courts held that the defendants were immune from CSAM claims under Section 230. This may be Defendants' strongest argument. But, even in light of these cases, the court cannot say there is a substantial ground for difference of opinion that warrants § 1292(b) certification here.

Judge Coogler considered two of these three cases in his Memorandum of Opinion and Order and distinguished them. (*See* Docs. # 42 at 70 (distinguishing *Bates*); 261 at 34 (distinguishing *Doe # 1*)). Moreover, the fact that courts outside of the Eleventh Circuit have come

to different conclusions than Judge Coogler does not present a material difference of opinion warranting an interlocutory review. *See Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 165 F. Supp. 3d 1330, 1337 n.3 (N.D. Ga. 2015) (noting that the defendant's reliance on "two out-of-circuit cases" was "not strong enough to show substantial grounds for difference of opinion"); *Aiuto v. Publix Super Markets, Inc.*, 2020 WL 10054617, at *2 (N.D. Ga. May 14, 2020) (explaining that "the fact that district courts *outside* the Eleventh Circuit" interpreted a Supreme Court case differently "does not present a material difference of opinion warranting an interlocutory review") (emphasis in original).

For these reasons, the court concludes that Defendants have not established a substantial ground for difference of opinion.

### iii.     Material Advancement of the Litigation

The court addresses one final point. Even if this case was certified on Issue 2, and the Eleventh Circuit resolved Defendants' second issue favorably to them, that would not materially advance this litigation. That is, even assuming that the Eleventh Circuit determined that "information" under Section 230 includes "contraband" such as CSAM, that would not automatically entitle Defendants Section 230 immunity. Judge Coogler also relied on an alternative basis for his conclusion that Section 230 immunity does not shield Defendants – he concluded that Section 230 immunity did not apply here because Plaintiff was not seeking to hold Defendants liable as publishers, but instead was seeking to hold them responsible for their own actions. Therefore, even if "contraband" could be deemed "information" under Section 230, that point does nothing to alter the fact that Plaintiffs allege Defendants are liable for their own acts in receiving, possessing, and distributing CSAM. Section 230 immunity does not apply in that context. Accordingly, a resolution of Issue 2 would not materially advance the litigation.

**IV.    Conclusion**

For the foregoing reasons, Defendants' Motion for Certification of an Interlocutory Appeal

(Doc. # 266) is **DENIED**.

**DONE** and **ORDERED** this May 6, 2025.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE

17