FILED

2025 Aug-13  AM 08:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

United States District Court
Northern District of Alabama

Jane Doe, et. al.
Plaintiffs

vs

MG Freesites Ltd., et. al.
Defendants

No. 21-cv-00220

**Motion to intervene and request for leave
to file a brief as Amicus Curie**

Now comes the intervenor applicant Tim Fredrickson, respectfully requesting that this court permit intervention in the above captioned case pursuant to Civil Rule 24, and in the alternative grant leave of court to file the accompanying amicus brief.

### Rule 24 statement of facts supporting intervention

1. Fredrickson is one of innumerable American citizens who presumed that only legal content was available on adult websites hosting adult content, especially large renowned ones such as PornHub.com

2. Fredrickson is one of innumerable American citizens who may or may not have viewed the images forming the basis of this civil action. He simply cannot recall, and has no way of verifying.

3. Even unwittingly viewing such image, and immediately clicking away can subject absolutely any citizen, like Fredrickson, to an arrest and criminal charges.

4. Despite sincere belief that only legal content would be on well-established sites, and even if promptly closing questionable content. Any person, including Fredrickson, could realistically be placed before a jury (an embarrassment unto itself) where the burden is on him to prove a reasonable belief that the person(s) in the image were at least 18 (or expected to be)... and hope that every single juror believes it.

5. Numerous federal courts hold that even accidental or unintentional viewing is also *production* by virtue of the image being *re*produced on a screen --and production does ***not*** have a "mistake of age" defense.

6. Fredrickson realistically fears that at any moment prosecutors will subpoena PornHub.com's business records and thereby obtain ip addresses to learn who has even unwittingly viewed what was believed to be legal adult images --and bring criminal charges.

7. Fredrickson has an interest in the outcome of this case, or at least foundational procedural rulings, and will extend a defense that does not depend on the defendant's associational standing to protect citizens.

8. The current broadly-named class's inclusion of 16 and 17 year olds without limitation to whether they were the victims of an unprotected characteristic like physical injury, mental harm, invasion of privacy, or criminal conduct (like rape) dangerously encompasses arguably protected speech (such as teen sexting) which is pervasive enough to be considered unavoidable when attempting to view only 18+ conduct online.

9. Fredrickson is now unequivocally chilled from observing any adult content on any medium, including well established magazines like *Hustler* who have been known to have questionable content.

### Reasons supporting Amicus brief

This case unquestionably involves constitutionally relevant characteristics which "unprotect" speech, however the precise method of identifying these "special facts" is of supreme importance surpassing the parties in this case. A nuance in identifying who causes harm --or more accurately *how*-- is the true crux of the matter. For example, examining findings that

- "Defendants *create*[1] new CSAM by creating thumbnails that *advertise*[2] CSAM videos to users, which is done for *every*[3] video on the site"
- "Defendants contribute to the content's illegality by creating tags and categories associated with CSAM, and by adding, removing, and modifying tags, categories, and sometimes titles, of videos"
- Both of which thereby "*help others*[4] advertise CSAM and help users seeking to locate it"

and assuming at least one criminal statute has been met --a constitutional inquiry into unprotected characteristics of speech is still required. The well established unprotected characteristics of images are the harms of 1) physical injury; 2) mental harm; 3) violation of privacy; 4) criminal conduct; and 5) obscenity --the presence of *any* of which *un*protect visual speech. The labels "child porn" and CSAM are premised on any (or all) of the first four.

Unquestionably, there will be at least *some* class members where *all* of the following will be true: 1) there was no criminal conduct involved because they were either 16 or 17[5]; 2) a local community might not find legal sex obscene simply because it is photographed; 3) no physical[6] injury in the creation of the video; 4) no mental[7] harm; 5) did not have privacy[8] violated.        This is particularly true given what the certified class does *not* require.

