UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

JANE DOE # 1, et al.,
Plaintiffs,
v.
MG FREESITES LTD, et al.,
Defendants.

Case No.: 7:21-cv-00220-RDP

## MOTION AND MEMORANDUM TO RECONSIDER OR, IN THE ALTERNATIVE, FOR LEAVE TO INTERVENE PURSUANT TO FED. R. CIV. P. 24

### I. Introduction

Proposed Intervenor Tim Fredrickson ("Proposed Intervenor") respectfully moves this Honorable Court to reconsider its August 14, 2025, Order (Doc. #306) denying his Motion to Intervene (Doc. #305). In the alternative, should the Court decline to reconsider, the Proposed Intervenor renews his motion for leave to intervene pursuant to Federal Rule of Civil Procedure 24

The Court's previous Order denied intervention on the grounds of untimeliness and a lack of a legally protectable interest (Doc. #306). This motion will demonstrate that the Proposed Intervenor's motion was timely and, most critically, that the nature of his interest was misunderstood by the Court. The interest is not in immunity for illegal contraband, but in the preservation of constitutional rights for a specific, unrepresented class of individuals and the broader societal interest in a precise, judicial definition of "child pornography" or CSAM.

### II. The Motion to Reconsider: Addressing the Court's Previous Findings

The Court's Order found the motion untimely and without a legally protectable interest (Doc. #306). Proposed Intervenor respectfully argues for reconsideration based on the following:

#### A. The Timeliness of the Motion

The Court correctly observed that the motion was filed over four years after the case was commenced. However, "mere knowledge that an action is pending, without appreciation of the potential adverse effect an adjudication of that action may have on one's interests, does not preclude intervention" Corr. V Advance Local Media LLC, 918 F.3d 1161 @1171 (CA11 2019). Instead, "[i]t is well established that the length of time to file is

- 1 -

measured from the moment that the prospective intervenor *knew that his interests would 'no longer be protected'*" US ex rel Hernandez v Team Fin., LLC, 80 F.4th 571 (CA5 2023) quoting Stallworth v Monsanto, 558 F.2d 257 (CA5 1977) (emphasis added)[1].

The need for intervention arose at the specific moment that settlement based upon an overbroad[2] class became a potential resolution to the case, as this development threatens to impair the very rights the Proposed Intervenor seeks to protect. Here, "the court held a status conference with the parties on July 15, 2025 •••. At the status conference, the parties informed the court that they are actively engaged in settlement discussions" (Doc. #306-1, at 1). *Less than a month later*, Fredrickson filed a motion to intervene (Doc. #305).

The initial threat to Fredrickson's interests (arising from the class definition's failure to limit its reach to harm[3]) became *ripe* a mere few months ago on May 6, 2025 --when this court denied (#286) the Defendant's Motion to Decertify the Plaintiff Class (# 264). It is reasonable that this same threatening event did not become *apparent* until recently. PACER does not permit email updates except for case participants, and PACER fees render regular access to the docket prohibitive. Furthermore, once becoming aware of threatened interests, it is reasonable that there would be a delay from researching both case law and supporting facts.

Had this case been decertified *in May 2025* and allowed to proceed based on Jane Doe's images alone, then Fredrickson would have had no need to intervene, as there is no societal interest in images of criminal rape nor in images constituting an invasion of privacy. These facts changed by drafting a broad class of expression that sweeps in expression *beyond* those unprotected characteristics (and others explained in the amicus brief). Additionally, it also encourages opportunists who were *not* harmed to obtain an unjust enrichment.

---

[1] See e.g.
United Airlines v McDonald, 432 us 385 @396 (1977) (affirming an intervention *after* entry of final judgment settlement)
Rotstain v Mendez, 986 F.3d 931 @938 (CA 2021) (using the denial of class certification as the relevant starting point)
Greer v San Diego, 127 F.4th 1216 (CA9 2024) (successful intervention two weeks *after* settlement agreement)
Wineries Ass'n v Twp. Peninsula, 41 F.4th 767 (CA6 2022) (reversing in favor of intervention to *block* settlement)
Burkhalter v Mongomery, 676 F.2d 291 (CA8 1982) (remanding for intervention *after* settlement)

[2] See Proposed amicus brief, emphasizing that the constitutional limitation imposed by the First Amendment are any of the specifically defined harms of physical injury, mental harm, invasion of privacy, or an integral link to separate crime.

