FILED
2026 Nov-04 PM 08:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JANE DOE #1, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br>v.<br>MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC, INC., d/b/a MINDGEEK; MG BILLING LTD,<br><br>Defendants. | CIVIL ACTION NO:<br>7:21-cv-00220-ACA<br><br>Honorable Annemarie Carney Axon<br><br>**TO BE FILED UNDER SEAL** |

**NONPARTY INTERNATIONAL CONSORTIUM OF INVESTIGATIVE JOURNALISTS AND DAVID KENNER'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Nonparties International Consortium of Investigative Journalists ("ICIJ") and David Kenner appear specially, and without waiving any objection to personal jurisdiction, service, nonparty status, or the Court's authority to impose affirmative relief against them, to oppose Defendants' Motion for Temporary Restraining Order Restricting Publication of Sealed Information (the "Motion").

## I. INTRODUCTION

Aylo asks this Court to enter an emergency order against nonparty journalists in Washington, D.C. who have no connection to this jurisdiction solely because they possess records that were publicly accessible on the court's electronic filing system for approximately eight months and intend to publish an investigative news story based on those records. Aylo seeks to quash that story.

The requested order would forbid ICIJ and Mr. Kenner from publishing "any information learned or derived from" the records, require them to destroy or surrender the materials, and require disclosure of how the records were obtained and whether they were shared. Aylo's motion is not asking for routine case management. Far from it. The Motion seeks direct *in personam* relief against independent, non-party journalists and requests a sweeping content-based prior restraint on news reporting about matters of public concern, which is at odds with decades of well-established constitutional law.

The motion should be denied at the threshold because Aylo has not established any basis for the court to exercise personal jurisdiction over ICIJ or Mr. Kenner. General jurisdiction is absent; ICIJ and Mr. Kenner are based in Washington, D.C., and the Motion supplies no evidence that either is "at home" in Alabama. Specific jurisdiction is absent as well. The only asserted connection between ICIJ and Mr. Kenner and this forum is that the records underlying the reporting – which Aylo acknowledges were publicly accessible on PACER for months – arose from litigation pending in Alabama. Under *Walden v. Fiore*, 571 U.S. 277 (2014), and the Eleventh Circuit's recent decision in *Moore v. Cecil*, 109 F.4th 1352 (11th Cir. 2024), a defendant's relationship to forum-linked subject matter, without more, is not enough to establish specific jurisdiction. Aylo must show conduct by these nonparties purposefully directed at Alabama. It has not done so and cannot do so.

The Motion fails independently because the Proposed Order is an unconstitutional prior restraint. Aylo's request that the Court order a sweeping restriction on publication is precisely the kind of prior restraint that is "presumptively unconstitutional" absent a showing of the most extraordinary kind. Aylo cannot surmount this constitutional bar because it fails to establish that the news reporting ICIJ intends to publish poses the kind of imminent and extreme harm that could

possibly justify the sweeping relief requested. ICIJ is a Pulitzer-Prize winning news organization, and Mr. Kenner is an experienced journalist. Their prepublication communications withAylo make clear that they intend to report on Defendants' corporate conduct based on information that is a matter of public concern. Defendants' self-interest in trying to halt such reporting falls woefully short of the standard needed for a prior restraint. Aylo's extraordinary demand that ICIJ and Mr. Kenner surrender or destroy their source materials and disclose how those materials were obtained is equally unjustified. The Court's authority over its docket does not give it unrestricted power to compel independent journalists, who are not bound by the sealing order, to surrender or destroy lawfully obtained newsgathering materials. Aylo's demand that journalists be forced to disclose how they obtained those materials is likewise barred by the qualified First Amendment reporter's privilege unless Aylo can meet a similarly daunting burden that is well beyond its reach.

Aylo's Motion should be denied in full.

## II. **BACKGROUND**

The underlying litigation is a civil class action pending in this Court concerning claims against Aylo-affiliated Defendants arising from alleged child sexual abuse material and related conduct. These issues are, of course, matters of extraordinary public concern.

On September 12, 2024, Plaintiff filed exhibits in support of a motion for partial summary judgment at Docket No. 235. Plaintiff had moved to file the materials under seal, and the Court entered a "docket order" granting her motion without any stated reasoning or direction. Dkt. 229. Defendants contend those materials included personal identifying information for alleged victims, class members, content-removal requestors, and Aylo employees, as well as internal communications, deposition testimony, and business information. Dkt. 319, p. 3-4.

