FILED
2026 Nov-11 AM 10:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE #1 on behalf of herself and all others similarly situated, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. |
| MG FREESITES, LTD, d/b/a "PORNHUB"; MG FREESITES II, LTD; MINDGEEK S.A.R.L.; MINDGEEK USA INCORPORATED; MG CY HOLDINGS LTD; MINDGEEK CONTENT RT LIMITED; 9219-1568 QUEBEC INC., d/b/a MINDGEEK; and MG BILLING LTD, | ) | 7:21-cv-00220-ACA |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER RESTRICTING PUBLICATION OF SEALED INFORMATION**

Defendants herein (collectively, "Defendants" or "Aylo") submit this Reply in support of their Motion for Temporary Restraining Order Restricting Publication of Sealed Information (Dkt. 319) (the "Motion" or "Mot.") and in response to the opposition filed by the International Consortium of Investigative Journalists and David Kenner ("ICIJ," unless otherwise specified) (Dkt. 334) (the "Opposition" or "Opp.").

## I. INTRODUCTION

This is not a case about a court silencing the press. Defendants do not seek to restrain ICIJ from reporting on Aylo, this litigation, the pending class settlement, or anything ICIJ has learned from independent sources. (Proposed Order ¶ 8.) Defendants ask only that the Court restore the protection of its own Sealing Order (Dkt. 229) over sealed records that left the Court's custody solely through a clerical error in its docketing process, and prevent publication of the identities of alleged victims of child sexual abuse material ("CSAM"), content-removal requestors, class members, and Aylo employees—individuals the Court has already found warrant protection and some of whom face concrete safety threats (as Defendants explained in their Motion, there was a fatal attack on Aylo's Montreal office on June 22, 2026). (McGinty Decl. ¶¶ 5–9; Penhale Decl. ¶¶ 4–9.)[1]

ICIJ does not dispute the material facts. It does not deny that it possesses the exhibits filed as part of Dkt. 235; that each was designated "Confidential Filed Under Seal" and bore a cover sheet confirming its sealed status, as the docket has always reflected; that the Sealing Order has never been vacated or modified; that it received actual notice of the Sealing Order through Defendants' October 27, 2026 letter; or that it intends to publish information drawn from the sealed materials. (McGinty

[1] These declarations are attached as Exhibits to the Motion.

Decl. ¶¶ 7–8, 26–29 & Ex. A; Penhale Decl. ¶¶ 13–14.)

ICIJ's arguments fail for three reasons. *First*, this is not a conventional prior-restraint case: every authority ICIJ cites involved information the government chose to make public or that the press obtained independently of the judicial process, not a court protecting its own sealed records after they escaped through its own clerical error. *Second*, the Court has inherent authority over its records and the power to correct what has been inadvertently done through its own process—authority independent of Rule 65(d) that the Court has already exercised in this matter. *Third*, ICIJ's principal argument is an improper collateral attack on the Sealing Order. ICIJ's remedy is to intervene and move to unseal, not to obtain a de facto unsealing—one that would affect, among others, individuals who requested the removal of alleged CSAM—by opposing a TRO. ICIJ's remaining arguments fare no better, and any concern about overbreadth calls for tailoring the relief, not denying it.

## II. STATEMENT OF RECORD FACTS

**ICIJ offers no evidence**. Its assertions that ICIJ and Mr. Kenner are "based in Washington, D.C. and have no contacts with Alabama" (Opp. 6), that the materials were "lawfully obtained" (Opp. 3), and that the records were "widely available on multiple platforms" (Opp. 4) are attorney argument unsupported by any declaration or affidavit. Defendants' sworn showing remains unrebutted.

**ICIJ still has not said how it obtained the sealed materials.** Mr. Kenner's

October 21, 2026 email stated only that ICIJ "underst[ood]" the documents "were released by the clerk's office." (Penhale Decl. ¶ 13 & Ex. A.) But the Court never released them. (McGinty Decl. ¶¶ 14, 25.) Unintended public access to the improperly unsealed exhibits ended on May 5, 2025—more than seventeen months before Mr. Kenner's inquiry (*id.* ¶ 12)—and ICIJ does not assert that it downloaded them from PACER during that window (which, if true, could be disclosed without compromising any source or imperiling any First Amendment interest).[2]

**The materials' sealed status was apparent on their face.** Each Dkt. 235 exhibit was designated "Confidential Filed Under Seal," was labeled as sealed on the docket, and bore a cover sheet confirming its sealed status; the second batch was entered with the correct "Under Seal" docket event. (McGinty Decl. ¶¶ 7, 11.)