Certainly these are fact-intensive questions with constitutional importance, and while it is likely that at least one harm is present to *un*protect many class-member's images, the point made here is simply that speech cannot be assumed to be unprotected without stepping on the private rights of others not before the court... or who are[9]. The undersigned is not aware if class certification exists *for intervenors.*

---

1  *Re*production in violation of §2252A(a)(3)(A) or *initial* production in violation of §2251(a) or §1466A(a)(2)
   [note a circuit split as to whether "secondary" *re*producers qualify under §2251(a) by virtue of the word "uses"].
   For a good definition of secondary producers see §2257(h)(2)(A)(ii).
2  Advertisement in violation of §2252A(a)(3)(B)    §2257A(i)(2)    §2256(3)
3  Note that this weighs in favor of innocence against the guilty mind required by some criminal statutes, while also relevant to §230
4  Perhaps an aid and abet theory or pseudo-advertisement        and subsequent distribution
5  See 18 §2243. Sexual abuse of a minor "(a) Of a **Minor**. ••• has attained the age of 12 years but has not attained the age of **16** •••"
6  Perhaps one was a physically fully developed human being by the age of 16 or 17, as one Traci Lords once was. See also §2243(a)
7  Perhaps because they were the one to voluntarily produce and initially distribute the depiction, as many teens today do via "sexting".
8  Perhaps they either do not care who sees, either because they are not identifiable or because they simply don't care at all.
9  If child porn *now*, then it was child porn *then* when at least one class member was a producer with impunity not provided by any statute.

Statutory qualifications aside, §230 immunity is a necessary evil for innumerable reasons quite apart from any free speech concerns. Ironically, immunity facilitates crime detection and prosecution. First and foremost, if individual citizens are peddling illegal images, it is better that they are exposed on a public site where they will be investigated *and prosecuted*; not forced to use dark sites on the dark web where they will evade detection[10]. To put it bluntly, society would rather crime be seen and punished as opposed to unseen and unpunished. Here, without public sites like PornHub, the vast majority of class members would never have learned of their injury (that a video was nonconsensually produced/distributed) --Victims cannot be expected to infiltrate the obscure corners of the web to discover injury.

The critique that PornHub could hire more employee analysts to identify and remove child porn is well taken, and it is inexcusable that PornHub waited years to take down identified abusive images[11]; however identification of illegal photographic speech is itself dangerous on two different fronts. First, in order for an employee to review content, it must be received and possessed --a criminal act. The shortcoming here is *not enough* immunity[12]. Second, the vast majority of child porn is highly obscene[13], and the harm of that obscenity is well documented by numerous PornHub employees seeking psychological help *out-of-pocket* after observing highly offensive images. The solution to both problems is outsourcing review[14] to police, the problem of how to do that is a legislative one[15].

Large and public websites like PornHub.com are a powerful resource for the detection of illegal images. Such large and developed websites often maintain information about who uploads what and how often. A treasure-trove[16] that police are very unlikely to get from smaller less developed websites. We must not remove incentives.

10 Today dark web is less about technological sophistication and more about knowing a guy who knows a guy. The link to a darkweb website is passed by word of mouth, much like private telegram channels, and private twitter or instagram profiles.

11 The inexcusable delay is best handled legislatively, where an exception to immunity could be made for inexcusable or bad-faith delay. Perhaps the best course of action *PornHub* could have taken in response to illegitimate take-down requests of legal content would have been to take personal information for the purpose of generating a police report and warning that illegitimate take-down requests of non-criminal content could result in prosecution for giving false information to law enforcement.

12 See Order at Dkt 92, page 6 ("However, three entities have legal authority to possess CSAM: law enforcement, NCMEC, and the court. 18 U.S.C. §§ 2258A & 3509(m)")

13 The Supreme Court in Ferber clarified obscenity is **not required** to unprotect child porn, while also recognizing most of it *is* obscene.

14 NCMEC is designed to do more of a *verification* that a flagged image is child porn, rather than an initial review

15 Perhaps the legislature could fund the outsourcing to local police, or add a department to NCMEC, or both. Any concerns PornHub and free-speech advocates have of *over*-censoring could be redressed in court as a government infringement of speech.

16 Such information includes email address(es), IP address(es), whatever information was entered into a profile such as age, name, gender, city, and even a profile photo. Perhaps the most valuable bit of information unique to large and developed sites like PornHub are their comment and messaging boards (think facebook or reddit) only present (or utilized) in large communities like PornHub's.

## Conclusion

If this court grants intervention (either permissive or as of right) and/or grants leave to file as *Amicus Curie*, Fredrickson will develop the specialized framework for Constitutional analysis and apply it as the situation call for. By taking this case beyond the facts of the Jane Does who filed this action, and as a direct result of class certification, this case effects the rights of others not before the court --ostensibly to "protect" them.