[3] *No one* disputes that *Jane Doe 1* and *Jane Doe 2* suffered several of the harms unprotected by the First Amendment. Fredrickson has no interest in Jane Doe's images, and *expressly disclaims* any interest in expression implicating *harm*.

Furthermore, the added threat of settlement is an implicit agreement that many images which in fact *do not* involve harm, *are* harmful without any actual finding to that effect. This is not a standard settlement, and it must be stressed that it goes far beyond Jane Doe; because this a *class action settlement*, it represents a class-wide concession of harm --even if the defendants reserve argument on the *extent* of that harm. The *combination* of class certification and settlement is an especially new development.

In any event, a settlement, negotiated in the fourth year of litigation, is not a final judgment on the merits and therefore the case is not at a late stage for the purposes of intervention. The Proposed Intervenor acted promptly upon learning that the class was not de-certified and that the parties were "actively engaged in settlement discussions". Intervention at this stage is essential to prevent prejudice to the constitutional rights of absent parties. Additionally, the Eleventh Circuit applies a flexible standard to timeliness, which accommodates the "interest of justice". The key factors are when the intervenor knew or should have known of their interest and the extent of prejudice to the existing parties.

## B. The Legally Protected Interest

The Court's previous Order concluded that the Proposed Intervenor lacked a legally protectable interest because "CSAM is illegal contraband as it stems from the sexual abuse of a child; it is not protected under the First Amendment" (Doc. #306 at 4). This conclusion, while factually correct, fundamentally misconstrues the interest at stake. The Proposed Intervenor does *not* seek to protect illegal contraband[4]. Rather, first and foremost, the interest is in the legal distinction between illegal contraband and protected expression, which is obscured by the overly broad use of the term "CSAM" as made apparent by the class definition's lack of reference to any kind of harm. Understandably, the court is looking to the facts and sufferings of both Jane Doe's, but it assigned the label CSAM and stopped, even though the nature of this case shifted dramatically when it became a class action. The class definition is akin to including everyone who have visited a park; the settlement is akin to presuming all such persons either went streaking or a dealt a handful of drugs; and the relief is akin to demolishing that park.

---

4  Which, to repeat, the *Jane Doe* images unquestionably are --because of rape and/or invasion of privacy.

Ultimately, whether settlement symbolizes a concession or not, the end result is the same --a massive amount of expression is removed from the public sphere. Society and the Proposed Intervenor have an interest in any speech which does *not* involve harm. If even **one**[5] act of expression --out of the *more than 9 million* removed as a precaution[6]-- do not involve harm, then an interest in protected free speech is effected.

The Proposed Intervenor's interest is twofold:

1. **The rights of 16- and 17-year-olds:** The litigation, as a class action, has certified a class that includes "minors"[7] who have engaged in ***consensual, non-criminal, and non-harmful conduct***. These individuals, who are above the age of consent at the federal level and in the overwhelming majority of the states, have a legally protected interest in their expression, and other members of society have a right to receive that expression.

2. **The public interest:** The public has a compelling interest in a thorough, judicial explanation and definition of "child pornography". A settlement would bypass this critical legal function, leaving a dangerous legal vacuum[8]. This is a direct, substantial, and legally protectable public interest that is a proper basis for intervention[9]. Furthermore, regardless of any judicial decree, as a direct result of imprecise constitutional standards, defendants have removed over 90% of society's expression without any inquiry into harm.

The Supreme Court noticed a similar lack of inquiry into harm in the interplay between the very same underlying definition statute here (§2256), and a different law. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 246-247 (2002), noted that:

> The CPPA prohibits speech despite its serious literary, artistic, political, or scientific value. The statute proscribes the visual depiction of an idea—that of teenagers engaging in sexual activity—that is a fact of modern society and has been a theme in art and literature throughout the ages. Under the CPPA, images are prohibited so long as the persons appear to be under 18 years of age. 18 U.S.C.