The Motion acknowledges a docketing error by the Court's own electronic filing process. Aylo's declaration states that Dkt. 235-1 through Dkt. 235-23 were properly placed under seal, but that Dkt. 235-24 through Dkt. 235-122 "were not actually placed under seal on the Court's electronic docket." As a result, those exhibits "remained publicly accessible on the Court's online docket from September 12, 2024 until May 5, 2025." Dkt. 319, p. 5.

Aylo was aware by May 2025 that third parties may have accessed the materials. In fact, by May of 2025, The New York Times had reported and commented on the materials. *See* Nicholas Kristof, *Opinion | What People at Pornhub Were Thinking When It Shared Videos of Child Rape*, The New York Times.[1] The records were widely available on multiple platforms. As the Motion states, after learning of third-party access, Defendants found it necessary to contact CourtListener, CourtLink, Lex Machina, and Law360, demanded removal of materials from those platforms, and then obtained leave to issue third-party subpoenas to an array of docket-monitoring, legal-research, and PACER-related entities, including the PACER Service Center, CourtAlert, Courthouse News Service, Fastcase, Free Law Project, Justia, Lex Machina, PACER Monitor, PacerPro, RELX, Thomson Reuters, Trellis, and UniCourt. Dkt. 319, p. 9.

On October 21, 2026, Mr. Kenner, an investigative reporter with ICIJ, emailed Aylo questions for an article ICIJ intended to publish. Aylo's declarants quote Mr. Kenner's email as stating that ICIJ had "reviewed internal Aylo communications and documents" and posed numerous substantive questions about the company's conduct, including its failure to remove child pornography from its website and protect other non-consenting victims. Mr. Kenner's email also

[1] *The New York Times* reporting and commentary on the records can be found at https://www.nytimes.com/2025/05/10/opinion/pornhub-children-documents.html?smid=nytcore-ios-share

attributed the disclosure of the materials to the Clerk's Office, not to any party, counsel, or person directly subject to the court's protective order. Dkt. 319, p. 7-8.

Aylo's requested order confirms the breadth of the relief it seeks: return or destruction of all materials and copies related to Docket 235; a ban on publishing or disseminating any information contained in the materials; a ban on publishing or disseminating any information learned or derived from their review; a ban on publishing identities of persons referenced in them; compelled disclosure to the Court of how ICIJ and Mr. Kenner obtained the materials and whether they disclosed or transmitted them or their information to any third party; and compelled notice to any third-party source from whom they obtained the materials. Dkt. 319, Exh. 3.

## III. **ARGUMENT**

### A. **This Court Lacks Personal Jurisdiction Over ICIJ and Kenner.**

A federal court sitting in Alabama may exercise personal jurisdiction only as far as Alabama law and due process permit. The inquiries merge because Alabama's long-arm rule extends to the constitutional limit. *Moore*, 109 F.4th at 1361. Due process requires contacts created by the defendant itself, not contacts supplied by a plaintiff, a third party, or the forum-related subject matter of the dispute. *Walden*, 571 U.S. at 284-90; *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358-60 (2021). Aylo has not and cannot make that showing.

General jurisdiction is plainly absent. An individual is subject to general jurisdiction in the paradigm forum of domicile, and a corporation or organization is subject to general jurisdiction where it is incorporated or has its principal place of business, with only rare exceptional cases outside those forums. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 & n.19 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Waite v. AII Acquisition Corp.*, 901 F.3d 1307, 1316-18 (11th Cir. 2018). Aylo has supplied no evidence that ICIJ is incorporated,

headquartered, staffed, or operated in Alabama, and no evidence that Mr. Kenner is domiciled in Alabama. Both are based in Washington, D.C. and have no contacts with Alabama. They are not "at home" in Alabama.