**Plaintiff does not oppose this Motion.** Plaintiff sought entry of the Sealing Order in the first instance to protect identifying information contained in the Dkt. 235 exhibits, including information concerning individuals, such as Plaintiff, who allege they were depicted in CSAM. Plaintiff does not oppose the relief requested here. (Mot. 3; McGinty Decl. ¶¶ 4–5.)

---

[2] ICIJ states that "[t]he records were widely available on multiple platforms." (Mot. 4.) To be clear, Defendants took steps to remove the documents from public circulation as soon as they discovered that the documents had inadvertently been made accessible.

## III. ARGUMENT

### A. This is Not a Conventional Prior-Restraint Case.

ICIJ argues that the Proposed Order is an unconstitutional prior restraint that "freezes speech before publication," relying on the "Supreme Court's public-record and truthful-publication cases." (Opp. 7–8, 10). Those cases are factually inapposite.

ICIJ cites *Cox Broadcasting* and *Oklahoma Publishing Co.* for the proposition that a third party may "publish[ ] information" made available in an "open" proceeding. (Opp. 10–11). In *Cox Broadcasting*, the name of a deceased sexual-assault victim appeared in a publicly available indictment that was not under seal and in the reporter's own notes from an open trial. *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 472 n.3 (1975).[3] In *Oklahoma Publishing Co.*, the name and photograph of a juvenile accused of murder were obtained at a pretrial hearing open to the public. *Okla. Publ'g Co. v. Dist. Ct.*, 430 U.S. 308, 309 (1977).[4] Here, the materials were never disclosed at an open hearing and were never intended to be public at all; they became accessible only through an inadvertent clerical error.

*P&G* and *Providence Journal* are likewise inapposite. Although the

---

[3] The Supreme Court has since confined *Cox* to "the right of the press to publish accurately information contained in court records open to the public . . . [that] the public was entitled to know." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 609 (1978). The public was never "entitled to know" the contents of these sealed records.

[4] *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 542 (1976), concerning restrictions on reporting "testimony given or evidence adduced" at a pretrial proceeding, is similarly distinguishable.

information in both cases was initially restricted, it was later released deliberately: in *P&G*, a law firm partner gave the documents to a journalist who "simply asked for the[m]," *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 223 (6th Cir. 1996), and in *Providence Journal*, the FBI "assented to th[e] [FOIA] request and furnished the materials," *In re Providence Journal Co.*, 820 F.2d 1342, 1344 (1st Cir. 1986). In neither case were sealed documents improperly taken from a court docket.

As the Motion explains, courts may restrict the dissemination of information obtained through the judicial process, particularly where it "could be damaging to reputation and privacy." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32–35 (1984). That principle applies with full force here, where the interests at stake are not "commercial," *P&G*, 78 F.3d at 225, or Defendants' "self-interest" (Opp. 3), but instead include the privacy of alleged CSAM victims and others whose highly sensitive information was exposed by administrative error. The narrowly tailored Proposed Order, which leaves ICIJ free to report on anything obtained independently of the sealed exhibits, is not an impermissible prior restraint.

### B. The Court Has Inherent Authority to Remedy the Sealing Breach.

#### 1. The Court has inherent authority to manage its cases.

The right of access to judicial records is not absolute. *Nixon*, 435 U.S. at 598. Access to courthouse records "customarily is subject to the control of the trial court." *Seattle Times*, 467 U.S. at 33 n.19. That power includes the authority to "correct that

which has been wrongfully done by virtue of its process," *Cahill v. Insider Inc.*, 131 F.4th 933, 938 (9th Cir. 2025) (citation omitted) and "to enforce its orders by whatever means," *id.*—authority broader than, and independent of, Rule 65(d). *See also Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1380 (11th Cir. 2024) (noting "[a] federal court's inherent authority to correct its own errors").