While there are many like Jane Doe who have suffered grievous harm; There is *also* a considerable percentage of our nation who is *not* harmed and *do* desire to express themselves. Jane Doe can only represent an *opt-in* class. Though good-intentioned and well-meaning, the Jane Does cannot be allowed to cancel the speech of others on a National[17] level without even a minimal inquiry into class-member harm.

This case is symbolic. Even when limiting the class to *opt-in* membership, the court must still inquire into the presence (though not degree) of harm to avoid conflicts with the First Amendment's free speech clause. To that end, regarding several issues in administration of class membership, Fredrickson proposes opt-in membership and questions based on the wisdom that too much information is better than too little. Google through the applet "Google forms" can serve as a neutral party automatically giving all parties private access to opt-in member information in the form of a spreadsheet that permits sorting and the ability to export to Microsoft Excel for further processing. It also can mitigate double-entries while allowing later corrections by class members.

A sample[18] appears on the next page and here: 

Respectfully submitted,

/s/ Jim Fren

---

17 The current class definition's reach is in fact *global* and not limited to the United States of America. The Supreme Court has noted that Congress' ability to punish harm may be limited to *American* harm. See *New York v. Ferber, 458 US 747 @779 (1982) Justice Stevens, concurring in the judgment.* ("If the child actor resided abroad, New York's interest in protecting its young from sexual exploitation would be far less compelling than in the case before us. The federal interest in free expression would, however, be just as strong as if an adult actor had been used"). The same may be true of the First Amendment's *un*protection based on harm. The defendant's have a considerable amount of content utterly devoid of American models, yet the American right to *receive* the speech of others (even from abroad) is protected.

18 https://docs.google.com/forms/d/e/1FAIpQLSfrBNlaOvmbEDPwlcwVEg0yVIlAeglXrbE3ACQnDJlF9vESdA/viewform?usp=header    live sample labeled as unofficial

https://forms.gle/o19tsMaThwPbq12K6

**Sample Questions**

| | |
|---|---|
| At any point in time was there any sexually explicit content of you on any of the following websites? | PornHub.com<br>YouPorn.com<br>RedTube.com<br>Tube8.com<br>other (Please Specify)<br>Optional additional information: are there any other details you would like to share? |

| Which of the following characteristics apply to the image(s) [Statutory inquiry] ||
|---|---|
| I was ____ years old at the time the picture or video was made*<br><br>*If there was more than one, please select the youngest applicable age. | Younger than 12<br>12<br>13<br>14<br>15<br>16<br>17<br>18+ |
| I was raped in the image or video | Yes, and criminal charges were brought<br>Yes, and no charges were brought<br>Yes, and only a police report was filed<br>Yes<br>No<br>Optional additional information: are there any other details you would like to share? |
| I was sex-trafficked in the image or video | Yes, and criminal charges were brought<br>Yes, and no charges were brought<br>Yes, and only a police report was filed<br>Yes<br>No<br>Optional additional information: are there any other details you would like to share? |

| Which of the following characteristics apply to the image(s) or video(s) [Constitutional inquiry] ||
|---|---|
| I was physically harmed in order to create it | Yes<br>No<br>Optional additional information: are there any other details you would like to share? |
| I was/am mentally harmed by<br><br>(you may select more than one) | I was not mentally harmed<br>Knowing it was made and existed<br>Knowing it was shared<br>Knowing anyone saw it<br>Knowing a specific person saw it<br>Knowing it was on a website<br>Being recognized from it (actually happened)<br>Being recognized from it (fear of) |

|  | Optional additional information: are there any other details you would like to share? |
|---|---|
| My privacy was violated because<br><br>(you may select more than one) | My privacy was not violated<br>I did not know it was made<br>I did not consent to it being made<br>I did not consent to it being shared<br>I did not consent to it becoming public<br>I initially consented to distribution, but changed my mind, and could not take it down<br>I initially uploaded it either accidentally or while under the influence, and could not take it down<br><br>Optional additional information: are there any other details you would like to share? |
| Contact Information<br><br>Legal Name<br>Mailing Address |  |