---

5  There is unquestionably at least one 16 or 17 year old (famously Traci Lords), who being over the the age of consent, wishes to express themselves in exactly the same way as the rest of us. See also Free Speech Coalition v Rokita, 738 F.supp.3d 1041 @ftn 3 (S.D.Ind 2024) (noting PornHub *also* hosts "comedic, non-pornographic content playing on industry tropes") It also has more educational and *slightly* less explicit videos on how to apply a condom or tampon.

6  In an abundance of caution, the defendants *also* removed expression of those unverifiably 18, who were in fact over 18, See Rokita at ftn 3 (noting "of course, not every adult has a drivers license, particularly an adult who just turned 18").

7  It is noteworthy that the federal statutes ***do not*** use the term "child". See Title 18 USC 2256(1)

8  Precedent Lost: Why Encourage Settlement, and Why Allow Non-Party Involvement in Settlement? | Antonin Scalia Law School, accessed September 5, 2025, https://www.law.gmu.edu/pubs/papers/00_21

9  Federal Civil Procedure: Intervention of Right Granted Private Party in Government Antitrust Suit Under New Rule 24(a)(2) - Duke Law Scholarship Repository, accessed September 5, 2025, https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=2151&context=dlj

§2256(1). This is higher than the legal age for marriage in many States, as well as the age at which persons may consent to sexual relations. See §2243(a) (age of consent in the federal maritime and territorial jurisdiction is 16); U. S. National Survey of State Laws 384-388 (R. Leiter ed., 3d ed. 1999) (48 States permit 16-year-olds to marry with parental consent); W. Eskridge & N. Hunter, Sexuality, Gender, and the Law 1021-1022 (1997) (in 39 States and the District of Columbia, the age of consent is 16 or younger). It is, of course, undeniable that some youths engage in sexual activity before the legal age, either on their own inclination or because they are victims of sexual abuse. id at 246-247. Sixteen and seventeen year olds are *above* the age of consent, and "teenagers engaging in sexual activity [] is a fact of modern society". id. This court, perhaps inadvertently, noted that PornHub's own statistics bear this out: "among the worldwide searches on PornHub, 'teen' was the ranked 3rd most popular search term" (Doc. #261). This very clearly indicates society's interest. To underscore the point, this court also recognized that "[t]hirty-nine *billion* searches were performed over 42 *billion* visits ••• more traffic than Netflix". (Doc. #42). Society has made the strength of it's interest very much known.

The court has an obligation to society to restore some balance to the situation that caused PornHub to "remove[] *all* content from user accounts where the account holder had not verified their age, bringing the total number of videos available on PornHub down from approximately 13.7 million to approximately 4 million" (Doc. #261). Surely abusive images are but a *small*[10] portion of the missing 9.6 million acts of censored speech, The vast majority of the censored speech certainly lacks unprotected characteristics like invasion of privacy, physical injury, mental harm, or underlying criminal act such as rape. If expression *lacks* all of this, then it is protected and Americans have a constitutionally protected right to create and receive it.

*Harm* is the test, not childhood. Failing this, these are *not* children, and the statute acknowledges as much in referring to them simply as a "minor" in the same way alcohol is prohibited to "minors" under 21. "It is, of course, undeniable that some youths engage in sexual activity before the legal age, either on their own inclination *or because they are victims of sexual abuse*" Ashcroft @247. The Jane Does fall into the *latter* category, while most of those encompassed by the class definition fall into the *first* and lack any form of harm.