Specific jurisdiction is absent for the same reason. Aylo does not allege that ICIJ or Mr. Kenner entered Alabama, solicited Alabama sources, targeted Alabama readers, did business in Alabama, or directed any publication to Alabama as opposed to a national or international audience. The alleged contact is that they reviewed court records from an Alabama case and may report on information from those records. But the Supreme Court has rejected jurisdiction based on a plaintiff's or third party's forum connections; the defendant's own conduct must connect him to the forum "in a meaningful way." *Walden*, 571 U.S. at 290. Merely obtaining documents that bear an Alabama docket number is not purposeful availment in Alabama.

*Moore* reinforces the point in a particularly relevant setting. There, the Eleventh Circuit held that Alabama lacked personal jurisdiction over tweet-based defamation claims where Roy Moore alleged harm in Alabama, but the record did not show that the tweets were directed at Alabama or intended to target an Alabama audience as opposed to followers or a national audience generally. 109 F.4th at 1362-67. The same reasoning applies here. As demonstrated by Mr. Kenner's email to Aylo, the subject of ICIJ's upcoming article concerns Aylo/Pornhub, which are not Alabama-based or incorporated entities, as well as alleged CSAM and NCII, removal requests, internal corporate practices, and related class settlements. The Motion does not show that Alabama is the focal point of the reporting or the brunt of the alleged injury.

Nor does *Calder v. Jones*, 465 U.S. 783 (1984), save the Motion. *Calder* involved Florida journalists who wrote and edited an article about the California activities of a California plaintiff, drew from California sources, and knew that the brunt of the reputational injury would be suffered

in California, where the publication had its largest circulation. *Id*. at 788-90. Aylo has not shown analogous Alabama-focused conduct by ICIJ or Mr. Kenner. At most, it alleges knowledge that the records arose from an Alabama docket. *Walden* and *Moore* make clear that knowledge of a forum connection is not enough.

Aylo also cannot avoid personal jurisdiction by recasting the request as enforcement of a sealing order against nonparties. Rule 65(d)(2) binds only parties; parties' officers, agents, servants, employees, and attorneys; and "other persons who are in active concert or participation" with them who receive actual notice. The Eleventh Circuit has emphasized that these limits implement due process. In *ADT LLC v. NorthStar Alarm Services, LLC*, 853 F.3d 1348 (11th Cir. 2017), the court held that an injunction may not extend to independent persons whose rights have not been adjudged, and that nonparty privity is "bounded by due process." *Id*. at 1352-54. In *United States v. Robinson*, 83 F.4th 868 (11th Cir. 2023), the court reiterated that a nonparty can be bound only if she fits a recognized category: party status, current officer/agent/employee status, active concert with a bound party, privity, legal identity, or aid-and-abetting a privy. *Id*. at 884-96.

Aylo has not and cannot make any of those showings. ICIJ and Mr. Kenner are not parties. They are not Aylo's or Plaintiff's officers, agents, servants, employees, or attorneys. They are not successors or privies. Rule 65(d)(2) would become a power to enjoin the world at large, which *ADT*, *Robinson*, *Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945), forbid.

The Court should deny relief for lack of personal jurisdiction and lack of authority to bind these nonparties.

### B. **The Proposed Order Is an Unconstitutional Prior Restraint.**

Even if jurisdiction existed, the Proposed Order would violate the First Amendment. "Prior restraints on speech and publication are the most serious and the least tolerable infringement on

First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). They carry a heavy presumption of invalidity, and the burden is not reduced because the restraint is temporary. *Id*. at 558-61. The Eleventh Circuit likewise treats restraints before publication as subject to strict scrutiny. *Cooper v. Dillon*, 403 F.3d 1208, 1214-15 (11th Cir. 2005) ("Classic prior restraints have involved judge-issued injunctions against the publication of certain information.").

Aylo's Proposed Order is not case management. It prohibits publication of content: sealed materials, information contained in them, information learned or derived from them, and identities referenced in them. The Proposed Order therefore freezes speech before publication and seeks a type of relief that has long been forbidden under settled law.