The Eleventh Circuit has recognized that third parties have no right of access to confidential discovery materials in the narrower context of Rule 26(c). Courts may regulate access to such materials to preserve their confidentiality. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987). "There is no question that [a] district court would be able to . . . claw back confidential documents that the clerk of court inadvertently made available to the wrong party." *Cahill*, 131 F.4th at 938; *see also ACLU v. DOD*, 2012 WL 13075284, at *5 (S.D.N.Y. Mar. 20, 2012) (ordering return of inadvertently produced classified document).

So too here. The Sealing Order was entered on Plaintiff's motion pursuant to the Protective Order (Dkts. 61, 224, 229), which remains in effect. (McGinty Decl. ¶¶ 3–4, 8). ICIJ has no right of access to these documents, which remain protected not only by a valid Rule 26(c) order binding on the parties, *see Alexander Grant*, 820 F.2d at 355, but also by a Sealing Order that applies generally to the public at large. Where such documents became unintentionally accessible through the Court's administrative error, they are precisely the type of documents the Court may claw

back. *See Cahill*, 131 F.4th at 938; McGinty Decl. ¶ 5.

### 2. *Cahill* supports return or destruction of the documents.

ICIJ's attempt to distinguish *Cahill* underscores why relief is warranted. There, a newspaper that had intervened to seek access to sealed materials was nonetheless compelled to destroy documents inadvertently shared with it. *Cahill*, 131 F.4th at 938–39. ICIJ never intervened here. If a newspaper that followed proper procedure could not keep inadvertently shared documents, a nonparty that bypassed that procedure should not fare better. And the case for relief is stronger here, where the materials are subject not only to a discovery protective order binding on the parties but also to a Court-issued Sealing Order applicable to the public at large.

### C. ICIJ is Improperly Collaterally Attacking the Sealing Order.

ICIJ improperly attacks the validity of the Sealing Order (Opp. 8–10). A nonparty seeking access to sealed materials must (1) first intervene and (2) then move to modify or vacate the sealing order. *See* Fed. R. Civ. P. 24(b); *Sunbelt Veterinary Supply, Inc. v. Int'l Bus. Sys. U.S., Inc.*, 200 F.R.D. 463, 465 (M.D. Ala. 2001). ICIJ did neither, and no party or nonparty has challenged the Sealing Order since its entry. (McGinty Decl. ¶ 8). That failure alone is dispositive.

ICIJ's position also fails on the merits. The Sealing Order protects identifying information relating to alleged victims, content-removal requestors (who may also be alleged victims), and Aylo employees (Dkts. 224, 229; McGinty Decl. ¶¶ 3–6)—

interests that readily overcome the presumption of public access. *See Doe v. Ga. Dep't of Corr.*, No. 24-11382, 2024 WL 5200055, at *2–3 (11th Cir. Dec. 23, 2024) (discussing factors to consider when weighing public right of access against compelling privacy interests).

Faced with a sealing order it disliked, ICIJ was not free to resort to self-help. Court orders must be obeyed unless modified or reversed through judicial process. *Walker v. City of Birmingham*, 388 U.S. 307, 313 (1967); *In re Novak*, 932 F.2d 1397, 1400 (11th Cir. 1991). Nor can ICIJ escape that rule by labeling the Sealing Order "transparently invalid." *Novak*, 932 F.2d at 1402–03. That exception applies only where there is "no colorable, nonfrivolous argument" supporting the order. *Id.* An order entered to protect the identities of alleged CSAM victims and Aylo employees easily meets that standard. (McGinty Decl. ¶¶ 4–5); *See Doe*, 2024 WL 5200055, at *2–*3.

**D. ICIJ's Remaining Arguments Lack Merit.**

**1. Supposed lack of personal jurisdiction does not bar relief.**

Defendants do not contend that ICIJ or Mr. Kenner is subject to general jurisdiction in Alabama, but ICIJ's specific-jurisdiction argument misidentifies the relevant contact. The inquiry focuses on the defendant's own conduct, *Walden v. Fiore*, 571 U.S. 277 (2014), and here that conduct is ICIJ's knowing acquisition, retention, and planned exploitation of records sealed by this Court after receiving

actual notice of the Sealing Order. (McGinty Decl. ¶¶ 26–29). Its effect—violating this Court's order—necessarily falls here. *Moore v. Cecil*, 109 F.4th 1352 (11th Cir. 2024), and *Calder v. Jones*, 465 U.S. 783 (1984), addressed where reputational injury from defamatory publications was felt (Opp. 6–7); neither involved a nonparty's knowing interference with a forum court's order.