---

10 See Doc. #206   "in April 2020. Defendants have made more than 20,000 reports of apparent CSAM to NCMEC".

### III. The Alternative Motion to Intervene as of Right

In the alternative, should the Court not reconsider its prior ruling, the Proposed Intervenor renews the motion under Federal Rule of Civil Procedure 24 on the following grounds:

**A. Legally Protected Interest**

As argued above, the Proposed Intervenor has a direct, substantial, and legally protected interest. This interest is *not* in defending illegal contraband but in ensuring that the legal definition of "CSAM" is not so broad as to include and criminalize protected expression of those above the age of consent. The Proposed Intervenor's interest is first and foremost in drawing a clear, judicial line between consensual expression and truly harmful content involving invasion of privacy, physical injury, mental harm, or criminal conduct like rape --a constitutional distinction that is absent from the class definition. The second interest is in listening to the voluntary "speech" in the absence of any harm.

The proposed intervenor represents not only the specific, unrepresented First Amendment interests of minors between the ages of 16 and 17 but also the broader societal interest in a clear, judicially-sanctioned definition of what constitutes child pornography.

**B. Impairment of Interest**

The disposition of this case via a settlement would, as a practical matter, "impair or impede" the Proposed Intervenor's ability to protect these interests. A settlement is a private agreement that avoids a judicial ruling on the merits. This conflict compromises their ability to zealously litigate the foundational free speech issues at stake. Their incentive is to seek a financially expedient settlement to extinguish personal risk, a course of action that is fundamentally at odds with the public's and the unrepresented minors' interest in a definitive judicial ruling on a matter of constitutional import. The defendant's position, therefore, is inherently prejudicial to the interests of those they are currently representing. The impending settlement, negotiated under the cloud of this conflict, cannot be deemed fair, reasonable, or adequate.

A settlement would provide a financial resolution without a clear, precedential definition of the line between protected and unprotected content, leaving a "chilling effect" on the speech of older minors and the public's right to receive it. Society has no interest in a settlement that does not actually resolve this core constitutional question, and leaves millions of American's speech censored despite a total lack of harm.

### C. Inadequate Representation by Existing Parties

This is the most critical and unaddressed element of the motion. The defendant, PornHub, cannot adequately represent the free speech interests of 16- and 17-year-olds. The defendant faces personal liability for the Jane Doe class action claims. This creates an irreconcilable conflict of interest, as their primary incentive is to settle to extinguish and minimize their personal financial and legal risk.

A defendant's self-interest in minimizing personal liability is "materially limited" by any duty to represent the broader constitutional interests of others. The defendant's incentive to settle is directly adverse to the public's interest in a full constitutional adjudication of a sensitive and important legal question. The defendant cannot argue for the free speech rights of 16- and 17-year-olds without risking further liability for themselves, thereby rendering their representation inadequate. The core contention is that a settlement in this matter would be a "political charade" that fails to resolve critical constitutional questions, risks improperly compensating genuine victims, and may unjustly enrich those who have not suffered a legal injury-in-fact.

### IV. Conclusion

For the foregoing reasons, the Proposed Intervenor respectfully requests that this Court reconsider its Order denying intervention. The motion was timely upon the emergence of settlement negotiations, and the Proposed Intervenor possesses a clear, legally protectable interest that is distinct from and inadequately represented by the existing parties. In the alternative, the Proposed Intervenor's renewed motion to intervene should be granted, ensuring that the court fulfills its duty to create law and protect public interests by rejecting a settlement that is, at its core, a disservice to the legal system. Intervention is necessary to ensure the constitutional questions at the heart of this litigation are fully and fairly adjudicated, preventing a settlement that would fail to serve the interests of justice, genuine victims, and the public at large. The intervenor seeks to ensure a full and proper adjudication of the core legal questions, a goal that aligns with the court's own duty to resolve substantive issues rather than allow them to be privately settled away.

Respectfully submitted,

/s/ Tim Fredrickson

Name: Tim Fredrickson
Reg. No. 22005-026
FEDERAL CORRECTIONAL INSTITUTION
P.O. Box 9000
Seagoville, TX 75159-9000
Case 7:21-cv-00220-RDP    Document 309    Filed 09/16/25    Page 8 of 8

NORTH TEXAS TX P&DC
DALLAS TX 750
12 SEP 2025 PM 5 L



SECURITY

SEP 16 2025

U.S. DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

Clerk of Court
1729 5th Ave North
Birmingham Alabama 35203

35203-203799