1. **The Underlying Sealing Order Cannot Justify Extraordinary Relief Against Nonparty Journalists Because It Was Not Supported by the Findings and Narrow Tailoring Required for Sealing Judicial Records.**

Aylo's requested relief rests on the premise that Dkt. 229 is a valid, particularized sealing adjudication that may be enforced against independent journalists. It is not enough that materials once moved through discovery under a protective order. Under *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311-13 (11th Cir. 2001), discovery materials filed with substantive pretrial motions that require judicial resolution of the merits are judicial records subject to the common-law right of access. *Romero v. Drummond Co.*, 480 F.3d 1234, 1245-46 (11th Cir. 2007), confirms that materials filed with any substantive pretrial motion, whether or not dispositive, trigger that public-access presumption. More recently, *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1364-66 (11th Cir. 2021), and *Advance Local Media, LLC v. Commissioner, Alabama Department of Corrections*, 918 F.3d 1161, 1166-69 (11th Cir. 2019), reaffirm that documents used to support merits arguments are presumptively public judicial

records and may be sealed only after a good-cause balancing based on the nature and character of the information.

Those standards require more than a conclusory order appearing as a docket entry. A court denying access must articulate the interest supporting secrecy with findings adequate for review. *United States v. Kooistra*, 796 F.2d 1390, 1391 (11th Cir. 1986); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005). The court must also consider the public's independent interest, the likelihood and degree of injury from disclosure, whether the information concerns public concerns, and less onerous alternatives such as targeted redaction. *Romero*, 480 F.3d at 1246. And where a broad seal suppresses sensitive information in a civil record, *Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985), *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir. 1992), and *Newman v. Graddick*, 696 F.2d 796, 802-04 (11th Cir. 1983), require the court to confront the access issue with, articulate reasons.

The record does not show that Dkt. 229 satisfied those requirements. Plaintiff's sealing motion sought leave to file under seal an unredacted partial-summary-judgment motion and confidential exhibits. Dkt. 224. It relied heavily on Defendants' confidentiality designations, stated that Plaintiff did not concede those materials should remain sealed, and asked to file Defendants' marked-confidential documents only "provisionally under seal" while the parties negotiated redactions or public filing. Dkt. 224 at 1-5. The proposed order said only that the motion was granted "FOR GOOD CAUSE SHOWN." Dkt. 224-1. The docketed order likewise appears only as a text order granting Dkt. 224. *See* Dkt. 229. Nothing in that text order makes exhibit-by-exhibit findings, explains why targeted redactions would not protect Plaintiff's identity or genuine third-party privacy interests, or separately balances the public's access interest against sealing 122 exhibits that included corporate documents, deposition excerpts, employee names, business

information, and alleged-victim-identifying material. Aylo's later description of Dkt. 229 as a substantive finding that all Dkt. 235 materials must remain sealed cannot substitute for the findings the order itself does not contain.

An overbroad, conclusory sealing order cannot be converted into a new injunction against nonparties who were not subject to the Protective Order and who are alleged to have reviewed materials made publicly available by the Court's own docketing error. *Ashcraft v. Conoco, Inc.,* 218 F.3d 288, 302-03 (4th Cir. 2000), is persuasive on precisely this point: a sealing order entered without public notice, an opportunity to object, consideration of alternatives, or specific findings was invalid and could not sustain contempt sanctions; the companion source-disclosure decision held that enforcement of that invalid order could not supply the compelling interest needed to pierce a reporter's privilege. That reasoning applies here. Dkt. 229 cannot independently justify a publication ban, compelled return or destruction of reporting materials, or compelled source disclosure against ICIJ and Mr. Kenner.

2. **The Publication Ban Sought by Aylo is Patently Unconstitutional.**

The publication ban is the core constitutional defect. Aylo asks the Court to forbid ICIJ and Mr. Kenner from publishing "any information learned or derived from" Dkt. 235 materials. That language reaches far beyond the sealed PDFs. It reaches memory, notes, follow-up interviews, independent corroboration, public-record research, reporting leads, and editorial judgments. It also bars employee identities without distinguishing information that may be independently obtained or already publicly known.

The Supreme Court's public-record and truthful-publication cases foreclose such a restraint. In *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), the Court held that the press could not be sanctioned for truthfully publishing information released in official court records open

to public inspection, stressing that judicial proceedings and court records are basic data of governmental operations. *Id*. at 491-96. In *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308 (1977), the Court reversed an order barring publication of a juvenile's name and photograph where the information had been revealed in an open proceeding. *Id*. at 310-12. In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the Court held that punishment for publishing truthful, lawfully obtained information about a matter of public significance is permissible, if at all, only when narrowly tailored to a state interest of the highest order. *Id*. at 533-41. And in *Bartnicki v. Vopper*, 532 U.S. 514 (2001), the Court held that a publisher who played no part in unlawful interception could not be punished for publishing truthful information of public concern received lawfully from another. *Id*. at 525-35.