Moreover, the Court's authority to protect its records and enforce its orders rests on its ancillary jurisdiction, and nonparties who knowingly aid in the violation of a court order may be subject to that court's authority even when located outside the forum. *See Waffenschmidt v. MacKay*, 763 F.2d 711, 714–16 (5th Cir. 1985). At a minimum, a court may "preserve existing conditions" while it determines its own jurisdiction. *United States v. United Mine Workers of America*, 330 U.S. 258, 293 (1947).

**2. Rule 65(d)(2) does not limit the Court's authority here.**

ICIJ argues that it cannot be bound under Rule 65(d)(2) because it is not a party, a party's agent, or in privity with a party. (Opp. 7). But the requested relief rests independently on the Court's inherent authority over its own records and its power to enforce its orders. (Mot. 16). Further, Rule 82 provides that the Federal Rules "shall not be construed to extend or limit the jurisdiction of the United States district courts." *Waffenschmidt*, 763 F.2d at 719.

### 3. The qualified privilege does not apply here.

ICIJ's claim of qualified privilege against disclosing where it obtained the documents must yield where the information sought is (1) highly relevant; (2) necessary to the proper presentation of the case; and (3) unavailable from other sources. *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986). With respect to stemming further violation of the Sealing Order, elements (1) and (3) plainly apply. Element 2 is satisfied where, as here, there is a "compelling need" for the evidence. *See Gregory v. Miami-Dade Cnty.*, No. 13-21350-CIV, 2015 WL 3442008, *5–*6 (S.D. Fla. May 28, 2015). Without disclosure it is not possible to locate the source of the sealed records and prevent further violation of the Sealing Order. If the Sealing Order is to be enforced, doing so establishes a compelling need that overcomes the qualified privilege. *See id*. at *7–*10 (Eleventh Circuit cases establish that there is compelling need where information is germane to the relief sought and cannot be obtained through other means).

## IV. CONCLUSION

For these reasons and those in the Motion, Defendants request that the Court grant the Motion and enter the Proposed Order or, alternatively, grant such narrower relief as the Court deems appropriate; set an expedited hearing on a preliminary injunction; and maintain the Motion and any related orders under seal. (Proposed Order ¶¶ 10–13).

Date: November 11, 2026

*/s/ Sara M. Turner*

Sara M. Turner (ASB-4388-R58T)
John D. Saxon, Jr. (ASB-5374-H63S)
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
1901 Sixth Avenue North
Suite 2600
Birmingham, Alabama 35203
Tel: (205) 328-0480
Fax: (205) 322-8007
smturner@bakerdonelson.com
jsaxon@bakerdonelson.com

Seth R. Goldman*
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.**
919 Third Avenue
New York, New York 10022
Tel: (212) 692-6845
Fax: (212) 983-3115
SRGoldman@mintz.com
**Pro Hac Vice*

Kevin M. McGinty*
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.**
One Financial Center
Boston, Massachusetts 02111
Tel. (617) 348-1688
Fax. (617) 542-2241
KMMcginty@mintz.com
**Pro Hac Vice*

Arameh Zargham O'Boyle*
Esteban Morales*
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.**
2049 Century Park East, Suite 300
Los Angeles, California 90067
Tel: (310) 586-3200
Fax: (310) 586-3200
AZOboyle@mintz.com
Emorales@mintz.com
**Pro Hac Vice*

*Counsel for Defendants MG Freesites Ltd, MG Freesites II, Ltd, MindGeek S.à r.l., MindGeek USA Incorporated, MG CY Holdings Ltd, MG Content RT Limited, 9219-1568 Quebec Inc., and MG Billing Limited*

## CERTIFICATE OF SERVICE

I certify that on this day, November 11, 2026, this document was filed conventionally using the Electronic Case Filing system with the Clerk of the United States District Court for the Northern District of Alabama, which will serve a copy electronically on all participants of record.

*/s/ Sara M. Turner*
Sara M. Turner