Those principles apply with special force here because Aylo's alleged source of disclosure is a government docketing error. Aylo's own evidence says the relevant exhibits were publicly accessible on PACER from September 12, 2024 until May 5, 2025. The Supreme Court has repeatedly admonished that when government custodians release or make information accessible, less restrictive means exist: fix the release process, remedy government mishandling, redact future filings, and regulate the conduct of those within the court's control. The First Amendment does not permit shifting the consequences of the government's error onto a nonparty newsroom.

*Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996), is particularly apt. There, a district court enjoined *Business Week* from publishing documents sealed in civil litigation; the Sixth Circuit vacated the order as a classic prior restraint and held that private litigants' commercial interests did not justify preventing a news organization from publishing information in its possession on a matter of public concern. *Id.* at 221-27. The Sixth Circuit observed that the district court's injunctions "was patently invalid and should never have been

entered." *Id.* at 225. *In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986), likewise held that a court order barring a newspaper from publishing information in its possession was a presumptively unconstitutional prior restraint and that even improper or unlawful transfer to the press would not justify the restraint absent the most compelling circumstances. *Id.* at 1348-53. As the Court explained: "When … the prior restraint impinges upon the right of the press to communicate news and involves expression in the form of pure speech—speech not connected with any conduct—the presumption of unconstitutionality is virtually insurmountable." *Id.* at 1348.

**3. The Proposed Order's Demand for the Return or Destruction of Records Is Also Unconstitutional.**

The return-or-destruction demand fares no better. An order forcing journalists to surrender or destroy source materials before publication disables reporting just as surely as a publication ban. It prevents verification, follow-up reporting, authentication, and editorial review. Because possession of reporting materials is preparatory to speech, compelled destruction or return of those materials must be scrutinized for its practical effect on publication.

Aylo's Motion relies on *Cahill v. Insider Inc.*, 131 F.4th 933 (9th Cir. 2025), but *Cahill* is materially different and not controlling. There, *The Oregonian* had intervened in the litigation in an effort to access sealed information and the Ninth Circuit held that, by becoming an intervenor, it became a party subject to the district court's inherent case-management authority over discovery. *Id.* at 938-40. The documents also were inadvertently sent by the party's lawyer during litigation, not made available on a publicly accessible federal docket for months. Id. at 936-40. And *Cahill* certainly did not require the identification of sources by journalists, let alone nonparty journalists.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288 (4th Cir. 2000) is far more apposite case law for consideration by the Court. There, a court clerk inadvertently provided a reporter an envelope

containing a settlement agreement that should not have been included among public documents; the Fourth Circuit reversed contempt sanctions against the reporter and newspaper, emphasizing that a citizen who requests public documents from a court officer and receives materials that appear available is not responsible, on pain of sanction, for ensuring the court's internal confidentiality procedures were perfectly followed. *Id*. at 293-94, 302-03 ("No citizen is responsible, upon pain of criminal and civil sanction, for ensuring that the internal procedures designed to protect the legitimate confidences of government are respected."). The same principle applies when a PACER docket is left publicly accessible for months through administrative error.

Similarly*, FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300 (7th Cir. 1990) illustrates Aylo is seeking an overly broad remedy. Although the court allowed FMC to obtain copies of its own missing documents under the unique circumstances of that case, it held that ABC could retain copies and disseminate any information contained in them in the name of the First Amendment. *Id*. at 303-06 ("ABC is free to retain copies of any of FMC's documents in its possession (and to disseminate any information contained in them) in the name of the First Amendment. Moreover, ABC is in no way being punished for the dissemination of FMC's information."). And in *Short v. Western Electric Co.*, 566 F. Supp. 932 (D.N.J. 1982), the court refused to "reseal" a settlement transcript that had been disseminated because of a clerical mistake, recognizing that it was no longer within the judicial process. *Id.* at 934.

The Proposed Order's demand for return or destruction of records would impose the practical equivalent of prior restraint based on a sealing record far too thin to support the underlying restraint itself.

### 4. The Proposed Order's Demand for Source Identification Collides with Settled Reporter Privileges.

Aylo's requested source-identification relief independently violates the reporter's privilege. The Proposed Order would require ICIJ and Mr. Kenner to disclose how they obtained the materials, whether they shared them, and to notify any third party from whom they obtained them. That relief would intrude into newsgathering, identify confidential sources or source pathways, and chill future reporting about court records and alleged corporate misconduct.

As discussed herein, both the ICIJ and Mr. Kenner are in D.C., and are as such afforded the protections of D.C.'s reporter's privilege. Under D.C. law, source information, whether confidential or not, is absolutely privileged. D.C. Code § 16-4702(a). There is no legal basis to require ICIJ and Mr. Kenner to provide information regarding their sources. Moreover, any additional newsgathering information is protected by qualified privilege and can be compelled only upon a showing that the "news information is relevant to a significant legal issue," that it "could not, without due diligence, be obtained by any alternative means," and "[t]here is an overriding public interest in disclosure." D.C. Code § 16-4703. Defendants have not, and cannot, meet that requirement.

Nor does the Eleventh Circuit standard, which is materially similar to D.C.'s standard for non-source relating information, support Defendants' demands for disclosure. Under Eleventh Circuit law, the reporter's privilege may be overcome only if the requesting party shows that the information is highly relevant, necessary to the proper presentation of the case, and unavailable from other sources. *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986); *Price v. Time, Inc.*, 416 F.3d 1327, 1343-47 (11th Cir. 2005). *Price* is especially instructive: even in a defamation case where the source identity could be necessary to proving actual malice, the

Eleventh Circuit vacated disclosure because the plaintiff had not exhausted reasonable alternative sources.[2] 416 F.3d at 1346-48.

*Ashcraft* is especially instructive on source identification. The Fourth Circuit held that enforcement of an invalid confidentiality order could not constitute the compelling interest needed to force a reporter to reveal confidential sources. 218 F.3d at 287-88. The Eleventh Circuit requires, at minimum, a showing that source information is highly relevant, necessary to proper presentation of the case, and unavailable from other sources. *Caporale*, 806 F.2d at 1504; *Price*, 416 F.3d at 1343-48. A procedurally deficient sealing order cannot supply that necessity.

Here, ICIJ and Mr. Kenner are alleged only to have reviewed materials that Aylo admits the Clerk's Office made available on PACER. The Court should not order source disclosure absent the demanding showing required by D.C. and Eleventh Circuit law.

## IV. **CONCLUSION**

The Motion asks this Court to exercise power over independent, Washington, D.C.-based nonparty journalists who are not at home in Alabama, who have not purposefully availed themselves of Alabama, and who have not been shown to be in active concert with any person bound by the Court's sealing order. It further asks the Court to impose a presumptively unconstitutional order under settled First Amendment law: an order suppressing publication before it occurs, coupled with compelled destruction of reporting materials and compelled source disclosure. The Constitution, Rule 65(d), and due process do not permit that relief on this record. ICIJ and Mr. Kenner respectfully request that the Court deny Defendants' Motion for Temporary Restraining Order in its entirety.

---

[2] *Price* considered both the Federal and Alabama reporter's privileges due to the underlying Alabama state law claims against the media organization defendant.

Respectfully Submitted, this 3rd day of November, 2026.

*/s/ John G. Thompson, Jr.*

John G. Thompson, Jr. (asb-2376-h64t; THO174)
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, AL 35203
(205) 581-0700
*jthompson@lightfootlaw.com*

*- and -*

Thomas M. Clyde (*pro hac vice forthcoming*)
Ga. Bar No. 170955
Kathryn J. Trent (TRE016)
AL Bar No.: ASB-2437-Q63U
Kilpatrick Townsend
& Stockton LLP
1100 Peachtree Street, NE,
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)
ktrent@ktslaw.com
tclyde@ktslaw.com

*Counsel for Non-Parties International Consortium of Investigative Journalists and David Kenner*

## CERTIFICATE OF SERVICE

I certify that on November 3, 2026, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Alabama using the Court's CM/ECF system, which will send notice to all counsel of record.

*/s/ John G. Thompson, Jr.*
Of Counsel